No. 23-1084

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

———————————————————

HOLLIS ANN WHITSON, as guardian ad litem for Peatinna Biggs,

*Plaintiff-Appellant,*

v.

THOMAS HANNA, et al.

*Defendants-Appellees.*

———————————————————

On Appeal from the U.S. District Court for the District of Colorado
The Honorable, Daniel D. Domenico, Judge Presiding
No. 1:18-cv-02076-DDD-SKC

## APPELLANT'S OPENING BRIEF
———————————————————

ORAL ARGUMENT REQUESTED

David Fisher
Jane Fisher-Byrialsen
FISHER & BYRIALSEN, PLLC
4600 S. Syracuse Street, 9th Floor
Denver, CO 80237
David@FBLaw.org
(303) 256-6345

Ellen Noble
Sean Ouellette
Alexandra Z. Brodsky
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, D.C. 20036
enoble@publicjustice.net
(202) 797-8600

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................. ii

TABLE OF AUTHORITIES ...........................................................iv

STATEMENT OF RELATED APPEALS ............................................. vii

GLOSSARY.................................................................................. vii

INTRODUCTION .........................................................................1

JURISDICTIONAL STATEMENT ....................................................3

STATEMENT OF THE ISSUES........................................................4

STATEMENT OF THE CASE ..........................................................5

SUMMARY OF ARGUMENT ........................................................11

STANDARD OF REVIEW ............................................................13

ARGUMENT .............................................................................14

   I.   Plaintiff Adequately Alleged Municipal Liability Claims Against
       Sedgwick County and the Sedgwick County Sheriff's Office. .....................14

     A.  Former Sheriff Hanna's Unconstitutional Conduct Was in the Realm
        of His Final Policymaking Authority. ..........................................14

     B.  The District Court's Analysis is Inconsistent with Tenth Circuit
        Precedent.................................................................................20

       i.  An Official's Actions in his Area of Policymaking Authority are
          Imputed to the County Even if they Violate Policies or the Law...........21

       ii. The Second Circuit's Decision in *Roe* Conflicts with Tenth Circuit
          Precedent and is also Inapposite. .............................................25

       iii. Neither *Lankford* nor *Starrett* Support the District Court's Decision. ...28

   II.  The District Court Need Not Retry This Case on Remand. ..........................32

   III. Sedgwick County is a Proper Defendant. .......................................35

ii

CONCLUSION ...........................................................................................37

REASONS FOR ORAL ARGUMENT ...................................................37

CERTIFICATE OF COMPLIANCE WITH WORD VOLUME LIMITATION ...39

CERTIFICATE OF DIGITAL SUBMISSION ......................................40

CERTIFICATE OF SERVICE ...............................................................41

Order, April 17, 2020 ........................................................... Attachment A

Order on Post-Trial Motions, March 6, 2023 ...................... Attachment B

Amended Final Judgment, March 6, 2023 ........................... Attachment C

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agostini v. Felton*,
    521 U.S. 203 (1997)...................................................................32

*Bennett v. Pippen*,
    74 F.3d 578 (5th Cir. 1996) ................................................19

*Chavez v. Bd. of Cnty. Commissioners of Lake Cnty.*,
    426 F. Supp. 3d 802 (D. Colo. 2019)...................................36

*Congine v. Vill. of Crivitz*,
    947 F. Supp. 2d 963 (E.D. Wis. 2013) ...............................31

*Cortese v. Black*,
    838 F. Supp. 485 (D. Colo. 1993)........................................17

*Cox v. Glanz*,
    800 F.3d 1231 (10th Cir. 2015) ..........................................36

*Devilla v. Schriver*,
    245 F.3d 192 (2d Cir. 2001) ...............................................33

*Doe #1 v. Cravens*,
    2018 WL 1522401 (M.D. Tenn. Mar. 28, 2018) ................20

*Grady v. Jefferson Cnty., Colo.*,
    2008 WL 178923 (D. Colo. Jan. 17, 2008) ........................37

*Hernandez v. Theriot*,
    38 F. Supp. 3d 745 (M.D. La. 2014).....................................20

*Hunt v. Inter-Globe Energy, Inc.*,
    770 F.2d 145 (10th Cir. 1985) ............................................34

*In re Integra Realty Res., Inc.*,
    354 F.3d 1246 (10th Cir. 2004) ...............................32, 34

iv

*Kerber v. Qwest Group Life Ins. Plan*,
   647 F.3d 950 (10th Cir. 2011) ...............................................................13

*Khalik v. United Airlines*,
   671 F.3d 1188 (10th Cir. 2012) ...........................................................13

*Lankford v. City of Hobart*,
   73 F.3d 283 (10th Cir. 1996) .........................................................28, 29

*McKay v. Hammock*,
   730 F.2d 1367 (10th Cir. 1984) .....................................................18, 26

*Milligan-Hitt v. Bd. of Trustees of Sheridan Cnty. Sch. Dist. No. 2*,
   523 F.3d 1219 (10th Cir. 2008) .....................................................14, 27

*Mitchell v. State Farm Fire & Cas. Co.*,
   15 F.3d 959 (10th Cir. 1994) ...............................................................33

*Monell v. Department of Social Services*,
   436 U.S. 658 (1978)............................................................15, 28, 36

*Morro v. City of Birmingham*,
   117 F.3d 508 (11th Cir. 1997) ............................................................14

*Newsome v. McCabe*,
   319 F.3d 301 (7th Cir. 2003) ..............................................................34

*Northington v. Marin*,
   102 F.3d 1564 (10th Cir. 1996) ..........................................................33

*Owen v. City of Indep., Mo.*,
   445 U.S. 622 (1980)............................................................................23

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986)............................................... 11, 15-16, 19, 23, 31

*Porro v. Barnes*,
   624 F.3d 1322 (10th Cir. 2010) ..........................................................36

*Roe v. City of Waterbury*,
   542 F.3d 31 (2d Cir. 2008) ......................................................25, 26, 27

*Rustgi v. Reams*,
   536 F. Supp. 3d 802 (D. Colo. 2021)....................................................17

*Sanchez v. Hartley*,
   65 F. Supp. 3d 1111 (D. Colo. 2014)....................................................37

*Seifert v. Unified Gov't of Wyandotte Cnty./Kansas City*,
   779 F.3d 1141 (10th Cir. 2015) .............................................18, 24, 26

*Simmons v. Uintah Health Care Special Dist.*,
   506 F.3d 1281 (10th Cir. 2007) ..................................15-17, 21-26, 30

*Starrett v. Wadley*,
   876 F.2d 808 (10th Cir. 1989) ............................................... 15, 28-30

*Teague v. Mayo*,
   553 F.3d 1068 (7th Cir. 2009) ........................................................32, 33

*Wright v. Fentress Cnty., Tennessee*,
   313 F. Supp. 3d 886 (M.D. Tenn. 2018) ...........................................31

## Statutes

28 U.S.C. § 1291 ..........................................................................................4

28 U.S.C. § 1331 ..........................................................................................3

42 U.S.C. § 1983 .......................................... 14-17, 20-21, 23, 31-34, 37-38

Colo. Rev. Stat. Ann. § 30-10-511...........................................................17

Colo. Rev. Stat. Ann. § 30-10-514...........................................................17

Colo. Rev. Stat. § 30-25-104(1)................................................................36

## Other Authorities

Colo. Const. art. XIV ...............................................................................36

Federal Rule of Civil Procedure 12(b)(6) ...............................................13

Restatement (Third) of Torts: Apportionment Liab. § 13 (2000)............33

Wright, Miller & Cooper, 18B Fed. Prac. & Proc. Juris. (2d ed. 2002)..................34

## STATEMENT OF RELATED APPEALS

There are no prior or related appeals.

## GLOSSARY

| | |
|---|---|
| JA | Joint Appendix |
| County | Board of County Commissioners |
| Sheriff's Department | Sheriff Carlton Britton |

## INTRODUCTION

Ms. Peatinna Biggs, a woman with an intellectual disability, was incarcerated at Sedgwick County Jail when she was ordered out of her cell by the Sedgwick County Sheriff, Thomas Hanna. The Sheriff was to transport her to the Logan County Jail. But before bringing her there, he brought her to his home. He ordered her to take off all her clothes and then sexually molested her without her consent. He told Ms. Biggs that if she told anyone what he had done, she would spend the rest of her life in prison. He then handcuffed her and proceeded to transport her to the Logan County Jail.

Ms. Biggs, represented in this appeal by her Guardian ad litem, Plaintiff-Appellant Hollis Ann Whitson, filed suit against Sedgwick County, the Sedgwick County Sheriff's Department, and Sheriff Hanna in his individual and official capacity for violating her constitutional rights. Under § 1983, municipal entities, like the County and Sheriff's Department, are liable for the acts of a county official with final policymaking authority. Although the district court agreed that the Sheriff had final policymaking authority with respect to operating the jail and transporting detainees, the court dismissed the § 1983 claims against the municipal entity defendants on the grounds that the Sheriff did not have policymaking authority to falsely imprison and sexually assault Ms. Biggs.

1

But this reasoning turns the longstanding final policymaker doctrine inside out, conflating the question of whether someone acted in an area in which they have final policymaking authority with whether they acted within their lawful authority. It will always be true that when a plaintiff is alleging that a final policymaker did something unconstitutional in violation of § 1983, they are alleging that the policymaker acted *beyond* their legal authority. Indeed, the very purpose of § 1983 is to provide redress for *misuses* and *abuses* of state authority. The question is whether the unlawful conduct took place in an area—or context—in which the official has final policymaking authority.

Sheriff Hanna had final policymaking authority under state law to hold Ms. Biggs in his physical custody, to assert control over Ms. Biggs' person, and to transport her to another jail. And he used that authority to commit a cruel and egregious violation of her constitutional rights. There was no higher county official to regulate his conduct or hold him accountable; he was, for all intents and purposes, the County. This is precisely the case that the final policymaker doctrine was designed for. The doctrine ensures that the county itself is liable when it delegates final, unrestricted policymaking authority to an official in a particular area and that official abuses that power. The district court's decision to the contrary conflicts with binding Tenth Circuit precedent and undermines the very purpose of § 1983.

2

If counties are permitted to hide behind their municipal form, even when their final policymakers choose to commit egregious violations of peoples' constitutional rights, then victims like Ms. Biggs will be left without any meaningful recourse. Indeed, in this case, the jury proceeded to find that "Hanna abused the authority he had as Sedgwick County's sheriff in about as reprehensible a manner as could be imagined, and assessed the damage he caused at over $8,000,000." JA 235. But Ms. Biggs will never receive that money. The district court recognized that "[w]hile Mr. Hanna owes Ms. Biggs that amount, it is hard to imagine he will be able to pay her any more than a tiny fraction of it. Thus, in reality, the person who has to bear the bulk of the financial burdens of Mr. Hanna's actions is the same one who has to bear the emotional and personal burdens: Peatinna Biggs." *Id.*

But this injustice is not an unfortunate reality that Ms. Biggs must live with; it's a misapplication of the law. Section 1983, as interpreted by the Supreme Court, guards against this, ensuring that the county—not the victim—bears the financial burdens where a high-ranking county official acts in an area in which he has final policymaking authority. In other words, a sheriff's actions will be treated as the actions of the county. The buck stops there.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 because the claims raised a federal question pursuant to 42 U.S.C. § 1983.

3

On April 17, 2020, the district court granted the motions to dismiss filed by Defendant Sheriff Carlton Britton ("the Sheriff's Department") and Defendant Board of County Commissioners of Sedgwick County ("the County"). JA 140. On March 6, 2023, the District Court denied Plaintiff's motion to alter or amend the judgment under Rule 59(e) and entered a final Judgment dismissing all claims against the Sheriff's Department and the County. JA 224-236. Plaintiff timely appealed. JA 239. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Was Sheriff Hanna's misconduct in an area in which he had final policymaking authority such that his conduct is attributable to the County and Sheriff's Department under § 1983?

2. If the Court agrees that Sheriff Hanna was acting in an area in which he had final policymaking authority and that the municipal entities should therefore not have been dismissed from the case, does there need to be a new trial on remand?

3. Did the district court also err in dismissing the County as an improper defendant on the grounds that the County and Sheriff's Department are separate entities under Colorado law?

4

## STATEMENT OF THE CASE

### The Sheriff's Sexual Assault of a Sedgwick County Jail Detainee

This case arises from Ms. Peatinna Biggs' incarceration at the Sedgwick County Jail. While she was detained there, she was removed from her cell by former Sheriff Thomas Hanna. JA 25, ¶ 24. Sheriff Hanna was the highest-ranking law enforcement officer in Sedgwick County and in charge of operating the jail and supervising its detainees. JA 25, ¶ 19. Sheriff Hanna was going to transfer Ms. Biggs to the Logan County Jail. JA 25, ¶ 21. He ordered her to change into street clothes, handcuffed her, and then placed her into his truck. JA 25, ¶¶ 24, 26.

Once in his car, the Sheriff removed Ms. Biggs' handcuffs but locked the door so she would not be free to leave. Ms. Biggs, who has an intellectual disability, was confused and terrified about what was happening. JA 26, ¶¶ 27-28. Instead of transporting Ms. Biggs directly to the Logan County Jail, Sheriff Hanna drove to his home and ordered Ms. Biggs inside. JA 26, ¶¶ 29-31. She was afraid to run from his house because she was afraid of being physically harmed by the Sheriff or arrested on new charges. JA 26, ¶ 35. Once inside, the Sheriff offered to pay Ms. Biggs $60 to have sex with her, but she refused. JA 26, ¶ 36.

Sheriff Hanna then ordered Ms. Biggs to take off all her clothes. JA 26, ¶ 37. His gun was visible in his holster. JA 26, ¶¶ 36-37. Afraid for her life, Ms. Biggs complied. JA 26, ¶ 38. She stood naked before him, embarrassed and afraid. JA 27,

¶ 39. The Sheriff then took off his department-issued uniform pants and proceeded to sexually molest Ms. Biggs by digitally penetrating her vagina without her consent. JA 27, ¶ 41. The touching was forceful and unwanted. *Id.* His gun remained visible on the table throughout the assault. JA 27, ¶ 42.

Afterwards, the Sheriff threatened Ms. Biggs, telling her that if she told anyone about what he had done she would spend the rest of her life in prison. JA 27, ¶ 43. Ms. Biggs believed that the Sheriff could follow through on this threat given that he was the highest-ranking law enforcement office in Sedgwick County. JA 27, ¶ 44. The Sheriff then handcuffed Ms. Biggs and placed her back in his vehicle. JA 28, ¶ 50. He then proceeded to bring her to the Logan County jail. JA 28, ¶ 52.

Ms. Biggs did not immediately report the assault for fear that she would spend the rest of her life in prison. JA 28, ¶ 55. But a deputy that worked at Sedgwick County Jail, Deputy Neugebauer, had witnessed the Sheriff placing Ms. Biggs, who was in street clothes, into the Sheriff's vehicle, and later that day had seen the vehicle parked outside of the Sheriff's home. JA 25, ¶¶ 26, 30, 46, 48. He knew or reasonably suspected that Sheriff Hanna had violated Ms. Biggs' constitutional rights, but initially failed to report the incident. JA 28, ¶ 56. It wasn't until twelve days later that Deputy Neugebauer reported the incident to the Logan County District Attorney's Office—when it was too late for a rape kit or other DNA evidence to be collected. JA 31, ¶¶ 80-81.

6

Sheriff Hanna was eventually arrested and criminally charged, while Ms. Biggs was released on bail. JA 32, ¶¶ 81-82. Ms. Biggs completed her term of probation and is no longer in custody. JA 32, ¶ 87. She has been clinically diagnosed with Post-Traumatic Stress Disorder caused by the assault and suffers from embarrassment, humiliation, insomnia, night terrors, and anxiety. JA 32, ¶ 89. She lives in constant fear of being sexually assaulted again as the Sheriff is on probation and she continues to reside in Sedgwick County. JA 32, ¶ 87.

Neither the County of Sedgwick nor its Sheriff's Department oversaw or internally monitored the Sheriff's actions. JA 33, ¶ 90. He was undisciplined and unsupervised throughout his term as Sheriff. JA 33, ¶ 93. Indeed, Deputy Neugebauer eventually reported former Sheriff Hanna's actions to the Logan County District Attorney's Office because there was no other supervisor, bureau, or department at the Sedgwick County Sheriff's Department that could review the actions of the Sherriff. *Id.* The Sheriff's Department, an agency of Sedgwick County, had a policy committed to zero-tolerance of any form of sexual abuse of inmates and a policy against bringing an inmate, especially an inmate of the opposite sex, into an officer's home. JA 26, ¶¶ 23, 30; JA 28, ¶ 54. But Sheriff Hanna, as the highest-ranking law enforcement officer, made the decision to cast those policies aside and approved of the constitutional violations he committed against Ms. Biggs. JA 33, ¶ 94.

**The Lawsuit**

In the wake of the assault, Ms. Biggs filed a civil rights lawsuit under § 1983 naming a number of defendants, including the former Sheriff Hanna in his individual and official capacity, the Deputy Larry Neugebauer, the Sedgwick County Sheriff's Department, and the County of Sedgwick. JA 21. Early in the litigation, the caption was amended replacing the "County of Sedgwick" with the "the Board of County Commissioners for the County of Sedgwick" and replacing the "Sedgwick County Sheriff's Department" with "Sheriff Carlton Britton in his official capacity" as the proper way of identifying those municipal entities. JA 7, Dkt. # 41. For ease of reference and clarity, this brief uses the shorthand of the "County" to refer to the County Board of Commissioners and the "Sheriff's Department" to refer to Sheriff Carlton Britton in his official capacity.

Ms. Biggs' complaint alleged claims of excessive force, cruel and unusual punishment, false imprisonment, sexual assault and battery, equal protection, due process, right to privacy, failure to intervene, conspiracy to interfere with civil rights, as well as municipal liability for Sheriff's Hanna's constitutional violations. JA 34-45, ¶¶ 95-168.

The County and Sheriff's Department moved to dismiss the claims against them, arguing that that they were not liable for Sheriff Hanna's conduct because the complaint fails to allege a custom or policy attributable to the County or Department.

8

*See* JA 50-52; 96-100. The County also argued that it was not liable because, under Colorado law, the Sheriff's Department is separate from the Board of County Commissioners. *See* JA 54-55.

Plaintiff opposed the motions to dismiss and explained that establishing an unconstitutional custom or policy is only one way of establishing municipal liability. There is a second way: the County and Sheriff's Department are liable for the Sheriff's conduct because he was the final policymaking official for the County for matters concerning operations of the county jail. JA 77-78; 119-120. Plaintiff also argued that the County, or more specifically the Board of County Commissioners, is a proper defendant. JA 76.

The district court granted the County and Sheriff's Department's motions to dismiss, reasoning that Sheriff Hanna was not acting within his policymaking authority when he falsely imprisoned and sexually assaulted Ms. Biggs because his "actions were not 'pursuant to' Department policies, but in direct contravention of them." JA 148. The claims against Deputy Neugebauer were also dismissed. JA 159.

### Post-Trial Motions

The case against Sheriff Hanna proceeded to trial. The jury found Sheriff Hanna liable for excessive force, cruel and unusual punishment, and false imprisonment in the total amount of $3,250,000.00 in compensatory damages and

$5,000,000.00 in punitive damages. JA 169. The court's initial order entering judgment in the case sparked confusion because it entered the judgment against Sheriff Hanna in his individual *and his official capacity*, while also entering a final judgment dismissing all claims against the County and Sheriff's Department. *Id.* Because an official capacity claim against a Sheriff is another way of alleging a municipal liability claim against the Sheriff's Department and County, the judgment was self-contradictory.

Plaintiff moved to alter or amend the final judgment, explaining that an official capacity claim *is* a claim against the municipal entities, and that therefore the Sheriff's Department and County should be on the hook for the damages awarded by the jury. Plaintiff argued that no one ever moved to dismiss the "official capacity" claim, the Court never dismissed it, and the jury instructions even included a stipulation that Sheriff Hanna was acting in his "official capacity." JA 175-178. Plaintiff also argued, as a substantive matter, that the district court erred in dismissing claims against the County and Sheriff's Department prior to trial because Sheriff Hanna was acting within the realm of his final policymaking authority when he violated Ms. Biggs' constitutional rights. Therefore, his conduct was attributable to the County and Sheriff's Department. JA 178-185. At the same time, the County and Sheriff's Department also moved to amend the judgment, arguing that it erroneously states Sheriff Hanna is liable in his official capacity.  JA 191-194.

10

The district court entered an order amending the final judgment to clarify that the County and Sheriff's Department are not liable. In doing so, the court concluded that the official capacity claims did not survive the County and Sheriff Department's motions to dismiss, and that the Sheriff was not acting within his final policymaking authority when he sexually assaulted Ms. Biggs because while he had policymaking authority to operate the jail and transport Ms. Biggs, he did not have policymaking authority to sexually assault her. JA 224-235

Plaintiff timely appealed the district court's pretrial order granting the County and Sheriff Department's motions to dismiss as well as its post-trial order refusing to alter or amend the final judgment. JA 239.

## SUMMARY OF ARGUMENT

This Court should reverse the district court's dismissal of claims against the County and Sheriff's Department because Plaintiff sufficiently alleged municipal liability. Under the Supreme Court's decision in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), a plaintiff may establish municipal liability under § 1983 by alleging that a county official with final policymaking authority acted in violation of a plaintiff's constitutional rights.

Here, there is no dispute that Sheriff Hanna had final policymaking authority with respect to operating Sedgwick County's jail, including the care and supervision of its detainees and the transportation of those detainees to other jails. There is also

no dispute that Sheriff Hanna, while transporting Ms. Biggs, a Sedgwick County jail detainee, violated Ms. Biggs' constitutional rights.

**I.A.** The question in this appeal is whether Sheriff Hanna acted in an area of his final policymaking authority when he violated Ms. Bigg's constitutional rights. He clearly did. Sheriff Hanna had final policymaking authority with respect to controlling, supervising, and transporting detainees and he used that very authority to falsely imprison and inflict cruel and unusual punishment against Ms. Biggs while transporting her. He even expressly invoked his policymaking authority, telling Ms. Biggs that if she told anyone what he had done that she would spend the rest of her life in prison. The fact that the Sheriff did something unlawful (beyond his legal authority) or that some of his unconstitutional conduct was in the form of a sexual assault does not alter the legal analysis.

**I.B.** The district court decision below, dismissing claims against the municipal entity defendants on the grounds that the Sheriff was acting outside his policymaking authority, is inconsistent with Tenth Circuit precedent. This Court has repeatedly held that an official's actions in an area in which he has final policymaking authority are attributable to the county even if those actions are unlawful, in direct contravention of county policy, or particularly nefarious and intentional. Nor does an official have to be motivated by legitimate policy goals for his conduct to fall

12

within his final policymaking authority. Tenth Circuit case law and the central purpose of § 1983 preclude such limited interpretations of municipal liability.

**II.** Because the municipal entity defendants are liable for Sheriff Hanna's constitutional violations and should never have been dismissed from this case, this Court should reverse and remand. But on remand, a new trial is not necessary because the County and Sheriff's Department are liable for Sheriff Hanna's official acts as a matter of law. A jury already found that the Sheriff violated Ms. Bigg's constitutional rights and calculated the compensatory damages she is owed. In fact, the law of the case doctrine prohibits any retrial on such factual questions.

**III.** The district court also erred in dismissing claims against the County on the grounds that the Sheriff's Department and County are separate entities under Colorado law. However, this issue is of little consequence because regardless of whether the Sheriff's Department or the County is held liable in name, the damages are paid out of the County fund.

<b>STANDARD OF REVIEW</b>

This Court reviews *de novo* a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6). *Khalik v. United Airlines*, 671 F.3d 1188, 1190 (10th Cir. 2012). In doing so, this Court must accept all factual allegations in the Amended Complaint as true and view these allegations in the light most favorable to the Plaintiff. *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

With that said, the question at the heart of this appeal is a pure question of law. "[T]he Supreme Court has made plain that the question of whether [an official] is a final policymaker is a legal question for the court, not the jury." *Morro v. City of Birmingham*, 117 F.3d 508, 518 (11th Cir. 1997) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)); *see also Milligan-Hitt v. Bd. of Trustees of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1227 (10th Cir. 2008) (holding "final policymaking authority must be determined by a judicial examination of state and local law, not turned over to the jury").

## ARGUMENT

### I. Plaintiff Adequately Alleged Municipal Liability Claims Against Sedgwick County and the Sedgwick County Sheriff's Office.

#### A. Former Sheriff Hanna's Unconstitutional Conduct Was in the Realm of His Final Policymaking Authority.

Contrary to the district court's analysis, the County Sheriff was acting within the area of his policymaking authority as required to establish municipal liability under § 1983. It is undisputed that Sheriff Hanna was the final policymaker with respect to law enforcement, including jail operations, supervising detainees in the county's custody, and transporting detainees between jails. JA 231. The Sheriff was acting in those specific areas of final policymaking authority when he falsely imprisoned and then sexually assaulted a female detainee in his custody while transporting her to another jail.

The Supreme Court has carved out multiple, independent pathways for holding municipalities liable under § 1983. Plaintiffs often establish municipal liability by showing that county employees' unconstitutional conduct was taken in "compliance with a preexisting policy or longstanding custom" in accordance with the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1285 (10th Cir. 2007). But that is not "the only way to demonstrate that an action is properly viewed as the municipality's own." *Id.* "While *Monell* found [municipal] liability on the basis of an 'official policy as the moving force of the constitutional violation,'" the Supreme Court in *Pembaur* "establish[ed] that actions taken by a municipality's final policymakers *also* represent acts of 'official policy' giving rise to municipal liability." *Id.* (citing *Pembaur*, 475 U.S. at 481) (emphasis added). "Accordingly, a municipality is responsible for both actions taken by subordinate employees in conformance with preexisting official policies or customs and actions taken by final policymakers." *Id.* at 1284.

Under *Pembaur*, "if a county official has been delegated the power to make final policy in an area of the county's business, then the official's acts in that area are the acts of the county." *Starrett v. Wadley*, 876 F.2d 808, 818 (10th Cir. 1989) (citing *Pembaur*, 475 U.S. at 482-83; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, (1988)). "Whether an official has final policymaking authority in a particular

15

area is a question of state law." *Id.* Importantly, the final policymaker's acts need not amount to formal rules or customs—"municipal liability may be imposed for a single decision . . . tailored to a particular situation and not intended to control decisions in later situations." *Pembaur*, 475 U.S. at 480-481. In fact, municipalities are liable for "actions by final policymakers taken in *defiance* of a policy or custom that they themselves adopted." *Simmons*, 506 F.3d 1281 at 1285 (emphasis added).

In this case, Plaintiff adequately alleged that the municipal entity defendants, including Sedgwick County and the Sedgwick County Sheriff's Office, were liable under § 1983 for the unconstitutional acts of Sheriff Hanna because Sheriff Hanna was acting in an area in which he was a final policymaker. The complaint alleges that Sheriff Hanna, the highest-ranking law enforcement official in Sedgwick County who operated the Sedgwick County Jail, falsely imprisoned, used excessive force against, and sexually assaulted Ms. Biggs, inflicting cruel and unusual punishment, while she was a detainee in his custody. JA 25-27, 34-42. Specifically, in transporting Ms. Biggs from his county jail to another county jail, Sheriff Hanna brought Ms. Biggs to his private home where he held her against her will, ordered her to undress, humiliated her, and sexually assaulted her. JA 25-28. He used his authority to threaten Ms. Biggs, telling her that if she told anyone what he had done, he would ensure she would spend the rest of her life in prison. JA 27, ¶ 43. All of Hanna's unconstitutional conduct took place while Ms. Biggs was a detainee under

Hanna's direct control and supervision during a routine jail transport. The conduct clearly took place in the realm of supervising and transporting detainees.

It is well settled—and undisputed—that Hanna was the final policymaker with respect to supervising and transporting detainees. Under Colorado law, the sheriff has "charge and custody of the jails of the county, and of the prisoners in the jails, and shall supervise them." Colo. Rev. Stat. Ann. § 30-10-511. Colorado law also assigns to the sheriff the authority to transport prisoners to other places of confinement. Colo. Rev. Stat. Ann. § 30-10-514. Colorado's elected sheriff is the final policymaker with respect to law enforcement activities generally, including jail operations. *See Cortese v. Black*, 838 F. Supp. 485, 496 (D. Colo. 1993); *see also Rustgi v. Reams*, 536 F. Supp. 3d 802, 824 (D. Colo. 2021). Facing this wall of authority, the County conceded that, in Colorado, the sheriff is the final policymaker for matters concerning the operation of the county jail. JA 54-55. And the district court recognized "[i]t is undisputed that transportation of prisoners is within the realm of the county sheriff's policymaking authority." JA 231.

Because Colorado's sheriff is the final policymaker with respect to law enforcement activities, including the supervision and transportation of detainees, and Sheriff Hanna's unconstitutional acts took place in the context of supervising and transporting a detainee, Plaintiff adequately alleged that the municipal entities are liable under § 1983 for Hanna's unconstitutional acts. *See Simmons*, 506 F.3d at

1286 (county liable for Board's wrongful termination of employee because "the Board was the final policymaker on personnel matters"); *Seifert v. Unified Gov't of Wyandotte Cnty./Kansas City*, 779 F.3d 1141, 1159 (10th Cir. 2015) (county liable for Sheriff's retaliation against deputy because Sheriff was the final policymaker for the Sheriff's Department and responsible for its deputies).

The fact that Hanna's unconstitutional conduct was intentionally harmful and clearly beyond his legal authority is irrelevant. In *McKay v. Hammock*, 730 F.2d 1367 (10th Cir. 1984), the plaintiff alleged false imprisonment—just as Ms. Whitson does here—and "that the [county] sheriff … was involved knowingly in [a deputy's] deprivation of [plaintiff's] liberty without due process." *Id.* at 1374. This Court concluded that because the sheriff "was the official responsible for the policies and procedures of the [ ] County Sheriff's Office," "the Sheriff's Office will be liable . . . for implementing an unconstitutional act if [the sheriff] knowingly was involved in an intentional constitutional deprivation." *Id.* Here, as in *McKay*, Sheriff Hanna is the final policymaker with respect to law enforcement and jail operations and his "personal participation is alleged" in intentionally depriving a detainee under his custody and control of her constitutional rights. *Id.* Thus, Sedgwick County and the Sedgwick County Sheriff's Department should be liable for Sheriff Hanna's unconstitutional acts.

Nor does the fact that Sheriff Hanna sexually assaulted the Plaintiff alter the legal analysis. There is no authority to suggest that unconstitutional conduct of a sexual nature is exempt from the unlawful acts of a final policymaker that may trigger municipal liability under *Pembaur*. Sexual assault of a detainee, just like excessive use of force or an intentional false arrest, is just another unlawful act that a sheriff may engage in (or knowingly permit), which will in turn trigger municipal liability.

In *Bennett v. Pippen*, 74 F.3d 578 (5th Cir. 1996), for example, the Fifth Circuit held that where a sheriff raped a suspect during a homicide investigation, his actions were imputed to the county because the sheriff was the final policymaker for the county for matters of law enforcement. *Id.* at 581. The court found that "the Sheriff's actions were those of the County because his relationship with [the suspect] grew out of the attempted murder investigation and because . . . he used his authority over the investigation to coerce sex with her." *Id.* at 586. The same is true here. Sheriff Hanna's actions grew out of his supervision and transportation of a detainee. And just as the Sheriff in *Bennett* used his authority as Sheriff to violate the suspect's constitutional rights, threatening to put her in jail for the rest of her life if she did not comply with his demands, so too did Sheriff Hanna. *See* JA 27, ¶ 43.

In fact, the final policymaker analysis is even more straight forward in this case than in *Bennett*. In *Bennett* the sheriff's sexual assault "grew out of" his law

enforcement work, while Sheriff Hanna's sexual assault took place in the course of performing specific law enforcement duties. Further, Sheriff Hanna's use and abuse of his authority as sheriff is more apparent because he sexually assaulted a detainee under his complete custody and control while transporting her to another jail. Such conduct is squarely within—not outside of—the Sheriff's area of final policymaking authority. *See Hernandez v. Theriot*, 38 F. Supp. 3d 745, 748 (M.D. La. 2014) (holding municipality liable where Chief of Police, a final policymaker, sexually assaulted inebriated woman in his custody while transporting her); *Doe #1 v. Cravens*, No. 2:17-CV-00049, 2018 WL 1522401, at *4 (M.D. Tenn. Mar. 28, 2018) (holding municipality liable where sheriff, a final policymaker, raped several detainees).

Because the complaint alleges that Sheriff Hanna falsely imprisoned, used excessive force, and inflicted cruel and unusual punishment on a detainee during a transport, and it is undisputed that Hanna was a final policymaker with respect to jail operations and supervising and transporting detainees, the complaint sufficiently alleges municipal liability under § 1983.

### B. The District Court's Analysis is Inconsistent with Tenth Circuit Precedent.

The district court's decision that Sheriff Hanna was acting outside the area of his policymaking authority conflicts with binding Tenth Circuit precedent and would create a legal loophole undermining the very purpose of § 1983.

20

**i.    An Official's Actions in his Area of Policymaking Authority are Imputed to the County Even if they Violate Policies or the Law.**

Contrary to Tenth Circuit precedent, the district court's decisions below conflate the final policymaking inquiry with a requirement that the official's conduct be consistent with departmental policies or their *lawful* authority. In its April 2020 Order, the district court dismissed the municipal entities from this case on the ground that "Mr. Hanna's actions were not 'pursuant to' Department policies, but in direct contravention of them." JA 148. But that reasoning directly contradicts then-Judge Gorsuch's binding decision in *Simmons* holding that municipalities are liable for "actions by final policymakers taken in *defiance* of a policy or custom that they themselves adopted." *Simmons*, 506 F.3d at 1285 (emphasis added).

*Simmons* explained why the county must be liable for discrete acts in defiance of county policy committed by a final policymaker:

> Were the rule of law different, we would invite irrational results. Holding municipalities immune from liability whenever their final policymakers disregard their own written policies would serve to encourage city leaders to flout such rules. Policymakers . . . have little reason to abide by their own mandates . . . and indeed an incentive to adopt and then proceed deliberately to ignore them. Such a rule of law would thus serve to undermine rather than enhance Section 1983's purposes.

*Id.* at 1285. The district court's holding that the County and Sheriff's Department could not be liable for a final policymaker's acts in defiance of departmental policies is directly precluded by *Simmons.*[1]

In response to Plaintiff's post-trial motion for reconsideration of this issue, the district court still failed to reconcile its decision with *Simmons.* In the March 2023 Order, the district court recognized the holding in *Simmons*, noting that "a county can be liable for the actions of its policymakers, even when those actions violate a previously established policy," and that "transportation of prisoners is within the realm of the county sheriff's policymaking authority." JA 231. But the court still held that the County and Sheriff's Department were not liable, reasoning that "the Entity Defendants are not being sued because Mr. Hanna transported Ms. Biggs; they are being sued because he sexually assaulted her. That is not within the policymaking authority a county sheriff has." *Id.*

The district court's post-trial decision confuses the question of whether a sheriff was acting in the area or context in which he has final policymaking authority

---

[1] If anything, the fact that the Sheriff's Department had policies in place to address this very circumstance of an officer sexually assaulting a detainee during a transport or in his home is evidence that Sheriff Hanna's misconduct *was* within an area of his policymaking authority. *See* JA 26, ¶ 30; JA 28, ¶ 54. The Sheriff's Department would not have a policy directly governing this factual situation if the situation was beyond the Sheriff's policymaking authority.

with whether the sheriff was exceeding his *legal* or *lawful* authority. If courts define the area of policymaking authority as the alleged unconstitutional conduct—be it sexual assault, excessive use of force, false imprisonment, cruel and unusual punishment, or even medical neglect—it will *always* be true that there is no state law giving the sheriff final policymaking authority with respect to that particular unlawful conduct. It would make municipalities immune from liability whenever their final policymakers deliberately abuse their authority to violate a person's constitutional rights because abuse of authority will, by definition, exceed one's legal authority. Such an approach would not just create a loophole to the final policymaking inquiry, it would eviscerate it, undermining the "central aim" of § 1983 which is "to provide protection to those persons wronged by the *misuse* of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Owen v. City of Indep., Mo.*, 445 U.S. 622, 650 (1980) (emphasis added) (internal quotations and brackets omitted).

Nor is this how the Tenth Circuit has ever sought to define "policymaking authority" for purposes of assessing municipal liability under *Pembaur*. In *Simmons*, for example, this Court determined that the Board was the final policymaker on "personnel matters" and then held the municipality liable for the Board's wrongful termination of an employee. *Id*. at 1286. The Court did not ask whether the Board

had authority to *wrongfully* terminate an employee. Similarly, in *Seifert*, the Court did not ask if the sheriff had authority to retaliate against an employee for testifying in a civil rights suit; the Court asked if the sheriff had policymaking authority with respect to managing deputies within the sheriff's department. *Seifert*, 779 F.3d at 1159. Accordingly, here, the proper question is whether the Sheriff had final policymaking authority with respect to supervising and transporting detainees—not whether he had authority to sexually assault or falsely imprison a detainee while transporting them.

Plaintiff's position is not an extension of municipal liability; it is precisely what Tenth Circuit law requires. The district court was concerned that Plaintiff's position "would effectively mean that any time a sheriff takes an action in the course of performing his official duties, the County and/or the Sheriff's Office would be liable for that action" and that this "would collapse the 'under color of state law' and municipal-liability analyses, which are separate questions." JA 231. Those fears are overstated, but the core insight—that municipalities will generally be liable for the actions of final policymakers—is a reflection of existing circuit law: *Simmons* makes clear that the county is liable for an official's actions when that official is operating in an area in which he has final policymaking authority. *See supra* pp. 14-15. That's because "[a]n act by a municipality's final policymaking authority is no less an act

of the institution than the act of a subordinate employee conforming to a preexisting policy or custom." *Simmons*, 506 F.3d at 1285.

While "final policymaking authority" is not synonymous with "under color of state law," there may be significant overlap as to conduct that is within one's "final policymaking authority" and conduct that is "taken under color of state law." This is especially true for certain actors, like sheriffs, who are often given final policymaking authority over law enforcement generally and who do little work in other contexts, like city budgeting or public education, in which the sheriff may not have final policymaking authority. If the sheriff had been operating in a non-law enforcement capacity in service of a different county department in which he did not have final policymaking authority, his actions may not be attributable to municipal entities.

### ii.    The Second Circuit's Decision in *Roe* Conflicts with Tenth Circuit Precedent and is also Inapposite.

The district court's reliance on the Second Circuit decision, *Roe v. City of Waterbury*, 542 F.3d 31, 40-41 (2d Cir. 2008), is misplaced. In that opinion, the Second Circuit held that an official is only acting with final policymaking authority if his decisions are "made for practical or legal reasons." *Id.* at 38. Relying on *Roe*, the district court argued that Sheriff Hanna's unlawful conduct was outside of his policymaking authority because it was advancing a purely personal agenda and not a "legitimate policy goal." JA 233.

But no Tenth Circuit case suggests that courts must assess the official's motivation or reasons for engaging in the unconstitutional conduct. In fact, such an approach would conflict with Tenth Circuit precedent in two ways. First, the Tenth Circuit has routinely found that officials acted within their final policymaking authority even when their conduct was *not* motivated by a legitimate or legal policy goal.  For example, *Simmons* held that acts directly in defiance of the department's policies—and thus presumably in tension with "legitimate policy goals"—must be imputed to the county. *See Simmons*, 506 F.3d at 1285. In *Seifert*, the sheriff's unlawful conduct was motivated by a desire to retaliate against a deputy that had testified about federal law enforcement's mistreatment of a former criminal defendant. *Seifert*, 779 F.3d at 1145. Such retaliation is not a "legitimate policy goal," JA 233, yet this Court still found that the sheriff had acted within his final policymaking authority, *Seifert*, 779 F.3d at 1145. Similarly, in *McKay*, the complaint alleged that defendants, including the sheriff with final policymaking authority, *knew* that the plaintiff was out on a valid bond when they had him arrested. *See* 730 F.2d at 1374. Knowingly falsely imprisoning a person is not conduct in pursuit of a legitimate policy goal. Thus, *Roe* and the district court's "in pursuit of legitimate policy goals" test is inconsistent with Tenth Circuit case law.

Second, holding that an official acts only within his final policymaking authority if his conduct is motivated by legitimate policy goals conflicts with Tenth

26

Circuit precedent because assessing the reasons behind an official's unconstitutional activity would be a highly fact-dependent inquiry. The Tenth Circuit, relying on Supreme Court precedent, has held that whether an official was acting within his final policymaking authority is a pure question of law. *See Milligan-Hitt*, 523 F.3d at 1227 (holding "final policymaking authority must be determined by a judicial examination of state and local law, not turned over to the jury").

Even if this Court were to disregard Tenth Circuit precedent in favor of the Second Circuit's analysis in *Roe*, that case is distinguishable. *Roe* largely rested on the fact that "a finding of general policymaking power" on the part of the official in question was not sufficient because they must have policymaking authority "in a particular area, or on the particular issue involved in the actions." *Roe*, 542 F.3d at 38. The Court further reasoned there was not a sufficient "nexus" between the relevant official's "actions and his job functions" because he had sexually abused two children who had no relationship to his office or job duties. *Id.* at 40. This case is the opposite scenario: Sheriff Hanna has policymaking authority in the particular area of asserting custody over and supervising detainees, and his misconduct occurred while he was performing a core job function in that context. Thus, even *Roe* does not support municipal immunity in this case.

### iii.    Neither *Lankford* nor *Starrett* Support the District Court's Decision.

The two Tenth Circuit cases that the district court cited in a footnote do not support the district court's conclusion that sexual assault is necessarily "personal" and outside the scope of an official's policymaking authority. *See* JA 232 n.6 (citing *Lankford v. City of Hobart*, 73 F.3d 283, 286-87 (10th Cir. 1996) and *Starrett v. Wadley*, 876 F.2d 808, 819 (10th Cir. 1989)). In both cases, the Court held that the county was not liable for a county official's sexual harassment of their employees. But these cases are outdated, and neither is comparable to the facts here.

For starters, *Lankford* is inapplicable because, there, the police chief who had sexually harassed employees was not a final policymaker under state law. *Lankford*, 73 F.3d at 286-87. Accordingly, *Lankford* offers no insight into when a final policymaker's sexual abuse occurs within the ambit of his final policymaking authority. The district court partially quoted *Lankford*'s note that "[t]his case exemplifies a situation where the defendant was committing private, rather than public, acts of sexual harassment." JA 232 n.6 (citing *Lankford*, 73 F.3d at 286-87). But that was an explicitly fact-specific observation, not a categorical diagnosis of the nature of sexual abuse by public officials. Moreover, the point arose within this Court's analysis of whether there was a widespread and persistent practice of sexual harassment such that municipal liability could attach under *Monell* even though the police chief was not a final policymaker. *Id.* at 287. In context, "private" meant

28

something like "isolated," not "distinct from the harasser's final policymaking authority" (which, again, the *Lankford* police chief did not possess). Because Sheriff Hanna was a final policymaker, the issue of whether his harassment was part of a broader pattern is not present in this case.

*Starrett* is also unhelpful to the County's cause. In that case, the Court held that a county assessor was the final policymaker with respect to the hiring and firing of employees and thus was liable for the retaliatory termination of female employees who complained of his sexual harassment. *Starrett*, 876 F.2d at 819. However, the Court held that the assessor's underlying harassment of the plaintiff did not constitute an "official policy" because "[t]hose acts did not concern any official terms of employment, such as job title or description, salary levels, or other conditions that [the assessor] could establish only because the County delegated final policy authority over those matters to him." *Id.* at 820. That is, the county assessor was a final policymaker when he misused his authority to engage in misconduct, but not when he engaged in misconduct disconnected from his authority.

Here, Sheriff Hanna's conduct is more akin to the *Starrett* assessor's retaliatory termination conduct than his sexual harassment conduct. Sheriff Hanna had final policymaking authority with respect to detaining Ms. Biggs, supervising and caring for her in custody, and transporting her to another jail. A sheriff's treatment of an individual held in the state's custody is the epitome of exercising

state power and is by its very nature a "public" act. Just as the assessor in *Starrett* misused his power to fire employees to retaliate against plaintiffs, Sheriff Hanna misused his power to assert control over the physical custody of Ms. Biggs to falsely imprison and then sexually assault her. *See Starrett*, 876 F.2d at 819. Both final policymakers acted for illegitimate, nefarious, and unlawful reasons. Those reasons were not a bar to municipal liability in *Starrett*, and should not be here, either. *See id.*

Plus, the cited analysis in *Starrett* rests on the outdated view that the final policymaker's conduct must amount to a formal announcement of a department-wide rule or guideline to trigger municipal liability. *See id.* at 820 (concluding that "acts of personal harassment of plaintiff did not rise to the level of official County 'policy'" because there were no "indicia of being 'officially sanctioned or ordered'"—they were not "official acts"). This reasoning is foreclosed by the later decided *Simmons*, which says a final policymaker's discrete acts in *defiance* of the official policy will also trigger municipal liability. *See Simmons*, 506 F.3d at 1286.[2]

---

[2] And this interpretation in *Simmons* must be true. If, per *Starrett*, the final policymaker had to take some particularly "official" action "sanctioning" a decision before it constituted an act attributable to the county, that would cause irrational results. For example, Sherriff Hanna's actions would have been considered "official policy" if he had "officially" directed or authorized a subordinate to sexually assault

30

There, this Court made clear that any action committed by an official in an area in which that official has final policymaking authority is "official" just by the nature of the actor. *See id.* Thus, even "a transient constitutional violation" by the sheriff "can be a basis for municipal liability because of the way the Supreme Court has defined 'policy' and 'custom' for purposes of Section 1983." *Wright v. Fentress Cnty., Tennessee*, 313 F. Supp. 3d 886, 890 (M.D. Tenn. 2018) (holding county liable for sheriff's assault of an inmate in his custody); *see also Congine v. Vill. of Crivitz*, 947 F. Supp. 2d 963, 975 (E.D. Wis. 2013) (holding police chief may have final policymaking authority with regard to individual decisions regarding enforcement and not just policies or rules).

*     *     *

Accordingly, Sheriff Hanna's false imprisonment and sexual assault of Ms. Biggs is attributable to the municipal defendants because it took place in a context in which Sheriff Hanna had final policymaking authority. The district court's decision to the contrary is inconsistent with Tenth Circuit precedent and the very purpose of § 1983.

Ms. Biggs but not if he sexually assaulted her himself. Such a loophole would make no sense given the purpose of § 1983 and of the final policymaker avenue for establishing municipal liability under *Pembaur.*

## II.    The District Court Need Not Retry This Case on Remand.

Because Sheriff Hanna's unconstitutional conduct was in an area in which he had final policymaking authority, this Court should reverse the dismissal of the municipal entity defendants and remand for further proceedings. In doing so, this Court should instruct the district court that it need not retry factual questions that were already resolved at trial.

The law of the case doctrine bars any retrial on liability. Under that doctrine, a "court should not reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203, 236 (1997). It applies to all "issues previously decided, either explicitly or by necessary implication." *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1259 (10th Cir. 2004) (quoting *Octagon Res., Inc. v. Bonnett Res. Corp.*, 87 F.3d 406, 409 (10th Cir. 1996)). "As to issues of fact, given an unchanged record, 'law-of-the-case reluctance [to reconsider] approaches maximum force.'" *Teague v. Mayo*, 553 F.3d 1068, 1073 (7th Cir. 2009) (quoting 18B Wright, Miller & Cooper, 18B Fed. Prac. & Proc. Juris. § 4478.5 (2d ed. 2002)).

As explained in Part I, the County and Sheriff's Department are liable for Sheriff Hanna's official acts *as a matter of law* because he was acting in an area in which he had final policymaking authority. A jury already found that the Sheriff violated Ms. Bigg's constitutional rights on the job, the court entered judgment against the Sheriff on that basis, and no defendant appealed those decisions. *See* JA

236-238. So that judgment is now the law of the case. *See Mitchell v. State Farm Fire & Cas. Co.*, 15 F.3d 959, 960, 963 (10th Cir. 1994) (holding that un-appealed jury verdict was "the law of the case" and instructing the district court to treat it as such on remand). Finality thus bars a retrial on the only fact issue relevant to the County's liability, as it must "to prevent the attack on the integrity of the judicial process [that would occur] if a second jury's findings were inconsistent with the first." *Devilla v. Schriver*, 245 F.3d 192, 197 (2d Cir. 2001) (internal quotation marks omitted); *see Mitchell*, 15 F.3d at 963; *Teague*, 553 F.3d at 1073 (holding that verdict that resolved fact issue as to one claim barred retrial of same fact issue underlying another claim).

Nor is a new trial necessary with respect to damages that the Sheriff—and therefore the County and Sheriff's Department—caused Ms. Biggs. Under § 1983, co-defendants are jointly and severally liable for indivisible injuries for which they are both responsible. *Northington v. Marin*, 102 F.3d 1564, 1569 (10th Cir. 1996). Since the County and Sheriff's Department are both responsible for the Sheriff's constitutional violation, they are also liable for the damages awarded against him. *See* Restatement (Third) of Torts: Apportionment Liab. § 13 (2000) ("A person whose liability is imputed based on the tortious acts of another is liable for the entire share of comparative responsibility assigned to the other."). "[J]ust as consistent verdict determinations are essential among joint tortfeasors, consistent damage

awards on the same claim are essential among joint and several tortfeasors." *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985). A new trial on damages, then, would be equally impermissible.

That the County and Sheriff's Department chose not to participate in the trial after the district court dismissed the claims against them does not change matters. When an issue "has been decided adversely to one or more codefendants, the law of the case doctrine precludes all other codefendants from relitigating" it. *Integra Realty*, 354 F.3d at 1259 (quoting *United States v. LaHue*, 261 F.3d 993, 1010 (10th Cir. 2001)); *see also Newsome v. McCabe*, 319 F.3d 301, 303 (7th Cir. 2003) (holding that law of the case barred city from litigating issues decided against its officers in a previous appeal under § 1983, even though city was not party to the first appeal); Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4478.5 (3d ed.) (explaining that the "law of the case may affect a party who did not participate in the argument that framed the first ruling").

Furthermore, despite the district court's interlocutory order dismissing the claims against the County and Sheriff's Department, these municipal entities remained a named party to the case in the form of "the Sheriff in his official capacity," had full notice of the trial, and could have sought to participate to protect their rights in the foreseeable event that this Court reversed the dismissal of the entity defendants on appeal. *Cf. Newsome*, 319 F.3d at 302-03 (city participated in § 1983

trial against its officers even though it was not a defendant). As the district court found, "[t]he Entity Defendants did not object to the dismissal order's failure to mention the official-capacity claims against Mr. Hanna, and . . . [t]hey made no objection when the Final Pretrial Order, jury instructions, and verdict form named Mr. Hanna in both his official and individual capacities, but were quick to reenter the case once final judgment was entered." JA 228. These defendants took a gamble and made the decision to leave Sheriff Hanna to his own devices in defending himself at trial. There is no reason to tax judicial resources—and require Ms. Biggs to rehash her sexual assault before a new jury—to allow the County and Sheriff's Department a second bite at an issue it already watched the jury decide against it.

## III.     Sedgwick County is a Proper Defendant.

Plaintiff properly alleged claims against Sheriff Carlton Britton (the Sheriff's Department), the Board of County Commissioners of Sedgwick County (the County), and Sheriff Hanna in his official capacity—all of which are, effectively, the County. Back in April of 2020, the County argued, and the district court agreed, that it was not a proper defendant in this case because under the Colorado Constitution, the County is a separate and distinct entity from the Sheriff's Department. *See* JA 149-150.

The County did not raise this argument again in the post-trial briefing and for good reason: "Colorado law forecloses any notion that a sheriff's office should be

held to account alone, independent from 'the county.'" *Chavez v. Bd. of Cnty. Commissioners of Lake Cnty.*, 426 F. Supp. 3d 802, 813 (D. Colo. 2019). By statute, any money judgment "against a county of this state in the name of its board of county commissioners or against any county officer in an action prosecuted by or against him in his official capacity or name of office" must be paid either out of "the ordinary county fund" or through a special property tax, which "shall be paid over, as fast as collected by the [treasurer], to the judgment creditor." Colo. Rev. Stat. § 30-25-104(1); *see also* Colo. Const. art. XIV, § 8 (recognizing Sheriff as "county officer"). "In other words, when a *Monell* claim is based on a sheriff-made policy, any distinction between suing the sheriff's office versus suing the county becomes purely theoretical, because the county will pay regardless." *Chavez*, 426 F. Supp. 3d at 813.

Practicalities aside, the district court was also wrong to state that the County (or, more precisely, the Board of County Commissioners) is not a proper defendant. JA 149-150. The district court relied on the fact that the County "does not have the legal authority to control or supervise the Sheriff." *Id.* But that's just a recognition of the fact that the Sheriff is a final policymaker for the County. That does not mean the County is an improper defendant. This Court has long held that a suit against a county sheriff in his official capacity is "equivalent" to a suit against the county itself. *See Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015); *see also Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("Suing individual defendants in their

official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent."); *Grady v. Jefferson Cnty., Colo.*, No. CIVA07CV01191-WDMCBS, 2008 WL 178923, at *2 (D. Colo. Jan. 17, 2008) ("an action against the Sheriff in his official capacity is essentially an action against the entity that employs him-i.e., Jefferson County"); *Sanchez v. Hartley*, 65 F. Supp. 3d 1111, 1127 (D. Colo. 2014) (recognizing the county can be held liable when the sheriff is held to set "official policy" for the county and denying motion to dismiss against County Board of Commissioners). Thus, the district court also erred in dismissing the claims against the County Board of Commissioners on the ground that it was not an appropriate municipal defendant.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court reverse the district court's dismissal of claims against the County and Sheriff's Department and remand with instructions for the district court to enter judgment against the municipal entity defendants.

## REASONS FOR ORAL ARGUMENT

Oral argument is requested because this case presents a novel question of law in the Tenth Circuit and raises an issue critical to ensuring that victims of horrific abuses of state power have meaningful recourse. Oral argument is also important

because there is a need to clarify existing Tenth Circuit precedent governing municipal liability under § 1983.

DATED: July 17, 2023

/s/ Ellen Noble
Ellen Noble
Sean Ouellette
Alexandra Z. Brodsky
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, D.C. 20036
enoble@publicjustice.net
(202) 797-8600

David Fisher
Jane Fisher-Byrialsen
FISHER & BYRIALSEN, PLLC
4600 S. Syracuse Street, 9th Floor
Denver, CO 80237
David@FBLaw.org
(303) 256-6345

## CERTIFICATE OF COMPLIANCE WITH WORD VOLUME LIMITATION

This brief complies with the type-volume limitations of Fed. R. App. P. 5 because it contains 8,970 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman typeface.

Date: July 17, 2023                                  /s/ Ellen Noble
                                                     Attorney for Plaintiff-Appellant

39

**CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that with respect to the foregoing document:

(a)  all required privacy redactions have been made per 10th Cir. R. 25.5;

(b)  if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(c)  the electronic version of this brief was scanned for viruses with www.virustotal.com and is free of viruses.

Date: July 17, 2023                    /s/ Ellen Noble
                                                    Attorney for the Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2023 I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF System. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF System.

Date: July 17, 2023                    /s/ Ellen Noble
                                       Attorney for Plaintiff-Appellant

ATTACHMENT A

## IN THE UNITED STATES DISTRICT
## COURT FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Case No. 18-cv-02076-DDD-SKC

HOLLIS ANN WHITSON, as guardian ad litem for Peatinna Biggs,

    Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK,
SHERIFF CARLTON BRITTON,
FORMER SHERIFF THOMAS HANNA, and
LARRY NEUGEBAUER,
in their individual and official capacities,

    Defendants.

---

## ORDER

---

Defendants Sheriff Carlton Britton and Deputy Larry Neugebauer have moved to dismiss the Plaintiff's claims[1] against them. (Doc. 40.) Defendant Board of County Commissioners of the County of Sedgwick ("Sedgwick County") also filed a motion to dismiss on similar grounds. (Doc. 22.) For the reasons that follow, the Court **GRANTS** the Motion filed by Sedgwick County, and **GRANTS** the Motion filed by Sheriff Britton and Deputy Neugebauer.[2]

---

[1] The Court substituted Ms. Hollis Ann Whitson, as the guardian ad litem of former-Plaintiff Peatinna Biggs, as Plaintiff in this action on February 27, 2020. (Doc. 88). But because Ms. Whitson is acting on behalf of Ms. Biggs, and for the sake of simplicity, the Court will refer to the Plaintiff as Ms. Biggs in this Order.

[2] This matter was reassigned to the undersigned upon Judge Daniel's

## BACKGROUND

On August 10, 2016, Peatinna Biggs was an inmate at the Sedgwick County Jail, which at that time was run by Defendant Thomas Hanna as Sheriff of Sedgwick County. On that day, Mr. Hanna informed Deputy Larry Neugebauer that he, Mr. Hanna, would himself be transporting Ms. Biggs to the Logan County Jail using his personal vehicle. Am. Compl., ¶¶ 21–22.[3] Mr. Hanna gave Ms. Biggs her street clothes and ordered her to change into them before being transferred. *Id.* ¶ 24. Ms. Biggs alleges that Mr. Hanna drove her to his home, ordered her inside, and sexually assaulted her. *Id.* ¶¶ 31, 41.

Sedgwick County Sheriff's Department policy forbade the transportation of prison inmates in personal vehicles or bringing an inmate into an officer's home. *Id.* ¶¶ 23, 30. The Department also had a policy committed to "zero tolerance" of any form of sexual abuse and sexual harassment of inmates. *Id.* ¶ 54.

Before the alleged assault, at approximately 12:15 that afternoon, Deputy Neugebauer witnessed Mr. Hanna placing Ms. Biggs, who was wearing street clothes, into his personal vehicle. *Id.* ¶¶ 26-27. Deputy Neugebauer knew it was highly unusual to have an inmate change into street clothes for a transfer. *Id.* ¶ 25.

Driving home for a lunch break, Deputy Neugebauer noted as he drove past Mr. Hanna's house that Mr. Hanna's personal vehicle was parked in front. *Id.* ¶ 46. When he drove back to the station after his break, he noted

---

passing. (Doc. 58.)

[3]   The facts described herein are drawn from the allegations in the Amended Complaint, which the Court must treat as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013).

that the vehicle was still parked in the same place. *Id.* ¶ 49. The vehicle appeared to be empty each time. *Id.* ¶¶ 47, 49.

At approximately 12:51 p.m., Mr. Hanna called dispatch to report that he was taking Ms. Biggs to the Logan County Jail. *Id.* ¶ 51.

On August 22, Deputy Neugebauer reported to the Logan County District Attorney's Office what he had witnessed. *Id.* ¶ 80. The District Attorney opened an investigation, and eventually Mr. Hanna was criminally charged in state court on several counts, including sexual assault on an at-risk adult and sexual misconduct in a correctional institute. *Id.* ¶ 82. He was later convicted of official misconduct and removed from office. *Id.* ¶¶ 83–84.

Ms. Biggs through her guardian ad litem brings multiple civil rights claims under 42 U.S.C. § 1983, as follows:

- Claim 1: Excessive Force (against Mr. Hanna);
- Claim 2: Outrageous Conduct/Intentional Infliction of Emotional Distress (against Mr. Hanna);
- Claim 3: False Imprisonment (against Mr. Hanna);
- Claim 4: Sexual Assault and Battery (against Mr. Hanna);
- Claim 5: Violation of Equal Protection (against Mr. Hanna and Deputy Neugebauer);
- Claim 6: Violation of Substantive Due Process (against Mr. Hanna and Deputy Neugebauer);
- Claim 7: Violation of the Right to Privacy (against Mr. Hanna);
- Claim 8: Municipal Liability (against Sedgwick County and Sheriff Carlton Britton)
- Claim 9: Failure to Intervene (against Mr. Hanna and Deputy Neugebauer); and

- Claim 10: Conspiracy to Interfere with Civil Rights (against Mr. Hanna and Deputy Neugebauer).

Sedgwick County and Sheriff Britton filed motions to dismiss the municipal liability claim. Deputy Neugebauer joined the motion filed by Sheriff Britton, seeking dismissal of the four claims asserted against him.[4]

## ANALYSIS

The legal sufficiency of a pleading is a question of law. *Dubbs v. Head Start, Inc.*, 1194, 1201 (10th Cir. 2003). At this stage all allegations of material fact in the Amended Complaint must be accepted as true. *Wilson v. Montano*, 715 F.3d at 850 n.1. Still, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility means that the pleader set forth facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[L]abels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545.

## I.   Statute of Limitations

In an action brought pursuant to 42 U.S.C. § 1983, state law governs issues of the statute of limitations and tolling. *Fratus v. DeLand,* 49 F.3d 673, 675 (10th Cir. 1995). And under Colorado law, the plaintiff bears the burden of demonstrating that the statute of limitations should be tolled. *See Lake Canal Reservoir Co. v. Beethe,* 227 P.3d 882, 886 (Colo. 2010).

Ms. Biggs does not appear to dispute that this action accrued on August 10, 2016. Because "the statute of limitations for § 1983 actions brought in

---

[4]   Mr. Hanna has withdrawn his motions to dismiss and is not a party to any of the motions addressed in this Order.

Colorado is two years from the time the cause of action accrued," *Fogle v. Pierson,* 435 F.3d 1252, 1258 (10th Cir.2006), the limitations period expired on August 10, 2018. Hence this action, which was filed on August 15, 2018, is subject to dismissal unless tolling applies. *Braxton v. Zavaras*, 614 F.3d 1156, 1159-60 (10th Cir. 2010); *Graham v. Teller County*, 632 F. App'x 461, 462 (10th Cir. 2015) ("If the plaintiff doesn't plead sufficient factual matter to plausibly establish entitlement to tolling, a district court can properly dismiss the action under Rule 12(b)(6).").

Ms. Biggs points out that pursuant to Colo. Rev. Stat. § 13-81-103, the statute of limitations does not run against a person who is mentally incompetent and without a legal guardian. Colorado law defines an individual as mentally incompetent in a variety of ways. One is "determinat[ion] by a community-centered board" that a person has an intellectual and developmental disability. Colo. Rev. Stat. § 25.5-10-202(26)(b); *see also* Colo. Rev. Stat. § 25.5-10-237 (defining "mentally incompetent" by cross-referencing § 25.5-10-202). And an "intellectual and developmental disability" means a disability

> that manifests before the person reaches twenty-two years of age, that constitutes a substantial disability to the affected person, and that is attributable to mental retardation or related conditions, which include cerebral palsy, epilepsy, autism, or other neurological conditions when those conditions result in impairment of general intellectual functioning or adaptive behavior similar to that of a person with mental retardation.

Colo. Rev. Stat. § 25.5-10-202(26)(a); *see also Southard v. Miles*, 714 P.2d 891, 898-99 (Colo. 1986) (relying on predecessors to §§ 25.5-10-202 to define "mentally incompetent" for purposes of the tolling provision).

As described more fully in the Court's orders surrounding the appointment of a guardian ad litem (Docs. 63, 65), Ms. Biggs is developmentally

5

disabled. *See* Am. Compl. ¶¶ 9, 14 (Doc. 16). Ms. Biggs makes the following additional allegations in support of her assertion that she is developmentally disabled: that Ms. Biggs underwent IQ and adaptive testing as a child and was placed in special education classes throughout her schooling; *id.* ¶ 11; that she tested cognitively and functionally below grade average and was designated as special needs, *id.*; that she obtained a "special diploma" and was not included in the class rankings with other students who received "general diplomas," *id.* ¶ 12; and that since childhood she has received disability payments from the Social Security Administration based on her learning and cognitive disabilities, *id.* ¶ 13. After the Amended Complaint was filed, a community-centered board ("CCB") determined Ms. Biggs is developmentally disabled. Plaintiff's Memorandum in Opposition to Defendant's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, Ex. B (Doc. 35-2). In addition, Ms. Biggs notes that during the criminal trial of Mr. Hanna, the prosecution introduced into evidence childhood education records reflecting Ms. Biggs' placement into "Educable Mentally Handicapped" classes.[5]

Defendants argue that § 13-81-103 allows tolling only if the person is "under disability *at the time such right accrues*" (emphasis added), and that because the CCB determination was made twenty-seven months after Ms. Biggs' cause of action accrued, she does not qualify as disabled within the meaning of the statute. Defendants are correct that a claimant must be disabled at the time such right accrues. *See Pearson v. Federal Express Corp.*, No. 90-A-279, 1990 WL 126192, at *7 (D. Colo. Aug. 24, 1990). While one

---

[5]   The Court takes judicial notice of the trial exhibit, which is a matter of public record. *See, e.g., Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp. 2d 1201, 1205 n.5 (D. Utah 2004). It is less clear to the Court that the CCB determination is a matter of public record of which the Court may take judicial notice, but even in the absence of that determination, Ms. Biggs' allegations are sufficient to survive a motion to dismiss.

definition of disability under Colorado law requires that a CCB make that determination (*see* Colo. Rev. Stat. § 25.5-10-202(26)(b)), and while that determination is relevant evidence of disability, the Court does not believe it is required for the tolling provisions of Section 103 to apply. The Amended Complaint alleges sufficiently that Ms. Biggs was developmentally disabled long before the cause of action accrued or that anything material to that question changed prior to the CCB's determination. Consistent with the Court's prior order, then, the Court finds that Ms. Biggs was disabled at all times relevant to this action, (Doc. 63 at 4), and there is no suggestion in the record or otherwise that she was any more or less disabled at that time.

Since she was incompetent under Colorado law, the statute of limitations did not run against Ms. Biggs until she was appointed a legal guardian, which did not occur until December 17, 2019. Her claims are timely.

## II.    Municipal Liability Claims against Sedgwick County and Sheriff Britton

The County and Sheriff Britton, on behalf of the Sheriff's Department, argue that Ms. Biggs' claims against them must be dismissed because (1) the Department's policies were not the "moving force" behind the alleged injury as required by *Monell v. Department of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978); (2) the Amended Complaint failed to plead facts showing that the Department was deliberately indifferent to her constitutional rights; and (3) the allegations in the Amended Complaint fail to establish that Mr. Hanna's deplorable conduct was a "policy decision" of the Department. Finally, the County gives an additional reason why the complaint must be dismissed as it applies only to the County: that it is a separate legal entity not responsible for the acts of the Sheriff's Department.

### A. The "moving force" behind Ms. Biggs' injuries

A municipal entity, such as this Sheriff's Department, may be held liable under 42 U.S.C. § 1983 for civil rights violations that resulted from the "execution of that government's policy or custom." *Monell*, 436 U.S. at 694. In other words, the municipality must have been "the moving force" behind the injury alleged. *Id.* To make this showing, a plaintiff must establish (1) the existence of a department policy or custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged. *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). Sheriff Britton argues that Ms. Biggs' Amended Complaint does not plausibly establish either of these elements. The Court agrees that there is no causal link between the Department's policies and Ms. Biggs' alleged injuries.

Ms. Biggs asserts that the Sheriff's Department had established policies against transporting inmates in personal vehicles and bringing an inmate into an officer's home, and further that the Department had a policy of "zero tolerance of any form of sexual abuse and sexual harassment" of inmates. Am. Compl., ¶¶ 23, 30, 54 (Doc. 16). But, as the Amended Complaint itself recognizes, it was the *violation* of these policies that caused Ms. Biggs' injuries. *Id.* ¶ 150 ("Sedgwick County's 'zero tolerance' policies against sexual assault of inmates by employees was not followed."); ¶ 151 ("Sedgwick county's policies ensuring the equal protection of the laws for those suffering from disabilities . . . was not followed."); ¶ 152 ("Sedgwick County's policies prohibiting the transport of inmates in officer's personal vehicles, and to their residences, was not followed."). "By deciding to blatantly defying [sic] lawful municipal policy or custom, Defendant Hanna . . . caused [Ms. Biggs] severe emotional distress, caused her cruel and inhumane treatment, all in violation of her equal protection rights." *Id.* ¶ 153.

If Mr. Hanna's violations of Department policies were the cause of Ms. Biggs' injuries, then the policies cannot have been the "moving force" behind

the injuries. Because the Complaint cannot show a direct causal link between the policies and Ms. Biggs' injuries, it does not state a valid claim against the Department under *Monell* and *Hinton*.

## B. Final policymaker

Ms. Biggs argues that the Department is still responsible for the decisions of Mr. Hanna, including "one-time" decisions such as his actions toward Ms. Biggs, because Mr. Hanna was the "final policymaker" with respect to decisions about movement, treatment, and safety of inmates. Ms. Biggs cites *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995), in support of the argument. But *Randle* makes clear that for municipal liability to attach based on the "final policymaking authority" of an individual, "the challenged conduct must have been taken pursuant to a policy adopted by the official or officials." *Id.* at 447–48. Again, as discussed above, Mr. Hanna's actions were not "pursuant to" Department policies, but in direct contravention of them. On Ms. Biggs' reading, every action taken by a "final policymaker" would amount a policy that could lead to municipal liability, even if it is contrary to actual, adopted policy. That is not the law. As Defendants correctly point out, to impose liability on the Department under these facts would be indistinguishable from *respondeat superior* liability, which section 1983 does not authorize. *See Monell*, 436 U.S. at 692 (A "municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

## C. Deliberate indifference

Ms. Biggs also contends that the Department is liable because it failed to "have any policy in place to oversee and internally monitor the actions of [the Sheriff]." Am. Compl., ¶¶ 90, 143–44, 150–52. This "failure to act" allegation requires the plaintiff to "demonstrate that the [entity's] inaction was the result of deliberate indifference to the rights of its inhabitants."

9

*Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997). A municipality is deliberately indifferent when it "deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Id.*

But a municipality cannot be deliberately indifferent to a risk it does not know exists. Ms. Biggs has not alleged any facts showing that before this incident there was an "obvious risk" that would "almost inevitably result" in the type of injury she experienced. There is no allegation, for example, that Mr. Hanna had a known history of such conduct, that such allegations had previously been made against him, or that the Department failed to remediate any such similarly behavior. *Cf. Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997) (pattern of similar conduct is "ordinarily necessary" to state claim for deliberate indifference for claims like failure-to-train). Even if there were, as the Amended Complaint itself shows, the Department did not fail to act, because it had established policies that were intended to prevent exactly the type of conduct of which Mr. Hanna now stands accused. In the absence of any such allegations that would have put the Department on notice that Sheriff Hanna was likely to sexually assault inmates, the Department cannot be liable for deliberate indifference.

### D. Sedgwick County

Sedgwick County makes one additional argument that applies only to the County—that it is not a proper defendant in this case. Pursuant to the Colorado Constitution, the County is a separate and distinct entity from the Sheriff's Department. *See Barrientos-Sanabria v. Lake County, Colo.*, No. 11-cv-00838-KLM, 2012 WL 1642285, at *2 (D. Colo. May 10, 2012) (citing Colo. Const. art. XIV, §§ 6, 8); *see also Tunget v. Board of County Comm'rs of Delta County*, 992 P.2d 650, 651-52 (Colo. App. 1999) ("Under both the

10

Colorado Constitution and applicable statutes, sheriffs and boards of county commissioners are treated as separate public entities having different powers and responsibilities."). Accordingly, the County "does not have the legal authority to control or supervise the Sheriff and the Sheriff's deputies." *Barrientos-Sanabria*, 2012 WL 1642285, at \*2. Yet even if the County were an appropriate defendant in this case, Ms. Biggs' claims against it must be dismissed for the same reasons discussed above concerning her claims against Sheriff Britton.

### III.   Claims Against Deputy Neugebauer

Deputy Neugebauer moves to dismiss the four claims against him on qualified immunity grounds. Each of those claims arises from the same factual allegation: that Deputy Neugebauer conspired with Mr. Hanna to cover up Mr. Hanna's misconduct, and failed to report Mr. Hanna's conduct for twelve days, thus hindering the subsequent investigation of the case.

The doctrine of qualified immunity "shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When qualified immunity is raised in a [Rule 12] motion, the plaintiff must carry the burden of establishing that the defendant violated clearly established law." *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000). "Thus, the plaintiff must 'identify a clearly established statutory or constitutional right of which a reasonable person would have known, and then allege facts to show that the defendant's conduct violated that right.'" *Id.* Ms. Biggs must satisfy both prongs of this two-part test in order to for her claims to survive Deputy Neugebauer's qualified immunity defense. *Pearson*, 555 U.S. at 236.

11

## A. Equal protection

"Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 775, 792 (10th Cir. 2005). "In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998).

Here, Ms. Biggs alleges that "Defendant Hanna intentionally treated Ms. Biggs differently than other similarly situated inmates on account of her sex and mental disability … ." Am. Compl., ¶ 117 (Doc. 16). The Amended Complaint says nothing about Deputy Neugebauer's treatment of any other inmates. *See Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011) (conclusory allegations are inadequate); *see also Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1175 (D. Colo. 2010) (dismissing equal protection claim where plaintiff had not "specifically identified any similarly situated prisoners in his pleadings"). Because Ms. Biggs has failed to plausibly support her equal protection claim with "specific details about other inmates," and "specific differences in Defendant's treatment of other inmates," the claim is properly dismissed. *Matthews*, 744 F. Supp. 2d at 1175.

## B. Failure to intervene

Deputy Neugebauer also argues that Ms. Biggs' failure-to-intervene claim against him should be dismissed because her allegations are conclusory, and that he is entitled to qualified immunity because there is no clearly established law holding that an officer must intervene under similar factual circumstances.

"In order to be liable for failure to intervene, the [defendant] must have observed or had reason to know of a constitutional violation and have had a realistic opportunity to intervene." *Jones v. Norton*, 809 F.3d 564, 576

(10th Cir. 2015). The Tenth Circuit has also quoted with approval the Second Circuit's general description of failure to intervene doctrine:

> all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official.

*Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994). The Circuit has said this is "clearly established" law. *Vondrak v. City of Las Cruces,* 535 F.3d 1198, 1210 (10th Cir. 2019).

Mr. Hanna's sexual assault of Ms. Biggs certainly qualifies as a constitutional violation by another law enforcement official.[6] And to be sure, if it were alleged here that Deputy Neugebauer observed the actual sexual assault, or that it took place in his presence, the Court would have no trouble concluding that he could be liable. An officer cannot stand idly by while he

---

[6]   *See, e.g., Rogers v. City of Little Rock*, 152 F.3d 790, 796 (8th Cir.1998) ("No degree of sexual assault by a police officer acting under color of state law could ever be proper."); *Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 507 (6th Cir. 1995) (Sex abuse under color of law "is so contrary to fundamental notions of liberty and so lacking of any redeeming social value that no reasonable individual could believe that sexual abuse by a state actor is constitutionally permissible under the due process clause."); *Maslow v. Evans*, No. 00-CV-5660, 2003 WL 22594577, at *27 (E.D. Pa. 2003) ("It is beyond question that when Plaintiffs' claim arose it was a clearly established principle of law that a state actor violates another's constitutional rights when he sexually assaults that person in the course of an arrest, or transports a person to her house and then forcibly performs oral sex, or otherwise uses his authority as a state official to force himself sexually upon an unwilling victim. Even if no case had ever proclaimed it so, it would be manifestly clear to any reasonable officer that such conduct is unlawful.").

knows a fellow officer is violating the constitution. *See Vondrak*, 535 F.3d at 1210. But the Amended Complaint makes no such allegations. Nor does it allege, for example, that Mr. Hanna told Deputy Neugebauer of his unconstitutional plans, or that Deputy Neugebauer knew Sheriff Hanna did such things. While the Amended Complaint does allege that after the assault the two conspired to cover it up for twelve days, as noted above those allegations are too conclusory to support a claim under Section 1983. And notably, there aren't even such conclusory allegations about Deputy Neugebauer joining any such conspiracy before the fact.

Ms. Biggs does not attempt to argue otherwise. She pins her argument against the deputy on the assertion that there are adequate facts alleged to allow a jury to conclude that he had "reason to know" Mr. Hanna was violating her rights. And while it is certainly established that an officer who knows or is present for another's unconstitutional action has a duty to intervene, when presence or actual knowledge isn't alleged, the question is much more difficult to answer. *See Tanner v. San Juan Cnty. Sheriff's Office*, 864 F. Supp. 2d 1090, 1152 (D.N.M. 2012) ("The law is more complex than the general proposition that officers have a duty to intervene when they see a constitutional violation … .").

Ms. Biggs alleges that Mr. Hanna told Deputy Neugebauer that he was going to personally transfer Ms. Biggs to the Logan County Jail, and that Deputy Neugebauer specifically asked Mr. Hanna if he was going to transport Ms. Biggs in his personal vehicle, to which Mr. Hanna replied, "yes." Am. Compl. ¶¶ 21–22 (Doc. 16). Ms. Biggs further alleges that later that day, at approximately 12:15 p.m., Deputy Neugebauer was driving toward the Sedgwick County Combined Court, and saw Mr. Hanna placing Ms. Biggs, wearing street clothes and in handcuffs, into his private vehicle. *Id.* ¶ 26. Ms. Biggs also alleges that Deputy Neuegebauer knew Mr. Hanna's actions were violations of department policy, and that he knew it

14

was "highly unusual" to have an inmate change into street clothes before being transferred. *Id.* ¶¶ 23, 25. Ms. Biggs asserts that as he drove home for lunch, Deputy Neugebauer saw Mr. Hanna's vehicle parked outside Mr. Hanna's home, and saw the vehicle still parked there as he returned to work after lunch. *Id.* ¶¶ 46–49. These allegations, she says, are sufficient to allow jurors to infer that Deputy Neugebauer had enough "reason to know" that Mr. Hanna was violating Ms. Biggs' rights.

But in response to a qualified immunity defense, that is not enough to meet the plaintiff's difficult burden. To do so she cannot just show that reasonable people, or even reasonable officers could disagree, but must establish that "*any* reasonable official" would know he had to intervene. *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (emphasis supplied). *See also Ashcroft*, 563 U.S. at 743 (Qualified "immunity protects all but the plainly incompetent or those who knowingly violate the law") (internal quotation marks omitted)). Unlike *Vondrak*, for example, there is no real dispute here about the underlying facts. The dispute is whether those facts made it "clear to a reasonable officer that his conduct was unlawful in the situation." *Vondrak*, 535 F.3d at 1205 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). This is therefore a question appropriate for determination on summary judgment. *Id.* ("Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful."). The Tenth Circuit has described the clearly established duty as requiring the officer "to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers *in their presence*." *Vondrak*, 535 F.3d at 1210 (emphasis added) (quoting *Anderson,* 17 F.3d at 557). What happened in Deputy Neugebauer's presence was not a constitutional violation. And there is no case making clear that a deputy is required to investigate suspected or potential wrongdoing that is not occurring in his presence or that he knew

about. This is the import of the "clearly established" prong of the qualified immunity inquiry. And the usual way of showing it is to provide binding caselaw that is sufficiently on-point that it provides notice to all such reasonable officers that they had a duty to act in a particular way in particular circumstances. Ms. Biggs has not done so here.

While, as she points out, the Tenth Circuit has indeed said that it is clearly established that an officer who fails to intervene where he has reason to know of another's constitutional violation, *see Vondrak*, 535 F.3d at 1210, that is not enough to resolve the question here, se*e D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) ("We have repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." (internal quotations omitted)). Indeed, "a rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Id.* "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 136 S. Ct. at 308 (emphasis in original; quotations omitted). Although there need not be a case directly on point, an "officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it." *Sheehan*, 135 S. Ct. at 1774 (internal brackets and quotation omitted). Beyond the general statement of the right reiterated in *Vondrak*, Ms. Biggs points to no cases similar to this one that would help put an officer on notice as to when he or she was required not just to try to prevent an observed constitutional violation, but to investigate a potential or suspected one.

The most Ms. Biggs offers is that "the secondary officer does [not] have to observe the constitutional violation, so long as they 'have reason to know

that the primary officer is engaging in improper conduct.'" Pl. Resp. Br. at
12–13 (Doc. 42). The initial flaw with this is that the case it purports to
quote, the Tenth Circuit's *Hall v. Burke* decision, does not contain this lan-
guage. The case actually quoted is a District of New Mexico case, *Tanner v.
San Juan County. Sheriff's Office.* While, to be fair, *Tanner* does cite *Hall*
for that proposition, counsel's misciting cases in this way is not helpful to
the Court, which must chase down the actual source of the statement, or to
the Plaintiff.

More significantly, neither *Hall* nor *Tanner* provide the on-point prece-
dent required to clearly establish the right to intervention in this case. In
fact, as, noted above, *Tanner* explains the problem that persists here: "The
Tenth Circuit does not appear to have squarely addressed how liability for
failure to intervene operates when the officer who allegedly should have
intervened does not necessarily have all the information in the possession
of the other officer who allegedly acts unlawfully." 864 F. Supp. 2d 1090,
1120; *id.* at 1152 ("The law is more complex than the general proposition
that officers have a duty to intervene when they see a constitutional viola-
tion . . . ."). And *Tanner*, relying on Sixth and Eleventh Circuit precedents,
ended up adopting a narrow rule of "secondary" officer liability for failure
to intervene, recognizing that a broad reading would run afoul of Supreme
Court and Tenth Circuit law that an officer should be liable only when his
"own individual actions . . . violate[] the constitution." *Id.* at 1121 (quoting
*Ashcroft*, 556 U.S. at 676).

Ms. Biggs has provided nothing more recent or more specific clarifying
the law since *Hall* or *Tanner*. This lack of on-point authority is enough to
defeat Ms. Biggs' claim. *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017)
("A plaintiff may show clearly established law by pointing to either a Su-
preme Court or Tenth Circuit decision, or the weight of authority from other
courts, existing at the time of the alleged violation."); *see also Ashcroft v. al-*

*Kidd*, 563 U.S. 731, 741 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.").

Considering the allegations in hindsight, it is easy to say that Deputy Neugebauer should have investigated more or intervened sooner than he did. But the question before the Court is not what the deputy could have or should have done. It is whether he had a constitutional duty to do so that was clearly established in the particular circumstances he faced. And courts are required to make that assessment "viewing the situation from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Zia Tr. Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1154 (10th Cir. 2010) (internal quotation omitted). *See also Cortez v. McCauley*, 478 F.3d 1108, 1139 (10th Cir. 2007) (Gorsuch, J., concurring in part) ("We have never previously imposed upon officers a duty to investigate certain leads we think, in retrospect and with the benefit of hindsight, might have been warranted or wise..."). There simply is no case Plaintiff has provided explaining that an officer has a duty to investigate when it sees a fellow officer undertaking what might be "highly unusual" and prohibit actions, but that are not constitutional violations themselves, on the basis that he might discover a violation of clearly established law. What the Court wishes Deputy Neugebauer would have done and what the law clearly established he was obligated to do in the moment are not the same thing. Since it is only the latter that can give rise to liability, the claim against him must be dismissed.

## C. Conspiracy

Ms. Biggs asserts a conspiracy claim against Deputy Neugebauer under 42 U.S.C. §§ 1985 and 1086, alleging that he conspired with Mr. Hanna to violate Ms. Biggs' civil rights by covering up Mr. Hanna's violations of department policy and alleged sexual assault of Ms. Biggs. In support of that

claim, however, Ms. Biggs makes only conclusory allegations, unsupported by any specific facts. The only allegation suggesting a conspiracy is that the two "had an express and/or implicit agreement to conspire with each other." *See* Am. Compl. ¶¶ 57–79. But this is precisely the scenario the Supreme Court rejected in *Twombly*: "A bare assertion of conspiracy will not suffice." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also, e.g., Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."); *Afola v. Corrections Corp. of Am.*, No.1:12-cv-02394-JLK, 2013 WL 2477126, at *4 (D. Colo. Jun. 10, 2013) (same). Accordingly, Ms. Biggs' conspiracy claim against Deputy Neuegebauer must be dismissed.

### D. Substantive due process

Substantive due process claims must clear a very demanding hurdle. The standard for determining whether there has been a substantive due process violation "is whether the challenged government action shocks the conscience of federal judges." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006). Substantive due process protections are accorded primarily to matters relating to marriage, family, procreation, and the right to bodily integrity. *Albright v. Oliver*, 510 U.S. 266, 272 (1994).

The substantive due process claim against Deputy Neugebauer is based on the allegation that he conspired with Mr. Hanna to delay reporting the policy violations he witnessed, which "hindered the Logan County District Attorney's Office investigation of the case." Am. Compl., ¶ 134 (Doc. 16). As explained above, though, the Amended Complaint's conclusory allegations of conspiracy are insufficient to state a valid Section 1983 claim. And Defendants correctly point out that the resulting harm from that delay has nothing to do with Ms. Biggs' bodily integrity. That harm had already been done. Instead, the harm was that the subsequent prosecution of Mr. Hanna was impeded by the resulting difficulty of collecting necessary evidence.

These factual allegations place Ms. Biggs' allegations outside of the typical substantive due process framework. *Albright*, 510 U.S. at 272. And more importantly, the allegation of a twelve-day delay in reporting policy violations does not shock the judicial conscience. It doesn't, in other words, exhibit a "high level of outrageousness." *See Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995).[7] There are no allegations, say, that Deputy Neugebauer intended to harm Ms. Biggs. *See id.* at 576.

In her response to Sheriff Britton's and Deputy Neugebauer's motion to dismiss, Ms. Biggs also asserts that her substantive due process claim is based on Deputy Neugebauer's alleged failure to intervene and prevent Mr. Hanna from falsely imprisoning and sexually assaulting Ms. Biggs. Pl. Resp. Br. at 12-13 (Doc. 42). As to Ms. Biggs' conspiracy and failure-to-intervene theories, the Supreme Court "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Albright*, 510 U.S. at 271–72. The Supreme Court therefore has instructed that "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* at 273. Ms. Biggs identifies the Fourth, Eighth, and Fourteenth Amendments as the textual bases for her failure to intervene claim against Deputy Neugebauer. *See* Am. Compl., ¶ 166. She cites 42 U.S.C. §§ 1985 and 1986 in support of her

---

[7]   Ms. Biggs also argues that Deputy Neugebauer's delay in reporting to the District Attorney violated Ms. Biggs' substantive due process right to access the courts. This allegation is not contained in her Amended Complaint and would be subject to dismissal for that reason. Regardless, she points to no authority for the proposition that a delay in reporting an apparent crime amounts to such a due process claim, and the pendency of this case contradicts the idea that Ms. Biggs has been denied access to the courts.

conspiracy claims. These claims are more properly analyzed under those provisions rather than attempting to create a new kind of substantive due process claim as the Court has done above.

The Court holds that the Amended Complaint has not plausibly established a claim for substantive due process against Deputy Neugebauer, and the claim therefore must be dismissed.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by the Board of County Commissioners of Sedgwick County (Doc. 22) is **GRANTED**, and the claim against the Board of County Commissioners of Sedgwick County (Eighth Claim) is **DISMISSED**.

The Motion to Dismiss filed by Sheriff Britton and Deputy Larry Neugebauer (Doc. 40) is **GRANTED**. Ms. Biggs' claim against Sheriff Britton (Eighth Claim) is **DISMISSED**. Her Fifth, Sixth, Ninth, and Tenth Claims against Deputy Larry Neugebauer are **DISMISSED**.

DATED: April 17, 2020    BY THE COURT:

Hon. Daniel D. Domenico

# ATTACHMENT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Case No. 1:18-cv-02076-DDD-SKC

HOLLIS ANN WHITSON, as guardian ad litem for Peatinna Biggs,

     Plaintiff,

v.

THOMAS HANNA,

     Defendant.

---

### ORDER ON POST-TRIAL MOTIONS

---

Plaintiff Hollis Ann Whitson is the court-appointed guardian *ad litem* for Peatinna Biggs. Ms. Biggs brought this case alleging that Defendant Thomas Hanna sexually assaulted her when he was the elected Sheriff of Sedgwick County. Her Amended Complaint asserted ten claims against Mr. Hanna, a deputy sheriff, the Sedgwick County Sheriff's Department, and Sedgwick County itself. (Doc. 16.) All the defendants other than Mr. Hanna filed motions to dismiss, and after a variety of procedural steps, I granted those motions. (Doc. 89.) The case against Mr. Hanna proceeded to trial, and the jury found in favor of the plaintiff and awarded $8.25 million in damages. (Doc. 153.)

Three post-trial motions are the subject of this Order. The plaintiff has filed both a Motion to Clarify (Doc. 154) and a Motion to Alter or Amend the Judgment (Doc. 155) that seek essentially the same thing: amendment of the judgment to explicitly bind the County and/or the Sheriff's Office to the judgment against Mr. Hanna. The County and the

Sheriff's Office (collectively, "the Entity Defendants")[1] move for the opposite: amendment of the judgment to clarify that they are not liable. (Doc. 156.)

## Legal Standards

The Entity Defendants' motion (Doc. 156) seeks to amend the judgment under Federal Rule of Civil Procedure 60(a), if inclusion of the official-capacity claims against Mr. Hanna in the judgment was simply a mistake arising from oversight, or, if it was not due to oversight, under Rule 59(e). The plaintiff's Motion to Clarify (Doc. 154) does not explain the authority it relies on for that relief, and her Motion to Alter or Amend (Doc. 155) cites both Rule 59(e) and Rule 60(b)(1). But those "two rules are distinct; they serve different purposes and produce different consequences," and a litigant who seeks reconsideration by the district court of an adverse judgment may "file either a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment pursuant to Fed. R. Civ. P. 60(b)." *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). Since all of these

---

[1] The plaintiff's Amended Complaint named "The County of Sedgwick" and "Sedgwick County Sheriff's Department" as defendants. (Doc. 16.) After the Amended Complaint was filed, the parties stipulated to amend the case caption to substitute the Board of County Commissioners in place of Sedgwick County and then-sitting Sheriff Carlton Britton, in his official capacity, in place of the Sheriff's Department. (Doc. 28; Doc. 41.) These substitutions addressed technicalities regarding the proper designation of the Entity Defendants under Colorado law but did not alter the actual entities being sued. For simplicity in this Order and to avoid confusion of the issues, I will use "the County" to refer to Defendant Board of County Commissioners and "the Sheriff's Office" to refer to Defendant Britton in his official capacity.

motions were filed within the time specified in Rule 59(e), that rule applies, *see id.*, although in this case the result would be the same under either rule.

"Grounds warranting a motion to alter or amend the judgment pursuant to Rule 59(e) 'include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). "A motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Paraclete*, 204 F.3d at 1012. But "it is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*

## DISCUSSION

The question behind all these motions is whether the Entity Defendants are liable for Mr. Hanna's actions and the judgment against him. The plaintiff's motions put forward three related arguments for the affirmative answer. The first is a fairly technical syllogism: official-capacity claims against municipal officials are generally treated as claims against the entity of which the official is an agent, Mr. Hanna was sued in both his individual and official capacities, and the official-capacity claims against him were not dismissed. Thus, the jury's verdict already should be viewed as including the Entity Defendants, despite my having previously granted their motions to dismiss. The second argument is more substantive: that my decision granting those motions to dismiss was based on a misreading of the law and should be reconsidered. Both of these arguments, the plaintiff contends, demonstrate that clarification or amendment of the judgment is needed to correct clear error and

prevent manifest injustice. Finally, the plaintiff says that newly discovered evidence also warrants amendment of the judgment and permission to amend her pleadings.[2] The Entity Defendants dispute all these points, but seek amendment of the judgment to remove any doubt that they are not liable to Ms. Biggs.

Though I am sympathetic to the plaintiff's position, and frustrated by the Entity Defendants' decision to leave their former sheriff without legal representation and their failure to directly address the official-capacity claims before judgment was entered, I conclude they are correct as a legal matter. The plaintiff's motions are therefore denied, and the Entity Defendants' is granted.

## I.   The Official-Capacity Claims Did Not Survive the Motions to Dismiss

The plaintiff's argument that the official-capacity claims were never subject to the motions to dismiss and were presented to the jury and thus properly part of the judgment is made in both the Motion to Clarify (Doc. 154) and the Motion to Amend (Doc. 155). It is quite tempting to agree with her argument that the Entity Defendants' decision not to move to dismiss any claims against Mr. Hanna, including the official-capacity claims, should be held against them. Both the legal and factual premises of the plaintiff's syllogism are accurate: official-capacity claims are "only another way of pleading an action against an entity of which an offic[ial] is an agent." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 n.55 (1978). And despite that, the Entity Defendants' motions to dismiss ignored the official-capacity claims against Mr. Hanna.

---

[2]   The plaintiff asserts that if relief is granted under the first two arguments, no further trial would be necessary, but granting relief on the basis of the last would entail amendment of the pleadings and at least a partial trial on the municipal-liability question. (Doc. 155 at 13 n.19.)

The Entity Defendants provided no defense to their former sheriff, leaving him to proceed without any attorney (and the Court without an advocate on the defense side) for much of the case. The Entity Defendants did not object to the dismissal order's failure to mention the official-capacity claims against Mr. Hanna, and once their motions to dismiss were granted, they no longer participated in the case. They made no objection when the Final Pretrial Order, jury instructions, and verdict form named Mr. Hanna in both his official and individual capacities,[3] but were quick to reenter the case once final judgment was entered. It is appealing to make them sleep in the messy bed this left, especially when that is likely the only way Ms. Biggs could collect a significant portion of the damages the jury found she is entitled to.

Nevertheless, the plaintiff's conclusion does not follow. The converse of the legal premise that official-capacity claims are to be treated as claims against an entity is that because the claims against the Entity Defendants were held not legally viable, any official-capacity claims against Mr. Hanna must be, too. While the case caption on the jury instructions and verdict form did name Mr. Hanna in his official capacity, there was no evidence presented at trial about how that might affect the County or Sheriff's Office, the jury was not instructed on municipal liability, and the plaintiff's counsel never suggested at or before trial that they understood the case to be proceeding against the Entity Defendants despite the motions to dismiss having been granted.

The plaintiff does not point to, and my review of the record does not reveal, any claims that were asserted specifically against Mr. Hanna in

---

[3]   Nor did Mr. Hanna or, once he got pro bono representation, did his attorney. But it was not their job, nor the Court's, to protect the Entity Defendants' interests.

his official capacity that were not and would not be subject to the same analysis and result as the claims against the Entity Defendants that were dismissed. Claim 8 of the Amended Complaint (entitled "Municipal Liability"), in fact, appears to be an effort to collect all the potential sources of liability against the Entity Defendants into a single claim. That claim was explicitly dismissed. (*See* Doc. 89 at 21.) Since, as explained below, I do not agree that that result was clearly erroneous, the conclusion that the claims against the Entity Defendants[4] were not legally viable applies to the claims against Mr. Hanna in his official capacity, too. The plaintiff's motions to amend or clarify the judgment in this regard therefore must be denied, and the Entity Defendants' granted.

---

[4]   I acknowledge the ongoing confusion about which entity, exactly, is the proper defendant when a municipal-liability claim is brought against a Colorado sheriff in his or her official capacity. *See, e.g.*, *Coates v. Adams Cnty. Sheriff's Office*, — F. Supp. 3d —, No. 20-cv-01936-STV, 2022 WL 4493972, at *14 to *15 (D. Colo. Sept. 27, 2022) (some cases hold sheriff's office, some hold the county, and at least one has held both); *Chavez v. Bd. of Cnty. Comm'rs of Lake Cnty.*, 426 F. Supp. 3d 802, 808-14 (D. Colo. 2019) (analyzing issue). But that does not appear to be an issue I have to resolve here. The plaintiff brought claims against both the County and the Sheriff's Office, and the claims against both entities were dismissed. Whether the official-capacity claims against Mr. Hanna are construed as claims against the County, the Sheriff's Office, or both, they are redundant of the claims brought against the Entity Defendants. *See Stump v. Gates*, 777 F. Supp. 808, 816 n.3 (D. Colo. 1991) ("As the United States Supreme Court repeatedly has stated, a § 1983 action appropriately is pleaded against a municipality either by naming the municipality itself or by naming a municipal official in his or her official capacity. Naming either is sufficient. Naming both is redundant." (citations omitted)).

## II. The Order Granting the Entity Defendants' Motions to Dismiss Was Not Clearly Erroneous

The plaintiff's argument that an elected sheriff's actions in carrying out duties like prisoner transport should be treated as official policy and thus held against the Entity Defendants again holds some appeal and is not without some persuasive legal authority.[5] But this argument is effectively a rehash of the arguments the plaintiff made in response to the motions to dismiss, and thus an insufficient reason to grant relief under Rule 59(e). A Rule 59 motion "is not appropriate to revisit issues already addressed," unless "the court has misapprehended the facts, a party's position, or the controlling law." *Paraclete*, 204 F.3d at 1012.

I do not agree that dismissing the claims against the Entity Defendants was error or based on a misapprehension of the law. While some of their present arguments may stretch things a bit beyond the state of the law, the Entity Defendants are correct that the plaintiff's position is difficult to square with the Supreme Court's well-established proposition that municipal entities like the County and the Sheriff's Office cannot be held liable for the actions of their agents, but only for their own malfeasance. *Monell*, 436 U.S. at 692 (noting the language of Section 1983 "plainly imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights," but liability does not attach when causation is absent).

---

[5]   *See, e.g.*, *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) (county liable for policymaker sheriff's rape of witness during attempted-murder investigation); *Bailey v. Davis*, No. 4:13-CV-496 (CDL), 2015 WL 4131778, at *7 (M.D. Ga. July 8, 2015) (collecting cases and noting circuit split exists "on the issue of whether a final policymaker acts within the scope of his policymaking authority when his conduct involved criminal or intentionally tortious acts").

It is true that a county can be liable for the actions of its policymak-ers, even when those actions violate a previously established policy. *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1285 (10th Cir. 2007) ("An act by a municipality's final policymaking authority is no less an act of the institution than the act of a subordinate employee conforming to a preexisting policy or custom."). But not *every* action by a policymaker is attributable to the entity, which is the implication of the plaintiff's position. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 482 (1986) ("[W]e . . . emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Mu-nicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action . . . ."); *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995) (municipality may be liable for one-time decision by final policymaker if "the policy decision purportedly made by the official [wa]s within the realm of the official's grant of authority"). In *Simmons*, hiring and firing of employees was undisputedly within the realm of the board's policymaking author-ity. Here, it is undisputed that transportation of prisoners is within the realm of the county sheriff's policymaking authority. But the Entity De-fendants are not being sued because Mr. Hanna transported Ms. Biggs; they are being sued because he sexually assaulted her. That is not within the policymaking authority a county sheriff has.

The plaintiff's position would effectively mean that any time a sheriff takes an action in the course of performing his official duties, the County and/or the Sheriff's Office would be liable for that action. This, as other courts have recognized, would collapse the "under color of state law" and municipal-liability analyses, which are separate questions. *See, e.g., Roe v. City of Waterbury*, 542 F.3d 31, 40-41 (2d Cir. 2008). Even where a final policymaker acts under the color of law, the municipality cannot be

liable for that action unless the official had policymaking authority for the action in question. *Danielson v. Huether*, 355 F. Supp. 3d 849, 871 (D.S.D. 2018) (citing *Pembaur*, 475 U.S. at 482-83 & n.12). When determining whether a municipality is liable for a one-time decision of a final policymaker, courts should look to whether the "policy decision purportedly made by the official is within the realm of the official's grant of authority." *Randle*, 69 F.3d at 448. This guidance indicates that the official's action must be related to the official's grant of authority. An official acts "wholly outside" his grant of authority "when he misuses his power to advance a purely personal agenda." *Roe*, 542 F.3d at 41. Here, while Mr. Hanna's position of power was an enabling factor in his assault on Ms. Biggs, the assault was wholly unrelated to the realm of his grant of authority with respect to transportation of prisoners. "[E]ven if advancing an otherwise legitimate policy goal in an illegal or unauthorized manner can, under some circumstances, fall within official policymaking, advancing a purely personal agenda clearly cannot." *Roe*, 542 F.3d at 41.[6]

---

[6]   *See also Lankford v. City of Hobart*, 73 F.3d 283, 286-87 (10th Cir. 1996) (city not liable for official's sexual harassment of employees because "the defendant was committing private, rather than public, acts of sexual harassment"); *Starrett v. Wadley*, 876 F.2d 808, 819 (10th Cir. 1989) (county liable for policymaker's firing plaintiff "because [he] had final authority to set employment policy as to the hiring and firing of his staff," but not for his sexually harassing plaintiff because those "were private rather than official acts" and "were personal in nature without any indicia of being 'officially sanctioned or ordered'"); *Wooten v. Logan*, 92 F. App'x 143, 146-47 (6th Cir. 2004) (county not liable for policymaker sheriff's use of "the guise of a patrol officer making a traffic stop" to effectuate rape of mentally handicapped minor, because it was not "a matter of official business" but rather "a misuse of power to advance a private agenda"); *Danielson*, 355 F. Supp. 3d at 873 (city not liable for mayor's assault of citizen after city council meeting because mayor did not have "authority to alter or violate the law or to make policy authorizing the assault or intimidation of a citizen," and his actions

Plaintiff's position is again sympathetic. Though she goes too far in saying that refusing to impose municipal liability here would mean local governments can immunize themselves simply by adopting written policies their policymakers then ignore, she is right that local governments and other municipal entities can often escape liability for the misdeeds of individuals acting on their behalf. And individuals, including Ms. Biggs here, end up bearing the costs of those misdeeds—effectively she will subsidize the County whose sheriff violated her rights. The Fifth Circuit cases she relies on, however, are largely distinguishable, have not been adopted in this circuit, and are inconsistent with the precedent that has. *See supra* note 7. I therefore cannot conclude that granting the Entity Defendants' motions to dismiss was clear error.

## III. The "Matron Program" Evidence Does not Warrant Amending the Judgment or a New Trial

The plaintiff also seeks to amend the judgment and reopen the case against the Entity Defendants on the basis of evidence about Sheriff Hanna's discontinuation of the so-called "matron program." Under the matron program, the Sheriff's Office used female employees or volunteers to ride along when a female detainee was being transported by a male sheriff or deputy. (Doc. 155 at 12.) Evidence at trial showed that when he was sheriff, Mr. Hanna discontinued this program. The plaintiff argues that "there is a triable issue regarding whether [Mr.] Hanna's cancellation of the matron policy was a moving force behind the constitutional violations" and asks to reopen the judgment to allow her "to amend her complaint to add this theory of *Monell* liability under Federal Rule of Civil Procedure 15(b)(2)." (Doc. 155 at 13.) Because I agree with the Entity Defendants that the plaintiff has no adequate explanation for

---

were not related to legitimate job function or furthering legitimate policy goal of the city).

why information regarding the matron program was not uncovered long before trial, and that they would be unduly prejudiced by reopening the case at this stage, the plaintiff's motion is denied without addressing their additional argument that the proposed amendment to the plaintiff's complaint would be futile. *See Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994).

As the Entity Defendants point out, the plaintiff has had an investigator's report discussing the matron program, and Sheriff Hanna's discontinuation of it, since at least April 2019. (*See* Docs. 160-1, 160-2.) The plaintiff acknowledges this but contends that "that report was third hand and not nearly as significant as the evidence that surfaced at trial." (Doc. 164 at 8.) Her explanation of the differences, however, is weak. She cites trial testimony that "[Mr.] Hanna *himself* discontinued the policy and he also testified that he was aware of the risks of his discontinuation." (*Id*. at 8-9.) But the fact that Mr. Hanna discontinued the policy himself is implied if not directly stated in the report the plaintiff obtained during discovery, and that Mr. Hanna might have been aware of the risks of doing so is hardly a surprise. If, as the plaintiff now contends, those facts warrant a new trial, they surely were important enough to pursue further during discovery. To the extent the evidence at trial was new, it could have been uncovered long before. Rules 59, 60, and 15 are not means for parties to go through trial, see how things turn out, and then add or amend their claims based on what they find out. *See Paraclete*, 204 F.3d at 1012 (Rule 59(e) relief may be warranted on the basis of "new evidence *previously unavailable*," but not, "[a]bsent extraordinary circumstances," on the basis of facts that could have been raised before (emphasis added)). The plaintiff's motion is denied.

CONCLUSION

The jury here found that Mr. Hanna abused the authority he had as Sedgwick County's sheriff in about as reprehensible a manner as could be imagined, and assessed the damage he caused at over $8,000,000. While Mr. Hanna owes Ms. Biggs that amount, it is hard to imagine he will be able to pay her any more than a tiny fraction of it. Thus, in reality, the person who has to bear the bulk of the financial burdens of Mr. Hanna's actions is the same one who has to bear the emotional and personal burdens: Peatinna Biggs. For the reasons explained above, Sedgwick County cannot be legally *required* to mitigate some of that imbalance, although it could, of course, do so voluntarily. Whether that is the right moral or ethical result is, for better or worse, not for this Court to say.

Plaintiff's motions for clarification and amendment of the final judgment (Docs. 154, 155) are DENIED. The Entity Defendants' motion to amend the final judgment (Doc. 156) is GRANTED. The Clerk of Court is DIRECTED to amend the final judgment to remove any references to Mr. Hanna in his official capacity.

DATED: March 6, 2023                      BY THE COURT:


                                          Daniel D. Domenico
                                          United States District Judge

# ATTACHMENT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02076-DDD-SKC

HOLLIS ANN WHITSON, as guardian ad litem for Peatinna Biggs

      Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK,
SHERIFF CARLTON BRITTON, in his official capacity;
THOMAS HANNA, in his individual and official capacities; and
LARRY NEUGEBAUER, in his individual and official capacities,

      Defendants.

---

## AMENDED FINAL JUDGMENT

---

In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

Pursuant to and in accordance with Fed. R. Civ. P. 58(a) and the Order, filed April 17, 2020, by the Honorable Daniel D. Domenico, United States District Judge, and incorporated herein by reference as if fully set forth, it is hereby

ORDERED that judgment is hereby entered in favor of Defendants, The Board of County Commissioners of the County of Sedgwick; Sheriff Carlton Britton, in his official capacity; and Larry Neugebauer, in his individual and official capacities, and against Plaintiff, Hollis Ann Whitson, as guardian ad litem for Peatinna Biggs, on Defendants' motions to dismiss.

1

THIS MATTER came before the Court and a jury of seven duly sworn to try the matter on October 3, 2022 the Honorable Daniel D. Domenico, United States District Judge, presiding. On October 4, 2022, the jury returned its verdict in favor of Plaintiff.

Pursuant to and in accordance with Fed. R. Civ. P. 58(a) and the Order on Post-Trial Motions, filed March 6, 2023, by the Honorable Daniel D. Domenico, United States District Judge, and incorporated herein by reference as if fully set forth, it is hereby

IT IS HEREBY

ORDERED that judgment is hereby entered in favor of Plaintiff, Hollis Ann Whitson, as guardian ad litem for Peatinna Biggs, and against Defendant, Thomas Hanna, in his individual capacity, on Plaintiff's claims of excessive force, cruel and unusual punishment, and false imprisonment in the total amount of $3,250,000.00 in compensatory damages. It is further

ORDERED that judgment is hereby entered in favor of Plaintiff, Hollis Ann Whitson, as guardian ad litem for Peatinna Biggs, and against Defendant, Thomas Hanna, in his individual capacity, on Plaintiff's claims of excessive force, cruel and unusual punishment, and false imprisonment in the total amount of $5,000,000.00 in punitive damages. It is further

ORDERED that post-judgment interest shall accrue on the total amount of $8,250,000.00 at the legal rate pursuant to 28 U.S.C. §1961 from the date of entry of original judgment. It is further

ORDERED that Plaintiff shall have her costs by the filing of a Bill of Costs with the Clerk of this Court within fourteen (14) days of entry of Judgment.

DATED at Denver, Colorado this <u>6th</u> day of March, 2023.

FOR THE COURT:

JEFFREY P. COLWELL, CLERK

*s/ Robert R. Keech*
Robert R. Keech,
Deputy Clerk

3