# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

**HOLLIS WHITSON,**
as guardian ad litem for Peatinna Biggs,
                *Plaintiff/Appellant,*
v.

**FORMER SHERIFF THOMAS HANNA**, in
his official capacity, et. al,
                *Defendants/Appellees,*

**Case No. 23-1084**

---

On Appeal from the United States District Court for the District of Colorado
The Honorable Judge Daniel D. Domenico
Civil Action No. 1:18-cv-02076-DDD-SKC

---

## JOINT APPENDIX

---

Respectfully Submitted,

Ellen Noble, Esq.
Public Justice
1620 L. Street N.W., Suite 630
Washington, DC 20036
202-797-8600
enoble@publicjustice.net

David Fisher, Esq.
Jane Fisher-Byrialsen, Esq.
Fisher and Byrialsen Law
4600 S. Syracuse Street, 9th Floor
Denver, Colorado 80237
303-256-6345
David@FBLaw.org
Jane@FBLaw.org

July 17, 2023

*Attorneys for Plaintiff-Appellant*
*Hollis Ann Whitson*

# TABLE OF CONTENTS

District Court Docket Entries....................................................................1

**Doc. 16** - First Amended Civil Rights Complaint With Request For Trial by Jury (10/20/2018) ...........................................................................21

**Doc. 22** – Defendant Board of County Commissioners' Motion to Dismiss Plaintiff's First Amended Complaint (11/5/2018).....................................47

**Doc. 35** - Plaintiff's Opposition to Defendant Board of County Commissioners' Motion to Dismiss Plaintiff's First Amended Complaint (12/5/2018)............................................................................63

**Doc. 38** - Defendants' Reply in Support of Motion to Dismiss (12/19/2018) ........83

**Doc. 40** – Defendants' Britton and Neugebauer Motion to Dismiss (1/4/2019) ......93

**Doc. 42** - Plaintiff's Opposition to Defendants Britton and Neugebauer Fed. R. Civ. P. R. 12(b)(6) Motion to Dismiss (1/23/2019)..............109

**Doc. 44** - Defendants' Britton and Neugebauer Reply in Support of Motion to Dismiss (2/6/2019).....................................................................130

**Doc. 89** - Order (4/17/2020) .......................................................................140

**Doc. 127** – Final Pretrial Order (9/20/2020).........................................................160

**Doc. 153** - Final Judgment (10/13/2022)..........................................................168

**Doc. 154** - Plaintiff's Motion to Clarify the Final Judgment (10/16/2022) ..........171

**Doc. 155** - Plaintiff's Partially Unopposed Motion to Alter or Amend the Final Judgment under Rules 59(E) and 60(B) of the Federal Rules of Civil Procedure (10/19/2022)..........................................................................175

**Doc. 156** - Defendants' Motion to Amend Final Judgment (10/20/22) ...............191

**Doc. 157** - Defendants' Response to Plaintiff's Motion to Clarify the Final Judgment (11/7/2022) ............................................................................196

**Doc. 160** - Defendants' Response to Motion to Alter or Amend Final Judgment under Rules 59(E) and 60(B) of the Federal Rules of Civil Procedure (11/16/2022)...........................................................................................200

**Doc. 164** - Plaintiff's Reply to Defendant's Response to Motion to Alter or Amend Final Judgment (11/30/2022)................................................212

**Doc. 165** - Order on Post-Trial Motions (3/6/2023)..............................................224

**Doc. 166** – Amended Final Judgment (3/6/2023)..................................................236

**Doc. 167** – Notice of Appeal (3/17/2023) ............................................................239

# U.S. District Court - District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: 1:18-cv-02076-DDD-SKC

Whitson v. Hanna
Assigned to: Judge Daniel D. Domenico
Referred to: Magistrate Judge S. Kato Crews
Case in other court: USCA, 23-01084
Cause: 42:1983 Civil Rights Act

Date Filed: 08/15/2018
Date Terminated: 10/13/2022
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Hollis Ann Whitson**
*as*
*guardian ad litem*
Peatinna Biggs

represented by **David Nathan Fisher**
Fisher & Byrialsen PLLC
4600 South Syracuse Street
9th Floor
Denver, CO 80237
303-256-6345
Email: david@fblaw.org
*ATTORNEY TO BE NOTICED*

**Hollis Ann Whitson**
Samler & Whitson, P.C.
1600 Stout Street
Suite 1400
Denver, CO 80202
303-670-0575
Fax: 303-534-5721
Email: hollis.whitson@gmail.com
*ATTORNEY TO BE NOTICED*

**Jane Holse Fisher-Byrialsen**
Fisher & Byrialsen PLLC
4600 South Syracuse Street
9th Floor
Denver, CO 80237
303-256-6345
Fax: 303-954-0573
Email: jane@fblaw.org
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Thomas Hanna**
*Former Sheriff, in his official capacity*

represented by **Matthew William Buck**
Red Law
201 Milwaukee Street

Denver, CO 80206
720-771-4511
Email: matt@red.law
*ATTORNEY TO BE NOTICED*

**Defendant**

**Thomas (I) Hanna**                    represented by   **Matthew William Buck**
*in his individual capacity*                            (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Peatinna Biggs**                      represented by   **Kaitlin Fleur Nares**
*TERMINATED: 02/27/2020*                                Zinda Law Group PLLC
                                                        600 17th Street
                                                        Suite 2625S
                                                        Denver, CO 80202
                                                        303-800-2502
                                                        Fax: 512-580-4252
                                                        Email: kaitlin@hntriallaw.com
                                                        *TERMINATED: 03/14/2019*
                                                        *LEAD ATTORNEY*

                                                        **David Nathan Fisher**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Hollis Ann Whitson**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jane Holse Fisher-Byrialsen**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Deputy Larry Neugebauer**             represented by   **Jonathan N. Eddy**
*in his official capacity*                              SGR, LLC
*TERMINATED: 04/17/2020*                                3900 East Mexico Avenue
                                                        Suite 700
                                                        Denver, CO 80210
                                                        303-320-0509
                                                        Email: jeddy@sgrllc.com
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

Appellate Case: 23-1084    Document: 010110889549    Date Filed: 07/17/2023    Page: 6

**Larry (I) Neugebauer**                  represented by **Jonathan N. Eddy**
*in an individual capacity*                              (See above for address)
*TERMINATED: 04/17/2020*                                 *ATTORNEY TO BE NOTICED*

**Defendant**

**Carlton Britton**                       represented by **Jonathan N. Eddy**
*Sheriff*                                                (See above for address)
*TERMINATED: 04/17/2020*                                 *ATTORNEY TO BE NOTICED*

**Defendant**

**Board of County Commissioners of the**  represented by **Eric Michael Ziporin**
**County of Sedgwick, The**                              SGR, LLC
*TERMINATED: 04/17/2020*                                 3900 East Mexico Avenue
                                                         Suite 700
                                                         Denver, CO 80210
                                                         303-320-0509
                                                         Fax: 303-320-0210
                                                         Email: eziporin@sgrllc.com
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Jonathan N. Eddy**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Thomas S. Rice**
                                                         SGR, LLC
                                                         3900 East Mexico Avenue
                                                         Suite 700
                                                         Denver, CO 80210
                                                         303-320-0509
                                                         Fax: 303-320-0210
                                                         Email: trice@sgrllc.com
                                                         *TERMINATED: 06/21/2021*

**Defendant**

**County of Sedgwick, The**               represented by **Jonathan N. Eddy**
*TERMINATED: 01/07/2019*                                 (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Thomas S. Rice**
                                                         (See above for address)
                                                         *TERMINATED: 06/21/2021*

**Defendant**

**Sedgwick County Sheriff's Department**  represented by **Eric Michael Ziporin**
*TERMINATED: 01/07/2019*                                 (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Jonathan N. Eddy**
                                                         (See above for address)

*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/15/2018 | 1 | COMPLAINT against Former Sheriff Thomas Hanna, The County of Sedgwick (Filing fee $ 400,Receipt Number 1082-6248261)Attorney Kaitlin Fleur Nares added to party Peatinna Biggs(pty:pla), filed by Peatinna Biggs. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet, # 2 Summons Sedgwick Summons, # 3 Summons Hanna Summons)(Nares, Kaitlin) (Entered: 08/15/2018) |
| 08/15/2018 | 2 | Case assigned to Judge Wiley Y. Daniel and drawn to Magistrate Judge S. Kato Crews. Text Only Entry. (rvill, ) (Entered: 08/15/2018) |
| 08/15/2018 | 3 | SUMMONS issued by Clerk. (Attachments: # 1 Summons, # 2 Magistrate Judge Consent Form) (rvill, ) (Entered: 08/15/2018) |
| 08/20/2018 | 4 | ORDER REFERRING CASE to Magistrate Judge S. Kato Crews for non-dispositive matters. That pursuant to 28 U.S.C. Section 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b), this matter is referred to the assigned United States Magistrate Judge is designated to conduct proceedings in this civil action as follows: (1) Convene a scheduling conference under Fed.R.Civ.P. 16(b) and enter a scheduling order meeting the requirements of D.C.COLO.LCivR 16.2. (2) Conduct such status conferences and issue such orders necessary for compliance with the scheduling order, including amendments or modifications of the scheduling order upon a showing of good cause. (3) Hear and determine pretrial matters, including discovery and other non-dispositive motions. (4) Alternative Dispute Resolution Authority: Court sponsored alternative dispute resolution is governed by D.C.COLOLCivR 16.6. On the recommendation or informal request of the magistrate judge, or on the request of the parties by motion, the court may direct the parties to engage in an early neutral evaluation, a settlement conference, or another alternative dispute resolution proceeding. It is further ORDERED that parties and counsel shall be familiar and comply with the above judge's requirements found at www.cod.uscourts.gov. By Judge Wiley Y. Daniel on 8/20/18. Text Only Entry (rkeec) (Entered: 08/20/2018) |
| 09/04/2018 | 5 | SUMMONS Returned Executed by Peatinna Biggs. County of Sedgwick, The served on 8/27/2018, answer due 9/17/2018. (Nares, Kaitlin) (Entered: 09/04/2018) |
| 09/05/2018 | 6 | ORDER SETTING SCHEDULING CONFERENCE Scheduling Conference set for 10/2/2018 10:00 AM in Courtroom C204 before Magistrate Judge S. Kato Crews. By Magistrate Judge S. Kato Crews on 9/5/18. (amont, ) (Entered: 09/05/2018) |
| 09/12/2018 | 7 | NOTICE of Entry of Appearance by Thomas Sullivan Rice on behalf of County of Sedwick, TheAttorney Thomas Sullivan Rice added to party County of Sedwick, The(pty:dft) (Rice, Thomas) (Entered: 09/12/2018) |
| 09/12/2018 | 8 | MOTION for Extension of Time to File Answer or Otherwise Respond re 1 Complaint, by Defendant County of Sedwick, The. (Rice, Thomas) (Entered: 09/12/2018) |
| 09/12/2018 | 9 | MEMORANDUM regarding 8 MOTION for Extension of Time to File Answer or Otherwise Respond re 1 Complaint, filed by County of Sedwick, The. Motion referred to Magistrate Judge S. Kato Crews by Judge Wiley Y. Daniel on 9/12/18. Text Only Entry (rkeec) (Entered: 09/12/2018) |

| | | |
|---|---|---|
| 09/12/2018 | 10 | Unopposed MOTION to Continue *Scheduling Conference 60 Days* by Plaintiff Peatinna Biggs. (Nares, Kaitlin) (Entered: 09/12/2018) |
| 09/12/2018 | 11 | MEMORANDUM regarding 10 Unopposed MOTION to Continue *Scheduling Conference 60 Days* filed by Peatinna Biggs. Motion referred to Magistrate Judge S. Kato Crews by Judge Wiley Y. Daniel on 9/12/18. Text Only Entry (rkeec) (Entered: 09/12/2018) |
| 09/14/2018 | 12 | ORDER granting 8 Motion for Extension of Time. Defendant Board of County Commissioners of the County of Sedgwick shall answer or otherwise respond on or before 10/9/2018. It is FURTHER ORDERED that the Scheduling Conference is RESET for 11/26/2018 at 09:00 AM in Courtroom C204 before Magistrate Judge S. Kato Crews. By Magistrate Judge S. Kato Crews on 9/14/2018. Text Only Entry (skclc1) (Entered: 09/14/2018) |
| 09/25/2018 | 13 | NOTICE of Entry of Appearance by Jonathan Neal Eddy on behalf of County of Sedwick, TheAttorney Jonathan Neal Eddy added to party County of Sedwick, The(pty:dft) (Eddy, Jonathan) (Entered: 09/25/2018) |
| 10/04/2018 | 14 | MOTION to Dismiss by Defendant County of Sedwick, The. (Eddy, Jonathan) (Entered: 10/04/2018) |
| 10/20/2018 | 15 | NOTICE of Filing Amended Pleading *PURSUANT TO FEDERAL RULES OF CIVIL PRODUCE 15(a)(1)(B) and D.C.COLO.LCivR 15.1(a)* by Plaintiff Peatinna Biggs (Attachments: # 1 Exhibit A, Underlines and Strikes)(Nares, Kaitlin) (Entered: 10/20/2018) |
| 10/20/2018 | 16 | AMENDED COMPLAINT *AS A MATTER OF COURSE PURSUANT TO FEDERAL RULES OF CIVIL PRODUCE 15(a)(1)(B) and D.C.COLO.LCivR 15.1(a)* against County of Sedwick, The, Thomas Hanna, Thomas (I) Hanna, Sedgwick County Sheriff's Department, Larry Neugebauer, filed by Peatinna Biggs. (Attachments: # 1 Summons Sedgwick County Sheriff's Department, # 2 Summons Larry Neugebauer) (Nares, Kaitlin) (Entered: 10/20/2018) |
| 10/22/2018 | 17 | MINUTE ORDER Plaintiff filed a First Amended Complaint on October 20, 2018. (ECF No. 16 ). Therefore, Defendant County of Sedgwick's (who Defendant claims should have been designated as the Board of County Commissioners of the County of Sedgwick) Motion to Dismiss (ECF No. 14 ), filed on October 4, 2018, is DENIED AS MOOT. See Gotfredson v. Larsen LP, 432 F. Supp. 2d 1163, 1172 (D. Colo. 2006) (observing that an amended pleading supersedes the pleading it modifies, thereby mooting any motions to dismiss directed at the inoperative pleading); Strich v. U.S., 2010 WL 148269, at *1 (D. Colo. Jan. 11, 2010) ("The filing of an amended complaint moots a motion to dismiss directed at the complaint that is supplanted and superseded."), by Judge Wiley Y. Daniel on 10/22/2018. (evana, ) (Entered: 10/22/2018) |
| 10/30/2018 | 18 | SUMMONS Returned Executed by Peatinna Biggs. Thomas Hanna served on 10/24/2018, answer due 11/14/2018. (Nares, Kaitlin) (Entered: 10/30/2018) |
| 11/01/2018 | 19 | Unopposed MOTION to Continue *and Reset Preliminary Hearing* by Plaintiff Peatinna Biggs. (Nares, Kaitlin) (Entered: 11/01/2018) |
| 11/01/2018 | 20 | MEMORANDUM regarding 19 Unopposed MOTION to Continue *and Reset Preliminary Hearing* filed by Peatinna Biggs. Motion referred to Magistrate Judge S. Kato Crews by Judge Wiley Y. Daniel on 11/1/18. Text Only Entry (rkeec) (Entered: |

| | | 11/01/2018) |
|---|---|---|
| 11/02/2018 | 21 | ORDER granting 19 Motion to Continue. The Scheduling Conference is RESET for 12/17/2018 at 10:00 AM in Courtroom C204 before Magistrate Judge S. Kato Crews. By Magistrate Judge S. Kato Crews on 11/2/2018. Text Only Entry (skclc1) (Entered: 11/02/2018) |
| 11/05/2018 | 22 | MOTION to Dismiss *Plaintiff's First Amended Complaint* by Defendant County of Sedwick, The. (Attachments: # 1 Exhibit A)(Eddy, Jonathan) (Entered: 11/05/2018) |
| 11/08/2018 | 23 | WAIVER OF SERVICE Returned Executed by Peatinna Biggs. Sedgwick County Sheriff's Department waiver sent on 11/7/2018, answer due 1/7/2019. (Nares, Kaitlin) (Entered: 11/08/2018) |
| 11/08/2018 | 24 | WAIVER OF SERVICE Returned Executed by Peatinna Biggs. Larry Neugebauer waiver sent on 11/7/2018, answer due 1/7/2019. (Nares, Kaitlin) (Entered: 11/08/2018) |
| 11/11/2018 | 25 | SUMMONS Returned Executed by Peatinna Biggs. Thomas Hanna served on 11/3/2018, answer due 11/26/2018. (Nares, Kaitlin) (Entered: 11/11/2018) |
| 11/19/2018 | 26 | Unopposed MOTION for Extension of Time to File Response/Reply as to 22 MOTION to Dismiss *Plaintiff's First Amended Complaint Request for One Week Extension, On or Before December 3, 2018, To File Opposition* by Plaintiff Peatinna Biggs. (Nares, Kaitlin) (Entered: 11/19/2018) |
| 11/19/2018 | 27 | MINUTE ORDER Plaintiff's Unopposed Motion for Extension to File an Opposition to Defendants' Motion to Dismiss (ECF No. 26 ), filed on November 19, 2018, is GRANTED. Plaintiff shall file her response to Defendants' Motion to Dismiss (ECF No. 22 ) no later than Monday, December 3, 2018, by Judge Wiley Y. Daniel on 11/19/2018. (evana, ) (Entered: 11/19/2018) |
| 11/23/2018 | 28 | STIPULATION re 16 Amended Complaint, *Joint Stipulation to Amend Caption* by Plaintiff Peatinna Biggs. (Nares, Kaitlin) (Entered: 11/23/2018) |
| 11/23/2018 | 29 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 28 Stipulation filed by attorneyKaitlin F. Nares. Attorney has used an incorrect signature format in violation of D.C.COLO.LCivR 5.1(a) and 4.3(a) of the Electronic Case Filing Procedures (Civil cases). **DO NOT REFILE THE DOCUMENT.** In the future, the filer must affix an electronic s/signature and s/followed by a typed, not an inked, signature to all future documents. (Text Only Entry) (evana, ) (Entered: 11/23/2018) |
| 11/26/2018 | 30 | NOTICE *OF DEFENDANT THOMAS HANNAS CERTIFIED ANSWER* by Plaintiff Peatinna Biggs (Attachments: # 1 Exhibit A, Defendant Thomas Hanna's Certified Answer)(Nares, Kaitlin) (Entered: 11/26/2018) |
| 11/26/2018 | 31 | Proposed Scheduling Order *Jointly Filed on Behalf of Plaintiff and the Board of County Commissioners for the County of Sedgwick* by Plaintiff Peatinna Biggs. (Nares, Kaitlin) (Entered: 11/26/2018) |
| 11/27/2018 | 32 | **DOCKETING ERROR** The Defendant's ANSWER to 16 Amended Complaint by Thomas Hanna, and Thomas (I) Hanna.(agarc, ) (Modified on 11/28/2018 This was a Docketing error)(evana, ). (Entered: 11/27/2018) |
| 12/03/2018 | 33 | BRIEF in Opposition to 22 MOTION to Dismiss *Plaintiff's First Amended Complaint* filed by Plaintiff Peatinna Biggs. (Attachments: # 1 Exhibit A, Redacted Education Records, # 2 Exhibit B, Letters from St. John's School District, # 3 Exhibit C, |

| | | Redacted Developmental Disability Determination, # 4 Exhibit D, Redacted IQ and Adaptive Testing)(Nares, Kaitlin) (Entered: 12/03/2018) |
|---|---|---|
| 12/03/2018 | 34 | MINUTE ORDER Plaintiff's Response to Defendants' Motion to Dismiss (ECF No. 33 ), filed on December 3, 2018, is **STRICKEN** because it exceeds the page limitations set forth in my Practice Standards. See WYD Civ. Practice Standard § II(E)(1)-(2), available at http://www.cod.uscourts.gov/Portals/0/Documents/Judges /WYD/WYD_Practice_Standards.pdf. According to these standards, except under "extraordinary circumstances" and upon request, the text of a response, which excludes the caption page, tables of contents and authorities, attorneys' signature page, and certificate of service, may not exceed fifteen pages. Id. Plaintiff shall file a response to Defendants' Motion to Dismiss (ECF No. 22 ) that complies with my Practice Standards by Wednesday, December 12, 2018, by Judge Wiley Y. Daniel on 12/3/2018. (evana, ) (Entered: 12/03/2018) |
| 12/05/2018 | 35 | BRIEF in Opposition to 22 MOTION to Dismiss *Plaintiff's First Amended Complaint* filed by Plaintiff Peatinna Biggs. (Attachments: # 1 Exhibit A, CCB Evaluation Letter, # 2 Exhibit B, CCB Determination Letter)(Nares, Kaitlin) (Entered: 12/05/2018) |
| 12/12/2018 | 36 | MINUTE ORDER: The Scheduling Conference set 12/17/2018 at 10:00 AM in Courtroom C204 before Magistrate Judge S. Kato Crews is converted to a Telephonic Status Conference. The parties shall initiate a conference call amongst themselves prior to calling the Court (303.335.2124) at the scheduled time. By Magistrate Judge S. Kato Crews on 12/12/2018. Text Only Entry (skclc1) (Entered: 12/12/2018) |
| 12/17/2018 | 37 | COURTROOM MINUTES Telephone Status Conference held on 12/17/2018. Telephone Status Conference set for 1/28/2019 10:30 AM in Courtroom C204 before Magistrate Judge S. Kato Crews. Parties participating in the hearing shall initiate a conference call amongst themselves before calling the Court (303.335.2124) at the scheduled time. Defendant Thomas Hanna is ORDERED to participate in this hearing. Ms. Nares will facilitate in Mr. Hanna receiving this order. FTR: Courtroom C-204. (amont, ) (Entered: 12/17/2018) |
| 12/19/2018 | 38 | REPLY to Response to 14 MOTION to Dismiss filed by Defendant County of Sedwick, The. (Eddy, Jonathan) (Entered: 12/19/2018) |
| 12/21/2018 | 39 | NOTICE re 37 Status Conference,, Set/Reset Hearings, *SERVICE OF COURT ORDER [DKT # 37] ON THOMAS HANNA* by Plaintiff Peatinna Biggs (Attachments: # 1 Exhibit A, Affidavit of Service of Court Order (Dkt. No. 37))(Nares, Kaitlin) (Entered: 12/21/2018) |
| 01/04/2019 | 40 | MOTION to Dismiss by Defendants Larry Neugebauer, Larry (I) Neugebauer, Sedgwick County Sheriff's Department. (Eddy, Jonathan) (Entered: 01/04/2019) |
| 01/07/2019 | 41 | ORDER Pursuant to the parties' Joint Stipulation to Amend the Caption (ECF No. 28 ), it is ORDERED that the caption in this action is hereby amended to reflect that the Board of County Commissioners of the County of Sedgwick shall be substituted for County of Sedgwick in the caption and Sheriff Carlton Britton shall be substituted for Sedgwick County Sheriff's Department in the caption, by Judge Wiley Y. Daniel on 1/7/2019. (evana, ) (Entered: 01/07/2019) |
| 01/23/2019 | 42 | BRIEF in Opposition to 40 MOTION to Dismiss filed by Plaintiff Peatinna Biggs. (Attachments: # 1 Exhibit A, Education Records, # 2 Exhibit B, CCB Review Letter, # 3 Exhibit C, CCB Determination Letter)(Nares, Kaitlin) (Entered: 01/23/2019) |

| | | |
|---|---|---|
| 01/28/2019 | 43 | COURTROOM MINUTES for proceedings held before Magistrate Judge S. Kato Crews: Telephone Status Conference held on 1/28/2019. Mr. Hanna's answer shall be filed no later than 2/6/2019. Telephone Status Conference set for 2/26/2019 11:30 AM in Courtroom C204 before Magistrate Judge S. Kato Crews. Parties participating in the hearing shall initiate a conference call amongst themselves before calling the Court (303.335.2124) at the scheduled time. FTR: Courtroom C-204. (amont, ) (Entered: 01/28/2019) |
| 02/06/2019 | 44 | REPLY to Response to 40 MOTION to Dismiss filed by Defendants Carlton Britton, Larry Neugebauer, Larry (I) Neugebauer. (Eddy, Jonathan) (Entered: 02/06/2019) |
| 02/06/2019 | 45 | ANSWER to 16 Amended Complaint, by Thomas Hanna, Thomas (I) Hanna.(evana, ) (Entered: 02/06/2019) |
| 02/06/2019 | 46 | MOTION to Appoint Pro Bono Counsel by Defendants Thomas Hanna, Thomas (I) Hanna. (evana, ) (Entered: 02/06/2019) |
| 02/07/2019 | 47 | MEMORANDUM regarding 46 MOTION to Appoint Pro Bono Counsel filed by Thomas (I) Hanna, Thomas Hanna. Motion referred to Magistrate Judge S. Kato Crews by Judge Wiley Y. Daniel on 2/7/19. Text Only Entry (rkeec) (Entered: 02/07/2019) |
| 02/07/2019 | 48 | Appointment Order by Magistrate Judge S. Kato Crews on 2/7/2019. (jgonz, ) (Entered: 02/07/2019) |
| 02/24/2019 | 49 | NOTICE of Entry of Appearance by Jane Holse Fisher-Byrialsen on behalf of Peatinna BiggsAttorney Jane Holse Fisher-Byrialsen added to party Peatinna Biggs(pty:pla) (Fisher-Byrialsen, Jane) (Entered: 02/24/2019) |
| 02/26/2019 | 50 | COURTROOM MINUTES for proceedings held before Magistrate Judge S. Kato Crews: Telephone Status Conference held on 2/26/2019. ORDERED: With agreement of the parties, the Court will interlineate the proposed scheduling order 31 submitted earlier in the case. FTR: Courtroom C-204. (amont, ) (Entered: 02/26/2019) |
| 02/28/2019 | 51 | SCHEDULING ORDER: Discovery due by 10/28/2019. Dispositive Motions due by 12/6/2019. Joint Status Report due by 5/24/2019. So ORDERED by Magistrate Judge S. Kato Crews on 2/28/19. (amont, ) (Entered: 02/28/2019) |
| 03/14/2019 | 52 | Stipulated MOTION to Withdraw as Attorney *Kaitlin F. Nares, Esq. as counsel for Plaintiff Peatinna Biggs* by Plaintiff Peatinna Biggs. (Nares, Kaitlin) (Entered: 03/14/2019) |
| 03/14/2019 | 53 | MEMORANDUM regarding 52 Stipulated MOTION to Withdraw as Attorney *Kaitlin F. Nares, Esq. as counsel for Plaintiff Peatinna Biggs* filed by Peatinna Biggs. Motion referred to Magistrate Judge S. Kato Crews by Judge Wiley Y. Daniel on 3/14/19. Text Only Entry (rkeec) (Entered: 03/14/2019) |
| 03/14/2019 | 54 | ORDER granting 52 Motion to Withdraw as Attorney. Attorney Kaitlin Fleur Nares is terminated as counsel for Plaintiff. The Clerk of Court shall remove Ms. Nares from the electronic notification system for this case. By Magistrate Judge S. Kato Crews on 3/14/2019. Text Only Entry (skclc1) (Entered: 03/14/2019) |
| 05/09/2019 | 55 | MOTION to Stay *Discovery* by Defendants Carlton Britton, County of Sedgwick, The, Larry Neugebauer, Larry (I) Neugebauer. (Eddy, Jonathan) (Entered: 05/09/2019) |

| 05/10/2019 | 56 | MEMORANDUM regarding 55 MOTION to Stay Discovery filed by Carlton Britton, Larry (I) Neugebauer, County of Sedgwick, The, Larry Neugebauer. Motions referred to Magistrate Judge S. Kato Crews, by Judge Wiley Y. Daniel on 5/10/2019. Text Only Entry (evana, ) (Entered: 05/10/2019) |
|---|---|---|
| 05/10/2019 | 57 | ORDER re 55 Motion to Stay. In light of the fact that Plaintiff has taken no position on the Motion, and because Defendant Neugebauer has asserted the defense of qualified immunity, which weighs in favor of a stay, the Court will GRANT the motion. Should the pending Motion to Dismiss be denied in any part, the parties shall contact Judge Crews' chambers within 72 hours of the Order to set a further scheduling/status conference. By Magistrate Judge S. Kato Crews on 5/10/2019. Text Only Entry(skclc1) (Entered: 05/10/2019) |
| 05/20/2019 | 58 | This action is reassigned to Judge Daniel D. Domenico upon his appointment and the passing of Judge Wiley Y. Daniel. Unless otherwise ordered, the dates and times for all previously scheduled matters will be maintained and will now be handled by Judge Domenico in Courtroom A-702. His chambers are located in A-738 of the Alfred A. Arraj Courthouse. His telephone number is 303-335-2468. All future pleadings should be designated as 18-cv-02076-DDD-SKC. Text only entry. (tsher, ) (Entered: 05/21/2019) |
| 05/24/2019 | 59 | Joint STATUS REPORT by Defendants Carlton Britton, County of Sedgwick, The, Larry Neugebauer, Larry (I) Neugebauer. (Eddy, Jonathan) (Entered: 05/24/2019) |
| 07/18/2019 | 60 | Amended MOTION for Appointment of Counsel by Defendants Thomas Hanna, Thomas (I) Hanna. (athom, ) (Entered: 07/18/2019) |
| 07/18/2019 | 61 | ORDER REFERRING MOTION: 60 MOTION to Appoint Pro Bono Counsel filed by Thomas (I) Hanna, Thomas Hanna. Motion referred to Magistrate Judge S. Kato Crews by Judge Daniel D. Domenico on 07/18/2019. Text Only Entry (dddlc2) (Entered: 07/18/2019) |
| 07/31/2019 | 62 | ORDER finding as moot 60 Motion to Appoint Pro Bono Counsel. This Court previously granted Defendant Thomas Hanna's request for the appointment of pro bono counsel [ECF. #48] and the Court has confirmed that Mr. Hanna has been placed in the pool of candidates awaiting possible appointment. Thus, Mr. Hanna's renewed request is unnecessary and is denied as moot. Mr. Hanna is reminded that there is **no guarantee that Panel members will undertake representation in every case selected and Mr. Hanna remains responsible for all scheduled matters, including hearings, depositions, motions and trial.** By Magistrate Judge S. Kato Crews on 7/31/2019. Text Only Entry(skclc1) (Entered: 07/31/2019) |
| 10/17/2019 | 63 | ORDER. The Court concludes that Ms. Biggs is an incompetent person within the meaning of Rule 17(c). Accordingly, it is ORDERED that within 60 days of this order, Plaintiff's counsel shall either: (1) show that Ms. Biggs is represented by a next friend, general guardian, committee, conservator or other like fiduciary under Fed. R. Civ. P. 17(c), and move to further amend Ms. Biggs Amended Complaint as necessary to reflect such representation; or (2) if she is not so repre-sented, move for the appointment of a guardian ad litem pursuant to Fed. R. Civ. P. 17(c)(2). By Judge Daniel D. Domenico on 10/17/2019. (athom, ) (Entered: 10/17/2019) |
| 12/16/2019 | 64 | Unopposed MOTION for Appointment *of Representative or Guardian Ad Litem* by Plaintiff Peatinna Biggs. (Attachments: # 1 Exhibit Exhibit 1: CV of Hollis Whitson) (Fisher-Byrialsen, Jane) Modified on 12/17/2019 to correct event (athom, ). (Entered: |

| | | |
|---|---|---|
| | | 12/16/2019) |
| 12/17/2019 | 65 | ORDER Granting 64 Motion for the Appointment of a Guardian ad Litem. Hollis Whitson is hereby appointed as guardian ad litem for Plaintiff Peatinna Biggs. Within three days of this order, the parties and Ms. Whitson shall contact chambers via email with three alternative dates convenient for the parties and Ms. Whitson to hold a status conference before this Court. By Judge Daniel D. Domenico on 12/17/2019. (athom, ) (Entered: 12/17/2019) |
| 12/26/2019 | 66 | ORDER Status Conference set for 1/15/2020 10:30 AM in Courtroom A 702 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 12/26/2019. Text Only Entry (dddlc2) (Entered: 12/26/2019) |
| 01/10/2020 | 67 | MOTION to Continue by Defendants Thomas Hanna, Thomas (I) Hanna. (athom, ) (Entered: 01/13/2020) |
| 01/10/2020 | 68 | MOTION to Dismiss by Defendants Thomas Hanna, Thomas (I) Hanna. (athom, ) (Entered: 01/13/2020) |
| 01/10/2020 | 69 | MOTION to Dismiss by Defendants Thomas Hanna, Thomas (I) Hanna. (athom, ) (Entered: 01/13/2020) |
| 01/10/2020 | 70 | MOTION for Inquiry by Defendants Thomas Hanna, Thomas (I) Hanna. (athom, ) (Entered: 01/13/2020) |
| 01/10/2020 | 71 | MOTION for Appointment of Counsel (Amended and Request of Explanation) by Defendants Thomas Hanna, Thomas (I) Hanna. (Attachments: # 1 Envelope) (athom, ) (Entered: 01/13/2020) |
| 01/13/2020 | 72 | ORDER GRANTING 67 Motion to Continue. The Status Conference set for 1/15/2020 is VACATED. The parties shall confer and email the Court at Domenico_Chambers@cod.uscourts.gov on or before 1/21/2020 with three alternative dates on which *all* parties are available for a status conference. SO ORDERED by Judge Daniel D. Domenico on 1/13/2020. Text Only Entry (dddlc1, ) (Entered: 01/13/2020) |
| 01/13/2020 | 73 | ORDER REFERRING MOTIONS: 68 Motion to Dismiss filed by Thomas Hanna, 69 Motion to Dismiss filed by Thomas Hanna, 71 Motion to Appoint Pro Bono Counsel filed by Thomas Hanna, 70 Motion for Inquiry filed by Thomas Hanna. Motions referred to Magistrate Judge S. Kato Crews by Judge Daniel D. Domenico on 1/13/2020. Text Only Entry (dddlc1, ) (Entered: 01/13/2020) |
| 01/22/2020 | 74 | Joint STATUS REPORT *and Request to for Order Directing Defendant Hanna to Appear* by Plaintiff Peatinna Biggs. (Fisher-Byrialsen, Jane) (Entered: 01/22/2020) |
| 01/23/2020 | 75 | Joint STATUS REPORT *Regarding Setting Status Conference* by Plaintiff Peatinna Biggs. (Fisher-Byrialsen, Jane) (Entered: 01/23/2020) |
| 01/23/2020 | 76 | ORDER. Status Conference set for 2/19/2020 at 11:30 AM in Courtroom A 702 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 1/23/2020. Text Only Entry (dddlc2, ) (Entered: 01/23/2020) |
| 01/29/2020 | 77 | MOTION for Extension of Time to File Response/Reply as to 68 MOTION to Dismiss, 69 MOTION to Dismiss by Plaintiff Peatinna Biggs. (Fisher-Byrialsen, Jane) (Entered: 01/29/2020) |

Appellate Case: 23-1084    Document: 010110889549    Date Filed: 07/17/2023    Page: 14

| 01/29/2020 | 78 | ORDER granting 77 Motion for Extension of Time to File Response to Motions to Dismiss (Docs. 68 and 69). Plaintiff Biggs will have until February 14, 2020 to file a response. SO ORDERED by Judge Daniel D. Domenico on 1/29/20. Text Only Entry(dddlc2, ) (Entered: 01/29/2020) |
| --- | --- | --- |
| 02/03/2020 | 79 | Notice of Pro Bono Appointment: Attorney Matthew William Buck of the law firm Red Law LLC has been selected as counsel to represent the defendant, Thomas Hanna, in accordance with the Court's Order of February 7, 2019 and D.C.COLO.LAttyR 15(f) of the U.S. District Court's Local Rules of Practice. Counsel has thirty days to either enter an appearance in the case or to file a Notice Declining Appointment. This Notice of Appointment will be sent to the pro se litigant and selected counsel by the undersigned designated clerk. (kmont) (Entered: 02/03/2020) |
| 02/12/2020 | 80 | Letter requesting to rescind re 68 MOTION to Dismiss, 69 MOTION to Dismiss by Defendants Thomas Hanna, Thomas (I) Hanna. (athom, ) (Entered: 02/12/2020) |
| 02/13/2020 | 81 | Second MOTION for Extension of Time to File Response/Reply as to 68 MOTION to Dismiss, 69 MOTION to Dismiss, 80 MOTION to Withdraw Document re 68 MOTION to Dismiss, 69 MOTION to Dismiss by Plaintiff Peatinna Biggs. (Fisher-Byrialsen, Jane) (Entered: 02/13/2020) |
| 02/13/2020 | 82 | ORDER REFERRING MOTION(S): 81 Second MOTION for Extension of Time to File Response/Reply as to 68 MOTION to Dismiss, 69 MOTION to Dismiss, 80 MOTION to Withdraw Document re 68 MOTION to Dismiss, 69 MOTION to Dismiss filed by Peatinna Biggs, 80 MOTION to Withdraw Document re 68 MOTION to Dismiss, 69 MOTION to Dismiss filed by Thomas Hanna. Motions referred to Magistrate Judge S. Kato Crews by Judge Daniel D. Domenico on 2/13/20. Text Only Entry (dddlc2, ) (Entered: 02/13/2020) |
| 02/14/2020 | 83 | ORDER: Defendant Hanna's 80 Motion to Withdraw his pending Motions to Dismiss is GRANTED. Therefore, 68 Motion to Dismiss; and 69 Motion to Dismiss and deemed WITHDRAWN. Further, the Court finds as moot Plaintiff's 81 Motion for Extension of Time to File Response to these motions. By Magistrate Judge S. Kato Crews on 2/14/2020. Text Only Entry(skclc1) (Entered: 02/14/2020) |

| 02/14/2020 | 84 | ORDER: In his 70 Motion for Inquiry, Mr. Hanna seeks clarification as to why his name has not been added to the pool of prospective cases for pro bono counsel and in 71 Motion to Appoint Pro Bono Counsel, Mr. Hanna renews his request for appointment of Pro Bono Counsel.

In a previous order, dated July 31, 2019, this Court explained that Mr. Hanna had, in fact, been added to the pool of cases eligible for pro bono counsel. However, the Court reminded Mr. Hanna that there was no guarantee an attorney would choose to accept representation. This remains true today.

The Court has again confirmed that Mr. Hanna is on the list of potential cases for pro bono representation. Thus, his renewed motion for appointment is unnecessary. But there is no guarantee that Panel members will undertake representation in every case selected and in the event that no attorney chooses to undertake this matter on Mr. Hanna's behalf, Mr. Hanna remains responsible for all scheduled matters, including hearings, depositions, motions and trial.

The Court will include copies of the previous two orders addressing Mr. Hanna's motions for counsel with this mailing.

By Magistrate Judge S. Kato Crews on 2/14/2020. Text Only Entry(skclc1) (Entered: 02/14/2020) |
| 02/19/2020 | 85 | MINUTE ENTRY for Status Conference held before Judge Daniel D. Domenico on 2/19/2020. Court Reporter: Tracy Weir. (pglov) (Entered: 02/19/2020) |
| 02/19/2020 | 86 | NOTICE of Entry of Appearance by Matthew William Buck on behalf of Thomas Hanna, Thomas (I) HannaAttorney Matthew William Buck added to party Thomas Hanna(pty:dft), Attorney Matthew William Buck added to party Thomas (I) Hanna(pty:dft) (Buck, Matthew) (Entered: 02/19/2020) |
| 02/26/2020 | 87 | Unopposed MOTION to Substitute Party by Plaintiff Peatinna Biggs. (Fisher-Byrialsen, Jane) (Entered: 02/26/2020) |
| 02/27/2020 | 88 | ORDER Granting 87 Unopposed Motion to Substitute Party. The Clerk is hereby ORDERED to substitute Ms. Whitson as Ms. Biggs' representative, terminate Ms. Biggs from the case, and amend the caption of the case accordingly. By Judge Daniel D. Domenico on 02/27/2020. (athom, ) (Entered: 02/27/2020) |
| 04/17/2020 | 89 | ORDER. The Motion to Dismiss filed by the Board of County Commissioners of Sedgwick County (Doc. 22 ) is GRANTED, and the claim against the Board of County Commissioners of Sedgwick County (Eighth Claim) is DISMISSED. The Motion to Dismiss filed by Sheriff Britton and Deputy Larry Neugebauer (Doc. 40 ) is GRANTED. Ms. Biggs' claim against Sheriff Brit-ton (Eighth Claim) is DISMISSED. Her Fifth, Sixth, Ninth, and Tenth Claims against Deputy Larry Neugebauer are DISMISSED. By Judge Daniel D. Domenico on 04/17/2020. (athom, ) (Entered: 04/17/2020) |

| 07/30/2020 | 90 | MINUTE ORDER: In light of the 89 Order on Motion to Dismiss, a Scheduling Conference for the remaining parties is set for 9/1/2020 at 09:30 AM in Courtroom C201 before Magistrate Judge S. Kato Crews. The parties shall file their proposed scheduling order on or before August 25, 2020, and shall email an editable copy to Crews_Chambers@cod.uscourts.gov. By Magistrate Judge S. Kato Crews on 7/30/2020. Text Only Entry (skclc1) (Entered: 07/30/2020) |
|---|---|---|
| 08/25/2020 | 91 | MINUTE ORDER The upcoming hearing in this matter before Magistrate Judge Crews shall be conducted via telephone. The parties shall call the Court provided conference line as a participant at 888.251.2909, Access Code 5662814# at the scheduled time. The Court notes that the parties may hear the conclusion of a prior hearing at the time they call in, and are instructed to simply wait until their case is called. The Court thanks the parties in advance for their patience and flexibility as the Court implements this new technology. Text Only Entry (amont, ) (Entered: 08/25/2020) |
| 08/25/2020 | 92 | Proposed Scheduling Order by Plaintiff Peatinna Biggs. (Fisher-Byrialsen, Jane) (Entered: 08/25/2020) |
| 08/31/2020 | 93 | MINUTE ORDER: The Court has begun review of the 92 Proposed Scheduling Order filed by Peatinna Biggs, and although this document appears to contain all of the necessary information, it is difficult to say definitively due to the formatting of the proposed order. Consequently, the Scheduling Conference set for tomorrow is VACATED and the parties are ORDERED to utilize the Form for proposed scheduling orders, which can be found on this Court's website. The revised proposed scheduling order shall be due on or before September 4, 2020. IT IS FURTHER ORDERED that the conference is RESET for 9/8/2020 at 10:00 AM in Courtroom C201 before Magistrate Judge S. Kato Crews. By Magistrate Judge S. Kato Crews on 8/31/2020. Text Only Entry (skclc1) (Entered: 08/31/2020) |
| 09/02/2020 | 94 | MINUTE ORDER The upcoming hearing in this matter before Magistrate Judge Crews shall be conducted via telephone. The parties shall call the Court provided conference line as a participant at 888.251.2909, Access Code 5662814# at the scheduled time. The Court notes that the parties may hear the conclusion of a prior hearing at the time they call in, and are instructed to simply wait until their case is called. The Court thanks the parties in advance for their patience and flexibility as the Court implements this new technology. Text Only Entry (amont, ) (Entered: 09/02/2020) |
| 09/02/2020 | 95 | Proposed Scheduling Order by Plaintiff Peatinna Biggs. (Fisher-Byrialsen, Jane) (Entered: 09/02/2020) |
| 09/04/2020 | 96 | MINUTE ORDER: Due to an unavoidable conflict that has arisen on the Court's calendar, the Scheduling Conference must be RESET for 9/8/2020 at 01:30 PM in Courtroom C201 before Magistrate Judge S. Kato Crews. The parties shall use the same call-in instructions as previously given. By Magistrate Judge S. Kato Crews on 9/4/2020. Text Only Entry (skclc1) (Entered: 09/04/2020) |
| 09/08/2020 | 97 | COURTROOM MINUTES for proceedings held before Magistrate Judge S. Kato Crews: Telephone Scheduling Conference held on 9/8/2020. Discovery due by 7/12/2021. Dispositive Motions due by 8/11/2021. Joint Status Report due by 11/20/2020. FTR: Courtroom C-201. (amont, ) (Entered: 09/08/2020) |

| 09/08/2020 | 98 | SCHEDULING ORDER: by Magistrate Judge S. Kato Crews on 9/8/2020. (amont, ) (Entered: 09/08/2020) |
|---|---|---|
| 11/20/2020 | 99 | Joint STATUS REPORT by Plaintiff Hollis Ann Whitson. (Fisher-Byrialsen, Jane) (Entered: 11/20/2020) |
| 03/29/2021 | 100 | ADVISORY NOTICE TO ATTORNEY AND COURT: Under D.C.COLO.LAttyR 3(a), Matthew William Buck was administratively removed from the court's attorney roll and barred from filing electronically under CM/ECF for failing to pay the 2020 Biennial Fee. Counsel must complete a Bar/ECF application through counsel's existing Attorney Services Portal account and pay the full application fee to be restored to the attorney roll and CM/ECF. Upon reinstatement, counsel must file a Notice of Entry of Appearance in this case. (Text Only Entry) (mfred) (Entered: 03/29/2021) |
| 03/30/2021 | 101 | NOTICE of Entry of Appearance by Matthew William Buck on behalf of Thomas Hanna, Thomas (I) Hanna (Buck, Matthew) (Entered: 03/30/2021) |
| 06/21/2021 | 102 | MOTION to Withdraw as Attorney by Defendant Board of County Commissioners of the County of Sedgwick, The. (Rice, Thomas) (Entered: 06/21/2021) |
| 06/21/2021 | 103 | ORDER granting 102 Motion to Withdraw as Attorney. Attorney Thomas S. Rice is hereby terminated. SO ORDERED by Judge Daniel D. Domenico on 6/21/2021. Text Only Entry (dddlc2, ) (Entered: 06/21/2021) |
| 11/09/2021 | 104 | Unopposed MOTION for Order to *set a Scheduling Conference* by Plaintiff Peatinna Biggs. (Fisher-Byrialsen, Jane) (Entered: 11/09/2021) |
| 11/09/2021 | 105 | ORDER denying 104 Motion for Order to set a scheduling conference. The dispositive motions deadline has passed, and there are no pending motions. To facilitate the Court's just, speedy, and inexpensive determination of this action, on or before 12/2/2021 the parties must file a Joint Status Report not to exceed 1,400 words, identifying the following: (1) the nature of the dispute between the parties; (2) the prospects for settlement; (3) three mutually agreeable alternative dates for trial to commence in April or May 2022, and the anticipated length of trial; and (4) any other issues the parties wish to bring to the Court's attention. SO ORDERED by Judge Daniel D. Domenico on 11/9/2021. Text Only Entry(dddlc2, ) (Entered: 11/09/2021) |
| 12/02/2021 | 106 | Joint STATUS REPORT by Plaintiff Hollis Ann Whitson. (Fisher-Byrialsen, Jane) (Entered: 12/02/2021) |
| 03/31/2022 | 107 | TRIAL PREPARATION ORDER. Combined Final Pretrial Conference/Trial Preparation Conference set for 5/3/2022 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. Three-day Jury Trial set for 5/10/2022 at 09:00 AM in Courtroom A1002 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 03/31/2022. (athom, ) (Entered: 03/31/2022) |
| 04/14/2022 | 108 | Unopposed MOTION to Continue *Trial Date* by Plaintiff Hollis Ann Whitson. (Fisher-Byrialsen, Jane) (Entered: 04/14/2022) |
| 04/19/2022 | 109 | AMENDED TRIAL PREPARATION ORDER. Plaintiff's Unopposed Motion to Continue Trial (Doc. 108 ) is GRANTED. The Final Pretrial Conference and Trial Preparation Conference for 5/3/2022 is VACATED. Final Pretrial Conference is RESET for 8/16/2022 at 01:30 PM in Courtroom A1002 before Judge Daniel D. Domenico. Trial Preparation Conference is RESET for 9/21/2022 at 01:30 PM in Courtroom A1002 before Judge Daniel D. Domenico. The three-day Jury Trial set for |

| | | |
|---|---|---|
| | | 5/10/2022 is VACATED and RESET to 9/26/2022 at 09:00 AM in Courtroom A1002 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 04/19/2022. (athom, ) (Entered: 04/19/2022) |
| 08/12/2022 | 110 | ORDER. Neither party has filed the required pretrial documents within the deadlines set by the Amended Trial Preparation Order Doc. 109 . The Final Pretrial Conference set for 8/16/2022 is VACATED and RESET for 9/7/22 at 1:30 PM. The parties are ordered to file a joint status report on or before 8/16/2022 indicating whether they expect the trial to go forward as scheduled as well as any other issues the parties wish to raise.<br><br>The parties are further ordered to file joint proposed Jury instructions on or before 8/19/2022 in the manner described in the Amended Trial Preparation Order Doc. 109 .<br><br>The parties must file a Proposed final pretrial order on or before 8/26/2022.<br><br>The parties must file a proposed witness list, proposed joint exhibit list, and proposed voire dire questions on or before 8/31/22. An estimate of the time anticipated for cross-examination of each sides opposing witnesses is due on or before 9/2/2022.<br><br>If filed, motions in limine are due on or before 8/24/2022 with responses due 8/31/2022. Trial briefs are encouraged, but not required. If filed, they are due on or before 8/31/22.<br><br>SO ORDERED by Judge Daniel D. Domenico on 8/12/2022. Text Only Entry (dddlc2, ) (Entered: 08/12/2022) |
| 08/15/2022 | 111 | NOTICE of Entry of Appearance by David Nathan Fisher on behalf of Peatinna BiggsAttorney David Nathan Fisher added to party Peatinna Biggs(pty:pla) (Fisher, David) (Entered: 08/15/2022) |
| 08/16/2022 | 112 | STATUS REPORT by Defendant Thomas Hanna. (Buck, Matthew) (Entered: 08/16/2022) |
| 08/17/2022 | 113 | ORDER. The parties have until and including 8/26/2022 to submit their joint proposed jury instructions. SO ORDERED by Judge Daniel D. Domenico on 8/17/2022. Text Only Entry (dddlc2, ) (Entered: 08/17/2022) |
| 08/25/2022 | 114 | Proposed Jury Instructions by Plaintiff Hollis Ann Whitson. (Fisher-Byrialsen, Jane) (Entered: 08/25/2022) |
| 08/26/2022 | 115 | Proposed Pretrial Order by Plaintiff Hollis Ann Whitson. (Fisher-Byrialsen, Jane) (Entered: 08/26/2022) |
| 08/30/2022 | 116 | Proposed Voir Dire by Plaintiff Hollis Ann Whitson. (Fisher-Byrialsen, Jane) (Entered: 08/30/2022) |
| 08/30/2022 | 117 | Proposed Voir Dire by Defendant Thomas Hanna. (Buck, Matthew) (Entered: 08/30/2022) |
| 08/31/2022 | 118 | Exhibit List *Joint Proposed Exhibit List* by Plaintiff Hollis Ann Whitson. (Fisher-Byrialsen, Jane) (Entered: 08/31/2022) |
| 08/31/2022 | 119 | Witness List by Plaintiff Hollis Ann Whitson. (Fisher-Byrialsen, Jane) (Entered: 08/31/2022) |

| | | |
|---|---|---|
| 08/31/2022 | 120 | Witness List by Defendant Thomas Hanna. (Buck, Matthew) (Entered: 08/31/2022) |
| 09/06/2022 | 121 | ORDER. The parties failed to file estimates of the time anticipated for cross-examination of the opposing side's witnesses by 9/2/2022 as previously ordered (Doc. 109 at 9; Doc. 110). The parties must file their estimates of the time required for cross-examination by **9/7/2022 at 10:30 AM**. SO ORDERED by Judge Daniel D. Domenico on 09/06/2022. Text Only Entry (dddlc5, ) (Entered: 09/06/2022) |
| 09/06/2022 | 122 | STATEMENT *of Estimated Cross Examination Time* by Plaintiff Hollis Ann Whitson. (Fisher-Byrialsen, Jane) (Entered: 09/06/2022) |
| 09/06/2022 | 123 | Witness List *CROSS EXAMINATION LIST* by Defendant Thomas Hanna. (Buck, Matthew) (Entered: 09/06/2022) |
| 09/07/2022 | 124 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Final Pretrial Conference held on 9/7/2022. Oral motion to vacate jury trial is granted. 3-day Jury Trial set to commence on 10/3/2022, at 08:30 AM, in Courtroom A1002 before Judge Daniel D. Domenico. Counsel shall submit a proposed final pretrial order in Word format to chambers. Court Reporter: Julie Thomas. (rkeec) (Entered: 09/07/2022) |
| 09/13/2022 | 125 | Proposed Verdict Form by Plaintiff Hollis Ann Whitson. (Fisher-Byrialsen, Jane) (Entered: 09/13/2022) |
| 09/14/2022 | 126 | MINUTE ORDER. My Chambers received a telephone inquiry regarding the possible attendance of service animals or support animals at trial. Any notice pursuant to Local Civil Rule 83.3 regarding a service-animal accommodation under the Americans with Disabilities Act must be filed by 9/19/2022. If a party, witness, or attorney wishes to bring a support animal into the courtroom that is not an accommodation under the Americans with Disabilities Act, a motion must be filed by 9/19/2022 after conferral pursuant to Local Civil Rule 7.1(a). SO ORDERED by Judge Daniel D. Domenico on 9/14/2022. Text Only Entry (dddlc1, ) (Entered: 09/14/2022) |
| 09/20/2022 | 127 | FINAL PRETRIAL ORDER entered by Judge Daniel D. Domenico on 9/20/2022. (rkeec) (Entered: 09/20/2022) |
| 09/21/2022 | 128 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Trial Preparation Conference held on 9/21/2022. Court Reporter: Julie Thomas. (rkeec) (Entered: 09/22/2022) |
| 09/26/2022 | 129 | MOTION in Limine by Defendant Thomas Hanna. (Buck, Matthew) (Entered: 09/26/2022) |
| 09/28/2022 | 130 | First MOTION for Trial *Joint Motion for Extra Time for Trial Procedures* by Plaintiff Peatinna Biggs. (Fisher, David) (Entered: 09/28/2022) |
| 09/29/2022 | 131 | ORDER granting 130 Joint Motion for Extra Time for Trial Procedures. Based on the parties' representations about the length of trial, the motion is granted. Openings are to be given prior to Plaintiff's case. Plaintiff may reserve a portion of closing time for rebuttal. SO ORDERED by Judge Daniel D. Domenico on 09/29/2022. Text Only Entry(dddlc5, ) (Entered: 09/29/2022) |

| | | |
|---|---|---|
| 09/29/2022 | 132 | RESPONSE to 129 MOTION in Limine *Docket 129* filed by Plaintiff Hollis Ann Whitson. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D)(Fisher-Byrialsen, Jane) Modified on 10/2/2022 to note that this document has been re-filed as doc 133 (athom, ). (Entered: 09/29/2022) |
| 09/29/2022 | 133 | RESPONSE to 129 MOTION in Limine filed by Plaintiff Peatinna Biggs. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Fisher, David) (Entered: 09/29/2022) |
| 10/02/2022 | 134 | Exhibit List *Updated* by Plaintiff Hollis Ann Whitson. (Fisher-Byrialsen, Jane) (Entered: 10/02/2022) |
| 10/02/2022 | 135 | Witness List *Updated* by Plaintiff Hollis Ann Whitson. (Fisher-Byrialsen, Jane) (Entered: 10/02/2022) |
| 10/03/2022 | 136 | ORDER Granting 129 Motion *in Limine*. By Judge Daniel D. Domenico on 10/03/2022. (athom, ) (Entered: 10/03/2022) |
| 10/03/2022 | 137 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 1) held on 10/3/2022. 129 Defendants Motion in Limine as Contained in Joint Status Report is GRANTED. Court Reporter: Kevin Carlin. (rkeec) (Entered: 10/04/2022) |
| 10/03/2022 | 138 | Jury Strike Sheet - Unredacted - Level 3 - Viewable by Court Only. (rkeec) (Entered: 10/04/2022) |
| 10/03/2022 | 139 | Jury Strike Sheet with juror names redacted. (rkeec) (Entered: 10/04/2022) |
| 10/04/2022 | 140 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 2) completed on 10/4/2022. JURY VERDICT. Defendants oral motion to strike Larry Neugebauers testimony is DENIED. Court Reporter: Kevin Carlin. (rkeec) (Entered: 10/05/2022) |
| 10/04/2022 | 141 | Witness List by Plaintiff Hollis Ann Whitson as completed by courtroom deputy with dates and times testified. (rkeec) (Entered: 10/05/2022) |
| 10/04/2022 | 142 | Witness List by Defendants Thomas Hanna, Thomas (I) Hanna as completed by courtroom deputy with dates and times testified. (rkeec) (Entered: 10/05/2022) |
| 10/04/2022 | 143 | Exhibit List as completed by courtroom deputy indicating exhibits admitted. (rkeec) (Entered: 10/05/2022) |
| 10/04/2022 | 144 | Final Jury Instructions as read by the Court on 10/4/2022. (rkeec) (Entered: 10/05/2022) |
| 10/04/2022 | 145 | Jury Note (Verdict) - Unredacted - Level 3 - Viewable by Court Only. (rkeec) (Entered: 10/05/2022) |
| 10/04/2022 | 146 | Jury Note (Verdict) with juror signature redacted. (rkeec) (Entered: 10/05/2022) |
| 10/04/2022 | 147 | Verdict Form - Unredacted - Level 3 - Viewable by Court Only. (rkeec) (Entered: 10/05/2022) |
| 10/04/2022 | 148 | VERDICT FORM with juror signature redacted. (rkeec) (Entered: 10/05/2022) |
| 10/04/2022 | 149 | STIPULATION AND ORDER REGARDING CUSTODY OF EXHIBITS AND DEPOSITIONS entered by Judge Daniel D. Domenico on 10/4/2022. (rkeec) (Entered: 10/05/2022) |

Appellate Case: 23-1084     Document: 010110889549     Date Filed: 07/17/2023     Page: 21

| | | |
|---|---|---|
| 10/04/2022 | 150 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Amended re 140 Jury Trial (Day 2) - Completed. Amended to reflect that exhibits and depositions were returned to counsel at the conclusion of the trial. Court Reporter: Kevin Carlin. (rkeec) (Entered: 10/05/2022) |
| 10/07/2022 | 151 | First MOTION for Trial *Requesting time before entry of final judgment* by Plaintiff Peatinna Biggs. (Fisher, David) (Entered: 10/07/2022) |
| 10/13/2022 | 152 | ORDER denying 151 Motion Requesting Time Before Entry of Final Judgment. Plaintiff seeks to delay entry of final judgment in order to file a motion for reconsideration of the Court's two-year-old dismissal of Sedgwick County as a defendant 89 . This is not an appropriate reason for the Court to delay entry of final judgment. If Plaintiff wishes, she may file an appropriate post-judgment motion under Fed. R. Civ. P. 59(e) or 60(b). SO ORDERED by Judge Daniel D. Domenico on 10/13/2022. Text Only Entry(dddlc5, ) (Entered: 10/13/2022) |
| 10/13/2022 | 153 | FINAL JUDGMENT by Clerk on 10/13/2022 in favor of Hollis Ann Whitson against Thomas Hanna, Thomas (I) Hanna. APPROVED AS TO FORM by Judge Daniel D. Domenico on 10/13/2022. (rkeec) (Entered: 10/13/2022) |
| 10/16/2022 | 154 | First MOTION to Clarify re 153 Clerk's Judgment *in favor of Plaintiff and against Defendant* by Plaintiff Peatinna Biggs. (Fisher, David) (Entered: 10/16/2022) |
| 10/19/2022 | 155 | First MOTION to Alter Judgment re 153 Clerk's Judgment *Under Rules 59(e) and 60(b)* by Plaintiff Peatinna Biggs. (Fisher, David) (Entered: 10/19/2022) |
| 10/20/2022 | 156 | MOTION to Amend/Correct/Modify 153 Clerk's Judgment by Defendants Board of County Commissioners of the County of Sedgwick, The, Sedgwick County Sheriff's Department. (Eddy, Jonathan) (Entered: 10/20/2022) |
| 11/07/2022 | 157 | RESPONSE to 154 First MOTION to Clarify re 153 Clerk's Judgment *in favor of Plaintiff and against Defendant* filed by Defendants Board of County Commissioners of the County of Sedgwick, The, Sedgwick County Sheriff's Department. (Eddy, Jonathan) (Entered: 11/07/2022) |
| 11/08/2022 | 158 | Unopposed MOTION for Extension of Time to *Respond to Plaintiff's Motion to Alter or Amend Judgment* by Defendant Board of County Commissioners of the County of Sedgwick, The. (Eddy, Jonathan) (Entered: 11/08/2022) |
| 11/09/2022 | 159 | ORDER granting 158 Unopposed Motion for Extension of Time to File to *Respond to Plaintiff's Motion to Alter or Amend Judgment*. Defendants must file response by 11/16/2022. SO ORDERED by Judge Daniel D. Domenico on 11/09/2022. Text Only Entry(dddlc5, ) (Entered: 11/09/2022) |
| 11/16/2022 | 160 | RESPONSE to 155 First MOTION to Alter Judgment re 153 Clerk's Judgment *Under Rules 59(e) and 60(b)* filed by Defendants Board of County Commissioners of the County of Sedgwick, The, Sedgwick County Sheriff's Department. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Eddy, Jonathan) (Entered: 11/16/2022) |
| 11/21/2022 | 161 | First MOTION for Extension of Time to File Response/Reply as to 155 First MOTION to Alter Judgment re 153 Clerk's Judgment *Under Rules 59(e) and 60(b) Adtional 7 Days to File Reply* by Plaintiff Peatinna Biggs. (Fisher, David) (Entered: 11/21/2022) |

| | | |
|---|---|---|
| 11/21/2022 | 162 | ORDER REFERRING MOTION: 161 First MOTION for Extension of Time to File Response/Reply as to 155 First MOTION to Alter Judgment re 153 Clerk's Judgment *Under Rules 59(e) and 60(b) Addtional 7 Days to File Reply* filed by Peatinna Biggs. Motion referred to Magistrate Judge S. Kato Crews by Judge Daniel D. Domenico on 11/21/2022. Text Only Entry (dddlc5, ) (Entered: 11/21/2022) |
| 11/23/2022 | 163 | ORDER granting 161 Motion for Extension of Time to File Response/Reply re 161 First MOTION for Extension of Time to File Response/Reply as to 155 First MOTION to Alter Judgment re 153 Clerk's Judgment *Under Rules 59(e) and 60(b) Addtional 7 Days to File Reply*. Plaintiff may have an extension of time to submit his reply to the pending Rule 59 and 60 motions to and including November 30, 2022. By Magistrate Judge S. Kato Crews on 11/23/2022. Text Only Entry (skclc1) (Entered: 11/23/2022) |
| 11/30/2022 | 164 | REPLY to Response to 155 First MOTION to Alter Judgment re 153 Clerk's Judgment *Under Rules 59(e) and 60(b)* filed by Plaintiff Peatinna Biggs. (Fisher, David) (Entered: 11/30/2022) |
| 03/06/2023 | 165 | ORDER denying 154 Motion to Clarify. Denying 155 Motion to Alter Judgment. Granting 156 Motion to Amend/Correct/Modify. The Clerk of Court is DIRECTED to amend the final judgment to remove any references to Mr. Hanna in his official capacity. SO ORDERED by Judge Daniel D. Domenico on 3/6/2023. (rkeec) (Entered: 03/06/2023) |
| 03/06/2023 | 166 | AMENDED FINAL JUDGMENT by Clerk on 3/6/2023 in favor of Hollis Ann Whitson, Peatinna Biggs against Thomas (I) Hanna re: 165 Order on Motion to Clarify, Order on Motion to Alter Judgment, Order on Motion to Amend/Correct /Modify, entered by Judge Daniel D. Domenico on 3/6/2023. (rkeec) (Entered: 03/06/2023) |
| 03/17/2023 | 167 | NOTICE OF APPEAL as to 166 Clerk's Judgment, 89 Order on Motion to Dismiss, 165 Order on Motion to Clarify, Order on Motion to Alter Judgment, Order on Motion to Amend/Correct/Modify, by Plaintiffs Peatinna Biggs, Hollis Ann Whitson (Filing fee $ 505, Receipt Number ACODC-8996671) (Fisher, David) (Entered: 03/17/2023) |
| 03/20/2023 | 168 | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 167 Notice of Appeal, filed by Peatinna Biggs, Hollis Ann Whitson to the U.S. Court of Appeals. ( Retained Counsel, Fee paid,) (Attachments: # 1 Docket Sheet, # 2 Preliminary Record) (athom, ) Modified on 3/20/2023 to attach correct Docket Sheet PDF and to regenerate docket entry (athom, ). (Entered: 03/20/2023) |
| 03/20/2023 | 169 | First MOTION for Extension of Time to *File Fee Petition Pursuant to Fed. R. CIV. P. 54(d)(2)(B)* by Plaintiffs Peatinna Biggs, Hollis Ann Whitson. (Fisher, David) (Entered: 03/20/2023) |
| 03/20/2023 | 170 | ORDER REFERRING MOTION: 169 First MOTION for Extension of Time to *File Fee Petition Pursuant to Fed. R. CIV. P. 54(d)(2)(B)* filed by Peatinna Biggs, Hollis Ann Whitson. Motion referred to Magistrate Judge S. Kato Crews by Judge Daniel D. Domenico on 3/20/2023. Text Only Entry (dddlc5, ) (Entered: 03/20/2023) |
| 03/20/2023 | 171 | USCA Case Number 23-1084 for 167 Notice of Appeal, filed by Peatinna Biggs, Hollis Ann Whitson. (athom, ) (Entered: 03/20/2023) |
| 03/20/2023 | 172 | First MOTION for Attorney Fees *and costs* by Plaintiffs Peatinna Biggs, Hollis Ann Whitson. (Fisher, David) (Entered: 03/20/2023) |

| 03/23/2023 | 173 | ORDER REFERRING MOTION: 172 First MOTION for Attorney Fees *and costs* filed by Peatinna Biggs, Hollis Ann Whitson. Motion referred to Magistrate Judge S. Kato Crews by Judge Daniel D. Domenico on 3/23/2023. Text Only Entry (dddlc5, ) (Entered: 03/23/2023) |
| 04/07/2023 | 174 | ORDER granting 169 Motion for Extension of Time to File re 169 First MOTION for Extension of Time to *File Fee Petition Pursuant to Fed. R. CIV. P. 54(d)(2)(B)*. Plaintiff may wait to file her Motion for Attorney's Fees until after the resolution of her appeals. Consequently, the Court finds as moot her 172 First MOTION for Attorney Fees *and costs*. By Magistrate Judge S. Kato Crews on 4/7/2023. Text Only Entry (skclc1) (Entered: 04/07/2023) |
| 04/16/2023 | 175 | TRANSCRIPT ORDER FORM re 167 Notice of Appeal, *Transcript not Necessary for this appeal* by Plaintiffs Peatinna Biggs, Hollis Ann Whitson (Fisher, David) (Entered: 04/16/2023) |
| 04/17/2023 | 176 | LETTER TO USCA and all counsel certifying the record is complete as to 167 Notice of Appeal, filed by Peatinna Biggs, Hollis Ann Whitson. A transcript order form was filed stating that a transcript is not necessary. (Appeal No. 23-1084) (Text Only Entry) (trvo, ) (Entered: 04/17/2023) |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18cv2076 (WYD)(SKC)

PEATINNA BIGGS


        Plaintiff,

v.

THE COUNTY OF SEDGWICK,
SEDGWICK COUNTY SHERIFF'S DEPARTMENT,
FORMER SHERIFF THOMAS HANNA, and
LARRY NEUGEBAUER
in their individual and official capacity


Defendants.

_____

## CIVIL RIGHTS FIRST AMENDED COMPLAINT WITH REQUEST FOR TRIAL BY JURY
_____

       Plaintiff, by and through her attorneys, Fisher & Byrialsen, P.L.L.C., hereby submits her

First Amended Complaint and Jury Demand and states and avers as follows:


## INTRODUCTION

1.     While in the custody of the Sedgwick County Sheriff's Department, Ms. Peatinna Biggs

was abducted by former Sheriff Thomas Hanna, told to change into her street clothes, put in his

1

personal pick-up truck, brought to his house against her will, sexually molested by him, threatened by him, and paid off by him.  Former Sheriff Hanna knew Ms. Biggs was mentally disabled, and targeted her for that very reason. Deputy Neugebauer knew about the constitutional violations and took 12 days to report the incident, interfering with the prosecution's ability to later obtain a rape kit, collect DNA evidence, and document physical injuries.

2.      This is an action brought by Ms. Biggs pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 and 1988 and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, and the Colorado State Constitution for relief through compensatory damages and attorney's fees to vindicate profound deprivations of her constitutional rights caused by false imprisonment, excessive and unlawful sexual assault, cruel and unusual punishment, intentional infliction of emotional distress, and violation of her due process rights, and the conspiracy to deprive her of her constitutionally protected rights.

## **JURISDICTION**

3.      This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. §§1983, 1985, 1986 and 1988.  The Jurisdiction of this Court is invoked pursuant to 28 U.S.C.§§ 1331 and 1343.

**VENUE**

4.      This case is instituted in the United States District Court for the District of Colorado pursuant to 28 U.S.C.§1391 as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

**PARTIES**

5.      At all times relevant hereto, Ms. Biggs was a resident of the State of Colorado and a citizen of the United States of America.

6.      At all times relevant hereto, Defendant former Sheriff Thomas Hanna was a  resident of the State of Colorado and citizen of the United States of America.  At all times relevant hereto, former Sheriff Thomas Hanna was  acting under the color of law when he misused his authority as complained of herein and is sued in his individual capacity.

7.      At all times relevant hereto, Defendant Larry Neugebauer was a resident of the State of Colorado and citizen of the United States of America. At all times relevant hereto, Larry Neugebauer was acting under the color of law when he misused his authority as complained of herein and is sued in his individual capacity.

8.      At all times relevant hereto, the County of Sedgwick is a Colorado municipal corporation and is the legal entity responsible for itself and for its agents and employees.  Former Sheriff Thomas Hanna and Deputy Neugebauer at all times relevant thereto, was employed by the Sedgwick County Sheriff's Department, an agency of the County of Sedgwick. The County of Sedgwick is a proper local governmental entity to be sued under 42 U.S.C. § 1983.

3

Appellate Case: 23-1084   Document: 010110889549   Date Filed: 07/17/2023   Page: 27

## STATEMENT OF FACTS

9.      Ms. Biggs is mentally disabled.

10.     Ms. Biggs underwent IQ and/or adaptive testing as a child and was deemed disabled by the Social Security Administration.

11.     Ms. Biggs attended special education classes in elementary, middle, and high school. She required teacher assistance to read, write, and perform basic math calculations. She tested year after year cognitively and functionally below grade average and continued to be designated as special needs.

12.     Ms. Biggs obtained a special diploma. She was not included in the class rankings with the other students who received general diplomas.

13.     Ms. Biggs continues to receive disability from the Social Security Administration for learning and cognitive disabilities.

14.     Ms. Biggs has not yet been designated a "legal representative" by the Court as defined by Colo. Rev. Stat. § 13-81-101.

15.     Eastern Colorado Services is evaluating Ms. Biggs for services such as housing assistance, job placement, and health benefits, due to her cognitive and learning disabilities.

16.     The Probation Officer for Sterling County, the Sedgwick County Sheriff's Department, and the Logan County District Attorney's Office were aware of Ms. Bigg's cognitive and learning disabilities.  The Logan County District Attorney's Office labeled Ms. Biggs an at-risk adult when bringing charges against former Sheriff Hanna.

17.     Ms. Biggs retained civil rights counsel well after the subject incident.  Her civil rights counsel are not "legal representatives" as defined by Colo. Rev. Stat. § 13-81-101.

4

18.     On or around August 10, 2016, Ms. Peatinna Biggs was incarcerated in the Sedgwick County Jail located at 315 Cedar St., Julesburg, CO 80737.

19.     The Sedgwick County Jail was run by former Sheriff Thomas Hanna, the highest ranking law enforcement officer in Sedgwick County.

20.     On or around August 10, 2016, former Sheriff Hanna came to work at the Sheriff's Department, also located at 315 Cedar St., Julesburg, CO 80737, with his personal pick-up truck. He left his department issued police vehicle at home.

21.     That day, former Sheriff Hanna told Sedgwick Deputy Sheriff Larry Neugebauer that he was going to personally transfer Ms. Biggs to Logan County Jail.

22.     Deputy Neugebauer asked former Sheriff  Hanna if he was going to transport Ms. Biggs in his personal pick-up truck and former Sheriff Hanna said, "yes."

23.     Both Hanna and Neugebauer knew it was a violation of Sedgwick County Sheriff's Office Department policy to transport inmates, especially inmates of the opposite sex, in officer's personal vehicles.

24.     Former Sheriff  Hanna went to the cell where Ms. Biggs was held and told her to put on her street clothes which he handed her to change into.

25.     Both Hanna and Neugebauer knew it was highly unusual to have an inmate change from department issued jumpsuits into street clothes before being transferred.

26.     At approximately 12:15 p.m., Deputy Neugebauer was driving toward the Sedgwick County Combined Court, also located at 315 Cedar St., Julesburg, CO 80737,  and saw former Sheriff Hanna place Ms. Biggs, wearing street clothes, in handcuffs, into his personal pick-up truck.

27.     Former Sheriff Hanna placed Ms. Biggs in the front passenger seat of his personal vehicle and removed her handcuffs. He locked the door so she would not be free to leave.

28.     Ms. Biggs was confused and terrified about what was happening, and what would happen to her.

29.     Former Sheriff Hanna then transported Ms. Biggs to his home in his pick-up truck.

30.     Both Hanna and Neugebauer knew it was a violation of Sedgwick County Sheriff's Office Department policy to bring an inmate, especially an inmate of the opposite sex, into an officer's home.

31.     Former Sheriff Hanna ordered Ms. Biggs inside his home.

32.     Ms. Biggs remained confused and terrified about what was happening, and what would happen to her.

33.     Ms. Biggs remained unhandcuffed as she was ordered to go from former Sheriff Hanna's pick-up truck into his house.

34.     Ms. Biggs also remained unhandcuffed inside of former Sheriff Hanna's home.

35.     Ms. Biggs did not feel free to leave former Sheriff Hanna's home for fear of being physically harmed by former Sheriff Hanna or being arrested on new charges.

36.     Inside his home, former Sheriff Hanna offered Ms. Biggs $60.00 to have sex with him, which Ms. Biggs refused.  At this time, former Sheriff Thomas Hanna had a gun visible in his holster.

37.     After Ms. Biggs refused former Sheriff Hanna's offer of $60 for sex, he ordered Ms. Biggs to take off all of her clothes.  Former Sheriff Thomas Hanna's gun was still visible.

38.     In fear of her life, Ms. Biggs complied with former Sheriff Hanna's orders to undress.

6

39.     Ms. Biggs, embarrassed and afraid, stood naked in former Sheriff Hanna's home.

40.     Former Sheriff Hanna then took off his department issued uniform pants and his underwear.

41.     Former Sheriff Hanna then sexually molested Ms. Biggs by digitally penetrating her vagina without her consent.  This touching was forceful, unwanted, and unlawful.

42.     Former Sheriff Hanna's gun remained visible on the coffee table as he sexually molested Ms. Biggs.

43.     After sexually molesting Ms. Biggs, former Sheriff Hanna threatened Ms. Biggs that if she told anyone about what he had done she would spend the rest of her life in prison.

44.     As the highest ranking law enforcement officer in Sedgwick County, Ms. Biggs genuinely believed former Sheriff Hanna was capable of following through on his threat to incarcerate her for the rest of her life.

45.     After former Sheriff Hanna placed Ms. Biggs in his pick-up truck, Deputy Neugebauer drove to his own house for his lunch break.

46.     Deputy Neugebauer drove past former Sheriff Hanna's house.  He saw former Sheriff Hanna's pick-up truck parked in his driveway next to his department issued vehicle.

47.      Deputy Neugebauer did not see anyone in the pickup truck.

48.     Deputy Neugebauer again drove past former Sheriff Hanna's residence on his way back to the station from lunch.

49.     Former Sheriff Hanna's pickup truck and department issued vehicle were still parked in

the front of former Sheriff Hanna's house.  Deputy Neugebauer again did not see anyone in the pick-up truck.

50.     After sexually molesting Ms. Biggs, former Sheriff Hanna handcuffed her and put her back into his pick-up truck.

51.     At approximately 12:51 p.m. that day, former Sheriff  Hanna logged on with Dispatch and indicated that he was only now taking Ms. Biggs to Logan County.

52     After transporting Ms. Biggs to Login County, Sheriff Hanna put $20.00 into Ms. Biggs commissary account without Ms. Biggs' request.

53.     At all time relevant, former Sheriff Hanna was employed by Sedgwick County and acting in the scope of his employment.

54.     Sedgwick County Sheriff's Office, an agency of Sedgwick County, had a policy committed to zero-tolerance of any form of sexual abuse and sexual harassment in facilities it operated directly or with which it holds contracts.   Sexual abuse of an inmate and sexual harassment of an inmate was prohibited.

55.     Ms. Biggs did not report being a victim of sexual assault because former Sheriff Hanna threatened that she would spend the rest of her life in prison if she said anything.

56.     Deputy Neugebauer failed to interfere. He knew and/or reasonably suspected that former Sheriff Hanna had violated Ms. Biggs' constitutionally protected rights and did not report the incident on August 10, 2016.

57.     Deputy Neugebauer conspired with Former Sheriff Hanna to coverup and not report on August 10, 2016, the sexual assault of a mentally disabled inmate. Hanna also did not report the incident.

58.     Deputy Neugebauer failed to interfere and did not report the incident on August 11, 2016.

59.     Deputy Neugebauer conspired with Former Sheriff Hanna to coverup and not report on August 11, 2016, the sexual assault of a mentally disabled inmate. Hanna also did not report the incident.

60.     Deputy Neugebauer failed to interfere and did not report the incident on August 12, 2016.

61.     Deputy Neugebauer conspired with Former Sheriff Hanna to coverup and not report on August 12, 2016, the sexual assault of a mentally disabled inmate. Hanna also did not report the incident.

62.     Deputy Neugebauer failed to interfere and did not report the incident on August 13, 2016.

63.     Deputy Neugebauer conspired with Former Sheriff Hanna to coverup and not report on August 13, 2016, the sexual assault of a mentally disabled inmate. Hanna also did not report the incident.

64.     Deputy Neugebauer failed to interfere and did not report the incident on August 14, 2016.

65.     Deputy Neugebauer conspired with Former Sheriff Hanna to coverup and not report on August 14, 2016, the sexual assault of a mentally disabled inmate. Hanna also did not report the

incident.

66.     Deputy Neugebauer failed to interfere and did not report the incident on August 15, 2016.

67.     Deputy Neugebauer conspired with Former Sheriff Hanna to coverup and not report on August 15, 2016, the sexual assault of a mentally disabled inmate.  Hanna also did not report the incident.

68.     Deputy Neugebauer failed to interfere and did not report the incident on August 16, 2016.

69.     Deputy Neugebauer conspired with Former Sheriff Hanna to coverup and not report on August 16, 2016, the sexual assault of a mentally disabled inmate. Hanna also did not report the incident.

70.     Deputy Neugebauer failed to interfere and did not report the incident on August 17, 2016.

71.     Deputy Neugebauer conspired with Former Sheriff Hanna to coverup and not report on August 17, 2016, the sexual assault of a mentally disabled inmate.  Hanna also did not report the incident.

72.     Deputy Neugebauer failed to interfere and did not report the incident on August 18, 2016.

73.     Deputy Neugebauer conspired with Former Sheriff Hanna to coverup and not report on August 18, 2016, the sexual assault of a mentally disabled inmate. Hanna also did not report the incident.

74.     Deputy Neugebauer failed to interfere and did not report the incident on August 19, 2016.

10

75.     Deputy Neugebauer conspired with Former Sheriff Hanna to coverup and not report on August 20, 2016, the sexual assault of a mentally disabled inmate.  Hanna also did not report the incident.

76.     Deputy Neugebauer failed to interfere and did not report the incident on August 20, 2016.

77.     Deputy Neugebauer conspired with Former Sheriff Hanna to coverup and not report on August 20, 2016, the sexual assault of a mentally disabled inmate. Hanna also did not report the incident.

78.     Deputy Neugebauer failed to interfere and did not report the incident on August 21, 2016.

79.     Deputy Neugebauer conspired with Former Sheriff Hanna to coverup and not report on August 21, 2016, the sexual assault of a mentally disabled inmate. Hanna also did not report the incident.

80.     Twelve days later, on August 22, 2016, Deputy Neugebauer reported the incident to the Logan County District Attorney's Office.

81.     Ms. Biggs was interviewed by the Logan County District Attorney's Office. Because both Hanna and Neugebauer conspired to coverup and not report the incident for twelve days, it was too late for a rape kit to be performed on Ms. Biggs or for other DNA evidence to be collected.

11

82.   On August 24, 2016, former Sheriff  Hanna was arrested and charged with Sexual Assault on an At Risk Adult,   18-6.5-103(7)(a),   Sexual   Conduct   in   a Correctional  Institute, 18-7-701, First Degree Official Misconduct, 18-8-404(a)(a), and Soliciting Prostitution, 18-7-202(1)(a) by the 13th Judicial District Attorney's Office  filed  in  Logan  County  under  docket  number 2016CR207.



82.   Bail and a protective order for Ms. Biggs were issued against former Sheriff Hanna.

83.   Former Sheriff Hanna was kicked out of office.

84.   A jury found him guilty of willfully violating the department's policies.

85.   Former Sheriff Hanna is currently on probation.

86.   Ms. Biggs is no longer in custody and has completed her term of probation.

87.   Though a protective order is in place, Ms. Biggs continues to reside in Sedgwick county and she fears former Sheriff Hanna will sexually assault her again or seek retribution against her.

88.   Ms. Biggs has been clinically diagnosed with Post-Traumatic Stress Disorder caused by the sexual assault of former Sheriff Hanna.

89.   Since her sexual assault, Ms. Biggs has suffered from embarrassment, humiliation, insomnia, night terrors, and anxiety.   She now fears intimacy.   She constantly lives in fear that she will be sexually assaulted again.

90.     The County of Sedgwick and the Sedgwick County Sheriff's Department did not have any policy in place to oversee and internally monitor the actions of its highest ranking law enforcement officer- former Sheriff Hanna. This lack of oversight allowed former Sheriff Hanna's actions to go unchecked and unmonitored throughout his term as the highest ranking law enforcement officer.

91.     Former Sheriff Hanna knew there was no policy in place to oversee and internally monitor his actions.  As a result, he knew his decision to abduct, kidnap, threaten, molest, and payoff Ms. Biggs, and coverup and fail to report the incident, would go unchecked.  Had Deputy Neugebauer not witnessed former Sheriff Hanna's actions on August 10, 2016, then Hanna's actions would never have been known, nor would he have been replaced as as the Sheriff of Sedgwick County.

92.     Deputy Neugebauer eventually reported former Sheriff Hanna's actions to the Logan County District Attorney's Office because there was no other supervisor, bureau, or department at the Sedgwick County Sheriff's Office that could review the actions of former Sheriff Hanna.

93.     The County of Sedgwick and the Sedgwick County Sheriff's Department allowed former Sheriff Hanna to be above the law by failing to have any oversight or internal monitoring of his actions. As a result, former Sheriff Hanna went undisciplined and unsupervised throughout his term as Sheriff, leading to the horrendous assault and molestation of Ms. Biggs.

94.     Former Sheriff Hanna, as the highest ranking law enforcement officer, approved of the constitutional violations both he and Deputy Neugebauer committed against Ms. Biggs.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 –Excessive Force Under Eighth Amendment
### (Against Defendant Hanna)

95.     Ms. Biggs relies on each of the above facts in supporting her claim.

96.     Former Sheriff Hanna engaged in a deliberate and outrageous invasion of Ms. Bigg's

bodily integrity that shocks the conscience in violation of her rights under the Fourth, Eighth and

Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983.

97.     Though Ms. Biggs was an inmate, in the custody of the Sedgwick County Sheriff's

Department, she was abducted and taken against her will, and in violation of department policy,

to Defendant Hanna's personal residence.  While inside the residence, Defendant Hanna kept his

gun visible at all times.  He threatened Ms. Biggs and ordered that she completely undress. He

then sexually molested her without consent. The sexual assault was forceful, unwanted, and

unlawful.

98.     Defendant Hanna misused and abused the official power granted to him by the state in

the performance of his official duties thereby causing the harm to Ms. Biggs.

99.     Defendant Hanna engaged in conduct with malice and reckless or callous indifference to

the constitutional and statutory rights of Ms. Biggs.


### SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 –Outrageous Conduct/Intentional Infliction of Emotional Distress/
### Cruel and Unusual Punishment under the Eighth Amendment
### (Against Defendant Hanna)

100.    Ms. Biggs relies on each of the above facts in supporting her claim.

101.    Defendant Hanna, acting within the scope of his employment, recklessly and with the intention of causing Ms. Biggs severe emotional distress, engaged in extreme and outrageous conduct by sexually assaulting Ms. Biggs, and by promoting a threatening and unduly hostile and antagonistic environment in violation of her rights under the Eighth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983.

102.    Though Ms. Biggs was an inmate, in the custody of the Sedgwick County Sheriff's Department, she was abducted and taken against her will, and in violation of department policy, to Defendant Hanna's personal residence.  While inside the residence, Defendant Hanna kept his gun visible at all times.  He threatened Ms. Biggs and ordered that she completely undress. He then sexually molested her without consent. The sexual assault was forceful, unwanted, and unlawful.

103.    As a direct and proximate result of Defendant Hanna's acts, which were so outrageous in character and extreme in degree as to be utterly intolerable in a civilized community, Ms. Biggs suffered severe emotional distress and was injured and damaged as a result.

104.    Ms. Biggs was under the custody of the Defendant Hanna and the Sedgwick County Sheriff's Department. Defendant Hanna's acts against Ms. Biggs, as both an inmate and disabled person, were cruel and unusual, in violation of the Eighth Amendment.

105.    Defendant Hanna engaged in conduct with malice and reckless or callous indifference to the rights of Ms. Biggs.


**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 –False Imprisonment under the Fourth and Fourteenth Amendment**
**(Against Defendant Hanna)**

106.    Ms. Biggs relies on each of the above facts in supporting her claim.

15

107.   Though Ms. Biggs was an inmate, in the custody of the Sedgwick County Sheriff's Department, she was abducted and taken against her will, and in violation of department policy, to Defendant Hanna's personal residence.  While inside the residence, Defendant Hanna kept his gun visible at all times.  He threatened Ms. Biggs and ordered that she completely undress. He then sexually molested her without consent. The sexual assault was forceful, unwanted, and unlawful.

108.   At the time of the imprisonment, Ms. Biggs knew her freedom of movement had been restricted.  She was not free to leave Defendant Hanna's car or residence for fear of further physical assault or additional criminal charges being levied against her.

109.    Ms. Biggs was falsely imprisoned in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983.

110.   As a direct and proximate result of Defendant Hanna's actions, Ms. Biggs suffered injury and damages, including severe mental and emotional distress.

111.   Defendant Hanna engaged in conduct with malice and reckless or callous indifference to the rights of Ms. Biggs.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 –Sexual Assault and Battery**
**(Against Defendant Hanna)**

112.   Ms. Biggs relies on each of the above facts in supporting her claim.

113.   Defendant Hanna, acting within the scope of his agency, assaulted and battered Ms. Biggs by threatening her and digitally penetrating her genitals without her consent.  Defendant Hanna intentionally and unlawfully caused Ms. Biggs to fear offensive and harmful contact, and intentionally and unlawfully caused such offensive and harmful contact to occur.

16

114.    As a direct and proximate result of Defendant Hanna's actions, Ms. Biggs suffered injury and damages, including severe mental and emotional distress.

115.    Defendant Hanna engaged in conduct with malice and reckless and callous indifference to the rights of Ms. Biggs.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 –Equal Protection**
**(Against Defendant Hanna and Defendant Neugebauer)**

116.    Ms. Biggs relies on each of the above facts in supporting her claim.

117.    Defendant Hanna prayed on Ms. Biggs because she was a mentally disabled female. Defendant Hanna intentionally treated Ms. Biggs differently than other similarly situated inmates on account of her sex and mental disability, and motivated by animus against her sex and mental disability, deprived her of the equal protection of the laws, in violation of her rights, under the Fourteenth Amendment of the United States Constitution and 42 U.S.C § 1983.

118.    Sedgwick County Sheriff's Office had a policy to take appropriate steps to ensure that inmates with disabilities, including intellectual disabilities, have an equal opportunity to benefit from all aspects of the department's efforts to prevent, detect, and respond to sexual abuse and sexual harassment.

119.    Defendant Hanna and Defendant Neugebauer knew Ms. Biggs suffered from a mental disability.

120.    Defendant Hanna targeted Ms. Biggs for sexual assault based on her status as a mentally disabled female. He abused his authority under the color of law to threaten her into submission and threaten her to remain silent.  Ms. Biggs was not provided equal protection under the laws.

121.    Based on Ms. Biggs' status as a mentally disabled female, Defendant Neugebauer

17

conspired with Defendant Hanna to coverup the incident and failed to report Defendant Hanna's actions for 12 days.  As a result, too much time had passed for a rape kit to be administered, DNA evidence to be collected, or physical injuries to be documented.  Defendant Neugebauer's actions in conspiring with Defendant Hanna to coverup the incident and not report for 12 days hindered the Logan County District Attorney's Office investigation of the case.

122.   As a direct and proximate result of the actions of Defendant Hanna and Defendant Neugebauer, Ms. Biggs suffered injury and damages, including severe mental and emotional distress.

123.   Defendant Hanna and Defendant Neugebauer engaged in conduct with malice and reckless and callous indifference to the rights of Ms. Biggs to equal protection under the law.


### SIXTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 –Fourteenth Amendment Substantive Due Process
### (Against Defendant Hanna and Defendant Neugebauer)

124.   Ms. Biggs relies on each of the above facts in supporting her claim.

125.   By sexually assaulting Ms. Biggs, Defendant Hanna recklessly, with conscious disregard to the serious and obvious risk to her safety, and with deliberate indifference, violated Ms. Bigg's protected rights, including right to bodily integrity

126.   By taking Ms. Biggs into his own custody, and thereby assuming control over her and depriving her of her liberty to care for herself, Defendant Hanna created a special relationship with Ms. Biggs that required him to assume an affirmative duty of care and protection for Ms. Biggs.

127.   Defendant Hanna failed to protect Ms. Biggs from sexual assault, and created the very

danger and hostile environment that resulted in Ms. Bigg's sexual assault.

128.   Defendant Hanna was aware of the substantial risk of harm to Ms. Biggs.

129.   Defendant Hanna, as the senior most law enforcement official in Sedgwick County decided to deliberately ignore the county's zero tolerance sexual assault policies.

130.   Defendant Hanna placed Ms. Biggs at substantial risk of serious, immediate, and proximate harm.

131.   Defendant Hanna caused Ms. Biggs serious and immediate harm.

132.   Defendant Hanna's conduct was grossly reckless and shocks the conscience.

133.   Defendant Hanna's conduct and decisions as Sedgwick County's senior most law enforcement office, was the legal and proximate cause of Ms. Bigg's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish.

134.   Based on Ms. Biggs' status as a mentally disabled female, Defendant Neugebauer conspired with Defendant Hanna to coverup the incident and failed to report Defendant Hanna's actions for 12 days.  As a result, too much time had passed for a rape kit to be administered, DNA evidence to be collected, or physical injuries to be documented.  Defendant Neugebauer's actions in conspiring with Defendant Hanna to coverup the incident and not report for 12 days hindered the Logan County District Attorney's Office investigation of the case.

135.   The decisions of Defendant Hanna and Defendant Neugebauer, in both their individual and official capacity, violated Ms. Bigg's substantive due process rights under the Fourteenth Amendment.

## SEVENTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 –Right to Privacy
### (Against Defendant Hanna)

136.    Ms. Biggs relies on each of the above facts in supporting her claim.

137.    Defendant Hanna abused his authority under the color of law ordering Ms. Biggs to

undress in his house and for his own personal and sexual amusement.

138.    This violation of privacy caused Ms. Biggs embarrassment, humiliation, and shame.

139.    There was no legitimate policy or goal to justify Defendant Hanna's invasion of Ms.

Bigg's privacy.

140.    The conduct was grossly reckless, malicious, and with callous indifference to Ms. Bigg's

right to privacy.

141.    Defendant Hanna's abuse of his authority under the color of law was the legal and

proximate cause of Ms. Bigg's damages in that she suffered a violation of her right to privacy,

humiliation, and mental and emotional pain and anguish.


## EIGHTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 –Municipal Liability

142.    Ms. Biggs relies on each of the above facts in supporting her claim.

143.    The County of Sedgwick and the Sedgwick County Sheriff's Department did not have

any policy in place to oversee and internally monitor the actions of its chief supervising law

enforcement officer- Defendant Sheriff Hanna. This lack of oversight allowed Defendant

Hanna's actions to go unchecked and unmonitored throughout his term as the chief supervising

law enforcement officer.

144. Defendant Hanna knew there was no policy in place to oversee and internally monitor his actions. As a result, he knew his decision to abduct, kidnap, threaten, molest, and payoff Ms. Biggs would go unchecked. Had Defendant Neugebauer not witnessed Defendant Hanna's actions on August 10, 2016, then his actions would never have been known, nor would he have been replaced as as the Sheriff of Sedgwick County.

145. Defendant Neugebauer eventually reported Defendant Hanna's actions to the Logan County District Attorney's Office because there was no other supervisor, bureau, or department at the Sedgwick County Sheriff's Office that could review Defendant Hanna's actions.

146. The County of Sedgwick and the Sedgwick County Sheriff's Department allowed Defendant Hanna to be above the law.

147. Former Sheriff Hanna, as the chief supervising law enforcement officer, approved of the constitutional violations both he and Defendant Neugebauer committed against Ms. Biggs.

148. Sedgwick county is liable for the constitutional injuries resulting from Defendant Hanna's conduct with malice and reckless and callous indifference to the rights of Ms. Biggs to equal protection under the law.

149. Sedgwick County's policy was the moving force behind Ms. Bigg's constitutional injury.

150. Sedgwick County's "zero tolerance" policies against sexual assault of inmates by employees was not followed. Sedgwick County and Sedgwick County Sheriff's Department did not have a policy in place to oversee or internally monitor Defendant Hanna's actions with regard to this policy.

151. Sedgwick County's policies ensuring the equal protection of the laws for those suffering from disabilities, including intellectual disabilities, was not followed. Sedgwick County and

Sedgwick County Sheriff's Department did not have a policy in place to oversee or internally monitor Defendant Hanna's actions with regard to this policy.

152.    Sedgwick County's policies prohibiting the transport of inmates in officer's personal vehicles, and to their residences, was not followed.  Sedgwick County and  Sedgwick County Sheriff's Department did not have a policy in place to oversee or internally monitor Defendant Hanna's actions with regard to this policy.

153.    By deciding to blatantly defying lawful municipal policy or custom,  Defendant Hanna falsely imprisoned Ms. Biggs, sexually assaulted her,  caused her severe emotional distress, caused her cruel and inhumane treatment, all in violation of her equal protection of rights.

154.    Sedgwick County and  Sedgwick County Sheriff's Department's lack of policy to oversee or internally monitor Defendant Hanna's actions, was the driving force behind Ms. Bigg's constitutional violations.

155.    As a direct and proximate result of County of Sedgwick and the Sedgwick County Sheriff's Department's lack of oversight and policy, allowing Defendant Hanna to act above the law, Ms. Biggs suffered injury and damages, including severe mental and emotional distress.


**NINTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 –Failure to Intervene**
**(Against Defendant Hanna and Neugebauer)**

156.    Ms. Biggs relies on each of the above facts in supporting her claim.

157.    Members of the Sedgwick County Sheriff's Department, have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the Sedgwick County Sheriff's

Department violating the constitutional rights of an inmate.

158.    Defendant Neugebauer witnessed Defendant Hanna place Ms. Biggs, wearing her street clothes, into Defendant Hanna's personal truck.  Defendant Neugebauer knew that Defendant Hanna had Ms. Biggs inside of Defendant Hanna's personal residence.  Defendant Neugebauer knew and/or reasonably suspected that former Sheriff Hanna had violated Ms. Biggs' constitutionally protected rights and did not report the incident on August 10, 2016.

159.    Defendant Neugebauer failed to interfere and did not report the incident between August 10, 2016 and August 21, 2016. Defendant Hanna also did not report.

160.    Twelve days later, on August 22, 2016, Defendant Neugebauer reported the incident to the Logan County District Attorney's Office.

161.    Ms. Biggs was interviewed by the Logan County District Attorney's Office.  It was too late for a rape kit to be performed on Ms. Biggs, for other DNA evidence to be collected, or injuries to be documented.

162.    Defendant Neugebauer and Defendant Hanna violated Ms. Bigg's constitutional rights by failing to intervene in the clearly unconstitutional actions that resulted in injury and damages.


**TENTH CLAIM FOR RELIEF**
**42 U.S.C. §§ 1985 and 1986-Conspiracy to Interfere with Civil Rights**
**(Against Defendant Hanna and Defendant Neugebauer)**

163.    Ms. Biggs relies on each of the above facts in supporting her claim.

164.    Defendant Hanna and Defendant Neugebauer had an express and/or implicit agreement to conspire with each other, for the purpose of impeding, hindering, obstructing, or defeating the due course of justice, covering up the unlawful and unconstitutional actions of Defendant Hanna,

23

delaying reporting that Ms. Bigg's Fourth, Eighth, and Fourteenth Amendment rights were being violated, and preventing, obstructing, or otherwise interfering with the Logan County District Attorney's Office ability to perform a rape kit, otherwise test or collect DNA evidence, or document physical injuries.

165.    Because the County of Sedgwick and the Sedgwick County Sheriff's Department lacked oversight or internal monitoring of Defendant Hanna's actions -making him above the law- Defendant Hanna and Defendant Neugebauer believed their attempts to cover up Defendant Hanna's unlawful and unconstitutional conduct would not be disciplined.

166.    Defendant Hanna targeted Ms. Biggs because of her known mental disabilities. Defendant Hanna violated Ms. Biggs protected constitutional rights because he knew he could take advantage of her because of her mental disability and that she would be susceptible to threats, coercion and duress.    Defendant Neugebauer failed to interfere because he knew Ms. Biggs was likely to not report the incident as a result of her mental disability.  For these reasons, Defendant Hanna and Defendant Neugebaurer conspired to impede, hinder, obstruct, or defeat the due course of justice, cover up the unlawful and unconstitutional actions of Defendant Hanna, delayed reporting that Ms. Bigg's Fourth, Eighth, and Fourteenth Amendment rights were being violated, and prevented, obstructed, or otherwise interfered with the Logan County District Attorney's Office ability to perform a rape kit, otherwise test or collect DNA evidence, or document physical injuries.

167.    Defendant Hanna and Defendant Neugebauer deprived Ms. Biggs of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused her damages.

168.   As a direct result of the unlawful conduct of Defendant Hanna and Defendant Neugebauer, Mr. Biggs has suffered emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial.   As a further result of the Defendants' unlawful conduct, Ms. Biggs has incurred special damages in amounts to be established at trial. Ms. Biggs is further entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

## PRAYER FOR RELIEF

169.   Plaintiff Peatinna Biggs ask that this Court enter judgment for her and against each of the Defendants and grant and award:

A.   Compensatory and consequential damages, including damages for emotional distress, loss of enjoyment of life, and other suffering on all claims allowed by law in an amount to be determined at trial;

B.   Economic losses on all claims allowed by law;

C.   Attorneys' fees and the costs associated with this action on all claims allowed by law;

D.   Pre- and post-judgment interest at the lawful rate;

E.   Declaratory and injunctive relief appropriate to the constitutional violations in this case, and;

F.   Any other appropriate relief at law and equity that this court deems just and proper.

Appellate Case: 23-1084     Document: 010110889549     Date Filed: 07/17/2023     Page: 49

### REQUEST FOR TRIAL BY JURY

Ms. Biggs  hereby requests a trial by jury.

Date:  October 20, 2018

/s/Kaitlin F. Nares Esq.
**Fisher & Byrialsen, PLLC**
4600 S. Syracuse Street, 9th Floor
Denver, CO 80237
T: 303-256-6345
Kaitlin@FBLaw.org

26

Appellate Case: 23-1084   Document: 010110889549   Date Filed: 07/17/2023   Page: 50

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-002076-WYD-SKC

PEATINNA BIGGS,

      Plaintiff,

v.

THE COUNTY OF SEDGWICK,
SEDGWICK COUNTY SHERIFF'S DEPARTMENT,
FORMER SHERIFF THOMAS HANNA, AND
LARRY NEUGEBAUER,
in their individual and official capacity,

      Defendants.

---

## MOTION TO DISMISS

---

Defendants, **THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK** (incorrectly designated above as The County of Sedgwick), by their attorneys, **SENTER GOLDFARB & RICE, LLC**, and pursuant to Fed.R.Civ.P. 12(b)(6), hereby move the Court for an order dismissing Plaintiff's First Amended Complaint [ECF No. 16], and in support thereof, state as follows:

### <u>CERTIFICATE OF COMPLIANCE</u>

1.       Pursuant to D.C.COLO.LCivR 7.1(b)(2), undersigned counsel were not required to confer with opposing counsel prior to filing this Motion.

Appellate Case: 23-1084   Document: 010110889549   Date Filed: 07/17/2023   Page: 51

## I.     FACTS AS PLED IN THE AMENDED COMPLAINT

2.      On August 10, 2016, Plaintiff, who considers herself to be mentally disabled pursuant to a finding of the Social Security Administration, was an inmate at the Sedgwick County Jail, located in Julesburg, Colorado. [*See* Amended Complaint, ¶¶ 9–13, 15, 16, 18.]

3.      At that time, The Sedgwick County Jail was run by the then Sheriff of Sedgwick County, Thomas Hanna ("Hanna"). [*Id.*, ¶ 19.]

4.      That day, Hanna informed then Deputy Sheriff of Sedgwick County Larry Neugebauer ("Neugebauer") that he would be personally transporting Plaintiff to the Logan County Jail using his personal vehicle. [*Id.*, ¶¶ 21 and 22.]

5.      At approximately 12:15 p.m. that afternoon, Neugebauer witnessed Hanna assist Plaintiff into the sheriff's personal vehicle. [*Id.*, ¶ 26.]

6.      Hanna then transported Plaintiff to his home and molested her. [*Id.*, ¶¶ 26, 29, 31, 34, 41, 50.]

7.      Although Neugebauer witnessed Hanna's empty vehicle parked in front of the sheriff's home, at no time did Neugebauer witness or have knowledge of the molestation. [*Id.*, ¶¶ 45–49.]

8.      At approximately 12:51 p.m., Hanna transported Plaintiff to the Logan County Jail, thereby relieving himself of custody over Plaintiff later that day. [*Id.*, ¶¶ 51 and 52.]

9.      The extent of Hanna's actions as they relate to Plaintiff were in clear violation of "Sedgwick County Sheriff's Office Department policy," to include its prohibition on the use of personal vehicles to transport inmates, the act of transporting an inmate to an officer's home, as well as the act of an officer engaging in sexual contact with an inmate. [*See id.*, ¶¶ 23, 30, 54.]

10.     12 days later, on August 22, 2016, Neugebauer reported what he had witnessed to the Logan County District Attorney. Specifically, that Hanna had used a personal vehicle to transport Plaintiff and that he had later seen this vehicle parked in front of the sheriff's home. [*Id.*, ¶¶ 22, 23, 46–50, 80.]

11.     As a result of Neugebauer's voluntary report, an investigation ensued and Plaintiff was interviewed by the Logan County District Attorney's Office. [*Id.*, ¶ 81.]

12.     Two days following Neugebauer's report and 14 days following the August 10, 2016 incident, Hanna was arrested. [*Id.*, ¶ 82.] Hanna was later convicted for his willful violation of the "department's policies" and was removed from office as sheriff. [*Id.*, ¶¶ 83 and 84.]

13.     "The County of Sedgwick … did not have any policy in place to oversee and internally monitor the actions of … former Sheriff Hanna." [*Id.*, ¶ 90.]

14.     As a result of the incident, Plaintiff filed this suit against the Board of County Commissioners of the County of Sedgwick (the "Board"), alleging a violation of her civil rights pursuant to 42 U.S.C. § 1983. [*See id.*, ¶¶ 142–155.]

15.     This action was not commenced until August 15, 2018, more than two years after the August 10, 2016 incident involving Hanna. [*See* ECF No. 1, p. 15, filing date inscription.]

## II.     <u>STANDARD OF REVIEW</u>

16.     In order for a complaint to survive a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), it "must contain enough allegations of fact 'to state a claim for relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when its allegations, taken as true, allow the court to "draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court, however, need not accept conclusory allegations without supporting factual averments. *See Ruiz v. McDonell*, 299 F.3d 1173, 1181 (10th Cir. 2002). Moreover, "[i]f the allegations ... show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim..." *Barnes v. United States*, 776 F.3d 1134, 1139 (10th Cir. 2015) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)) (internal quotations omitted).

## III.   ARGUMENT

### A.   THE BOARD IS NOT LIABLE FOR HANNA'S ACTIONS.

17.   Plaintiff's assertions that "Sedgwick County policy was the moving force behind [Plaintiff's] constitutional injury" [Amended Complaint, ¶ 149], and that the Board "is the proper local governmental entity to be sued" [*Id.*, ¶ 8], are conclusory and should therefore not be accepted by the Court. *See Ruiz*, 299 F.3d at 1181.

#### *1.    The Board's policies were not the moving force behind the alleged violation, thus defeating municipal liability.*

18.   County governments may be held liable for civil rights violations under Section 1983 only if such violations result from the "execution of [that] government's policy or custom." *Monell v. Dep't. of Social Serv. of City of New York*, 436 U.S. 658, 694, (1978). To establish municipal liability, a plaintiff must show: (1) the *existence* of a municipal policy or custom; and (2) that there is a *direct causal link* between the policy or custom and the injury alleged. *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Canton v. Harris*, 489 U.S. 378, 385 (1989)) (emphasis added). Meeting this standard requires a showing that "the municipality was the *moving force* behind the injury alleged." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (internal quotations omitted) (emphasis added).

       *a.*     **Plaintiff fails to adequately allege the existence of a Board policy.**

19.    As a preliminary matter, the Amended Complaint lists several "department policies" and expressly attributes these policies to the Sedgwick County Sheriff's Office. [*See* Amended Complaint, ¶¶ 23, 30, 54, 118.] Nowhere in the Amended Complaint, however, does Plaintiff specifically describe how the Board is in any way responsible for the creation or enforcement of these policies. Instead, Plaintiff merely alleges that the Sheriff's Office "is an agency of Sedgwick County." [*Id.*, ¶¶ 8, 54.] As analyzed below, however, the Board and the Sheriff's Office are entirely separate entities and such policies are therefore not attributable to the Board. Moreover, the Amended Complaint also expressly states that "[t]here was *no* legitimate policy or goal to justify Defendant Hanna's [violative acts]" [*id.*, ¶ 139] (emphasis added), again demonstrating Plaintiff's inability to prove the first element of her municipal liability claim. *See Hinton*, 997 F.2d at 782. Because Plaintiff has failed to demonstrate even the existence of a single Board policy, her claims against the Board should be dismissed.

       *b.*     **Plaintiff fails to adequately allege a causal link between**
                    **government policy and the alleged violation.**

20.    Even assuming, *arguendo*, that the "department policies" could fairly be attributed to the Board, Plaintiff also fails to establish a direct causal link between these policies and the alleged violations. The policies in question, as described by Plaintiff, include a "zero tolerance" approach to sex assault on inmates, a policy on equal protection for inmates with mental disabilities, and a policy "prohibiting transport of inmates in officers' personal vehicles, and to their residences." [*See* Amended Complaint, ¶¶ 23, 30, 54, 118.] The Amended Complaint, however, goes on to expressly state that each of these policies were "not followed" on the day of the incident and describes these acts as "blatantly defying lawful municipal policy or custom."

[*Id*., ¶¶ 150–153.] Hanna's actions could therefore not have been motivated by, or causally linked to the policies at issue given Plaintiff's own acknowledgement that he was in clear breach of such policies throughout the course of the incident. *See Henderson v. City & Cty. of Denver*, 12-CV-0625-WJM-BNB, 2014 WL 222761, at *7 (D. Colo. Jan. 21, 2014) (dismissing municipal liability claim for failure to establish a "causal link" where defendants showed that violative acts were in breach of official policy). Because Plaintiff has failed to demonstrate a direct causal link between the enumerated policies and the alleged violative acts, she cannot now claim that such policies were the moving force behind the alleged violations. As such, Plaintiff's municipal liability claim should be dismissed.[1]

> **2.**     ***The Board had no notice of the type of constitutional harm alleged by Plaintiff prior to the event in question, thus defeating Plaintiff's failure to act claim.***

21.     Allegations that a governing body should be held liable for a "failure to adopt a policy applicable to the circumstances presented" is properly examined under the "failure to act" analysis. *See Hollingsworth v. Hill*, 110 F.3d 733, 744–45 (10th Cir. 1997). "Where the official policy that forms the basis of a local government liability claim consists of a *failure to act*, the plaintiff must demonstrate that the [entity's] inaction was the result of deliberate indifference to the rights of its inhabitants." *Id.* at 745 (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir.1993) (emphasis added)). "[A] [Board] is deliberately indifferent when [it] deliberately or

---

[1] Although Plaintiff now seeks to introduce new allegations against then Deputy Sheriff Neugebauer to include participation in an alleged conspiracy and his alleged failure to intervene, [*see* Amended Complaint, ¶¶ 162 and 166], Plaintiff fails to present a single Board policy which could have been the moving force behind these claims, nor can she establish a causal link between the "department policies" and these new allegations. As a result, municipal liability cannot be extended based on Plaintiff's newly created allegations which have suddenly materialized in the Amended Complaint. *See Monell*, 436 U.S. at 694.

consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 390 (1989) (internal quotations omitted)).

22.     In her Amended Complaint, Plaintiff now introduces the theory that the Board should be liable because it "did not have any policy in place to oversee and internally monitor the actions of [the sheriff.]" [Amended Complaint, ¶¶ 90, 143, 150–152, 154–155.] As with her previous claims, however, Plaintiff again fails to satisfy or even allege the elements of this claim. Nowhere in the Amended Complaint is there a single allegation or supporting fact demonstrating that the Board had knowledge of, or was at any time presented with, a sexual assault involving a Sedgwick County Jail inmate and a sheriff of Sedgwick County. Nor does Plaintiff demonstrate how, in the time leading up to this event, it would have been reasonable for the Board to assume that its failure to employ what could only be described as a round-the-clock monitoring protocol geared specifically at the sitting sheriff [2] would inevitably result in the constitutional injury similar to that alleged by Plaintiff. As such, Plaintiff has failed to adequately allege her "failure to act" claim against the County and this claim should be dismissed.[3]

---

[2] [*See* Amended Complaint, ¶¶ 143–144, 151–152.]

[3] To the extent that Plaintiff has alleged a *failure to supervise* claim against the Board, such claim fails on the grounds that Plaintiff has presented no facts or allegations that the Board had a duty to oversee a sitting sheriff, which is an essential element of this claim. *See Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1154 (10th Cir. 2006) ("[o]ur cases make clear that failure to supervise is only actionable under § 1983 against a defendant who had a [legal] duty to supervise") (citing *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir.1988)).

### 3.  *Claims against a sheriff are generally not cognizable against a county board.* [4]

23.    Under *McMillian v. Monroe County, Ala*, courts must first look to the relevant state's laws when determining which governmental entity would have control over and would thus be liable for the actions of a local sheriff. *See* 520 U.S. 781, 784–91 (1997) (Applying Alabama law and determining that a county sheriff was actually a state official, thereby relieving the county board of liability for his actions). In Colorado, it has been firmly held that a sheriff and his deputies are entirely separate from a county's governing board. *See Tunget v. Bd. of Cty. Comm'rs of Delta Cty.*, 992 P.2d 650, 651-52 (Colo.App. 1999) (affirming dismissal of claims against a county board and stating "[u]nder both the Colorado Constitution and applicable statutes, sheriffs and boards of county commissioners are treated as separate public entities having different powers and responsibilities") (citing Colo. Const. art XIV, §§ 8 and 8.5); *see also Barrientos-Sanabria v. Lake Cty., Colo.*, 11-CV-00838-KLM, 2012 WL 1642285, at *2 (D. Colo. May 10, 2012) (dismissing claims against a county board stating that although "the [county] has the duty and authority to provide funds for operations by the Sheriff's Office[,] pursuant to the Colorado constitution, the [county board] is a separate, distinct entity from the County Sheriff").

24.    This distinction is even more evident in the area of supervision over county jails and jail inmates. *See Archuleta v. Adams Cty. Bd. of Cty. Comm'rs*, 07-CV-02515-MSK-CBS, 2011 WL 3799029, at *10 (D. Colo. June 14, 2011) ("The sheriff shall have charge and custody

---

[4] Although courts have held that counties could theoretically be liable for a sheriff's actions in specific instances, such liability is only cognizable where it is determined that the sheriff "is held to set the official policy of *the county*." *Sanchez v. Hartley*, 65 F. Supp. 3d 1111, 1127 (D. Colo. 2014), aff'd in part, appeal dismissed in part, 810 F.3d 750 (10th Cir. 2016) (emphasis added). Nowhere in the Amended Complaint, however, does Plaintiff allege that Hanna in any way set the policies of the Board. Accordingly, liability cannot be extended to the Board under this theory.

of the jails of the county, and of the prisoners in the jails, and shall supervise them himself or herself or through a deputy or jailer") (quoting COLO.REV.STAT. § 30–10–511); *see also Estate of Began v. Lake Cty., Colorado Sheriff's Office*, 07-CV-01786-WDM-CBS, 2008 WL 2690702, at *6 (D. Colo. July 3, 2008) ("[a] sheriff, then, is often the final policymaker for matters concerning *the operations of a county jail*") (emphasis added).

25.     Here, Plaintiff is attempting to hold the Board liable for the unlawful acts of a former sheriff, which he took while exercising custody over a then inmate of the Sedgwick County Jail. [Amended Complaint, ¶ 148.] However, because counties and sheriffs are considered separate entities under Colorado law and control over such inmates are uniquely the responsibility of the sheriff and not a county's board, all claims against the Board should be dismissed because they are not cognizable under the circumstances of this case. *See Archuleta*, 2011 WL 3799029, at *10 ("[a] Board of County Commissioners has certain enumerated powers and operation of the jail is not one of them").

**B.     PLAINTIFF'S CONSPIRACY ALLEGATIONS FAIL TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.**

26.     In an apparent attempt to circumvent the statute of limitations defense raised by the Board in seeking to dismiss Plaintiff's original Complaint [ECF No. 1], Plaintiff's Amended Complaint—from whole cloth—now raises allegations of a conspiracy. The veracity of this allegation notwithstanding, Plaintiff and her counsel have failed to adequately plead such claim.

27.     To state a conspiracy claim arising under 42 U.S.C. § 1985, a plaintiff must demonstrate that the alleged conspirators had a (1) meeting of the minds and (2) engaged in concerted action to violate the plaintiff's constitutional rights. *Montoya v. Bd. Of Cty. Comm'rs*, 506 F. Supp. 2d 434, 443 (D. Colo. 2007) In doing so, a plaintiff must allege "*specific facts*

showing agreement and concerted action among defendants …" *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) (citing *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir.1983). (emphasis added). *See also Montoya*, 506 F. Supp. 2d at 443 (holding that a plaintiff "must provide sufficient facts to support the inference that some prearranged plan or joint action existed between the conspirators to engage in all of the alleged conspiratorial activities"). A plaintiff must also show that she was injured in her "person or property" or was "deprived of having and exercising any right or privilege of a citizen of the United States." *See Thornton v. Kaplan*, 937 F. Supp. 1441, 1446 (D. Colo. 1996) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 103–04 (1971)) (internal quotations omitted). "Conclusory allegations of conspiracy are insufficient to state a valid [civil rights] claim." *Durre*, 869 F.2d at 545 (internal citation omitted).

28.    The Amended Complaint merely states that "Deputy Neugebauer conspired with Former Sheriff Hanna to coverup and not report on August [], 2016, the sexual assault of a mentally disabled inmate." [Amended Complaint, ¶ 57.] Plaintiff then goes on to repeat this conclusory statement 11 more times. [*See id.*, ¶¶ 59, 61, 63, 65, 67, 69, 71, 73, 75, 77, 79.] Plaintiff also states that "[b]ased on [Plaintiff's] status as a mentally disabled female, Defendant Neugebauer conspired with Defendant Hanna to coverup the incident," that "Defendant Neugebauer conspired with Defendant Hanna to coverup the incident" and that "Defendant Hanna and Defendant Neugebaurer (sic) conspired to impede, hinder, obstruct, or defeat the due course of justice…" [*See id.*, ¶¶ 121, 134, 166.] None of Plaintiff's vague and conclusory allegations, however, provides a single specific fact inferring the existence of a concerted action, prearranged plan, agreement, or even that a conversation was held between these individuals following the August 10, 2016 incident.

29.     Plaintiff has also failed to allege that the purported 12-day conspiracy—which she asserts began on August 10, 2017—was a concerted action to violate her constitutional rights given that the "conspiracy," as alleged by Plaintiff, would have necessarily been formed subsequent to the violative acts which occurred earlier that day. Additionally, Plaintiff has provided no facts or assertions which demonstrate how an alleged agreement which made it "too late for a rape kit," or which resulted in "DNA evidence [not being] collected" [Amended Complaint, ¶ 81], resulted in an injury to her person or property, or otherwise deprived her of a federally protected right. *See Thornton*, 937 F. Supp. at 1446; *see also Holmes v. Finney*, 631 F.2d 150, 154 (10th Cir. 1980) ("infringement of some federally protected right independent of § 1985(3) is required for a violation of the conspiracy statute"). Because Plaintiff has failed to show the existence of a prearranged plan which deprived her of a federally protected right, she has failed to sufficiently plead her Section 1985 conspiracy claim. Thus, the accrual date for all of Plaintiff's Section 1983 claims should remain August 10, 2016, despite counsel's attempt to creatively plead around a missed filing deadline.[5]

### C.     PLAINTIFF'S CLAIMS ARE TIME-BARRED.

30.     For claims arising under Section 1983, state law governs the applicable statute of limitations period and in Colorado this period is two years. *See Braxton v. Zavaras*, 614 F.3d 1156, 1159–1160 (10th Cir. 2010). "While state law governs limitations and tolling issues, federal law

---

[5] Defendants further note that Plaintiff's allegations involving a violation of Section 1986 are time-barred by the express *one-year* statutory limitations period applicable to such allegations. *See* 42 U.S.C. § 1986 ("no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued").

determines the accrual of § 1983 claims." *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). "A civil rights action accrues when facts that would support a cause of action are or should be apparent." *Id.* (internal citations and quotations omitted); *see also Johnson v. Johnson Cty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) ("Section 1983 claims accrue, for the purpose of the statute of limitations, when the [injured party] knows or has reason to know of the injury which is the basis [for the] action") (internal citations omitted).

31.     Colorado law permits the tolling of a limitations period for individuals with disabilities (such as "mental incompetence") who remain unrepresented. *See Whitington v. Sokol*, 491 F. Supp. 2d 1012, 1014 (D. Colo. 2007) ("The [court] correctly finds that C.R.S. § 13-81-103 provides for the tolling of any limitations period for the commencement of an action by any person suffering from a disability and provides that unrepresented persons with a disability may bring an action up to two years after the disability terminates"). However, "[u]nder Colorado law, plaintiffs bear the burden of demonstrating that the statute of limitations should be tolled." *Braxton*, 614 F.3d at 1159.

32.     In order for a plaintiff to prove that they qualify as "mentally incompetent" for purposes Colorado's tolling statute, they must show that such determination has been previously made by a "community-centered board." *See* COLO.REV.STAT. §§ 13-81-103; 25.5-10-202(4), (26)(a)–(b); 25.5-10-237(1). *See also Graham v. Teller Cty., Colo.*, 632 Fed. Appx. 461, 464 (10th Cir. 2015) ("without a community-centered board's determination that [plaintiff] has an impairment …, [she] can't be deemed mentally incompetent for purposes of the tolling statute"). In determining whether the limitations period should be tolled under C.R.S. § 13-81-103, the Tenth Circuit will also consider whether a plaintiff had the presence of mind to secure an attorney to

pursue her claims. *See Hance v. Karlis*, 94 F.3d 655 (10th Cir. 1996) ("[Plaintiffs'] retention of legal counsel to assist them in asserting appropriate legal claims vitiates [their] contention that mental incapacity prevented the assertion of such claims within the two-year statute of limitations period provided under Colorado law").

33.     All of the acts which Plaintiff now claims resulted in a violation of her civil rights were committed by Hanna during an incident which occurred on August 10, 2016, between 12:15 and 12:51 p.m. [*See* Amended Complaint, ¶¶ 26–52.] The Complaint goes on to indicate that immediately following this incident, at 12:51 p.m. that afternoon, Plaintiff was transported to the Logan County Jail, where she was then transferred into the custody of those officials. [*See id.*, ¶¶ 51 and 52.] Because the facts which would have supported Plaintiff's claims were, or at the very least should have been apparent to Plaintiff immediately following the August 10, 2016 incident, Plaintiff's cause of action would have accrued at that time as well, thereby triggering the two-year limitations period. *See Fratus*, 49 F.3d at 675.

34.     In her Amended Complaint, Plaintiff now attempts to argue that, given her mental disability, she should be exempted from the limitations period pursuant to Colorado's tolling statute. [*See* Amended Complaint, ¶¶ 9–17.] Plaintiff, however, fails to demonstrate how she qualifies under that statute. Specifically, Plaintiff has not demonstrated that a community-centered board has at any time determined her to be "mentally incompetent" as required by law. Instead, Plaintiff appears to argue that this requirement has been met by asserting that a similar determination was made by the Social Security Administration. [*See id.*, ¶¶ 10 and 13.] Such assertion, however, is irrelevant to whether Colorado's statutory tolling requirements have been satisfied. *See e.g.*, *Veren v. United States*, 575 Fed. Appx. 841, 842 (10th Cir. 2014) (affirming the

denial of statutory tolling, stating "[plaintiff] claims that he was legally disabled because the Social Security Administration deemed him disabled for purposes of the Social Security Act. But to be found disabled under that Act, a person need only show that he's incapable of 'substantial gainful activity'—a standard different than that found in Colorado's statutory tolling provision").

35.     Additionally, Plaintiff—in fact—has retained and is proceeding with the aid of legal counsel. Both the Complaint [ECF No. 1] and the Amended Complaint [ECF No. 16] were signed and filed by Plaintiff's attorney, Ms. Kaitlin F. Nares. Indeed, Ms. Nares was the same attorney who signed Plaintiff's Notice of Claim[6] [attached hereto as **Exhibit A**], which was served on the Board on November 11, 2016. Because Plaintiff has demonstrated her ability to obtain counsel and has retained this same counsel for at least two years [*see* **Exh. A**, p. 6], she cannot now claim that the statute of limitations should be tolled on account of an alleged "mental disability."[7] *See Hance*, 94 F.3d 655 (10th Cir. 1996). Because Plaintiff and her counsel did not file the Complaint until August 15, 2018, more than two years after the date on which her Section 1983 claims accrued on August 10, 2016, her claims are time-barred and should therefore be dismissed.

---

[6] When evaluating a 12(b)(6) motion, a court may take judicial notice of a public record without converting the motion to one for summary judgment. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). Under Colorado law, a public record is defined as "all writings … maintained, or kept by [a] … political subdivision of the state ... for use in the exercise of functions required or authorized by law or administrative rule." *Smith v. Plati*, 56 F. Supp. 2d 1195, 1199 n.4 (D. Colo. 1999), aff'd, 258 F.3d 1167 (10th Cir. 2001) (citing Colo.Rev.Stat. § 24-72-202). Because Plaintiff's Notice of Claim was kept and maintained by Sedgwick County in anticipation of pending litigation—a function authorized by law—it qualifies as a public record and is therefore appropriate for judicial notice.

[7] Defendants further note that Plaintiff's counsel has made no assertion that she has been appointed or retained by Plaintiff's "representative" such as a general guardian or conservator, or that a guardian ad litem has authorized such representation as outlined under Fed.R.Civ.P. 17(c). This omission further demonstrates that at no point was Plaintiff deemed "mentally incompetent."

## IV.   <u>REQUEST FOR RELIEF</u>

**WHEREFORE**, the Board respectfully requests that this Court grant relief as follows:

A.   Dismissing Plaintiff's Complaint with prejudice;

B.   Entering judgment in favor of the Board and against Plaintiff for attorney fees and costs; and

C.   Such further and other relief as the Court deems just and proper.

Respectfully submitted,

*s/ Thomas S. Rice*

**Thomas S. Rice**
Senter Goldfarb & Rice, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO  80210
Telephone:  (303) 320-0509
Facsimile:  (303) 320-0210
trice@sgrllc.com

*s/ Jonathan N. Eddy*

**Jonathan N. Eddy**
Senter Goldfarb & Rice, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO  80210
Telephone:  (303) 320-0509
Facsimile:  (303) 320-0210
jeddy@sgrllc.com
*Attorneys for Defendant Board of County*
*Commissioners of the County of Sedgwick*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 5th day of November, 2018, I electronically filed a true and correct copy of the above and foregoing **MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following address:

Jane Fisher-Byrialsen
David N. Fisher
Kaitlin F. Nares
Fisher & Byrialsen, PLLC
4600 South Syracuse Street, 9th Floor
Denver, Colorado 80237
E-Mail: jane@fblaw.org
E-Mail: david@fblaw.org
E-Mail: kaitlin@fblaw.org
*Attorneys for Plaintiff*

 *s/ McKenna Reich*
McKenna Reich, Legal Secretary

Appellate Case: 23-1084   Document: 010110889549   Date Filed: 07/17/2023   Page: 66

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18cv2076 (WYD)(SKC)

PEATINNA BIGGS

      Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK,
SHERIFF CARLTON BRITTON,
FORMER SHERIFF THOMAS HANNA, and
LARRY NEUGEBAUER,
in their individual and official capacity

      Defendants.

---

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S FED. R. CIV. P. R. 12(B)(6) MOTION TO DISMISS

---

Kaitlin F. Nares, Esq.
Fisher & Byrialsen, PLLC
*Attorneys for Peatinna Biggs*
4600 S. Syracuse St., 9th Floor
Denver, Colorado 80237
T: (303) 256-6345
F: (303) 954-0573
E: Kaitlin@fblaw.org

# <u>TABLE OF CONTENTS</u>

INTRODUCTION…………………………………………………………………………………...1

STATEMENT OF THE FACTS……………………………………………………………………1

ARGUMENT……………………………………………………………………………………….4

I.      Standard of Review…………………………………………………………………………4

II.     The Statute of Limitations for Ms. Biggs' Claims are Tolled Due to Her
        Developmental Disability…………………………………………………………………....5

A.      Ms. Biggs' IQ and Adaptive Testing, Special Education Classes, and CCB
        Determination are Sufficient Proof of Developmental Disability to Toll Her Claims.......6

B.      Ms. Biggs' Claims Are Tolled and Will Continue to Toll Until the Court Appoints A
        Legal Representative…………………………………………………….…………………..8

III.    Defendant is Municipally Liable for the Official Actions of Hanna For Two
        Reasons:  Hanna  Was  a  Policy  Making  Official  When  He  Violated  Ms.  Biggs'
        Constitutional  Rights  and  Defendant's  Inaction  Created  the  Environment  that  Allowed
        Hanna to Violate Ms. Biggs' Constitutional Rights……………………...……....................9

A.      Hanna is Not an Employee of Himself; Defendant is the Proper Suable Entity
        for Hanna's Official Actions Against an Inmate in His Custody…………..…………….....10

B.      Defendant is Municipally Liable for Hanna's Policy Making Decisions…………..…....11

C.      Defendant is Municipally Liable for its Inaction, Creating the Environment that Allowed
        Hanna to Violate Ms. Biggs' Constitutional Rights……...................................................12

D.      Defendant is Municipality Liable for Hanna's Conspiratorial Actions Based
        on the Same Two Theories of Liability…………………………...………………..14

CONCLUSION…………………………………………………………………………………..15

## <u>TABLE OF AUTHORITIES</u>

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2007).......................................................................4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)....................................................4

*Boyd v. City of Vict.,* 2017 U.S. Dist. LEXIS 132227 (D. Kan Aug. 18, 2017, No. 16-4106-SAC)……………………………………………………………………………………….14

*Brown v. Montoya,* 662 F.3d 1152 (10th Cir. 2011)........................................................4

*Cortese v. Black,* 838 F Supp 485 (D. Colo 1993)………………………………………...10

*Dias v. City & Cnty. of Denver*, 567 F.3d 1169 (10th Cir. 2009)....................................4

*Estate of Began v. Lake Cty., Colorado Sheriff's Office*, 07-CV-01786-WDM-CBS, 2008 WL 2690702 (D. Colo. July 3, 2008)............................................................................12

*Fisher v. Shamburg*, 624 F.2d 156 (10th Cir. 1980).......................................................14

*Garrett v. Arrowhead Improvement Ass'n,* 826 P.2d 850 (D. Colo. 1992).......................4

*Ginest v. Bd. of County Commrs.,* 333 F Supp 2d 1190, 1195 (D. Wyo 2004)…………………10

*Grady v. Jefferson County*, 2008 US Dist LEXIS 7220 (D. Colo Jan. 17, 2008, Civil Action No. 07-cv-01191-WDM-CBS)..........................................................................................10, 11

*Graham v. Teller Cty.*, Colo., 632 Fed. Appx. 461 (10th Cir. 2015)...............................6

*Hance v. Karlis*, 1996 U.S. App. LEXIS 15957 (10th Cir. 1996)...................................7

*Havens v. Johnson*, 2013 US Dist LEXIS 7708 (D. Colo. Jan. 18, 2013, Civil Action No. 09-cv-01380-MSK-MEH)...........................................................................................................8

*J.A. Balistreri Greenhouses v. Roper Corp.*, 767 P.2d 736 (Colo. App. 1988)..............5

*Kentucky v. Graham*, 473 U.S. 159 (1985)....................................................................10

*Layton v. Bd. of County Commrs.,* 512 F App'x 861, 871 (10th Cir. 2013)………………………12

*Lord v. City of Leavenworth*, 2009 US Dist LEXIS 3713, at *25 (D. Kan Jan. 20, 2009)………12

*Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658 (1978)...........................................9, 10, 11

*Montoya v. Bd. Of Cty. Comm'rs*, 506 F. Supp. 2d 434 (D. Colo. 2007).....................................14

*Owens v. Rush*, 636 F2d 283 (10th Cir 1980).............................................................................10

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).....................................................................9

*People in Interest of M.M.,* 726 P.2d 1108 (1986).........................................................................8

*Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995)...............................................................11

*Rounsville v. Zahl*, 13 F.3d 625 (2d Cir. 1994).............................................................................14

*Sanchez v. Hartley*, 65 F Supp 3d 1111 (D. Colo. 2014)...............................................4, 10, 11, 13

*Schneider v. City of Grand Junc. Police Dept.*, 717 F3d 760 (10th Cir. 2013).............................12

*Simmons v. Uintah Health Care Spec. Dist.*, 506 F.3d 1281(10th Cir. 2007).............................10

*Southard v. Miles*, 714 P.2d 891 (Colo. 1986)............................................................................5, 6

*Tafoya v. Salazar*, 516 F.3d 912, 915 (10th Cir. 2008).............................................................12, 13

*Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275 (11th Cir. 2005).............................................5

*Tenney v. Flaxer*, 727 P. 2d 1079 (Colo. 1986)..............................................................................8

*Terry v. Sullivan*, 58 P.3d 1098, 1101 (Colo. App. 2002)...............................................................6

*Tunget v. Board of County Comm'rs of Delta County*, 992 P. 2d 650 (Colo. App. 1999)............11

*Whitington v. Sokol*, 491 F Supp 2d 1012, 1014 (D. Colo. 2007).....................................................6

## MEMORANDUM OF LAW IN OPPOSITION

1. Plaintiff, **PEATINNA BIGGS**, by her attorneys **FISHER & BYRIALSEN, PLLC**, oppose the Board of County Commissioners of Sedgwick County's motion to dismiss.

## INTRODUCTION

2. On August 10, 2016, Sedgwick County Sheriff Thomas Hanna abused his authority by targeting a vulnerable, developmentally disabled, female inmate named Peatinna Biggs.  Hanna, as an elected county official, was an employee of Sedgwick County (hereinafter "the County") and policy maker related to the running and management of the county jail and those in its custody. Hanna had complete control and authority over inmates he interacted with.  Sedgwick County was deliberately indifferent in failing enact "zero tolerance" policies, or supervision of any kind, for Hanna.  This lack of oversight created the environment that allowed Hanna to be above the law and violate Ms. Biggs' constitutional rights.  The Board of County Commissioners (hereinafter "Defendant") is liable for the official actions of Hanna in violating Ms. Biggs' constitutional rights. Ms. Biggs requests Defendant's motion to dismiss be denied in its entirety.

## STATEMENT OF THE FACTS

3. On August 10, 2016, Peatinna Biggs was in Sheriff Hanna's custody. *See* Amended Complaint, ECF No. 16, at ¶ 1, 18-19.  Hanna abused his authority by targeting Ms. Biggs who he knew suffered from a mental disability. *Id.* at ¶ 119, 166.  On that day, Hanna told Ms. Biggs to change into her street clothes, put her into his personal vehicle, brought her to his house against her will, and molested her.  *Id.* at ¶ 1, 24-25, 27-29, 31-44, 50-52.  Ms. Biggs delayed reporting because Hanna threatened that she would spend the rest of her life in prison if she told anyone. *Id.* at ¶ 43-44, 55.  Earlier that day, Hanna told his deputy, Larry Neugebauer, that he was going to

personally transfer Ms. Biggs to Logan County Jail. *Id.* at ¶ 21.  Neugebauer then saw Ms. Biggs in her street clothes and saw her get into Hanna's personal vehicle.  *Id.* at ¶ 43, 152.  Shortly thereafter, Neugebauer saw both Hanna's personal and department issued vehicles parked at Hanna's house. *Id.* at ¶ 25-26, 45-49.  At that point, Neugebauer knew that Hanna was committing a constitutional violation and had every opportunity to stop him.  *Id.* at ¶ 34, 56.  However, having agreed with Hanna not to report and cover up the constitutional violation, Neugebauer stayed silent despite knowing Ms. Biggs was likely not report due to her mental disability.  *Id.* at ¶ 57-80, 166. Because the County lacked oversight or internal monitoring of Hanna's actions, making him above the law, Hanna and Neugebauer believed their attempts to not report and cover up the unlawful and unconstitutional conduct would not be disciplined.  *Id.* at ¶ 165.  As a result, Neugebauer failed to intervene in furtherance of the conspiracy.  *Id.* at ¶ 56, 166.  Neugebauer took 12 days to report the incident, interfering with the prosecution's ability to obtain a rape kit, collect DNA evidence, and document physical injuries, thereby violating Ms. Biggs' substantive due process rights.  *Id.* at ¶ 56, 81, 121, 134, 161.

4. When Hanna took Ms. Biggs into his custody, assuming control over her and depriving her of her liberty, he created a special relationship with her that required him to assume an affirmative duty of care and protection for her.  *Id.* at ¶ 126.  Because of the risks of this type of authoritarian/subordinate relationship, "zero tolerance" policies were implemented by the Sheriff's Department for deputies against sexual assault and discrimination of inmates with disabilities.  *Id.* at ¶ 54, 129, 150.  As Hanna's employer, the County was responsible for monitoring and supervising him against similar risks of discrimination and sexual assault of inmates. *Id.* at ¶ 8, 53, 90.  The County failed to enact such policies, or supervise Hanna, and as a result, his actions

went unchecked, creating the environment that allowed him to violate Ms. Biggs' constitutional rights. *Id.* at ¶ 90-93, 143-144, 150-152, 154-155. As the highest-ranking law enforcement officer, Hanna approved of the constitutional violations both he and Neugebauer committed against Ms. Biggs. *Id.* at ¶ 94, 147.

5. Hanna was criminally charged with Sexual Assault on an At-Risk-Adult, 18-6.5-103(7)(a). *Id.* at ¶ 82. Ms. Biggs is developmentally disabled. *Id.* at ¶ 9. Ms. Biggs underwent IQ and adaptive testing as a child and was placed in special education classes in elementary, middle, and high school. *Id.* at ¶ 11. Ms. Biggs tested cognitively and functionally below grade average and was designated as special needs. *Id.* at ¶ 11. Ms. Biggs obtained only a special diploma. *Id.* at ¶ 12. Due to her IQ and adaptive testing scores, she has received disability since childhood from the Social Security Administration for learning and cognitive disabilities. *Id.* at ¶ 10-13. The Sterling Probation Department, the Sedgwick County Sheriff's Department, and the 13th Judicial District Attorney's Office were all aware of Ms. Bigg's cognitive and learning disabilities. *Id.* at ¶ 16. Furthermore, Eastern Colorado Services for the Developmentally Disabled, Inc.'s, a community centered board, officially found Ms. Biggs' to be developmental disability after reviewing her education records, medical records, and current IQ and adaptive testing scores. *Id.* at ¶ 15; *See* **Exhibit A**, CCB Evaluation Letter; **Exhibit B**, CCB Determination Letter.[1] Though Ms. Biggs is developmentally disabled, she has not yet been designated a "legal representative" by the Court as defined by C.R.S. § 13-81-101. *Id.* at ¶ 14.

---

[1] "A court may take judicial notice of matters of public record outside the pleadings without converting a motion to dismiss into a motion for summary judgment." *Utah Gospel Mission v. Salt Lake City Corp.,* 316 F Supp 2d 1201, 1205, n 5 (D. Utah 2004) (internal quotations omitted). A public record includes all writings made or maintained by any agency of the state and "held by any local government-financed entity for use in the exercise of functions required or authorized by law or administrative rule." Colo. Rev. Stat. § 24-707-202. Eastern Colorado Services is a state

## ARGUMENT

### I.    Standard of Review

6. To survive a motion to dismiss, a plaintiff's pleadings must "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2007).   In reviewing a motion to dismiss, "all well-pleaded factual allegations in the ...complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Brown v. Montoya,* 662 F.3d 1152, 11662-63 (10th Cir. 2011) (internal citations omitted).   Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations omitted).   "Thus, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Sanchez v. Hartley*, 65 F Supp 3d 1111, 1120 (D. Colo. 2014).

7. Once the statute of limitations is raised as an affirmative defense, the burden shifts to the plaintiff to show that the statute has been tolled.   *See Garrett v. Arrowhead Improvement Ass'n,* 826 P.2d 850, 855 (Colo. 1992).   However, whether the statute of limitations bars a particular

funded Colorado nonprofit corporation, incorporated under the laws of Colorado, that is designated as a community centered board. Pursuant to Colo. Rev. Stat. 25.5-10-209(1)(c) and (2)(b)(IV) it must utilize state-funded services and supports administered at the local level and hold board meetings open to the public. Pursuant to C.R.S. 25.5-10-209(2)(c), Eastern Colorado Services is to determine the needs of eligible persons within its designated service areas and is to report annually to the state department subject to Colorado Local Government Audit Law.  Exhibit A and B are two official documents drafted and maintained by Eastern Colorado Services regarding its evaluation and determination of disability which it is explicitly authorized by law to do and report to the state. Ms. Biggs determination letter, Exhibit B, must be presented to the state as a record for auditing of all disabled persons receiving service. These documents are public documents and may be considered by the Court without converting the motion to one for summary judgment.

claim is normally a question of fact for the jury and deference should be provided to the plaintiff when plausible evidence supporting tolling is proffered.  *See J.A. Balistreri Greenhouses v. Roper Corp.*, 767 P.2d 736 (Colo. App. 1988); *see also Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.13 (11th Cir. 2005) ("When the motion to dismiss is based on a statute-of-limitations defense it is granted only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute.").

## II.    The Statute of Limitations for Ms. Biggs' Claims are Tolled Due to Her Developmental Disability

8. The claims asserted by Ms. Biggs pursuant to 42 U.S.C. § 1983 *et seq.* are governed by Colorado's two-year statute of limitations for personal-injury claims.  *See* Colo. Rev. Stat. § 13-80-102.  However, in Colorado, the statute of limitations does not run against a person who is (1) mentally incompetent and (2) without a legal guardian.  *See* Colo. Rev. Stat. §§ 13-81-101, 103; *Southard v. Miles*, 714 P.2d 891, 897 (Colo. 1986).

9. Colorado defines mental incompetence as any one of three different states: (1) "mentally ill", (2) "gravely disabled," or (3) a person with "developmental disabilities."  *See* Colo. Rev. Stat. § 27-10.5-135(1).  Ms. Biggs is developmentally disabled.  A "developmental disability" is a disability that is manifested before the person reaches twenty-two years of age; constitutes a substantial handicap to the affected individual; and is attributable to mental retardation or related conditions "that result in impairment of general intellectual functioning or adaptive behavior similar to that of mentally retarded persons."  *See* Colo. Rev. Stat. § 27-10.5-102(10)(a).[2]  Ms. Biggs must also show she has been determined developmentally disabled by a community centered

---

[2]  The American Association on Intellectual and Developmental Disabilities (AAIDD) now refers to what had previously been termed "mental retardation" as defined by C.R.S. § 27-10.5-102(10)(a) as "intellectual disability."

board before the Court or jury resolve the issue of tolling. *See* Colo. Rev. Stat. § 13-81-103; *see Graham v. Teller Cty.*, Colo., 632 Fed. Appx. 461, 464 (10th Cir. 2015).

10. Prior court adjudication of disability is not a prerequisite for establishing mental incompetence. *See Southard*, 714 P.2d at 897. The Court can make its own determination whether there is plausible evidence of a developmental disability, thereby implicating statutory tolling. *Id.* The issue should be further factually developed and raised on summary judgment because whether the statute of limitations bars a particular claim is normally a question of fact for the jury. *See Terry v. Sullivan*, 58 P.3d 1098, 1101 (Colo. App. 2002) (Court determined that there existed a genuine issue of material fact as to whether the statute of limitations was tolled and the issue was permitted to go forward before a jury). When raised on a motion to dismiss, great deference is given to the plaintiff. In *Whitington v. Sokol*, the District Court found "that at this stage of the proceedings, the pleadings do not establish 'beyond a doubt' that plaintiff cannot prove any set of facts that would toll the statute of limitations based upon his mental incapacity… *as the issue is before the Court on a Rule 12(b)(6) motion, plaintiff presents enough evidence to withstand a motion to dismiss.*" 491 F Supp 2d 1012, 1015 (D. Colo. 2007) (emphasis added). Dismissal should be denied because Ms. Biggs has plead plausible evidence establishing statutory tolling based on mental incompetence.

A.    **Ms. Biggs' IQ and Adaptive Testing, Special Education Classes, and CCB Determination are Sufficient Proof of Developmental Disability to Toll Her Claims.**

11. Ms. Biggs has plead plausible evidence establishing a developmental disability that manifested in early childhood and persists to this day, affecting nearly every aspect of her life. Ms. Biggs underwent IQ and adaptive testing as a child and tested cognitively and functionally below grade average and continued to be designated as special needs. *Id.* at ¶ 11. As a result, she was placed in special education classes throughout school. *Id.* She only obtained a special diploma

and was not included in her high school's class rankings.  *Id.* at ¶ 12.  Based on her IQ and adaptive scoring, she has received disability since childhood from the Social Security Administration for learning and cognitive disabilities. *Id.* at ¶ 10-13. Her condition was so obvious that the Sterling Probation Office, the Sedgwick County Sheriff's Department, and the 13th Judicial District Attorney's Office were all aware of Ms. Bigg's cognitive and learning disabilities.  *Id.* at ¶ 16.  A community centered board considered Ms. Biggs' childhood education and medical records and recent IQ and Adaptive Testing in making an official determination of developmental disability. *Id.* at ¶ 15; *see* **Exhibit A** and **B**.  Ms. Biggs has put forth plausible evidence of mental incompetence based on developmental disability.

12. Defendant is misguided in its argument that Ms. Biggs is not mentally incompetent because she had the wherewithal to retain counsel to pursue her claims.[3]  Defendant cites *Hance v. Karlis*, where the plaintiff's alleged mental incapacity due to emotional and psychological trauma stemmed from an airplane crash.  1996 U.S. App. LEXIS 15957, 14-15 (10th Cir. 1996). In that case, the Court determined, in part, that the plaintiffs were not mentally incapacitated based on their ability to retain counsel shortly after the incident.  *Hance* is fact specific. In that case, the plaintiffs had not labored under a developmental disability their whole life, nor had they been determined developmentally disabled by a community centered board like Ms. Biggs.  The issue was addressed on summary judgment and had the benefit of factual development. The Court's decision did not create a bright line rule that retaining counsel precludes a finding of mental incompetence. In fact, no published opinion has cited *Hance* on this issue.  Rather, courts in the Tenth Circuit have reviewed issues of statutory tolling without finding that retaining counsel alone

---

[3] To further refute Defendant's unsupported assertions about Ms. Biggs' intent, motive, and understanding, the issue of statutory tolling should be further factually developed and addressed on summary judgement or trial.

precluded a finding of mental incompetence. *See, e.g., Havens v. Johnson*, 2013 US Dist LEXIS 7708, at *18 (D. Colo. Jan. 18, 2013, Civil Action No. 09-cv-01380-MSK-MEH) (discussed below).

**B.    Ms. Biggs' Claims Are Tolled and Will Continue to Toll Until the Court Appoints A Legal Representative**

13. Courts have made clear that appointment of a "legal representative" is not a prerequisite for establishing tolling but rather the marker at which time the statute of limitations begins to accrue. A "legal representative" is defined as "a guardian, conservator, personal representative, executor, or administrator duly appointed by a court having jurisdiction of any person under disability or his estate." Colo. Rev. Stat. § 13-81-101; *see Tenney v. Flaxer*, 727 P. 2d 1079 (Colo. 1986). The term "attorney" is omitted from the statute. Similarly, Fed.R.Civ.P. R. 17(c) allows a court to appoint a representative for a party in a proceeding. The rule lists individuals who would qualify as a representative as, "a general guardian, a committee, a conservator, or a fiduciary." *Id.* Again, the term "attorney" is omitted. No court having jurisdiction over Ms. Biggs has ever appointed her a legal representative as defined by Colorado Revised Statutes or the Federal Rules of Civil Procedure. *Id.* at ¶ 14.

14. A legal representative works *in conjunction* with the disabled person's attorney throughout the litigation process to ensure that proper interests are being weighed and proper steps are being taken. *People in Interest of M.M.,* 726 P.2d 1108, 1120 (1986) (It is the role of the attorney to advise, and the role of the guardian ad litem to make decisions). Retaining counsel does not equate to having a legal representative appointed to act on Ms. Biggs' behalf, and it would be a conflict of interest for her counsel to take on both roles.[4] In *Havens v. Johnson*, District Judge

---

[4] It would be a conflict of interest for Ms. Biggs' counsels to provide legal advice and at the same time be able to make determinative decisions that are personal to Ms. Biggs. For example, pursuant to Colorado Rules of

Marcia S. Kreiger, reviewing a motion to dismiss, expressly held "there is nothing in the record that suggests that any court has appointed someone to act on [the plaintiff's] behalf.  Assuming that [the plaintiff] has consistently been under a disability, his hiring of counsel *does not* equate with having a legal representative appointed to act for him."  2013 US Dist LEXIS 7708, at *18. (emphasis added).  The plaintiff in *Haven* was represented by a law firm. Haven ultimately could not establish a developmental disability because unlike Ms. Biggs, he plead only physical limitations.  Nonetheless, Judge Kreiger's decision was based on the established premise that a "legal representatives," is a neutral advocate appointed by the Court, trained to work with counsel and assist persons under disability.

15. Ms. Biggs has put forth plausible evidence, pursuant to Colo. Rev. Stat. § 13-81-10, of statutory tolling based on mental incompetence. Dismissal should be denied.

## III.   Defendant is Municipally Liable for the Official Actions of Hanna For Two Reasons: Hanna Was a Policy Making Official When He Violated Ms. Biggs' Constitutional Rights and Defendant's Inaction Created the Environment that Allowed Hanna to Violate Ms. Biggs' Constitutional Rights

16. Defendant is municipally liable for the egregious constitutional violations of Sheriff Hanna under two different theories of liability.  First, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-483 (1986) provides an alternative means of establishing municipal liability where an action by an official with final policy making authority is alleged to establish the constitutional violation. This form of establishing municipal liability is separate and distinct from the settled method of showing that the municipalities' action, or failure to act, was the moving force behind the denial of a constitutional right.  *See Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 695 (1978). The distinction has been cited in countless cases, and a municipal liability claim may be founded

Professional Conduct R. 1.2(a), a lawyer shall abide by a client's decision whether to settle a matter regardless of the advice of counsel.

on *either* basis. *See Simmons v. Uintah Health Care Spec. Dist.*, 506 F.3d 1281, 1284-85 (10th Cir. 2007) (identifying separate bases under *Monell* and *Pembaur*).  Plaintiff asserts plausible facts to support both theories of municipal liability.

**A.      Hanna is Not an Employee of Himself; Defendant is the Proper Suable Entity for Hanna's Official Actions Against an Inmate in His Custody**

17. An action against a person in his official capacity is an action against the government entity for whom the person works.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  Therefore, "an action against the Sheriff in his official capacity is essentially an action against the entity that employs him." *Grady v. Jefferson County*, 2008 US Dist LEXIS 7220, at *5-6 (D Colo Jan. 17, 2008, Civil Action No. 07-cv-01191-WDM-CBS) (declining to dismiss claims against Jefferson County's Board on a Rule 12(b)(6) motion for official actions of the Sheriff). "The County is a political subdivision encompassing and representing all citizens within its boundaries. The [board of county commissioners] acts on behalf of the County-as its agent." *Owens v. Rush*, 636 F2d 283, 286 (10th Cir. 1980).  "Similarly, the Sheriff is an agent of the County.  Like the Board members, he is elected by the body politic and acts on its behalf in enforcing the state's laws." *Id.*  The Sheriff of Sedgwick County is an elected position. Therefore, Hanna "is an agent of the County whether or not he would be considered an agent of the Board of County Commissioners under traditional agency principles." *Id.*  A board of county commissioners, as an agent of the County, can therefore be held liable for the official misdeeds of its sheriff as well as for the Country's deliberate indifference leading to a constitutional violation. *Sanchez v. Hartley,* 65 F Supp 3d at 1127 (Motion to dismiss denied against Board who can be liable for both Sheriff's official policy making decisions and County's failure to train and supervise the Sheriff); *Cortese v. Black,* 838 F Supp 485, 496 (D. Colo 1993) (same); *Ginest v. Bd. of County Commrs.*, 333 F Supp 2d

1190, 1195 (D. Wyo 2004) (County is a proper defendant whenever one of its policymakers, such as its sheriff, engaged in unconstitutional activity).

18. Defendant is mistaken that the Sheriff's Department is the proper suable entity for Hanna's official conduct. Colorado courts have determined that a sheriff, not a board of commissioners, is the legal entity responsible for tortious behavior by a *deputy*. *See Tunget v. Board of County Comm'rs of Delta County*, 992 P. 2d 650, 651-52 (Colo. App. 1999).  This is because the sheriff has discretion to hire, fire, and discipline deputies. Defendant cites three cases that stand for this premise. Other cases finding that a sheriff, not the Board, is the suable entity in employment cases where a *deputy* is suing the Sheriff as their *employer* is similarly in opposite. Hanna committed his own constitutional violations.  He was not an employee of himself but rather an employee of the County as an elected official by the county residents.  Defendant, as an agent of the County, can be held liable for Hanna's official actions.

**B.     Defendant is Municipally Liable for Hanna's Policy Making Decisions.**

19. A municipal entity may be held liable pursuant to 42 U.S.C. § 1983 for the conduct of its officials "whose acts may fairly be said to represent official policy."  *Monell*, 436 U.S. at 694. "[P]olicy can be established pursuant to a specific and one-time decision made by a 'final policymaker.'"  *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995).  For example, in *Sanchez v. Hartley,* because the Court found the sheriff to be a final policymaker for purposes of training deputies, the Court held that the County could be liable under § 1983 for any violations caused by the Sheriff's training decisions. 65 F Supp 3d at 1127-1129. Relevant to this case, Hanna is the final policymaker with respect to decisions related to matters concerning the operations of the county jail and inmates in its custody. *Grady*, 2008 US Dist LEXIS 7220, at *8 ("Sheriff is the final policymaker for matters concerning the operations of the Jail.") (internal citation omitted);

*Estate of Began v. Lake Cty., Colorado Sheriff's Office*, 2008 US Dist LEXIS 51146 (D. Colo. July 3, 2008, Civil Action No. 07-cv-01786-WDM-CBS) ("A sheriff, then, is often the final policymaker for matters concerning the operations of a county jail. In general, an action against a sheriff in his official capacity is essentially an action against the entity that employs him.") (internal citations omitted); *Layton v. Bd. of County Commrs.*, 512 F App'x 861, 871 (10th Cir. 2013) (County may be liable for Sheriff who is a final policymaker with regard to its jail, "such that his actions may fairly be said to be those of the municipality"). Hanna's decisions, to abuse his authority against an inmate under his control, were the legal and proximate cause of Ms. Bigg's damages. *Id.* at ¶ 133. Hanna decided to transport Ms. Biggs, in her street clothes, in his personal vehicle, to his house, and molest her. Every action Hanna made on August 10, 2016, in deliberate indifference to Ms. Biggs' constitutional rights, was a decision made as a policy making official, to which the Defendant can be found liable. *Id.* at ¶ 94.

**C.    Defendant is Municipally Liable for its Inaction, Creating the Environment that Allowed Hanna to Violate Ms. Biggs' Constitutional Rights.**

20. If the plaintiff asserts the alleged custom or policy comprised a failure to act, he or she must demonstrate the municipality's inaction resulted from "deliberate indifference to the rights" of the plaintiff. *Lord v. City of Leavenworth*, 2009 US Dist LEXIS 3713, at *25 (D. Kan Jan. 20, 2009). In the absence of an express policy or an entrenched custom, "the deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or *failure to act* is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to *disregard the risk of harm*." *Schneider v. City of Grand Junc. Police Dept.*, 717 F3d 760, 779 (10th Cir. 2013). "The knowing failure to enforce policies necessary to the safety of inmates may rise to the level of deliberate indifference." *Tafoya v. Salazar*, 516 F.3d 912, 915 (10th Cir. 2008); *Layton*, 512 F App'x at 871 (Dismissal denied because County's "in(action)"

could have caused violation of constitutional rights).  Ms. Biggs does not have to show a history

of sexual abuse by Hanna or Defendant's knowledge she was his target. The Tenth Circuit in

*Tafoya*, emphasized that the municipality's knowledge of the risk of sexual abuse to an inmate

"need not be knowledge of a substantial risk to a particular inmate, or knowledge of the particular

manner in which injury might occur." *Tafoya*, 516 F.3d at 915.

21. In *Sanchez v. Hartley,* Judge William J. Martinez found that a county board of

commissioners could be held municipally liable for a single incident of deliberate indifference for

failing to train the sheriff against coercive interrogations when it was plainly obvious the board

knew, or should have known, that sheriff and his officers would be required to interview suspects

who may be vulnerable to coercion due to disabilities or low IQ.  *Sanchez*, 65 F Supp 3d at 1127-

1129.  Here, the Court may infer that the Sheriff Department's "zero tolerance" policies were put

in place because the authoritarian/subordinate relationship between deputies and inmates creates a

breeding ground for sexual abuse and discrimination of inmates with disabilities and that these

"zero tolerance" policies were created because it was substantially certain that but for these

policies, abuses of inmates was substantially likely to occur.  Though Hanna is the highest-ranking

officer, he is an officer nonetheless, and has absolute authority and control over the actions of

every inmate, who is his subordinate. The same concerns that motivated the establishment of the

"zero tolerance" policies prohibiting sexual assault of inmates and discrimination of inmates with

disabilities should have applied to Hanna. Ms. Biggs has plausibly pled that the County had

constructive, if not actual, notice that its failure to supervise Hanna, against sexual assault and

discrimination of inmates with disabilities would be substantially certain to result in a

constitutional violation, and it consciously and deliberately choose to disregard the risk of harm.

The County's lack of oversight created the environment that allowed Hanna to be above the law

and violate Ms. Biggs' constitutional rights.  *See* Amended Complaint, ECF No. 16 at ¶ 90-91, 143-144, 150-152.  Defendant can be found liable for its deliberate indifference which caused Ms. Biggs' constitutional violation.

**D.    Defendant is Municipality Liable for Hanna's Conspiratorial Actions Based on the Same Two Theories of Liability.**

22. Ms. Biggs has alleged concerted actions on the part of Hanna and Neugebauer to conspire to violate Ms. Biggs' constitutional rights.  To state a conspiracy claim arising under 42 U.S.C. § 1985, a plaintiff must demonstrate that the alleged conspirators had a (1) meeting of the minds and (2) engaged in concerted action to violate the plaintiff's constitutional rights. *See Montoya v. Bd. Of Cty. Comm'rs*, 506 F. Supp. 2d 434, 443 (D. Colo. 2007).  Ms. Biggs need only assert facts, when viewed in the light most favorable to her, that make "it reasonable to infer the defendants were conspiring with one another." *Boyd v. City of Vict.,* 2017 U.S. Dist. LEXIS 132227, 26 (D. Kan. Aug. 18, 2017, No. 16-4106-SAC).  The Court may look at circumstantial evidence and make logical inferences. *See Rounsville v. Zahl*, 13 F.3d 625 (2d Cir. 1994).  The 10th Circuit has generally held that "the existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide." *Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980).  Hanna knew he was above the law.  He told Neugebauer he was going to transfer Ms. Biggs' personally to Logan County and agreed with him not to report and to cover up the incident. Neugebauer saw Ms. Biggs in her street clothes, saw her get into Hanna's personal car, and saw both Hanna's personal and official police cars at Hanna's home.  *Id.* at ¶ 21, 158. Neugebauer could have stopped Ms. Biggs' assault but chose not to in furtherance of the conspiracy.  *Id.* at ¶ 56. Sheriff Hanna threatened Ms. Biggs not to report and Neugebauer knew Ms. Biggs was likely not to report because of her developmental disability.  The deputy's 12-day delay in reporting interfered with the prosecution's ability to collect DNA and document injuries,

undermining Ms. Biggs' basic substantive due process rights. *Id.* at ¶ 165.   Hanna not only authorized the conspiratorial agreement to violate Ms. Biggs' constitutional rights as a policy making official, Defendant created the environment that allowed this conspiratorial agreement to happen due to a complete lack of oversight into abuses by Hanna to inmates who were in his custody. *Id.* at ¶ 165. Defendant can be found liable for the official actions of Hanna conspiring to violate Ms. Biggs' constitutional rights.

## **CONCLUSION**

23. Ms. Biggs has asserted plausible evidence of statutory tolling and cognizable claims against Defendant for municipal liability. Ms. Biggs respectfully requests the Court allow the matter to proceed for further factual development, or otherwise allow Ms. Biggs to amend her pleadings.  It is respectfully requested that the Court deny Defendant's motion in its entirety.

Submitted on this 5th day of December, 2018.

FISHER & BYRIALSEN, PLLC

/s/ Kaitlin F. Nares, Esq.
By:     Kaitlin F. Nares, Esq.
4600 S. Syracuse St. 9th Floor
Denver, Colorado 80237
T: (303) 256-6345
E: Kaitlin@FBLaw.org

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 5th day of December 2018, I electronically filed a

true and exact copy of the above and foregoing **PLAINTIFF'S MEMORANDUM IN**

**OPPOSITION TO DEFENDANT'S FED. R. CIV. P. R. 12(B)(6) MOTION TO DISMISS**

with the Clerk of the Court using the CM/WCF system which will send notification of such filing

to the following email addresses:


Jonathan Eddy jeddy@sgrllc.com

Thomas Rice  trice@sgrllc.com


_____/S/ Kaitlin F. Nares_____
***Kaitlin F. Nares Esq.***
Fisher & Byrialsen, PLLC
Email: Kaitlin@FBLaw.org

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-002076-WYD-SKC

PEATINNA BIGGS,

      Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK,
SHERIFF CARLTON BRITTON,
FORMER SHERIFF THOMAS HANNA, and
LARRY NEUGEBAUER,
in their individual and official capacity,

      Defendants.

---

## REPLY IN SUPPORT OF MOTION TO DISMISS

---

Defendant, **THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK** (the "Board"), by its attorneys, **SENTER GOLDFARB & RICE, LLC**, respectfully submits its Reply in Support of Motion to Dismiss and states as follows:

### I.    <u>ARGUMENT</u>

### A.    THE BOARD IS NOT LIABLE FOR HANNA'S ACTIONS.[1]

To state her claim for municipal liability, Plaintiff must adequately allege the existence of an official policy or custom with a direct causal link to her constitutional injury. Plaintiff is now attempting to argue that her pleading is sufficient to establish the Board's liability based on two

---

[1] Although Plaintiff is also attempting to extend municipal liability to the Board for an alleged conspiracy involving Deputy Neugebauer, the conspiracy claim itself is more fully addressed under Section B of this Reply.

additional theories. Namely, that Hanna's conduct was the "decision of a final policymaker" and/or that the Board failed to properly supervise Hanna. To extend liability to a municipality based a decision made by one with policymaking authority, however, the end result of that decision must amount to just that—a policy.[2] Moreover, to extend liability on the basis of an alleged "failure to supervise," Plaintiff must also sufficiently plead facts showing that  the Board was "deliberately indifferent to an almost inevitable constitutional injury."[3]

### 1. *Plaintiff has failed to plead and will ultimately fail to show how Hanna's violative conduct was a policy decision.*

In her Response [ECF No. 35], Plaintiff introduces the argument that the Board can be held liable for an alleged sexual assault—and conspiracy to conceal same—on the basis that Hanna was "the final policymaker with respect to …  the county jail and inmates in its [sic] custody." [Response, ¶ 19.] To support this proposition, Plaintiff defers to the holding in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). [*See* Response, ¶ 16.] In *Pembaur*, the Supreme Court reiterated the fact that Section 1983 "could *not* be interpreted to incorporate doctrines of vicarious liability." 475 U.S. at 479 (emphasis added). The Court went on to state that when the decision to adopt a particular course of action "is *properly made* by that government's *authorized* decisionmakers" that it can represent an act of "official government 'policy' *as that term is commonly understood*." *Id.* at 481 (emphasis added). *Pembaur* further reasoned that "[t]he fact that a particular official—

---

[2] *See e.g. Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 n.9 (1986) (analyzing the issue of "final policymaker" while deferring to the various commonly held definitions of the term "policy").
[3] *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013); *Sanchez v. Hartley*, 65 F. Supp. 3d 1111, 1127 (D. Colo. 2014).

2

even a policymaking official—has discretion in the exercise of particular [acts] does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481–482.

In basing her municipal liability claim on *Pembaur*, Plaintiff is attempting to argue that Hanna's alleged unilateral decision to commit sexual assault and then cover it up amounted to that of an official policy decision sufficient to extend liability to the Board. Plaintiff, however, does not allege how *any* express decision to commit an overt criminal act such as sexual assault or conspiracy can be "properly made" or how Hanna would have, or even could have been "authorized" by the Board to commit such acts. Moreover, to accept Plaintiff's reasoning on these facts would necessarily trigger the type of expansive vicarious liability that the Supreme Court consistently holds does not apply to claims brought under Section 1983. Because Hanna's actions were at most purely discretionary, liability cannot be extended to the Board on this basis. *See id.*

### 2. *Plaintiff has failed to plead and will ultimately fail to show that the Board was deliberately indifferent to an almost inevitable constitutional injury.*

Under a failure to supervise/ deliberate indifference theory, Plaintiff must plead facts which allow a reasonable inference that the Board had knowledge of the type of risk posed to someone in her position and then deliberately failed to take action in mitigating that risk. [*See* Motion, ¶ 21.]

Plaintiff attempts to argue that liability should be extended to the Board due to its alleged failure to impose policies expressly directed towards a sitting sheriff and/or its alleged failure to supervise Hanna. [*See* Response, ¶ 21.] In so doing, Plaintiff relies on *Tafoya v. Salazar*[4]. *Tafoya*, however, concerned the liability of a *sheriff* for actions of his deputies in connection with the

---

[4] 516 F.3d 912, 922 (10th Cir. 2008).

management of a local jail and is therefore inapposite to whether her claims have been properly and sufficiently pled against the Board. Additionally, Plaintiff's assertion that the Board can be liable for an alleged conspiracy between a sheriff and his deputy—which it in no way was alleged to be a part of—is merely conclusory because she has failed to plead a single fact permitting even an inference that the Board would, or even should have had knowledge of some hidden "agreement" necessary to trigger a duty to act. [*See* Response, ¶ 22.]

Plaintiff has also failed to allege facts showing how the Board was responsible for implementing policies related to jail inmates, or how it was responsible for the "supervision" of a sitting sheriff. Indeed, such responsibility does not lie with the Board. [*See* Motion, ¶ 23.] Here, Plaintiff's Response assumes that the relevant "zero tolerance policies" did not apply to Hanna given his position as sheriff, while failing to allege a single fact supportive of this conclusion. [*See* Amended Complaint (ECF No. 16), ¶ 93; Response, ¶ 21.] In fact, Plaintiff has also expressly indicated that Hanna was removed from office and ultimately convicted for violating *those very policies*. [*See* Amended Complaint, ¶¶ 83–84, 150–153.] Thus, her conclusory statement that certain zero tolerance policies did not apply to Hanna defies logic, runs counter to the facts which she has presented, and should not be accepted.

### 3. *The Board is not the proper suable entity.*

To support her argument that the Board can and should be liable for the acts of a county sheriff, Plaintiff relies on the unpublished opinion in *Grady v. Jefferson Cty., Colo.*[5] [*See* Response, ¶ 17.] However, the court in *Grady* expressly held that "[u]nder the Colorado Constitution, county commissioners and Sheriffs are separate governmental officers." *Id.* at *3.

---

[5] 2008 WL 178923, at *1 (D. Colo. Jan. 17, 2008).

The *Grady* court further reasoned that an official capacity claim against a sheriff and a board "may be redundant," but—in contrast to the current proceedings—declined to dismiss the board on a 12(b)(6) motion because at the time of *that* motion "no party [had] so moved."[6] *Id.* at *3. Thus, *Grady* does not support her claim.

Next, Plaintiff concludes that the Board, "as an *agent* of the County, can be held liable for Hanna's official actions." [Response, ¶ 18] (emphasis added). Plaintiff looks to the Tenth Circuit's decision in *Owens v. Rush*[7] to support her statement that the Board can be liable "under traditional agency principals." [Response, ¶ 17.] As previously addressed, this is the very type of liability the Supreme Court has continually refused to recognize in claims arising under Section 1983. Moreover, the issue faced by the court in *Owens* concerned whether a sheriff and a board of county commissioners could be considered a joint statutory "employer" for purposes of Title VII's numerical employee requirement and had nothing to do with that board's liability for a civil rights infraction—let alone the alleged intentional criminal acts of an independently elected official. *See Owens*, 636 F.2d at 286. As has been firmly and repeatedly held, "Section 1983 does not authorize liability under a theory of *respondeat superior*." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir.2011)) (emphasis in original). As such, Plaintiff's claims against the board should be dismissed.

---

[6] Plaintiff also relies on *Grady* to argue that the Board is liable for "the official actions of the Sheriff," Hanna's "official misdeeds," and his "official policy making decision." [Response, ¶ 17.] As analyzed above, however, Hanna's conduct was not an "official act" for purposes of municipal liability and *Grady* cannot be used to extend liability to the Board on the alleged facts of this case.
[7] 636 F.2d 283, 286 (10th Cir. 1980).

5

**B.** **PLAINTIFF'S CONSPIRACY ALLEGATIONS FAIL TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.**[8]

To sufficiently plead her conspiracy claim, Plaintiff must demonstrate that the alleged conspirators had a meeting of the minds and engaged in concerted action to violate her *constitutional rights*. In so doing, she must allege *specific* facts which support each of these elements. [*See* Motion, ¶ 27.]

In an apparent attempt to remedy the conclusory nature of her conspiracy allegations asserted in the Amended Complaint, Plaintiff's Response now alleges that there was an express "agreement" between Hanna and Deputy Neugebauer. [*See* Response, ¶¶ 3 and 22.] However, this attempt to insert new facts into her claims in order to overcome an obvious pleading deficiency is improper at this stage of the proceedings and should not be accepted. *See Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010) ("Plaintiffs cannot rectify their pleading deficiencies by asserting new facts in an opposition to a motion to dismiss").

This additional "fact" notwithstanding, Plaintiff's conspiracy claims remain non-cognizable given that she has again failed to demonstrate how the alleged "conspiracy" infringed upon her constitutional rights. As addressed previously, the alleged "agreement" would have necessarily been made *after* Hanna's violative acts which occurred on August 10, 2016, and could therefore not have been formed as a concerted action to violate Plaintiff's civil rights. Moreover, based on the facts of the Complaint, the most that Deputy Neugebauer could have known at the

---

[8] Plaintiff has not asserted that the Board was an active participate in the alleged conspiracy. She is instead is attempting to extend liability to the Board based on the two broader theories previously addressed. As such, this section focuses on the sufficiency of the conspiracy allegation itself, to show that even if municipal liability was plausible, her conspiracy claim has not been sufficiently pled.

6

time Hana informed him that he would be transporting her "in her street cloths" and in "his personal vehicle," was that Hanna may have been in violation of official policy. Because a "policy violation" is not the type of federally protected right contemplated under 42 U.S.C §§ 1983 and 1985, her federal conspiracy claim cannot be based on this theory.

### C.    PLAINTIFF'S CLAIMS ARE TIME-BARRED.

As a preliminary matter, the Board notes that Plaintiff has not disputed the fact that she has had retained counsel in this matter since—at the latest—November 11, 2016. [*See* Motion, ¶ 35.] Plaintiff then, through that same counsel, initiated these proceedings by filing her initial Complaint [ECF No. 1] on August 15, 2018, in which no such tolling argument was raised. The Board does not see how Plaintiff should now be permitted to assert that she was mentally incapable of appreciating her legal rights when she herself, through counsel, informed the Board of her intention to file this very lawsuit over two years ago. Indeed, one wonders how Plaintiff's counsel has continued to proceed on her behalf when Plaintiff is now alleged to be incapable of exercising the very rights her counsel purports to represent.

### 1.    *Plaintiff's claim is barred under Colorado's tolling statute.*

Colorado's tolling statute expressly states that it applies to persons "under disability *at the time such right accrues*." COLO.REV.STAT. § 13-81-103(1) (emphasis added). For purposes of this statute, a "[p]erson with an intellectual and developmental disability[] means a person determined by a community-centered board to have [such disability]." COLO.REV.STAT. § 25.5-10-202(11)(b).

Plaintiff's claims against the Board accrued on August 10, 2016, a fact which Plaintiff does not dispute. As indicated in Plaintiff's Response, however, the community-centered board ("CCB") did not deem her to have a "developmental disability" until November 28, 2018,

approximately 27 months *after* the date on which her civil rights claims accrued. [*See* Response,

**Exhibit B**, p. 1.] Because such determination is required for an individual to be considered disabled

for purposes of Colorado's tolling statute, and here no such determination had been made *at the*

*time her right accrued*—and in fact was not made until well after the expiration of the limitations

period—she cannot now rely on this eleventh hour attempt to salvage her claims through tolling.[9]

*See Pearson v. Fed. Exp. Corp.*, WL 126192, at *7 (D. Colo. Aug. 24, 1990), aff'd, 991 F.2d 806

(10th Cir. 1993) (Granting motion to dismiss, in part, due to plaintiff's failure to show "that she

was indeed disabled [under Colorado's tolling statute] *at the time her claims accrued*") (emphasis

added). Accordingly, Plaintiff's claims against the Board are barred by the applicable statute of

limitations and should be dismissed.

---

[9] The Board also notes that the CCB's determination letter and Plaintiff's Response make clear
that this determination was reached by considering a "*recently* completed psychological
evaluation" and "*recent* IQ and Adaptive Testing." [*See* Response, **Exhibit B**, p. 1; Response, ¶
11] (emphasis added). Notwithstanding the obvious issues surrounding Plaintiff's motivations at
the time of this testing—because this determination was reached by considering facts irrelevant to
Plaintiff's mental state *at the time her claim accrued*, such determination should not be permitted
as a means of preserving her claims.

Respectfully submitted,


s/ Thomas S. Rice
**Thomas S. Rice**
Senter Goldfarb & Rice, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO  80210
Telephone:  (303) 320-0509
Facsimile:  (303) 320-0210
trice@sgrllc.com


s/ Jonathan N. Eddy
**Jonathan N. Eddy**
Senter Goldfarb & Rice, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO  80210
Telephone:  (303) 320-0509
Facsimile:  (303) 320-0210
jeddy@sgrllc.com
*Attorneys for Defendant Board of County*
*Commissioners of the County of Sedgwick*

9

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 19th day of December, 2018, I electronically filed a true and correct copy of the above and foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Jane Fisher-Byrialsen
David N. Fisher
Kaitlin F. Nares
E-Mail: jane@fblaw.org
E-Mail: david@fblaw.org
E-Mail: kaitlin@fblaw.org
*Attorneys for Plaintiff*

s/ Barbara A. Ortell
Barbara A. Ortell, Legal Secretary

01553032.DOCX

10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-002076-WYD-SKC

PEATINNA BIGGS,

  Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK,
SHERIFF CARLTON BRITTON,
FORMER SHERIFF THOMAS HANNA, and
LARRY NEUGEBAUER,
in their individual and official capacity,

  Defendants.

---

## MOTION TO DISMISS

---

  Defendants, **SHERIFF CARLTON BRITTON** ("Sheriff Britton") and **LARRY NEUGEBAUER**, by their attorneys, **SENTER GOLDFARB & RICE, LLC**, and pursuant to Fed.R.Civ.P. 12(b)(6), hereby move the Court for an order dismissing Plaintiff's First Amended Complaint [ECF No. 16], and in support thereof, state as follows:

### CERTIFICATE OF COMPLIANCE

  1.  Pursuant to D.C.COLO.LCivR 7.1(b)(2), undersigned counsel were not required to confer with opposing counsel prior to filing this Motion.

### I.  FACTS AS PLED IN THE AMENDED COMPLAINT

  2.  On August 10, 2016, Plaintiff—who considers herself to be mentally disabled and whose cognitive abilities were being evaluated by Eastern Colorado Services at the time the

Amended Complaint was filed—was an inmate at the Sedgwick County Jail, located in Julesburg, Colorado. [*See* Amended Complaint, ¶¶ 9–13, 15, 16, 18.]

3.      At that time, the Sedgwick County Jail was run by the then Sheriff of Sedgwick County, Thomas Hanna ("Hanna"). [*Id.*, ¶ 19.]

4.      That day, Hanna informed then Deputy Sheriff of Sedgwick County Larry Neugebauer ("Deputy Neugebauer") that he (Hanna) would be personally transporting Plaintiff to the Logan County Jail using his own personal vehicle. [*Id.*, ¶¶ 21 and 22.]

5.      At approximately 12:15 p.m. that afternoon, Deputy Neugebauer witnessed Hanna assist Plaintiff into Hanna's personal vehicle. This was the last time Deputy Neugebauer saw Hanna and Plaintiff together. [*Id.*, ¶¶ 26, 45–49.]

6.      Hanna then transported Plaintiff to his home and allegedly molested her. [*Id.*, ¶¶ 26, 29, 31, 34, 41, 50.]

7.      Although Deputy Neugebauer saw Hanna's empty vehicle parked in front of Hanna's home while driving to and from his lunch break, at no time did Deputy Neugebauer witness the events alleged to have occurred inside of Hanna's home. [*See Id.*, ¶¶ 45–49.]

8.      At approximately 12:51 p.m., Hanna transported Plaintiff to the Logan County Jail, thereby relieving himself of custody over Plaintiff later that day. [*Id.*, ¶¶ 51 and 52.]

9.      The extent of Hanna's actions as they relate to Plaintiff were in clear violation of "Sedgwick County Sheriff's Office Department policy," to include its prohibition on the use of personal vehicles to transport inmates, the act of transporting an inmate to an officer's home, as well as the act of an officer engaging in sexual contact with an inmate. [*See id.*, ¶¶ 23, 30, 54.]

10. 12 days later, on August 22, 2016, Deputy Neugebauer reported what he had witnessed to the Logan County District Attorney. Specifically, that Hanna had used a personal vehicle to transport Plaintiff and that he had later seen this vehicle parked in front of Hanna's home. [*Id.*, ¶¶ 22, 23, 46–50, 80.]

11. As a result of Deputy Neugebauer's voluntary report, an investigation ensued and Plaintiff was interviewed by the Logan County District Attorney's Office. [*Id.*, ¶ 81.]

12. Two days following Deputy Neugebauer's report and 14 days following the August 10, 2016 incident, Hanna was arrested. [*Id.*, ¶ 82.] Hanna was later convicted for his willful violation of the "[D]epartment's policies" and was removed from office as sheriff. [*Id.*, ¶¶ 83 and 84.]

13. "[T]he Sedgwick County Sheriff's Department did not have any policy in place to oversee and internally monitor the actions of … former Sheriff Hanna." [*Id.*, ¶ 90.]

14. As a result of the incident, Plaintiff filed this suit against Sheriff Britton, in his official capacity, as well as Deputy Neugebauer, alleging violations of her civil rights pursuant to 42 U.S.C. § 1983. [*See id.*, ¶¶ 116–135 and 142–168.]

15. This action was not commenced until August 15, 2018, more than two years after the August 10, 2016 incident. [*See* ECF No. 1, p. 15, filing date inscription.]

## II.   <u>STANDARD OF REVIEW</u>

16. In order for a complaint to survive a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), it "must contain enough allegations of fact 'to state a claim for relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when

its allegations, taken as true, allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court, however, need not accept conclusory allegations without supporting factual averments. *See Ruiz v. McDonell*, 299 F.3d 1173, 1181 (10th Cir. 2002). Moreover, "[i]f the allegations ... show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim..." *Barnes v. United States*, 776 F.3d 1134, 1139 (10th Cir. 2015) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)) (internal quotations omitted).

## III.   <u>ARGUMENT</u>

### A.   **PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST SHERIFF BRITTON IN HIS OFFICIAL CAPACITY.**

17.    Plaintiff is asserting a municipal liability claim against Sheriff Britton in his official capacity as the Sheriff of Sedgwick County. [*See* Amended Complaint, ¶¶142–155.] Plaintiff, however, has failed to identify a single "Department" policy which was, or even could have been, the moving force behind the alleged violations. Nor has Plaintiff alleged how the "Department" was deliberately indifferent to her civil rights, or how Hanna's conduct in any way resembled a "policy decision" for purposes of extending liability to this entity.

### 1.   *<u>Plaintiff has failed to plead and will ultimately fail to show how the "Department's" policies were the moving force behind the alleged violation.</u>*

18.    A municipal entity may be held liable for civil rights violations under section 1983 only if such violations resulted from the "execution of [that] government's policy or custom." *Monell v. Dep't. of Social Serv. of City of New York*, 436 U.S. 658, 694, (1978). To establish municipal liability, a plaintiff must show: (1) the existence of a municipal policy or custom; and (2) that there is a direct causal link between the policy or custom and the injury alleged. *See Hinton*

*v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Canton v. Harris*, 489 U.S. 378, 385 (1989)). Meeting this standard requires a showing that "the municipality was the *moving force* behind the injury alleged." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (internal quotations omitted) (emphasis added).

19.     The Amended Complaint lists several "[D]epartment policies" and expressly attributes these policies to the Sedgwick County Sheriff's Office. [*See* Amended Complaint, ¶¶ 23, 30, 54, 118.] However, the Amended Complaint then goes on to expressly state that "[t]here was *no* legitimate policy or goal to justify Defendant Hanna's [violative acts]" [*id.*, ¶ 139] (emphasis added), thus demonstrating Plaintiff's inability to establish—let alone adequately allege—the first element of her municipal liability claim. *See Hinton*, 997 F.2d at 782.

20.     Plaintiff also fails to allege a direct causal link between a policy and the claimed violations. The "[D]epartment policies" referenced above—and as described by Plaintiff—include a "zero tolerance" approach to sex assault on inmates, a policy on equal protection for inmates with mental disabilities, and a policy "prohibiting the transport of inmates in officers' personal vehicles, and to their residences." [*See* Amended Complaint, ¶¶ 23, 30, 54, 118, 152.] Plaintiff, however, then expressly states that each of these policies were "*not followed*" on the day of the incident and describes these acts as "*blatantly defying* lawful municipal policy or custom." [*Id.*, ¶¶ 150–153] (emphasis added). Any violation of Plaintiff's civil rights could therefore not have been motivated by, or causally linked to, the policies at issue given her own acknowledgement that these alleged actions were in clear breach of such policies. *See Henderson v. City & Cty. of Denver*, 2014 WL 222761 at *7 (D. Colo. Jan. 21, 2014) (dismissing municipal liability claim for failure to establish a "causal link" where defendants showed that violative acts were in breach of official

5

policy). Because Plaintiff's own allegations undermine any direct causal link between the enumerated policies and the alleged violative acts, she cannot now claim that such policies were the moving force behind those acts and has thus failed to allege the second element of her claim.

**2.** ***Plaintiff has failed to plead and will ultimately fail to show how the "Department" was deliberately indifferent to her constitutional rights.***

21.     Allegations that a municipal entity should be held liable for a "failure to adopt a policy applicable to the circumstances presented" is properly examined under the "failure to act" analysis. *See Hollingsworth v. Hill*, 110 F.3d 733, 744–45 (10th Cir. 1997). "Where the official policy that forms the basis of a local government liability claim consists of a failure to act, the plaintiff must demonstrate that the [entity's] inaction was the result of deliberate indifference to the rights of its inhabitants." *Id.* at 745 (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir.1993)). "[A municipal entity] is deliberately indifferent when [it] deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 390 (1989) (internal quotations omitted)).

22.     The Amended Complaint introduces the theory that the "Department" should be liable because it "did not have any policy in place to oversee and internally monitor the actions of [the sheriff.]" [Amended Complaint, ¶¶ 90, 143, 150–152, 154–155.] As with her previous claims, however, Plaintiff again fails to adequately allege the elements of this claim. Nowhere in the Amended Complaint is there a single allegation or supporting fact demonstrating that the "Department" had knowledge of, or was at any time presented with, a sexual assault involving an inmate of the Sedgwick County Jail and a sheriff of Sedgwick County prior to the incident in question. Nor does Plaintiff allege how, in the time leading up to this event, it would have been

reasonable for the "Department" to assume that its failure to employ what could only be described as a round-the-clock monitoring protocol geared specifically at the sitting sheriff[1] would inevitably result in a constitutional injury similar to that alleged by Plaintiff.

23.     Indeed, the "Department" did, however, have *reasonable* policies in place to guard against violations similar in nature to those at issue here. The Amended Complaint expressly states that the "Sedgwick County Sheriff's Office has a policy in place to ensure that inmates … benefit from [that] department's efforts to prevent … sexual abuse and sexual harassment." [Amended Complaint, ¶ 118.]   For these reasons, Plaintiff has failed to adequately allege that the "Department" was deliberately indifferent and her "failure to act" claim should be dismissed.

### 3.     *Plaintiff has failed to plead and will ultimately fail to show how Hanna's violative conduct was a policy decision.*

24.     To extend liability to a municipal entity based a decision made by one with policymaking authority, the end result of that decision must amount to just that—a policy. *See e.g., Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 n.9 (1986) (analyzing the issue of "final policymaker" while deferring to the various commonly held definitions of the term "policy"). In *Pembaur*, the Supreme Court reiterated the fact that section 1983 "could *not* be interpreted to incorporate doctrines of vicarious liability." 475 U.S. at 479 (emphasis added). The Court went on to state that when the decision to adopt a particular course of action "is *properly made* by that government's *authorized* decisionmakers" that it can represent an act of "official government 'policy' *as that term is commonly understood*." *Id.* at 481 (emphasis added). *Pembaur* further reasoned that "[t]he fact that a particular official—even a policymaking official—has discretion in

---

[1] [*See* Amended Complaint, ¶¶ 143–144, 151–152.]

the exercise of particular [acts] does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481–82.

25.     The Amended Complaint does not allege, or in any way describe, how Hanna's express decision to commit overt criminal acts such as sexual assault or conspiracy can be "properly made," or how Hanna would have, or even could have been "authorized" to commit such acts. Moreover, to extend liability on these facts would necessarily trigger the type of expansive vicarious liability the Tenth Circuit has consistently held does not apply to claims brought under section 1983. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) ("Section 1983 does not authorize liability under a theory of *respondeat superior*") (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir.2011)) (emphasis in original). Because Hanna's alleged actions were at most purely discretionary, liability cannot be extended to Sheriff Britton or the "Department" on this basis. *See Pembaur*, 475 U.S. at 481–82.

## B.    PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DEPUTY NEUGEBAUER.

26.     Deputy Neugebauer asserts the affirmative defense of qualified immunity, whereby Plaintiff bears the "heavy two-part burden" of adequately alleging that (1) he violated a constitutional right and (2) that right was clearly established at the time of the violation. *See Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). "[I]n this context, [Plaintiff] must allege facts sufficient to show … that [the defendant] *plausibly* violated [her] constitutional rights." *Robbins* at 1249 (emphasis added). The Tenth Circuit has also reasoned that "[t]he *Twombly* standard may have greater bite in [this] context[], appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity 'at the earliest possible stage of a litigation.'" *Id.* (internal citation omitted).

8

      **1.**    ***Plaintiff's equal protection claim fails to overcome Deputy Neugebauer's qualified immunity defense.***

27.    "Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006) (internal quotations and citation omitted). "[T]o assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Brown v. Montoya*, 662 F.3d 1152, 1172–73 (10th Cir. 2011) (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir.1998) (internal quotations omitted)). Thus, for such claim to overcome qualified immunity, a plaintiff must plead facts showing that particular persons were in fact treated differently. *See Brown*, 662 F.3d at 1173.

28.    Plaintiff's Fifth Claim for Relief asserts that Deputy Neugebauer violated Plaintiff's right to equal protection because he "knew that [she] suffered from a mental disability," temporarily concealed the incident by failing to report Hanna's actions, and that as a result "[she] was not provided equal protection under the laws." [*See* Amended Complaint, ¶¶ 119–121.] These allegations are merely conclusory in that the Amended Complaint does not describe or identify a single other inmate at the Sedgwick County Jail who was treated differently by Deputy Neugebauer. *See Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1175 (D. Colo. 2010) (dismissing an equal protection claim pursuant to Fed.R.Civ.P. 12(b)(6) for plaintiff's failure to allege "specific details about other inmates," and "specific differences in [d]efendant's treatment of other inmates"). Because Plaintiff has failed to allege how she was treated differently from other similarly situated inmates, her equal protection claim is conclusory and should be dismissed.

> ### 2. *Plaintiff's substantive due process claim fails to overcome Deputy Neugebauer's qualified immunity defense.*

29.     "[Substantive] due process protections are accorded primarily to matters relating to marriage, family, procreation, and the right to bodily integrity." *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008) (internal quotations and citation omitted). Moreover, these constitutional protections apply to "transgressions *above and beyond* those covered by the ordinary civil tort system. *Id.* (emphasis in original). "The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006). However, "[e]ven *knowingly* permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking." *Id.* (quoting *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1235 (10th Cir.2000)) (emphasis added).

30.     Plaintiff's Sixth Claim for Relief asserts that Deputy Neugebauer violated her substantive due process rights by allegedly conspiring with Hanna to "coverup [sic] the incident and fail[ing] to report [] Hanna's actions for 12 days." [*See* Amended Complaint, ¶ 134.] Her conclusion is based solely of the allegation that Deputy Neugebauer "knew and/or reasonably suspected that [Hanna] had violated [her] constitutionally protected rights." [*See id.*, ¶ 56.] Plaintiff, however, has failed to plead a single fact showing how the alleged cover-up—in and of itself—in any way compromised her bodily integrity. Instead, Plaintiff merely states that these actions prevented her physical injuries from being documented and impeded the collection of DNA evidence, due exclusively to the fact that "too much time had passed" for such tasks to be performed. [*Id.*, ¶ 134.] Because Plaintiff's allegations are not of the sort contemplated under substantive due process, nor are her bald assertions that Deputy Neugebauer had "knowledge" of

a possible violation sufficiently conscious shocking, Plaintiff has failed to adequately allege that Deputy Neugebauer violated such right.

31.     Moreover, Plaintiff cannot show that her substantive due process rights were "clearly established" under these facts. Plaintiff has failed to plead and will ultimately fail to show how an alleged conspiracy between two individuals involving only a single victim would have been the type of transgression rising *above and beyond* those covered by the ordinary civil tort system, sufficient to put Deputy Neugebauer on notice of an impending violation. Specifically, Plaintiff cannot identify a single "Supreme Court or other Tenth Circuit decision on point," nor can she show that "the clearly established weight of authority" establishes such violation under these circumstances. *Moore*, 438 F.3d at 1042–43 (granting qualified immunity on substantive due process claim for plaintiff's inability to identify applicable case law). As such, Plaintiff's substantive due process claim fails to overcome qualified immunity and should be dismissed.

### 3.     *Plaintiff's failure to intervene claim fails to overcome Deputy Neugebauer's qualified immunity defense.*

32.     Plaintiff's Ninth Claim for Relief asserts that Deputy Neugebauer violated her civil rights by failing to intervene on the day of the incident. "In order to be liable for failure to intervene, the [defendant] must have observed or had reason to know of a constitutional violation and have had a realistic opportunity to intervene." *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (quoting *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir.2008) (internal quotations omitted)).

33.     To support her claim, Plaintiff alleges that Deputy Neugebauer: (1) "witnessed [] Hanna place [Plaintiff], wearing her street clothes, into [] Hanna's personal truck;" (2) "knew that [] Hanna had Ms. Biggs inside of [] Hanna's personal residence;" and (3) "knew and/or reasonably

11

suspected that … Hanna had violated [Plaintiff's] constitutionally protected rights and did not report the incident on August 10, 2016." [*See* Amended Complaint, ¶ 158.] In addition to being conclusory, these assertions fail to demonstrate how or why Deputy Neugebauer would have or should have had knowledge of a constitutional violation. Although Plaintiff cites to various *policy* violations which she claims Deputy Neugebauer observed on the day of the incident, she fails to allege a single fact establishing the plausibility that he also observed—or in any way had knowledge of—a *constitutional* violation. *See Jones*, 809 F.3d at 576 (affirming dismissal of failure to intervene claim due to plaintiff "ignor[ing] the requirement that the officer[] must have [had] knowledge of a constitutional violation"). For these reasons, Plaintiff's claim fails to satisfy the first prong of the qualified immunity analysis and should be dismissed.[2]

### 4.   *Plaintiff's civil rights conspiracy claim fails to overcome Deputy Neugebauer's qualified immunity defense.*

34.     Plaintiff's Tenth Claim for Relief asserts that Deputy Neugebauer violated her civil rights by conspiring with Hanna to temporarily conceal the August 10, 2016 incident. To state a conspiracy claim arising under 42 U.S.C. § 1985, however, a plaintiff must demonstrate that the alleged conspirators had a (1) meeting of the minds and (2) engaged in concerted action to violate the plaintiff's constitutional rights. *Montoya v. Bd. Of Cty. Comm'rs*, 506 F. Supp. 2d 434, 443 (D. Colo. 2007) In pursuing such, a plaintiff must allege "*specific facts* showing agreement and concerted action among defendants …" *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) (internal citation omitted) (emphasis added). *See also Montoya*, 506 F. Supp. 2d at 443 (holding

---

[2] In contrast to the dearth of authority analyzing an officer's duty to intervene in situations where he has observed the use of excessive force, Plaintiff will be unable to point to any authoritative case law clearly establishing such violation under circumstances similar to those alleged herein. Therefore, her claim also fails to satisfy the second prong of qualified immunity.

that a plaintiff "must provide sufficient facts to support the inference that some prearranged plan or joint action existed between the conspirators to engage in all of the alleged conspiratorial activities"). A plaintiff must also show that she was injured in her "person or property" or was "deprived of having and exercising any right or privilege of a citizen of the United States." *See Thornton v. Kaplan*, 937 F. Supp. 1441, 1446 (D. Colo. 1996) (internal quotations and citation omitted). "Conclusory allegations of conspiracy are insufficient to state a valid [civil rights] claim." *Durre*, 869 F.2d at 545 (internal citation omitted).

35.    The Amended Complaint merely states that "Deputy Neugebauer conspired with … Hanna to coverup and not report on August [], 2016, the sexual assault of a mentally disabled inmate." [Amended Complaint, ¶ 57.] Plaintiff goes on to repeat this statement 11 more times. [*See id.*, ¶¶ 59, 61, 63, 65, 67, 69, 71, 73, 75, 77, 79.] Plaintiff also states that "[b]ased on [her] status as a mentally disabled female, [Deputy] Neugebauer conspired with [] Hanna to coverup the incident" and that "Hanna and [Deputy Neugebauer] conspired to impede, hinder, obstruct, or defeat the due course of justice…" [*See id.*, ¶¶ 121, 134, 166.] None of these conclusory allegations, however, provides a single specific fact showing an agreement or prearranged plan, or even that a conversation was held between these individuals following the incident.

36.    Plaintiff has also failed to allege that the purported 12-day conspiracy—which she asserts began on August 10, 2016—was a concerted action to violate her constitutional rights, given that the "conspiracy," as asserted by Plaintiff, would have necessarily been formed *after* the violative acts allegedly occurring earlier that day. Plaintiff has also provided no facts or assertions which demonstrate how an alleged agreement which made it "too late for a rape kit," or which resulted in "DNA evidence [not being] collected" [*id.*, ¶ 81], resulted in an injury to her person or

property, or otherwise deprived her of a federally protected right, as required to state such claim. *See Holmes v. Finney*, 631 F.2d 150, 154 (10th Cir. 1980) ("infringement of some federally protected right independent of § 1985(3) is required for a violation of the conspiracy statute"). Because Plaintiff has failed to allege the existence of a prearranged plan which deprived her of a federally protected right, she has failed to sufficiently plead her civil rights conspiracy claim.

### C.   PLAINTIFF'S CLAIMS ARE TIME-BARRED.

37.     For claims arising under section 1983, the applicable limitations period is two years. *See Braxton v. Zavaras*, 614 F.3d 1156, 1159–60 (10th Cir. 2010). "Section 1983 claims accrue, for the purpose of the statute of limitations, when the [injured party] knows or has reason to know of the injury which is the basis [for the] action." *Johnson v. Johnson Cty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) (internal citations omitted). Moreover, Colorado's tolling statute expressly states that it applies to persons "under disability *at the time such right accrues*." COLO.REV.STAT. § 13-81-103(1) (emphasis added). For purposes of this statute, a "[p]erson with an intellectual … disability[] means a person determined by a community-centered board to have [such disability]." COLO.REV.STAT. § 25.5-10-202(11)(b).

38.     Plaintiff's claims accrued the day of the incident, August 10, 2016. At the time Plaintiff filed this lawsuit—on August 15, 2018—a community-centered board had not deemed Plaintiff mentally disabled. [*See* Amended Complaint, ¶15.] Because such determination is a prerequisite for qualification under Colorado's tolling statute, and here no such determination had been made *at the time her right accrued*, she cannot now rely on a *post hoc* assertion of disability to salvage her claims. *See Pearson v. Fed. Exp. Corp.*, WL 126192 at *7 (D. Colo. Aug. 24, 1990), aff'd, 991 F.2d 806 (10th Cir. 1993) (granting motion to dismiss, in part, due to plaintiff's failure

14

to show "that she was indeed disabled [under Colorado's tolling statute] *at the time her claims accrued*") (emphasis added). Because Plaintiff's claims accrued on August 10, 2016—the time at which such violation(s) were or should have been apparent—and because she did not initiate these proceedings within two years hence, her claims should be dismissed as time-barred.

39.     One also wonders how Plaintiff's attorney has continued to proceed on her behalf when Plaintiff is now alleged to be incapable of exercising the very rights her counsel purports to represent. Indeed, Defendants do not see how this lawsuit can even exist given that Fed.R.Civ.P. 17(c) expressly states that an incompetent person without a duly appointed representative may sue either through a next of friend or guardian ad litem and no such representation has been asserted in this case.

## IV.     REQUEST FOR RELIEF

**WHEREFORE**, Defendants respectfully requests that this Court grant relief as follows:

A.     Dismissing Plaintiff's Complaint with prejudice;

B.     Entering judgment in favor of Defendants and against Plaintiff for attorney fees and costs; and

Such further and other relief as the Court deems just and proper.

Respectfully submitted,

*s/ Thomas S. Rice*

**Thomas S. Rice**
Senter Goldfarb & Rice, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO  80210
Telephone:  (303) 320-0509
Facsimile:  (303) 320-0210
trice@sgrllc.com

*s/ Jonathan N. Eddy*

**Jonathan N. Eddy**
Senter Goldfarb & Rice, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO  80210
Telephone:  (303) 320-0509
Facsimile:  (303) 320-0210
jeddy@sgrllc.com
*Attorneys for Defendants*

15

Appellate Case: 23-1084   Document: 010110889549   Date Filed: 07/17/2023   Page: 111

<u>**CERTIFICATE OF SERVICE**</u>

    **I HEREBY CERTIFY** that on this 4th day of January, 2019, I electronically filed a true and correct copy of the above and foregoing **MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Jane Fisher-Byrialsen
David N. Fisher
Kaitlin F. Nares
E-Mail: jane@fblaw.org
E-Mail: david@fblaw.org
E-Mail: kaitlin@fblaw.org
*Attorneys for Plaintiff*

                      s/  Barbara A. Ortell
                      Barbara A. Ortell, Legal Secretary

01557492.DOCX

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18cv2076 (WYD)(SKC)

PEATINNA BIGGS

        Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK,
SHERIFF CARLTON BRITTON,
FORMER SHERIFF THOMAS HANNA, and
LARRY NEUGEBAUER,
in their individual and official capacity

        Defendants.

---

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' FED. R. CIV. P. R. 12(B)(6) MOTION TO DISMISS

---

Kaitlin F. Nares, Esq.
Fisher & Byrialsen, PLLC
*Attorneys for Peatinna Biggs*
4600 S. Syracuse St., 9th Floor
Denver, Colorado 80237
T: (303) 256-6345
F: (303) 954-0573
E: Kaitlin@fblaw.org

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………………………...1

STATEMENT OF RELEVANT FACTS……………………………………………………………1

ARGUMENT……………………………………………………………………………………...3

I.        Standard of Review………………………………………………………………………..3

II.       Ms. Biggs' IQ and Adaptive Testing, Special Education Classes, and CCB
          Determination are Sufficient Proof of Developmental Disability to Toll Her Claims........4

III.      The Department is Municipally Liable Based on Two Separate Theories………………..6

A.       The Department is Municipally Liable for Hanna's Policy Making Decisions…………...7

B.    The Department is Municipally Liable for its Inaction, Creating the Environment
        that Allowed Hanna and Neugebauer to Violate Ms. Biggs' Constitutional Rights………..8

III.      Neugbauer is Not Shielded by Qualified Immunity ………………………………...…..10

CONCLUSION………………………………………………………………………………..15

## <u>TABLE OF AUTHORITIES</u>

*A.M. v. N.M. Dep't of Health,* 65 F. Supp. 3d 1206 (D.N.M. 2014)..............................14

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)........................................11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)....................................3

*Bell v. Wolfish*, 441 U.S. 520 (1979)....................................................9

*Bordanaro v. McLeod,* 871 F.2d 1151 (1st Cir. 1989)....................................8

*Boddie v. Schnieder*, 105 F.3d 857 (2nd Cir. 1997)..................................9, 14

*Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011)......................................3

*Casey v. City of Fed. Hgts.*, 509 F3d 1278 (10th Cir. 2007)...........................11

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)....................................15

*Dias v. City & Cnty. of Denver*, 567 F.3d 1169 (10th Cir. 2009).......................4

*Estate of Began v. Lake Cty., Colorado Sheriff's Office*, 2008 US Dist LEXIS 51146 (D. Colo. July 3, 2008....................................................................7

*Fisher v. Shamburg*, 624 F.2d 156 (10th Cir. 1980)...................................11

*Foote v. Spiegel*, 118 F.3d 1416 (10th Cir. 1997)....................................11

*Gehl Group v. Koby,* 63 F.3d 1528 (10th Cir. 1995)...................................13

*Gonzales v. Martinez*, 403 F3d 1179 (10th Cir. 2005)..................................8

*Gordon-Smith v. Baldwin*, 2007 US Dist LEXIS 6961 (D. Colo. Jan. 31, 2007)............9

*Grady v. Jefferson County*, 2008 US Dist LEXIS 7220, at *8 (D. Colo. Jan. 17, 2008)....7

*Graham v. Teller Cty.*, Colo., 632 Fed. Appx. 461 (10th Cir. 2015)....................5

*Hall v. Burke*, 12 F App'x 856 (10th Cir. 2001)......................................12

*Havens v. Johnson*, 2013 US Dist LEXIS 7708, at *18 (D. Colo. Jan. 18, 2013).........................6

*Hope v. Pelzer*, 536 U.S. 730 (2002)..........................................................................................11

*Hovater v. Robinson*, 1 F.3d 1063 (10th Cir. 1993)…………………………………………...8

*J.A. Balistreri Greenhouses v. Roper Corp.*, 767 P.2d 736 (Colo. App. 1988).............................4

*Jones v. Norton,* 3 F. Supp. 3d 1170 (D. Utah 2014)....................................................................14

*Kaufman v. Higgs*, 697 F3d 1297 (10th Cir. 2012)......................................................................11

*Layton v. Bd. of County Comm'rs*, 512 F App'x 861 (10th Cir. 2013)...........................................7

*Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658 (1978)......................................................7

*Montoya v. Bd. Of Cty. Comm'rs*, 506 F. Supp. 2d 434 (D. Colo. 2007).....................................11

*Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992)..........................................................................8

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)..................................................................6, 7

*Peña v. Greffet*, 922 F. Supp. 2d 1187 (D.N.M. 2013).................................................................15

*People in Interest of M.M.,* 726 P.2d 1108 (1986)..........................................................................6

*Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004)....................................................................11

*Raguindin v. Yates*, 2016 U.S. Dist. LEXIS 43837 (D. Colo. Feb. 29, 2016)..............................15

*Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995)...............................................................7

*Richard v. Bd. of County Comm'rs.*, 2014 US Dist LEXIS 19586 (D. Kan. Feb. 18, 2014)…….13

*Rounsville v. Zahl*, 13 F.3d 625 (2d Cir. 1994)...........................................................................11

*Sanchez v. Hartley*, 65 F Supp 3d 1111 (D. Colo. 2014)......................................................4, 7, 10

*Schneider v. City of Grand Junc. Police Dept.*, 717 F3d 760 (10th Cir. 2013).............................8

*Snyder v. Nolen*, 380 F3d 279 (7th Cir. 2004)..................................................................................14

*Southard v. Miles*, 714 P.2d 891 (Colo. 1986).......................................................................4, 5, 6

*Tafoya v. Salazar*, 516 F.3d 912, 915 (10th Cir. 2008)..............................................................8, 9

*Tanner v. McMurray*, 2018 U.S. Dist. LEXIS 196477 (10th Cir. 2018).......................................14

*Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275 (11th Cir. 2005).............................................4

*Terry v. Sullivan*, 58 P.3d 1098, 1101 (Colo. App. 2002)................................................................5

*Toevs v. Reid,* 646 F.3d 752 (10th Cir. 2011)………………………………………………11

*Tunget v. Board of County Comm'rs of Delta County*, 992 P. 2d 650 (Colo. App. 1999)............12

*Turner v. Safley*, 482 U.S. 78 (1987)………………………………………………………13

*Uintah Health Care Spec. Dist.,* 506 F.3d 1281 (10th Cir. 2007)...................................................7

*United States v. Phelps,* 17 F.3d 1334 (10th Cir. 1994)................................................................13

*Utah Gospel Mission v. Salt Lake City Corp.,* 316 F. Supp. 2d 1201 (D. Utah 2004)...................3

*Whitington v. Sokol*, 491 F Supp 2d 1012, 1014 (D. Colo. 2007)...................................................6

*Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008).........................................................14

*Wodiuk v. Graziano*, 2017 US Dist LEXIS 86948  (D. Colo. June 6, 2017)..................................6

**MEMORANDUM OF LAW IN OPPOSITION**

1. Plaintiff, **PEATINNA BIGGS**, by her attorneys Fisher & Byrialsen, P.L.L.C., opposes Sheriff Carlton Britton (herein "the Department") and Larry Neugebauer's motion to dismiss.

**INTRODUCTION**

2. On August 10, 2016, Sedgwick County Sheriff Thomas Hanna abused his authority by targeting a vulnerable, developmentally disabled, female inmate named Peatinna Biggs. As the Department's highest-ranking law enforcement official—in charge of the running and management of the county jail and those in its custody—Hanna had complete control and authority over inmates like Ms. Biggs.  The Department failed to enact "zero-tolerance" policies, or supervision of any kind, to prohibit Hanna from engaging in sexual assault and discrimination of inmates with disabilities. This created an environment that permitted Hanna to be "above the law," allowing him and his loyal deputy, Neugebauer, to violate Ms. Biggs' constitutional rights.  As a result, the Department is liable for Hanna's decisions to abduct, falsely imprison, threaten and molest Ms. Biggs while she was in Hanna's custody.  Neugebauer's inaction and agreement to remain silent to protect Hanna also violated Ms. Biggs constitutional rights for which Neugebauer is liable in both his official and individual capacity.

**STATEMENT OF RELEVANT FACTS**

3. On August 10, 2016, Peatinna Biggs was in Sheriff Hanna's custody. *See* Amended Complaint at ⨍ 1, 18-19.  Hanna abused his authority by targeting Ms. Biggs—who he knew suffered from a mental disability. *Id.* at ⨍ 119, 166.  On that day, Hanna told Ms. Biggs to change into her street clothes, put her into his personal vehicle, brought her to his house against her will, and molested her.  *Id.* at ⨍ 1, 24-25, 27-29, 31-44, 50-52.  Ms. Biggs delayed reporting because Hanna threatened her. *Id.* at ⨍ 43-44, 55.  Earlier that day, Hanna told his deputy, Neugebauer, that he was

going to personally transfer Ms. Biggs to Logan County Jail. *Id.* at ¶ 21.  Neugebauer then saw Ms.

Biggs in her street clothes and saw her get into Hanna's personal vehicle.  *Id.* at ¶ 43, 152.  Shortly

thereafter, Neugebauer saw both Hanna's personal and department issued vehicles parked at

Hanna's house. *Id.* at ¶ 25-26, 45-49.  At that point, Neugebauer knew that Hanna was committing

a constitutional violation and had every opportunity to stop him.  *Id.* at ¶ 34, 56.  Neugebauer agreed

to stay silent even though he knew Ms. Biggs would likely not report the incident as a result of her

mental disability.  *Id.* at ¶ 57-80, 166.  Because the Department lacked oversight of Hanna's actions,

Hanna and Neugebauer believed they would not be disciplined for not reporting and covering up

the Hanna's unlawful conduct.  *Id.* at ¶ 165.  As a result, Neugebauer failed to intervene.  *Id.* at ¶

56, 166.  Neugebauer took 12 days to report, hindering the prosecution's ability to obtain a rape kit,

collect DNA evidence, and document physical injuries. *Id.* at ¶ 56, 81, 121, 134, 161.

4. Because of the known risks of the authoritarian/subordinate relationship between officers

and inmates, "zero tolerance" policies were implemented by the Department for deputies against

sexual assault and discrimination of inmates with disabilities.  *Id.* at ¶ 54, 126, 129, 150.  The

Department, however, failed to implement similar policies to monitor and supervise Hanna. *Id.* at ¶

8, 53, 90.  As a result, his actions went unchecked, creating the environment that allowed him to

violate Ms. Biggs' constitutional rights. *Id.* at ¶ 90-93, 143-144, 150-152*,* 154-155. As the highest-

ranking law enforcement officer, Hanna approved of the constitutional violations both he and

Neugebauer committed against Ms. Biggs.  *Id.* at ¶ 94, 147.

5. Hanna was criminally charged with Sexual Assault on an At-Risk-Adult, 18-6.5-

103(7)(a).  *Id.* at ¶ 82.  Ms. Biggs is developmentally disabled. *Id.* at ¶ 9.  She underwent IQ and

adaptive testing as a child and was placed in special education classes in school. *Id.* at ¶ 11; (**Exhibit**

**A**, Education Records),[1] Ms. Biggs tested cognitively and functionally below grade average and was designated as special needs. *Id.* at ¶ 11.  Ms. Biggs obtained only a special diploma and has since received disability for learning and cognitive disabilities. *Id.* at ¶ 10-13. The Probation Department, the Sheriff's Department, and the District Attorney's Office were all aware of Ms. Bigg's mental disabilities. *Id.* at ¶ 16. Furthermore, Eastern Colorado, a community centered board, reviewed her education and medical records and current IQ testing before designating Ms. Biggs as developmental disability. *Id.* at ¶ 15; *See* **Exhibit B** CCB Review Letter; **Exhibit C**, CCB Determination Letter.[2] Though Ms. Biggs is developmentally disabled, she has not yet been appointed a "legal representative" by the Court.  *Id.* at ¶ 14.

## ARGUMENT

## I.    Standard of Review

6. To survive a motion to dismiss, a plaintiff's pleadings must nudge their claims across the line from conceivable to plausible.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).   In reviewing a motion to dismiss, "all well-pleaded factual allegations in the … complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Brown v. Montoya,* 662 F.3d 1152, 11662-63 (10th Cir. 2011).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect

---

[1] "A court may take judicial notice of matters of public record outside the pleadings without converting a motion to dismiss into a motion for summary judgment."  *Utah Gospel Mission v. Salt Lake City Corp.,* 316 F. Supp. 2d 1201, 1205, n 5 (D. Utah 2004). An unsealed court file is a public record.  In Defendant Hanna's criminal trial, *People v. Hanna*, 16CR207, the prosecution admitted People's Exhibit 44—Ms. Biggs' childhood education records which shows her placement in Educable Mentally Handicapped ("EMH"), Exceptional Student ("Ex St") and Exceptional Student Education ("ESE") classes.

[2] A public record also includes all writings maintained by any local government-financed entity that functions under the authorization of state by law or administrative rule. Colo. Rev. Stat. § 24-707-202. Eastern Colorado Services ("ESC") is a state-funded community centered board. By statute it must utilize state-funded services; hold board meetings open to the public; determine the needs of eligible persons; and report annually to the state department for auditing.  Exhibits B and C were drafted and maintained by ESC regarding its evaluation and determination of disability which it is authorized to do and report to the state. Ms. Biggs determination letter, Exhibit C, was presented to the state as a record for auditing of all disabled persons receiving service.

the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009). "Thus, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts [are] improbable, and that a recovery is very remote and unlikely." *Sanchez v. Hartley*, 65 F Supp 3d 1111, 1120 (D. Colo. 2014).

7. "When the motion to dismiss is based on a statute-of-limitations defense it is granted *only* if it appears beyond a doubt that Plaintiffs can prove *no set of facts* that toll the statute." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.13 (11th Cir. 2005) (emphasis added).  Whether the statute of limitations bars a particular claim is inherently a factual issue, it is normally a question of fact for the jury and deference should be provided to the plaintiff when plausible evidence supporting tolling is proffered.  *See J.A. Balistreri Greenhouses v. Roper Corp.*, 767 P.2d 736 (Colo. App. 1988); *see also Southard v. Miles*, 714 P2d 891, 901 (Colo. 1986) (Court discussed the "inappropriateness of resolving the factual issues relating to Southard's mental status within the format of a summary judgment proceeding").

## II.    Ms. Biggs' IQ and Adaptive Testing, Special Education Classes, and CCB Determination are Sufficient Proof of Developmental Disability to Toll Her Claims.

8. The claims asserted by Ms. Biggs pursuant to 42 U.S.C. § 1983 *et seq.* are governed by Colorado's two-year statute of limitations for personal-injury claims.  *See* Colo. Rev. Stat. § 13-80-102.  However, in Colorado, the statute of limitations does not run against a person who is (1) mentally incompetent and (2) without a legal guardian.  *See* Colo. Rev. Stat. §§ 13-81-101, 103.

9. **Mental Incompetence.** Colorado defines mental incompetence as any one of three different states: (1) "mentally ill", (2) "gravely disabled," or (3) a person with "developmental disabilities."  *See* Colo. Rev. Stat. § 27-10.5-135(1).  Ms. Biggs is developmentally disabled.  A "developmental disability" is a disability that is manifested before the person reaches twenty-two years of age; constitutes a substantial handicap to the affected individual; and is attributable to mental retardation or related conditions that impair general intellectual functioning or adaptive

behavior. *See* Colo. Rev. Stat. § 27-10.5-102(10)(a).[3] Ms. Biggs has plead plausible evidence establishing a developmental disability that manifested in early childhood (*see* Amended Complaint, ECF No. 16, at ¶ 10-13; Exhibit A), persisting to present day (*see Id.* at ¶ 15-16; Exhibit B and C), and affecting nearly every aspect of her life.

10. **CCB Determination.** Ms. Biggs must also ultimately establish that she has been determined developmentally disabled by a community centered board ("CCB"). *See* Colo. Rev. Stat. § 25.2-10-202(26)(b); *see Graham v. Teller County*, 632 F App'x 461, 464 (10th Cir. 2015) (Court could not determine if plaintiff was mentally incompetent for purposes of the tolling statute without having plead *any facts* that show a CCB determination.). The plain text of § 25.2-10-202(26)(b) requires a CCB determination; however, neither the statute nor any controlling Court has held, as a matter of law, that such a determination is a prerequisite for suit to be filed. "When the language of a statute is plain and its meaning clear, it should be interpreted as written." *Southard,* 714 P2d 891, 898 (Col 1986). Rather, Courts have permitted the issue of tolling to continue past summary judgment based on affidavits and medical records alone, without a determination of disability by a CCB yet being made. *See e.g., Terry v. Sullivan*, 58 P.3d 1098, 1101 (Colo. App. 2002); *Southard,* 714 P2d at 899. Defendants, however, mislead the Court by asserting that *Pearson v. Fed. Exp. Corp.* requires a CCB determination before Ms. Biggs' rights were ever violated. *See* Def. Mtn. at ¶ 38. That case did not involve a disability based on mental incompetence, nor did the Court discuss CCB determinations. Unlike here, Pearson's claims accrued before she experienced a physical disability. Ms. Biggs, however, has been developmentally disabled since childhood, continuing while her constitutional rights were violated, and persisting to present day. The law is clear, the Court is to determine "*whether the record before [it]* raises a genuine issue of material fact as to

---

[3] The American Association on Intellectual and Developmental Disabilities now refers to what had previously been termed "mental retardation" as defined by C.R.S. § 27-10.5-102(10)(a) as "intellectual disability."

whether [the plaintiff] was a 'person under disability'[.]" *Southard,* 714 P2d at 899 (emphasis added).  Ms. Biggs has sufficiently plead a CCB determination of disability.

11. **Legal Representative.** Appointment of a "legal representative" is not a prerequisite for establishing tolling but rather the marker at which time the statute of limitations begins to accrue. No court having jurisdiction over Ms. Biggs has ever appointed her a legal representative. A "legal representative" is defined in both Colo. Rev. Stat. § 13-81-101 and Fed.R.Civ.P. R. 17(c) and each time the term "attorney" is explicitly omitted.  In *Havens v. Johnson*, Judge Kreiger, reviewing a motion to dismiss, expressly held "[a]ssuming that [the plaintiff] has consistently been under a disability, his hiring of counsel does not equate with having a legal representative appointed to act for him." 2013 US Dist LEXIS 7708, at *18 (D. Colo. Jan. 18, 2013). Neither § 13-81-101 nor Rule 17(c) bar a mentally incompetent litigant from bringing suit or continuing on with litigation. *See Wodiuk v. Graziano*, 2017 US Dist LEXIS 86948, at *45 (D. Colo. June 6, 2017). Rather, a Court appointed legal representative works with the disabled person's attorney. It is the role of the attorney to advise, and the role of the guardian ad litem to make decisions. *People in Interest of M.M.,* 726 P.2d 1108, 1120 (1986).  In *Southard*, as in this case, the plaintiff's attorney did not fit within the statutory definition of "legal representative" nor did the attorney's filing of the initial complaint exempt the plaintiff's claims from the tolling provision. 714 P2d at 900.  Since Ms. Biggs has not been appointed a legal representative, the statute of limitations has not accrued.

12. **Sufficiency.**  Defendants have failed to show "beyond a doubt" that plaintiff cannot prove "any set of facts" that would toll the statute of limitations. *Whitington v. Sokol*, 491 F. Supp. 2d 1012, 1015 (D. Colo. 2007).  The issue should therefore be permitted to go forward.

## II.   The Department is Municipally Liable Based on Two Separate Theories.

13. The Department is municipally liable for the egregious constitutional violations of Hanna and Neugebauer under two different theories of liability.  First, *Pembaur v. City of Cincinnati*, 475

U.S. 469, 482-483 (1986) establishes municipal liability when an action by an official with final policy making authority creates the constitutional violation.  This form of establishing municipal liability is separate and distinct from the settled method of showing that the municipalities' failure to act was the moving force behind the violation.  *See Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 695 (1978). A municipal liability claim may be founded on *either* basis. *See Simmons v. Uintah Health Care Spec. Dist.*, 506 F.3d 1281, 1284-85 (10th Cir. 2007).   Ms. Biggs asserts plausible facts to support both theories of municipal liability.

**A.      The Department is Municipally Liable for Hanna's Policy Making Decisions.**

14. A municipal entity may be held liable pursuant to § 1983 for the conduct of its officials whose acts may fairly be said to represent official policy. *Pembaur*, 475 U.S. at 482-483. "[P]olicy can be established pursuant to a specific and *one-time* decision made by a 'final policymaker.'" *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995) (emphasis added).  For example, in *Sanchez v. Hartley,* because the Court found the Sheriff to be a final policymaker for purposes of training deputies, the Court held that the municipal entity could be liable under § 1983 for any violations caused by the Sheriff's training decisions. 65 F. Supp. 3d at 1127-1129. In this case, Hanna is the final policymaker with respect to decisions related to matters concerning the operations of the county jail and those in its custody, such that his actions may fairly be said to be those of the municipality. *See e.g. Grady v. Jefferson County*, 2008 US Dist LEXIS 7220, at *8 (D. Colo. Jan. 17, 2008); *Estate of Began v. Lake Cty., Colorado Sheriff's Office*, 2008 US Dist LEXIS 51146 (D. Colo. July 3, 2008); *Layton v. Bd. of County Comm'rs*, 512 F App'x 861, 871 (10th Cir. 2013). Hanna was delegated the authority to make decisions about the movement, treatment, and safety of inmates at the county jail.  Therefore, every action Hanna made on August 10, 2016 and thereafter, in deliberate indifference to Ms. Biggs' constitutional rights, was a decision made as a policy making official, to which the Department can be found liable.

**B.    The Department is Municipally Liable for its Inaction, Creating the Environment that Allowed Hanna and Neugebauer to Violate Ms. Biggs' Constitutional Rights.**

15. In the absence of an express policy or an entrenched custom, "the deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or *failure to act* is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to *disregard the risk of harm.*" *Schneider v. City of Grand Junc. Police Dept.*, 717 F3d 760, 779 (10th Cir. 2013) (emphasis added).   "The knowing failure to enforce policies necessary to the safety of inmates may rise to the level of deliberate indifference." *Tafoya v. Salazar*, 516 F.3d 912, 915 (10th Cir. 2008); *Layton*, 512 F App'x at 871 (Dismissal denied because municipal entities' inaction could have caused violation of constitutional rights).   With regard to causation, "[a] failure to adopt a policy can constitute deliberate indifference when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992); *Bordanaro v. McLeod*, 871 F.2d 1151, 1162 (1st Cir. 1989) (The inaction of the Mayor and Chief of Police amounted to a deliberate indifference to the constitutional rights of the city's inhabitants).

16. **Knowledge.** Ms. Biggs does not have to show a history of sexual abuse by Hanna, or a history of Neugebauer failing to intervene in reporting sexual abuse.  A municipality's knowledge of the *risk* of sexual abuse to an inmate "need not be knowledge of a substantial risk to a *particular* inmate, or knowledge of the *particular* manner in which injury might occur." *Tafoya*, 516 F.3d at 915 (emphasis added).  "It does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to [her] or because all prisoners in [her] situation face such a risk." *Gonzales v. Martinez*, 403 F3d 1179, 1187 (10th Cir. 2005).

17. First and foremost, "an inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir.

1993). "The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including reasonable safety from serious bodily harm." *Tafoya*, 516 F.3d at 916 (10th Cir. 2008). Pretrial detainees, like Ms. Biggs have similar constitutional rights under the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535, n. 16, 545 (1979). Secondly, the potential of inmate abuse has been well documented historically, by scholars, and by the Courts. It is well known that the authoritarian/subordinate relationship between deputies and inmates creates a breeding ground for sexual abuse and discrimination of inmates with disabilities.[4] "Historically, woman have been subjected to 'sexual abuse and oppression' by the males who controlled the prisons for women."[5] "[T]he sexual abuse experienced by female prisoners is more repugnant from a legal and policy standpoint, as the abusers are often actors of the state."[6] This culture has also been documented by the Courts, creating a basis for municipal liability. *See e.g., Boddie v. Schnieder*, 105 F.3d 857, 861 (2nd Cir. 1997) ("[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose"); *Tafoya*, 516 F.3d 912; *Gordon-Smith v. Baldwin*, 2007 US Dist LEXIS 6961, at *16-17 (D. Colo. Jan. 31, 2007) ("acting with deliberate indifference towards the safety of inmates was clearly established law during the relevant time period."). Even in Sedgwick, the Department had actual and/or constructive knowledge that the failure to enact "zero-tolerance" policies could lead to abuse by its jail officials who had contact with inmates. *See* Amended Complaint at ¶ 54, 129, 150. The Court may infer that the Department's "zero tolerance" policies for deputies were created

---

[4] In March 1998, Amnesty International released "Not Part of My Sentence: "Violations of the Human Rights of Women in Custody, a report which documented rampant problems with sexual abuse, revealing unpunished rape and other sexual assaults committed by prison officials.
[5] Ashley E. Day, Comment, Cruel and Unusual Punishment of Female Inmates: The Need for Redress Under 42 U.S.C. § 1983, 38 Santa Clara L. Rev. 555 (1998).
[6] Bell, Cheryl; Coven, Martha; Cronan, John P.; Garza, Christian A.; Guggemos, Janet; and Storto, Laura (1999) "Rape and Sexual Misconduct in the Prison System: Analyzing America's Most "Open" Secret," Yale Law & Policy Review: Vol. 18: Iss. 1, Article 6.

because the Department knew it was substantially certain that, but for these policies, abuses of inmates was substantially likely to occur.

18. **Deliberate Indifference.** Though Hanna is the highest-ranking official, he nonetheless has absolute authority and control over the actions of every inmate—who are his subordinates. The same concerns that motivated the establishment of the "zero tolerance" policies prohibiting sexual assault of inmates and discrimination of inmates with disabilities by deputies should have been applied to Hanna. The Department however, deliberately choose to disregard the risk of harm.

19. **Causation.** In *Sanchez v. Hartley,* Judge Martinez found that a municipal entity could be held municipally liable for a single incident of deliberate indifference for failing to train the sheriff against coercive interrogations when it was plainly obvious the it knew, *or should have known*, that the sheriff and his deputies would be required to interview suspects who may be vulnerable to coercion due to disabilities or low IQ, and the failure to train resulted in coercion. 65 F. Supp. 3d at 1127-1129.  Similarly, here, the Department deliberately choose to disregard the risk of harm, and the lack of oversight created the environment that allowed Hanna and Neugebauer to violate Ms. Biggs' constitutional rights.  *See* Amended Complaint at ¶ 90-91, 143-144, 150-152. The Department can be held liable for all violations of Ms. Biggs' constitutional rights that stemmed from its inaction. Though the causation element in a § 1983 claim, like other difficult questions of fact, are normally reserved for a jury, *Rivas v. City of Passaic*, 365 F.3d 181, 193 (3d. Cir. 2004), there is sufficient proof the Department can be found liable for its deliberate indifference which caused her constitutional violations.

**III.    Neugebauer is Not Shielded by Qualified Immunity.**

20. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Pahls v. Thomas*, 718 F.3d 1210, 1222, n 5 (10th Cir 2013).  The doctrine fails to shield state actors performing discretionary functions from liability if their conduct violated "clearly

established" statutory or constitutional rights." *Toevs v. Reid,* 646 F.3d 752 (10th Cir. 2011). "For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as plaintiff maintains." *Foote v. Spiegel*, 118 F.3d 1416, 1424 (10th Cir. 1997). "[T]he salient question . . . is whether the state of the law [at the time of the conduct] gave [Defendants] fair warning that their alleged treatment of [Ms. Biggs] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The Tenth Circuit "construes the facts in the light most favorable to the plaintiff as the nonmoving party." *Kaufman v. Higgs*, 697 F3d 1297 (10th Cir. 2012). Officials can still be on notice that their conduct violates clearly established law even in novel factual circumstances, *Hope*, 536 U.S. at 741, meaning the qualified immunity test no longer has to be based on precedent that perfectly matches the facts of the current case. *See Casey v. City of Fed. Hgts.*, 509 F3d 1278, 1284 (10th Cir. 2007) ("We cannot find qualified immunity wherever we have a new fact pattern."). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

21. **Conspiracy.** To state a conspiracy claim arising under § 1983, a plaintiff must demonstrate that the alleged conspirators had a (1) meeting of the minds and (2) engaged in concerted action to violate the plaintiff's constitutional rights. *See Montoya v. Bd. Of Cty. Comm'rs*, 506 F. Supp. 2d 434, 443 (D. Colo. 2007). Ms. Biggs need only plead sufficient facts to support the inference that some prearranged plan or joint action existed. *Id.* The Court may look at circumstantial evidence and make logical inferences. *See Rounsville v. Zahl*, 13 F.3d 625 (2d Cir. 1994). A "sequence of events" in certain cases will "create a substantial enough possibility of a conspiracy" to allow a case to move on to trial. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide." *Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980).

22. Hanna not only authorized the conspiratorial agreement to violate Ms. Biggs' constitutional rights as a policy making official, the Department created the environment that allowed this conspiratorial agreement to happen due to a complete lack of oversight into abuses by Hanna to inmates who were in his custody. *See* Amended Complaint at ¶ 165. The Department can also be found liable for the official actions of Neugebauer in engaging in this conspiracy. *See Tunget v. Board of County Comm'rs of Delta County*, 992 P. 2d 650, 651-52 (Colo. App. 1999). Sufficient facts have been pled to reasonably infer Neugebauer knew that Hanna was committing a constitutional violation—false imprisonment at the very least, or worse, sexual assault—and he had every opportunity to stop Hanna. *See* Amended Complaint at ¶ 34, 56. However, having agreed with Hanna not to report and to cover up the constitutional violations, Neugebauer stayed silent even though he knew Ms. Biggs was likely to not report the incident as a result of her mental disability. *Id.* at ¶ 57-80, 166. As a result of Neugebauer's agreement to not intervene or report, Ms. Biggs was subject to excessive force, and her equal protection and substantive due process rights were violated. Neugebauer is not qualifiedly immune for engaging in the conspiracy. As discussed below, there is sufficient evidence of each violation underlying the conspiracy, which were clearly established before August of 2016.

23. **Failure to Intervene.** An officer may be liable if he had the realistic opportunity to prevent or stop a constitutional violation, but failed to do so. *Hall v. Burke*, 12 F App'x 856, 861 (10th Cir. 2001) (Found it was clearly established that "[a]n officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers"). In order for liability to attach, there must have been a *realistic opportunity* to intervene to prevent the harm from occurring. *Id.* "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer *is an issue of fact for the jury* unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.* The secondary officer does have to

observe the constitutional violation, so long as they "have reason to know that the primary officer is engaging in improper conduct." *Id.*

24. Neugebauer had the opportunity to intervene and prevent Ms. Biggs from being falsely imprisoned and sexually assaulted by Hanna. Ms. Biggs has plead sufficient facts that Neugebauer reasonably knew Hanna targeted Ms. Biggs because of her developmental disability; knew that Ms. Biggs was in her street clothes; in Hanna's personal car; then in his house, all the while under Hanna's custody; and unable to escape. Yet, despite seeing Hanna's vehicle and being right in front of Hanna's house when the assault was taking place, he did nothing to even try and investigate the odd occurrence. He did not stop Hanna from putting Ms. Biggs in his personal vehicle; knock on Hanna's door; or call Logan County Jail to see if Ms. Biggs had been transferred. Whether it can be reasonably inferred from the record that an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury. *Richard v. Bd. of County Comm'rs.*, 2014 US Dist LEXIS 19586, at *103-104 (D. Kan. Feb. 18, 2014). A jury could reasonably find that Neugebauer had a realistic opportunity to intervene and prevent Ms. Biggs' false imprisonment and sexual assault, and he can be held liable for failing to do so. Though the facts of this case are extraordinary and egregious, *Hall* clearly established that an officer has a duty to intervene when they have a realistic opportunity to prevent a constitutional harm from occurring.

25. **Equal Protection.** In order for an equal protection claim to overcome qualified immunity, a plaintiff must show that she was treated differently than similarly situated persons, *see Gehl Group v. Koby,* 63 F.3d 1528, 1538 (10th Cir. 1995), and that the difference in treatment was not reasonably related to legitimate penological interests, *Turner v. Safley*, 482 U.S. 78, 89 (1987). "[F]reedom from bodily restraint is a fundamental right protected by the Equal Protection Clause. *See United States v. Phelps*, 17 F.3d 1334, 1344 (10th Cir. 1994). "[S]exual abuse of a prisoner by

a corrections officer has no legitimate penological purpose." *Boddie*, 105 F.3d at 861.  Ms. Biggs has pled sufficient facts that she was targeted from the jail's general population because of her developmental disability—making her more vulnerable to threats, manipulation, and abuse. It was because of this developmental disability that she was treated differently than the other inmates at the jail and subsequently restrained and assaulted in Hanna's home. Normally, inmates are not dressed in plain clothes, put into an officer's personal vehicle, and then taken to that officer's home. Neugebauer knew that the treatment Ms. Biggs was receiving could not be reasonably related to any penological interest.

26. **Substantive Due Process.**   Substantive due process provides individuals with protections from governmental deprivations, *A.M. v. N.M. Dep't of Health,* 65 F. Supp. 3d 1206 (D.N.M. 2014), including protection from any infringement on an individual's safety and security, *Tanner v. McMurray*, 2018 U.S. Dist. LEXIS 196477, *55 (10th Cir. 2018), as well as right to bodily integrity, *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008).   A jury could infer that Neugebauer had a realistic opportunity to intervene and prevent Ms. Biggs' false imprisonment and sexual assault—fundamental violations of her bodily integrity—but failed to intervene.  Moreover, a jury could infer that Neugebauer denied Ms. Biggs' substantive due process right to access to courts by delaying reporting for 12 days thereby hindering the DA from conducting a rape kit, obtaining DNA evidence, and photographing physical injuries—crucial evidence for Hanna's criminal case and Ms. Biggs' civil suit. Cover-ups that prevent a person who has been wronged from vindicating her rights violate the right of access to the courts protected by the substantive due process clause, *see Snyder v. Nolen*, 380 F3d 279, 291 (7th Cir. 2004), because there is a due process right to have legitimate claims of civil rights violations heard in court, *see Jones v. Norton,* 3 F. Supp. 3d 1170, 1210 (D. Utah 2014). *See A.M.*, 148 F. Supp. 3d. at 1280 (right of court access under the Fourteenth Amendment's due-process right is substantive rather than procedural). The right is lost

when law enforcement shields or covers-up information that would form the basis for a claim for redress. To prove a denial of access claim, a plaintiff must show that their claim is based on a "nonfrivolous, arguable, underlying claim." *Raguindin v. Yates*, 2016 U.S. Dist. LEXIS 43837 (D. Colo. Feb. 29, 2016). Ms. Biggs sufficiently pled facts that Neugebauer deliberately failed to investigate a constitutional violation and hindered the prosecution's ability to collect evidence crucial to Hanna's criminal case and Ms. Biggs' civil suit.

27. Neugebauer's conduct is sufficient to shock the conscience of a federal judge. "[C]onduct intended to injure in some way[,] unjustifiable by any government interest[,] is the sort of official action most likely to rise to the conscience-shocking level." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). "Whether the conduct shocks the conscience is an objective test, based on the circumstances." *Peña v. Greffet*, 922 F. Supp. 2d 1187, 1227 (D.N.M. 2013).  The fact that Neugebauer knew that Ms. Biggs, a disabled female, changed into her street clothes, was put into Hanna's personal vehicle, brought to his house, all the while under Hanna's custody, but did nothing to intervene, investigate, or report the bizarre behavior for 12 days—blatantly infringing on Ms. Biggs' right to access, as well as her right to safety and security—was objectively shocking and abhorrent.

## **CONCLUSION**

28. Ms. Biggs has asserted plausible evidence of statutory tolling and cognizable claims against Sheriff Carlton Britton for municipal liability and Larry Neugebauer for his individual violations. Ms. Biggs respectfully requests the Court allow the matter to proceed for further factual development, or otherwise order Ms. Biggs be permitted to amend her pleadings.  It is respectfully requested that the Court deny Defendants' motion in its entirety.

Submitted on this 23rd day of January, 2019.


FISHER & BYRIALSEN, PLLC

/s/ Kaitlin F. Nares, Esq.
By:     Kaitlin F. Nares, Esq.
4600 S. Syracuse St. 9th Floor
Denver, Colorado 80237
T: (303) 256-6345
E: Kaitlin@FBLaw.org


**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the 23rd day of January 2019, I electronically filed a true and exact copy of the above and foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' FED. R. CIV. P. R. 12(B)(6) MOTION TO DISMISS** with the Clerk of the Court using the CM/WCF system which will send notification of such filing to the following email addresses:


Jonathan Eddy jeddy@sgrllc.com

Thomas Rice  trice@sgrllc.com


_____/S/ Kaitlin F. Nares_____
***Kaitlin F. Nares Esq.***
Fisher & Byrialsen, PLLC
Email: Kaitlin@FBLaw.org

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-002076-WYD-SKC

PEATINNA BIGGS,

      Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK,
SHERIFF CARLTON BRITTON,
FORMER SHERIFF THOMAS HANNA, and
LARRY NEUGEBAUER,
in their individual and official capacity,

      Defendants.

---

**REPLY IN SUPPORT OF MOTION TO DISMISS**

---

    Defendants, **SHERIFF CARLTON BRITTON** ("Sheriff Britton") and **LARRY NEUGEBAUER**, by their attorneys, **SENTER GOLDFARB & RICE, LLC**, respectfully submit their Reply in Support of Motion to Dismiss and state as follows:

I.   <u>ARGUMENT</u>

**A.   PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST SHERIFF BRITTON IN HIS OFFICIAL CAPACITY.**

    1.   Plaintiff's Response [ECF No. 42] again asserts that Sheriff Britton, and thereby the "Sedgwick County Sheriff's Department" (the "Department"), is vicariously liable for Hanna's conduct on theories that (1) Hanna's decision to sexually assault Plaintiff was a "policy making decision," and (2) that the "Department's" failure to act, "creat[ed] the environment" which allowed the alleged violations to occur. [Response, ¶¶ 13–15.]

1. ***Plaintiff has failed to plead and will ultimately fail to show how Hanna's violative conduct amounted to a policy decision.***

2.      To assert her municipal liability claim, Plaintiff argues that because Hanna—as former Sheriff—could be considered a final policymaker for purposes of the "Department," that all actions taken by him would therefore be lawfully attributable to the "Department" as well. [*See* Response, ¶ 14.] To support this proposition, Plaintiff cites to *Sanchez v. Hartley*, 65 F. Supp. 3d 1111 (D. Colo. 2014). [*Id.*] *Sanchez*, however, does not stand for this principle, as evidenced by the fact that municipal liability in that case ultimately turned on the defendant entity's deliberate indifference and not a policy making decision. *See* 65 F. Supp. 3d 1111, 1129 ("Taking [p]laintiff's allegations as true for the purposes of a motion to dismiss, the [c]ourt finds that the Amended Complaint supports an inference that the absence of training on proper interrogation demonstrates a deliberate indifference on the part of the [entity]."

3.      In contrast to Plaintiff's sweeping assertion—as demonstrated in Defendants' Motion to Dismiss—to extend liability to a municipal entity based on a decision made by one with policymaking authority, the end result of that decision must in some way resemble that of an official policy. [*See* Motion to Dismiss, ¶ 24.] Therefore, under this theory Plaintiff must sufficiently allege that the violative conduct at issue was "taken *pursuant to a policy* adopted by the official or officials responsible under state law..." *Randle v. City of Aurora*, 69 F.3d 441, 447–48 (10th Cir. 1995) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)). The Response, however, merely asserts that Hanna was the final policymaker "with respect to decisions related to … operations of the county jail." [Response, ¶ 14.] Because Plaintiff has failed to allege how a decision to commit sexual assault—or engage in a conspiracy to cover it up—could have been done *pursuant to* a "Department" policy, when she herself has claimed that such action(s)

were in clear violation of these very policies [*See* Amended Complaint, ¶¶ 23, 30 and 150.], she has failed to adequately allege her claim under this theory.

> ### 2. *Plaintiff has failed to plead and will ultimately fail to show how the "Department" was deliberately indifferent to her constitutional rights.*

4.      To plead liability for failure to act, Plaintiff must sufficiently allege that the "Department" deliberately or consciously failed to act after being presented with an obvious risk of constitutional harm, which it knew would almost inevitably result in the type of injury at issue. In short, Plaintiff must sufficiently allege a causal connection between the purported omission and the claimed violation. [*See* Motion to Dismiss, ¶ 21.]

5.      In her Response, Plaintiff continues to assert that the Department should be held liable on grounds that if failed to implement an appropriate sexual assault policy. As previously addressed above and in the Motion to Dismiss, however, such policies *were* in place at the time of the alleged violation—a fact which Plaintiff has conceded. [*See* Motion to Dismiss, ¶ 23; Amended Complaint, ¶ 118.] Indeed, Plaintiff has acknowledged that Hanna's actions were in clear violation of such policies. [*See id.*, ¶¶ 23, 30 and 54.] Because Plaintiff's own admissions demonstrate that the "Department" did not consciously disregard such risk, given that it had applicable policies in place at the time of Plaintiff's claimed violation, she has necessarily defeated both the omission and causation elements of her deliberate indifference claim and such claim should be dismissed accordingly.

## B.      PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DEPUTY NEUGEBAUER.

6.      In the context of qualified immunity, a plaintiff must allege facts sufficient to show that the defendant *plausibly* violated her constitutional rights. The Tenth Circuit has also reasoned

that the federal pleading standard "may have greater bite in [this] context[], appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity 'at the earliest possible stage of a litigation.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).

1.     ***Plaintiff's civil rights conspiracy claim fails to overcome Deputy Neugebauer's qualified immunity defense.***

7.     To state a conspiracy claim arising under 42 U.S.C. § 1985, a plaintiff must present *specific facts* showing that the alleged conspirators had a (1) meeting of the minds and (2) engaged in concerted action to violate the plaintiff's constitutional rights. In this context, a plaintiff must also show that the alleged conspiracy resulted in injury to her person or property or that it deprived her of having and exercising any right or privilege of a citizen of the United States. [*See* Motion to Dismiss, ¶ 34]

8.     As with the Amended Complaint, the Response contains nothing more than threadbare recitals of the elements of a conspiracy claim. Specifically, the Response merely states that Deputy Neugebauer "agreed with Hanna not to report … the constitutional violations" and that Plaintiff's "equal protection and substantive due process rights were violated." [*See* Response, ¶ 22.] Plaintiff has again failed to allege any specific facts which demonstrate a meeting of the minds between these individuals, or how such "agreement" was a *concerted action* to violate such rights. Although Plaintiff now seems to assert that Deputy Neugebauer also agreed "to not intervene," she made no such assertion in the Amended Complaint. Indeed, the "facts" as alleged make clear that any such "agreement" could not have occurred until *after* Hanna's violative conduct, given that her entire conspiracy claim is premised on a "coverup [sic]" and "delayed reporting." [*See* Amended Complaint, ¶ 166.] As such, Plaintiff has failed to meet the pleading

standard necessary to maintain this claim in the context of Deputy Neugebauer's qualified immunity defense, thus warranting its dismissal.

> **2.** ***Plaintiff's failure to intervene claim fails to overcome Deputy Neugebauer's qualified immunity defense.***

9.      To plead this claim, Plaintiff must sufficiently allege, *inter alia*, that Deputy Neugebauer observed or had reason to know of a constitutional violation. [*See* Motion to Dismiss, ¶ 32.]

10.     Plaintiff's reliance on *Hall v. Burke* for the proposition that liability for such claim can be triggered through anything other than knowledge of a constitutional violation is again unfounded. *See* 12 F. App'x 856, 861 (10th Cir. 2001) (finding that the basis of such claims are to "protect the constitutional rights of citizens from infringement," while affirming that the non-intervening officer must have knowledge that a "*constitutional violation* has been committed by a law enforcement official") (emphasis added). Because Plaintiff has again failed to sufficiently allege how Deputy Neugebauer, at the time he witnessed Plaintiff being prepared for transfer or subsequently observed Hanna's empty vehicle, would have had knowledge of anything other than a potential *policy* violation, she has failed to adequately plead this claim.

11.     Plaintiff's claim fails to overcome Deputy Neugebauer's qualified immunity defense on the additional grounds that she has failed to point to any applicable authority which holds that knowledge of anything other than a civil rights violation is sufficient to trigger an officer's duty to intervene. Because the violation of such right is not clearly established under similar circumstances, Deputy Neugebauer is entitled to qualified immunity as to this claim.

### 3. *Plaintiff's equal protection claim fails to overcome Deputy Neugebauer's qualified immunity defense.*

12.     To assert a viable equal protection claim, Plaintiff must first make a threshold showing that she was treated differently from others who were similarly situated to her. Such requires a showing of "specific details about other inmates," and "specific differences in [d]efendant's treatment of other inmates" *See Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1175 (D. Colo. 2010).

13.     Despite the arguments raised in Plaintiff's Response, namely that her alleged disability made her "more vulnerable to threats, manipulation, and abuse" and that sexual abuse "has no legitimate penological purpose" [Response, ¶ 25], she has again failed to plead a single specific detail about any other similarly situated inmate. Plaintiff has also failed to put forth a single fact which demonstrates how Deputy Neugebauer, through a claimed delay in reporting, treated her "differently" than other inmates, as is necessary to sustain this claim. For these reasons, in addition to the fact that she has failed to demonstrate how the alleged violation was clearly established under similar circumstances, Plaintiff's equal protection claim fails to overcome Deputy Neugebauer's qualified immunity defense and should therefore be dismissed.

### 4. *Plaintiff's substantive due process claim fails to overcome Deputy Neugebauer's qualified immunity defense.*

14.     The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience. However, "[e]ven *knowingly* permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (quoting *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1235 (10th Cir.2000)) (emphasis added).

6

15.    To the extent Plaintiff is now attempting to assert this claim on a theory that Deputy Neugebauer "failed to intervene" to prevent a violation of her "bodily integrity" [*See* Response, ¶ 26], her claim remains infirm for the reasons previously addressed in Deputy Neugebauer's "failure to intervene" analysis (*supra*). Additionally, unlike a failure to intervene claim which may be maintained, in part, through a plausible showing that a defendant possessed *knowledge* of an underlying constitutional violation, such showing is inapposite in maintaining a substantive due process claim. *See Moore*, 438 F.3d at 1040. Plaintiff's otherwise conclusory allegations therefore cannot be premised on this theory.

16.    Plaintiff's newly presented claim that Deputy Neugebauer's alleged actions also denied her access to the court [*See* Response, ¶ 26] is similarly inadequate.[1] In an apparent attempt to preserve her overarching substantive due process claim, the Response now alleges that Deputy Neugebauer "deliberately failed to investigate a constitutional violation and hindered the prosecution's ability to collect evidence crucial to Hanna's criminal case and [Plaintiff's] civil suit" and that this delay in reporting denied her "access to the courts." [*Id.*] As a preliminarily matter, the fact that any such delay may have impacted Hanna's criminal case has no bearing on Plaintiff's right to substantive due process, given that her civil rights were in no way implicated in those proceedings. Moreover, to the extent such claim is cognizable, it would be properly deemed "backward-looking," thereby requiring Plaintiff to also "identify a remedy that may be awarded as recompense *but not otherwise available in some suit that may yet be brought*." *See Christopher v.*

---

[1] Defendants further note that Plaintiff failed to raise her "access-to-courts" claim in the Amended Complaint and it should therefore not be considered in reviewing the Motion to Dismiss. *See e.g.*, *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir.1994); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 724 (10th Cir.1993).

7

*Harbury*, 536 U.S. 403, 404 (2002). Because Plaintiff has identified no such remedy, this theory of liability must fail.

17.     In regard to Plaintiff's "civil suit," it strains logic to see how she has been prevented from vindicating her rights, given that her various (and ever-expanding) claims are currently pending before this Court. "To state a constitutional claim for infringement of the right to court access, a plaintiff must demonstrate that [her] capability of bringing a contemplated claim before the courts has been frustrated either because the claim has been lost or rejected or because its presentation is currently being prevented." *JL v. New Mexico Dep't of Health*, 165 F. Supp. 3d 996, 1037 (D.N.M. 2015). Because Plaintiff has failed to allege how—or even that—any of her claims have been lost, rejected, or prevented, she has failed to state a claim for relief under this theory. Indeed, any impending hindrance to Plaintiff's ability to pursue these claims cannot fairly be attributed to Deputy Neugebauer, as he was not responsible for her failure to file suit within the applicable statute of limitations period, despite her having retained counsel approximately three months after the alleged events.

Respectfully submitted,


_s/ Thomas S. Rice_
**Thomas S. Rice**

_s/ Jonathan N. Eddy_
**Jonathan N. Eddy**
Senter Goldfarb & Rice, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO  80210
Telephone:  (303) 320-0509
Facsimile:  (303) 320-0210
trice@sgrllc.com
jeddy@sgrllc.com
_Attorneys for Defendants_

9

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 6th day of February, 2018, I electronically filed a true and correct copy of the above and foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Jane Fisher-Byrialsen
David N. Fisher
Kaitlin F. Nares
E-Mail: jane@fblaw.org
E-Mail: david@fblaw.org
E-Mail: kaitlin@fblaw.org
*Attorneys for Plaintiff*

<u>s/ Barbara A. Ortell</u>
Barbara A. Ortell, Legal Secretary

10

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO
## Judge Daniel D. Domenico

Case No. 18-cv-02076-DDD-SKC

HOLLIS ANN WHITSON, as guardian ad litem for Peatinna Biggs,

    Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK,
SHERIFF CARLTON BRITTON,
FORMER SHERIFF THOMAS HANNA, and
LARRY NEUGEBAUER,
in their individual and official capacities,

    Defendants.

---

## ORDER

---

    Defendants Sheriff Carlton Britton and Deputy Larry Neugebauer have moved to dismiss the Plaintiff's claims[1] against them. (Doc. 40.) Defendant Board of County Commissioners of the County of Sedgwick ("Sedgwick County") also filed a motion to dismiss on similar grounds. (Doc. 22.) For the reasons that follow, the Court **GRANTS** the Motion filed by Sedgwick County, and **GRANTS** the Motion filed by Sheriff Britton and Deputy Neugebauer.[2]

---

[1]   The Court substituted Ms. Hollis Ann Whitson, as the guardian ad litem of former-Plaintiff Peatinna Biggs, as Plaintiff in this action on February 27, 2020. (Doc. 88). But because Ms. Whitson is acting on behalf of Ms. Biggs, and for the sake of simplicity, the Court will refer to the Plaintiff as Ms. Biggs in this Order.

[2]   This matter was reassigned to the undersigned upon Judge Daniel's

## BACKGROUND

On August 10, 2016, Peatinna Biggs was an inmate at the Sedgwick County Jail, which at that time was run by Defendant Thomas Hanna as Sheriff of Sedgwick County. On that day, Mr. Hanna informed Deputy Larry Neugebauer that he, Mr. Hanna, would himself be transporting Ms. Biggs to the Logan County Jail using his personal vehicle. Am. Compl., ¶¶ 21–22.[3] Mr. Hanna gave Ms. Biggs her street clothes and ordered her to change into them before being transferred. *Id.* ¶ 24. Ms. Biggs alleges that Mr. Hanna drove her to his home, ordered her inside, and sexually assaulted her. *Id.* ¶¶ 31, 41.

Sedgwick County Sheriff's Department policy forbade the transportation of prison inmates in personal vehicles or bringing an inmate into an officer's home. *Id.* ¶¶ 23, 30. The Department also had a policy committed to "zero tolerance" of any form of sexual abuse and sexual harassment of inmates. *Id.* ¶ 54.

Before the alleged assault, at approximately 12:15 that afternoon, Deputy Neugebauer witnessed Mr. Hanna placing Ms. Biggs, who was wearing street clothes, into his personal vehicle. *Id.* ¶¶ 26-27. Deputy Neugebauer knew it was highly unusual to have an inmate change into street clothes for a transfer. *Id.* ¶ 25.

Driving home for a lunch break, Deputy Neugebauer noted as he drove past Mr. Hanna's house that Mr. Hanna's personal vehicle was parked in front. *Id.* ¶ 46. When he drove back to the station after his break, he noted

passing. (Doc. 58.)

[3]   The facts described herein are drawn from the allegations in the Amended Complaint, which the Court must treat as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013).

that the vehicle was still parked in the same place. *Id.* ¶ 49. The vehicle appeared to be empty each time. *Id.* ¶¶ 47, 49.

At approximately 12:51 p.m., Mr. Hanna called dispatch to report that he was taking Ms. Biggs to the Logan County Jail. *Id.* ¶ 51.

On August 22, Deputy Neugebauer reported to the Logan County District Attorney's Office what he had witnessed. *Id.* ¶ 80. The District Attorney opened an investigation, and eventually Mr. Hanna was criminally charged in state court on several counts, including sexual assault on an at-risk adult and sexual misconduct in a correctional institute. *Id.* ¶ 82. He was later convicted of official misconduct and removed from office. *Id.* ¶¶ 83–84.

Ms. Biggs through her guardian ad litem brings multiple civil rights claims under 42 U.S.C. § 1983, as follows:

- Claim 1: Excessive Force (against Mr. Hanna);
- Claim 2: Outrageous Conduct/Intentional Infliction of Emotional Distress (against Mr. Hanna);
- Claim 3: False Imprisonment (against Mr. Hanna);
- Claim 4: Sexual Assault and Battery (against Mr. Hanna);
- Claim 5: Violation of Equal Protection (against Mr. Hanna and Deputy Neugebauer);
- Claim 6: Violation of Substantive Due Process (against Mr. Hanna and Deputy Neugebauer);
- Claim 7: Violation of the Right to Privacy (against Mr. Hanna);
- Claim 8: Municipal Liability (against Sedgwick County and Sheriff Carlton Britton)
- Claim 9: Failure to Intervene (against Mr. Hanna and Deputy Neugebauer); and

- Claim 10: Conspiracy to Interfere with Civil Rights (against Mr. Hanna and Deputy Neugebauer).

Sedgwick County and Sheriff Britton filed motions to dismiss the municipal liability claim. Deputy Neugebauer joined the motion filed by Sheriff Britton, seeking dismissal of the four claims asserted against him.[4]

## ANALYSIS

The legal sufficiency of a pleading is a question of law. *Dubbs v. Head Start, Inc.*, 1194, 1201 (10th Cir. 2003). At this stage all allegations of material fact in the Amended Complaint must be accepted as true. *Wilson v. Montano*, 715 F.3d at 850 n.1. Still, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility means that the pleader set forth facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[L]abels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545.

### I.   Statute of Limitations

In an action brought pursuant to 42 U.S.C. § 1983, state law governs issues of the statute of limitations and tolling. *Fratus v. DeLand,* 49 F.3d 673, 675 (10th Cir. 1995). And under Colorado law, the plaintiff bears the burden of demonstrating that the statute of limitations should be tolled. *See Lake Canal Reservoir Co. v. Beethe,* 227 P.3d 882, 886 (Colo. 2010).

Ms. Biggs does not appear to dispute that this action accrued on August 10, 2016. Because "the statute of limitations for § 1983 actions brought in

---

[4]   Mr. Hanna has withdrawn his motions to dismiss and is not a party to any of the motions addressed in this Order.

Colorado is two years from the time the cause of action accrued," *Fogle v. Pierson,* 435 F.3d 1252, 1258 (10th Cir.2006), the limitations period expired on August 10, 2018. Hence this action, which was filed on August 15, 2018, is subject to dismissal unless tolling applies. *Braxton v. Zavaras*, 614 F.3d 1156, 1159-60 (10th Cir. 2010); *Graham v. Teller County*, 632 F. App'x 461, 462 (10th Cir. 2015) ("If the plaintiff doesn't plead sufficient factual matter to plausibly establish entitlement to tolling, a district court can properly dismiss the action under Rule 12(b)(6).").

Ms. Biggs points out that pursuant to Colo. Rev. Stat. § 13-81-103, the statute of limitations does not run against a person who is mentally incompetent and without a legal guardian. Colorado law defines an individual as mentally incompetent in a variety of ways. One is "determinat[ion] by a community-centered board" that a person has an intellectual and developmental disability. Colo. Rev. Stat. § 25.5-10-202(26)(b); *see also* Colo. Rev. Stat. § 25.5-10-237 (defining "mentally incompetent" by cross-referencing § 25.5-10-202). And an "intellectual and developmental disability" means a disability

> that manifests before the person reaches twenty-two years of age, that constitutes a substantial disability to the affected person, and that is attributable to mental retardation or related conditions, which include cerebral palsy, epilepsy, autism, or other neurological conditions when those conditions result in impairment of general intellectual functioning or adaptive behavior similar to that of a person with mental retardation.

Colo. Rev. Stat. § 25.5-10-202(26)(a); *see also Southard v. Miles*, 714 P.2d 891, 898-99 (Colo. 1986) (relying on predecessors to §§ 25.5-10-202 to define "mentally incompetent" for purposes of the tolling provision).

As described more fully in the Court's orders surrounding the appointment of a guardian ad litem (Docs. 63, 65), Ms. Biggs is developmentally

disabled. *See* Am. Compl. ¶¶ 9, 14 (Doc. 16). Ms. Biggs makes the following additional allegations in support of her assertion that she is developmentally disabled: that Ms. Biggs underwent IQ and adaptive testing as a child and was placed in special education classes throughout her schooling; *id.* ¶ 11; that she tested cognitively and functionally below grade average and was designated as special needs, *id.*; that she obtained a "special diploma" and was not included in the class rankings with other students who received "general diplomas," *id.* ¶ 12; and that since childhood she has received disability payments from the Social Security Administration based on her learning and cognitive disabilities, *id.* ¶ 13. After the Amended Complaint was filed, a community-centered board ("CCB") determined Ms. Biggs is developmentally disabled. Plaintiff's Memorandum in Opposition to Defendant's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, Ex. B (Doc. 35-2). In addition, Ms. Biggs notes that during the criminal trial of Mr. Hanna, the prosecution introduced into evidence childhood education records reflecting Ms. Biggs' placement into "Educable Mentally Handicapped" classes.[5]

Defendants argue that § 13-81-103 allows tolling only if the person is "under disability *at the time such right accrues*" (emphasis added), and that because the CCB determination was made twenty-seven months after Ms. Biggs' cause of action accrued, she does not qualify as disabled within the meaning of the statute. Defendants are correct that a claimant must be disabled at the time such right accrues. *See Pearson v. Federal Express Corp.*, No. 90-A-279, 1990 WL 126192, at *7 (D. Colo. Aug. 24, 1990). While one

---

[5]   The Court takes judicial notice of the trial exhibit, which is a matter of public record. *See, e.g., Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp. 2d 1201, 1205 n.5 (D. Utah 2004). It is less clear to the Court that the CCB determination is a matter of public record of which the Court may take judicial notice, but even in the absence of that determination, Ms. Biggs' allegations are sufficient to survive a motion to dismiss.

definition of disability under Colorado law requires that a CCB make that determination (*see* Colo. Rev. Stat. § 25.5-10-202(26)(b)), and while that determination is relevant evidence of disability, the Court does not believe it is required for the tolling provisions of Section 103 to apply. The Amended Complaint alleges sufficiently that Ms. Biggs was developmentally disabled long before the cause of action accrued or that anything material to that question changed prior to the CCB's determination. Consistent with the Court's prior order, then, the Court finds that Ms. Biggs was disabled at all times relevant to this action, (Doc. 63 at 4), and there is no suggestion in the record or otherwise that she was any more or less disabled at that time.

Since she was incompetent under Colorado law, the statute of limitations did not run against Ms. Biggs until she was appointed a legal guardian, which did not occur until December 17, 2019. Her claims are timely.

## II.   Municipal Liability Claims against Sedgwick County and Sheriff Britton

The County and Sheriff Britton, on behalf of the Sheriff's Department, argue that Ms. Biggs' claims against them must be dismissed because (1) the Department's policies were not the "moving force" behind the alleged injury as required by *Monell v. Department of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978); (2) the Amended Complaint failed to plead facts showing that the Department was deliberately indifferent to her constitutional rights; and (3) the allegations in the Amended Complaint fail to establish that Mr. Hanna's deplorable conduct was a "policy decision" of the Department. Finally, the County gives an additional reason why the complaint must be dismissed as it applies only to the County: that it is a separate legal entity not responsible for the acts of the Sheriff's Department.

## A. The "moving force" behind Ms. Biggs' injuries

A municipal entity, such as this Sheriff's Department, may be held liable under 42 U.S.C. § 1983 for civil rights violations that resulted from the "execution of that government's policy or custom." *Monell*, 436 U.S. at 694. In other words, the municipality must have been "the moving force" behind the injury alleged. *Id.* To make this showing, a plaintiff must establish (1) the existence of a department policy or custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged. *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). Sheriff Britton argues that Ms. Biggs' Amended Complaint does not plausibly establish either of these elements. The Court agrees that there is no causal link between the Department's policies and Ms. Biggs' alleged injuries.

Ms. Biggs asserts that the Sheriff's Department had established policies against transporting inmates in personal vehicles and bringing an inmate into an officer's home, and further that the Department had a policy of "zero tolerance of any form of sexual abuse and sexual harassment" of inmates. Am. Compl., ¶¶ 23, 30, 54 (Doc. 16). But, as the Amended Complaint itself recognizes, it was the *violation* of these policies that caused Ms. Biggs' injuries. *Id.* ¶ 150 ("Sedgwick County's 'zero tolerance' policies against sexual assault of inmates by employees was not followed."); ¶ 151 ("Sedgwick county's policies ensuring the equal protection of the laws for those suffering from disabilities . . . was not followed."); ¶ 152 ("Sedgwick County's policies prohibiting the transport of inmates in officer's personal vehicles, and to their residences, was not followed."). "By deciding to blatantly defying [sic] lawful municipal policy or custom, Defendant Hanna . . . caused [Ms. Biggs] severe emotional distress, caused her cruel and inhumane treatment, all in violation of her equal protection rights." *Id.* ¶ 153.

If Mr. Hanna's violations of Department policies were the cause of Ms. Biggs' injuries, then the policies cannot have been the "moving force" behind

the injuries. Because the Complaint cannot show a direct causal link between the policies and Ms. Biggs' injuries, it does not state a valid claim against the Department under *Monell* and *Hinton*.

## B. Final policymaker

Ms. Biggs argues that the Department is still responsible for the decisions of Mr. Hanna, including "one-time" decisions such as his actions toward Ms. Biggs, because Mr. Hanna was the "final policymaker" with respect to decisions about movement, treatment, and safety of inmates. Ms. Biggs cites *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995), in support of the argument. But *Randle* makes clear that for municipal liability to attach based on the "final policymaking authority" of an individual, "the challenged conduct must have been taken pursuant to a policy adopted by the official or officials." *Id.* at 447–48. Again, as discussed above, Mr. Hanna's actions were not "pursuant to" Department policies, but in direct contravention of them. On Ms. Biggs' reading, every action taken by a "final policymaker" would amount a policy that could lead to municipal liability, even if it is contrary to actual, adopted policy. That is not the law. As Defendants correctly point out, to impose liability on the Department under these facts would be indistinguishable from *respondeat superior* liability, which section 1983 does not authorize. *See Monell*, 436 U.S. at 692 (A "municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

## C. Deliberate indifference

Ms. Biggs also contends that the Department is liable because it failed to "have any policy in place to oversee and internally monitor the actions of [the Sheriff]." Am. Compl., ¶¶ 90, 143–44, 150–52. This "failure to act" allegation requires the plaintiff to "demonstrate that the [entity's] inaction was the result of deliberate indifference to the rights of its inhabitants."

*Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997). A municipality is deliberately indifferent when it "deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Id.*

But a municipality cannot be deliberately indifferent to a risk it does not know exists. Ms. Biggs has not alleged any facts showing that before this incident there was an "obvious risk" that would "almost inevitably result" in the type of injury she experienced. There is no allegation, for example, that Mr. Hanna had a known history of such conduct, that such allegations had previously been made against him, or that the Department failed to remediate any such similarly behavior. *Cf. Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997) (pattern of similar conduct is "ordinarily necessary" to state claim for deliberate indifference for claims like failure-to-train). Even if there were, as the Amended Complaint itself shows, the Department did not fail to act, because it had established policies that were intended to prevent exactly the type of conduct of which Mr. Hanna now stands accused. In the absence of any such allegations that would have put the Department on notice that Sheriff Hanna was likely to sexually assault inmates, the Department cannot be liable for deliberate indifference.

### D. Sedgwick County

Sedgwick County makes one additional argument that applies only to the County—that it is not a proper defendant in this case. Pursuant to the Colorado Constitution, the County is a separate and distinct entity from the Sheriff's Department. *See Barrientos-Sanabria v. Lake County, Colo.*, No. 11-cv-00838-KLM, 2012 WL 1642285, at *2 (D. Colo. May 10, 2012) (citing Colo. Const. art. XIV, §§ 6, 8); *see also Tunget v. Board of County Comm'rs of Delta County*, 992 P.2d 650, 651-52 (Colo. App. 1999) ("Under both the

Colorado Constitution and applicable statutes, sheriffs and boards of county commissioners are treated as separate public entities having different powers and responsibilities."). Accordingly, the County "does not have the legal authority to control or supervise the Sheriff and the Sheriff's deputies." *Barrientos-Sanabria*, 2012 WL 1642285, at *2. Yet even if the County were an appropriate defendant in this case, Ms. Biggs' claims against it must be dismissed for the same reasons discussed above concerning her claims against Sheriff Britton.

### III.   Claims Against Deputy Neugebauer

Deputy Neugebauer moves to dismiss the four claims against him on qualified immunity grounds. Each of those claims arises from the same factual allegation: that Deputy Neugebauer conspired with Mr. Hanna to cover up Mr. Hanna's misconduct, and failed to report Mr. Hanna's conduct for twelve days, thus hindering the subsequent investigation of the case.

The doctrine of qualified immunity "shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When qualified immunity is raised in a [Rule 12] motion, the plaintiff must carry the burden of establishing that the defendant violated clearly established law." *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000). "Thus, the plaintiff must 'identify a clearly established statutory or constitutional right of which a reasonable person would have known, and then allege facts to show that the defendant's conduct violated that right.'" *Id.* Ms. Biggs must satisfy both prongs of this two-part test in order to for her claims to survive Deputy Neugebauer's qualified immunity defense. *Pearson*, 555 U.S. at 236.

### A. Equal protection

"Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 775, 792 (10th Cir. 2005). "In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998).

Here, Ms. Biggs alleges that "Defendant Hanna intentionally treated Ms. Biggs differently than other similarly situated inmates on account of her sex and mental disability … ." Am. Compl., ¶ 117 (Doc. 16). The Amended Complaint says nothing about Deputy Neugebauer's treatment of any other inmates. *See Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011) (conclusory allegations are inadequate); *see also Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1175 (D. Colo. 2010) (dismissing equal protection claim where plaintiff had not "specifically identified any similarly situated prisoners in his pleadings"). Because Ms. Biggs has failed to plausibly support her equal protection claim with "specific details about other inmates," and "specific differences in Defendant's treatment of other inmates," the claim is properly dismissed. *Matthews*, 744 F. Supp. 2d at 1175.

### B. Failure to intervene

Deputy Neugebauer also argues that Ms. Biggs' failure-to-intervene claim against him should be dismissed because her allegations are conclusory, and that he is entitled to qualified immunity because there is no clearly established law holding that an officer must intervene under similar factual circumstances.

"In order to be liable for failure to intervene, the [defendant] must have observed or had reason to know of a constitutional violation and have had a realistic opportunity to intervene." *Jones v. Norton*, 809 F.3d 564, 576

(10th Cir. 2015). The Tenth Circuit has also quoted with approval the Second Circuit's general description of failure to intervene doctrine:

> all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official.

*Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994). The Circuit has said this is "clearly established" law. *Vondrak v. City of Las Cruces,* 535 F.3d 1198, 1210 (10th Cir. 2019).

Mr. Hanna's sexual assault of Ms. Biggs certainly qualifies as a constitutional violation by another law enforcement official.[6] And to be sure, if it were alleged here that Deputy Neugebauer observed the actual sexual assault, or that it took place in his presence, the Court would have no trouble concluding that he could be liable. An officer cannot stand idly by while he

---

[6]   *See, e.g., Rogers v. City of Little Rock*, 152 F.3d 790, 796 (8th Cir.1998) ("No degree of sexual assault by a police officer acting under color of state law could ever be proper."); *Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 507 (6th Cir. 1995) (Sex abuse under color of law "is so contrary to fundamental notions of liberty and so lacking of any redeeming social value that no reasonable individual could believe that sexual abuse by a state actor is constitutionally permissible under the due process clause."); *Maslow v. Evans*, No. 00-CV-5660, 2003 WL 22594577, at *27 (E.D. Pa. 2003) ("It is beyond question that when Plaintiffs' claim arose it was a clearly established principle of law that a state actor violates another's constitutional rights when he sexually assaults that person in the course of an arrest, or transports a person to her house and then forcibly performs oral sex, or otherwise uses his authority as a state official to force himself sexually upon an unwilling victim. Even if no case had ever proclaimed it so, it would be manifestly clear to any reasonable officer that such conduct is unlawful.").

was "highly unusual" to have an inmate change into street clothes before being transferred. *Id.* ¶¶ 23, 25. Ms. Biggs asserts that as he drove home for lunch, Deputy Neugebauer saw Mr. Hanna's vehicle parked outside Mr. Hanna's home, and saw the vehicle still parked there as he returned to work after lunch. *Id.* ¶¶ 46–49. These allegations, she says, are sufficient to allow jurors to infer that Deputy Neugebauer had enough "reason to know" that Mr. Hanna was violating Ms. Biggs' rights.

But in response to a qualified immunity defense, that is not enough to meet the plaintiff's difficult burden. To do so she cannot just show that reasonable people, or even reasonable officers could disagree, but must establish that "*any* reasonable official" would know he had to intervene. *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (emphasis supplied). *See also Ashcroft*, 563 U.S. at 743 (Qualified "immunity protects all but the plainly incompetent or those who knowingly violate the law") (internal quotation marks omitted)). Unlike *Vondrak*, for example, there is no real dispute here about the underlying facts. The dispute is whether those facts made it "clear to a reasonable officer that his conduct was unlawful in the situation." *Vondrak*, 535 F.3d at 1205 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). This is therefore a question appropriate for determination on summary judgment. *Id.* ("Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful."). The Tenth Circuit has described the clearly established duty as requiring the officer "to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers *in their presence*." *Vondrak*, 535 F.3d at 1210 (emphasis added) (quoting *Anderson,* 17 F.3d at 557). What happened in Deputy Neugebauer's presence was not a constitutional violation. And there is no case making clear that a deputy is required to investigate suspected or potential wrongdoing that is not occurring in his presence or that he knew

about. This is the import of the "clearly established" prong of the qualified immunity inquiry. And the usual way of showing it is to provide binding caselaw that is sufficiently on-point that it provides notice to all such reasonable officers that they had a duty to act in a particular way in particular circumstances. Ms. Biggs has not done so here.

While, as she points out, the Tenth Circuit has indeed said that it is clearly established that an officer who fails to intervene where he has reason to know of another's constitutional violation, *see Vondrak*, 535 F.3d at 1210, that is not enough to resolve the question here, s*ee D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) ("We have repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." (internal quotations omitted)). Indeed, "a rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Id.* "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 136 S. Ct. at 308 (emphasis in original; quotations omitted). Although there need not be a case directly on point, an "officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it." *Sheehan*, 135 S. Ct. at 1774 (internal brackets and quotation omitted). Beyond the general statement of the right reiterated in *Vondrak*, Ms. Biggs points to no cases similar to this one that would help put an officer on notice as to when he or she was required not just to try to prevent an observed constitutional violation, but to investigate a potential or suspected one.

The most Ms. Biggs offers is that "the secondary officer does [not] have to observe the constitutional violation, so long as they 'have reason to know

that the primary officer is engaging in improper conduct.'" Pl. Resp. Br. at 12–13 (Doc. 42). The initial flaw with this is that the case it purports to quote, the Tenth Circuit's *Hall v. Burke* decision, does not contain this language. The case actually quoted is a District of New Mexico case, *Tanner v. San Juan County. Sheriff's Office.* While, to be fair, *Tanner* does cite *Hall* for that proposition, counsel's misciting cases in this way is not helpful to the Court, which must chase down the actual source of the statement, or to the Plaintiff.

More significantly, neither *Hall* nor *Tanner* provide the on-point precedent required to clearly establish the right to intervention in this case. In fact, as, noted above, *Tanner* explains the problem that persists here: "The Tenth Circuit does not appear to have squarely addressed how liability for failure to intervene operates when the officer who allegedly should have intervened does not necessarily have all the information in the possession of the other officer who allegedly acts unlawfully." 864 F. Supp. 2d 1090, 1120; *id.* at 1152 ("The law is more complex than the general proposition that officers have a duty to intervene when they see a constitutional violation . . . ."). And *Tanner*, relying on Sixth and Eleventh Circuit precedents, ended up adopting a narrow rule of "secondary" officer liability for failure to intervene, recognizing that a broad reading would run afoul of Supreme Court and Tenth Circuit law that an officer should be liable only when his "own individual actions . . . violate[] the constitution." *Id.* at 1121 (quoting *Ashcroft*, 556 U.S. at 676).

Ms. Biggs has provided nothing more recent or more specific clarifying the law since *Hall* or *Tanner*. This lack of on-point authority is enough to defeat Ms. Biggs' claim. *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) ("A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation."); *see also Ashcroft v. al-*

*Kidd*, 563 U.S. 731, 741 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.").

Considering the allegations in hindsight, it is easy to say that Deputy Neugebauer should have investigated more or intervened sooner than he did. But the question before the Court is not what the deputy could have or should have done. It is whether he had a constitutional duty to do so that was clearly established in the particular circumstances he faced. And courts are required to make that assessment "viewing the situation from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Zia Tr. Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1154 (10th Cir. 2010) (internal quotation omitted). *See also Cortez v. McCauley*, 478 F.3d 1108, 1139 (10th Cir. 2007) (Gorsuch, J., concurring in part) ("We have never previously imposed upon officers a duty to investigate certain leads we think, in retrospect and with the benefit of hindsight, might have been warranted or wise..."). There simply is no case Plaintiff has provided explaining that an officer has a duty to investigate when it sees a fellow officer undertaking what might be "highly unusual" and prohibit actions, but that are not constitutional violations themselves, on the basis that he might discover a violation of clearly established law. What the Court wishes Deputy Neugebauer would have done and what the law clearly established he was obligated to do in the moment are not the same thing. Since it is only the latter that can give rise to liability, the claim against him must be dismissed.

## C. Conspiracy

Ms. Biggs asserts a conspiracy claim against Deputy Neugebauer under 42 U.S.C. §§ 1985 and 1086, alleging that he conspired with Mr. Hanna to violate Ms. Biggs' civil rights by covering up Mr. Hanna's violations of department policy and alleged sexual assault of Ms. Biggs. In support of that

claim, however, Ms. Biggs makes only conclusory allegations, unsupported by any specific facts. The only allegation suggesting a conspiracy is that the two "had an express and/or implicit agreement to conspire with each other." *See* Am. Compl. ¶¶ 57–79. But this is precisely the scenario the Supreme Court rejected in *Twombly*: "A bare assertion of conspiracy will not suffice." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also, e.g., Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."); *Afola v. Corrections Corp. of Am.*, No.1:12-cv-02394-JLK, 2013 WL 2477126, at *4 (D. Colo. Jun. 10, 2013) (same). Accordingly, Ms. Biggs' conspiracy claim against Deputy Neuegebauer must be dismissed.

### D. Substantive due process

Substantive due process claims must clear a very demanding hurdle. The standard for determining whether there has been a substantive due process violation "is whether the challenged government action shocks the conscience of federal judges." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006). Substantive due process protections are accorded primarily to matters relating to marriage, family, procreation, and the right to bodily integrity. *Albright v. Oliver*, 510 U.S. 266, 272 (1994).

The substantive due process claim against Deputy Neugebauer is based on the allegation that he conspired with Mr. Hanna to delay reporting the policy violations he witnessed, which "hindered the Logan County District Attorney's Office investigation of the case." Am. Compl., ¶ 134 (Doc. 16). As explained above, though, the Amended Complaint's conclusory allegations of conspiracy are insufficient to state a valid Section 1983 claim. And Defendants correctly point out that the resulting harm from that delay has nothing to do with Ms. Biggs' bodily integrity. That harm had already been done. Instead, the harm was that the subsequent prosecution of Mr. Hanna was impeded by the resulting difficulty of collecting necessary evidence.

These factual allegations place Ms. Biggs' allegations outside of the typical substantive due process framework. *Albright*, 510 U.S. at 272. And more importantly, the allegation of a twelve-day delay in reporting policy violations does not shock the judicial conscience. It doesn't, in other words, exhibit a "high level of outrageousness." *See Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995).[7] There are no allegations, say, that Deputy Neugebauer intended to harm Ms. Biggs. *See id.* at 576.

In her response to Sheriff Britton's and Deputy Neugebauer's motion to dismiss, Ms. Biggs also asserts that her substantive due process claim is based on Deputy Neugebauer's alleged failure to intervene and prevent Mr. Hanna from falsely imprisoning and sexually assaulting Ms. Biggs. Pl. Resp. Br. at 12-13 (Doc. 42). As to Ms. Biggs' conspiracy and failure-to-intervene theories, the Supreme Court "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Albright*, 510 U.S. at 271–72. The Supreme Court therefore has instructed that "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* at 273. Ms. Biggs identifies the Fourth, Eighth, and Fourteenth Amendments as the textual bases for her failure to intervene claim against Deputy Neugebauer. *See* Am. Compl., ¶ 166. She cites 42 U.S.C. §§ 1985 and 1986 in support of her

---

[7] Ms. Biggs also argues that Deputy Neugebauer's delay in reporting to the District Attorney violated Ms. Biggs' substantive due process right to access the courts. This allegation is not contained in her Amended Complaint and would be subject to dismissal for that reason. Regardless, she points to no authority for the proposition that a delay in reporting an apparent crime amounts to such a due process claim, and the pendency of this case contradicts the idea that Ms. Biggs has been denied access to the courts.

conspiracy claims. These claims are more properly analyzed under those provisions rather than attempting to create a new kind of substantive due process claim as the Court has done above.

The Court holds that the Amended Complaint has not plausibly established a claim for substantive due process against Deputy Neugebauer, and the claim therefore must be dismissed.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by the Board of County Commissioners of Sedgwick County (Doc. 22) is **GRANTED**, and the claim against the Board of County Commissioners of Sedgwick County (Eighth Claim) is **DISMISSED**.

The Motion to Dismiss filed by Sheriff Britton and Deputy Larry Neugebauer (Doc. 40) is **GRANTED**. Ms. Biggs' claim against Sheriff Britton (Eighth Claim) is **DISMISSED**. Her Fifth, Sixth, Ninth, and Tenth Claims against Deputy Larry Neugebauer are **DISMISSED**.

DATED: April 17, 2020    BY THE COURT:

_____
Hon. Daniel D. Domenico

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Civil Action No. 1:18-cv-02076-DDD-SKC

HOLLIS ANN WHITSON, as guardian *ad litem* for Peatinna Biggs,

    Plaintiff,

v.

THOMAS HANNA, Former Sheriff, in his official and individual capacities,

    Defendant.

---

### FINAL PRETRIAL ORDER

---

### 1.  DATE AND APPEARANCES

This Order is being filed on September 20, 2022, in advance of the trial set for October 3, 2022. A Final Pretrial Conference was held on September 7, 2022. (*See* Doc. 124.)

Appearances of Counsel:

| | |
|---|---|
| David N. Fisher | Matthew W. Buck |
| Jane Fisher-Byrialsen | RED LAW |
| FISHER & BYRIALSEN PLLC | 445 Broadway, Suite 126 |
| 4600 S. Syracuse St., 9th Floor | Denver, CO 80203 |
| Denver, CO 80237 | (720) 508-1884 |
| (303) 256-6345 | matt@red.law |
| david@fblaw.org | *Attorney for Defendant* |
| jane@fblaw.org | |
| *Attorneys for Plaintiff* | |

### 2.  JURISDICTION

This action arises under the Constitution and laws of the United States including Article III, Section 1 of the United States Constitution

and 42 U.S.C. §§ 1983 and 1988. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has authority to grant the declaratory relief requested herein pursuant to 28 U.S.C. § 2201.

### 3. CLAIMS AND DEFENSES

#### a. Plaintiff's Claims

Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Eighth Amendment to the United States Constitution and Colorado State Constitution for relief through compensatory and punitive damages and attorney's fees to vindicate deprivations of her constitutional rights. Plaintiff asserts three claims for relief:

(1) Violation of 42 U.S.C. § 1983 and Eighth Amendment—Excessive Force against a person in custody;

(2) Violation of 42 U.S.C. § 1983 and Eighth Amendment—Cruel and Unusual Punishment; and

(3) Violation of 42 U.S.C. § 1983 and Fourth Amendment—False Imprisonment.

The basis for these claims is that on August 10, 2016, Ms. Peatinna Biggs was in the custody of the Sedgwick County Sheriff's Department. On August 10, 2016, Thomas Hanna was the elected Sheriff of Sedgwick County. On August 10, 2016, Thomas Hanna took Ms. Biggs out of the custody of the jail and drove her to his house in his personal vehicle. Ms. Biggs was in handcuffs in the car and with Defendant Hanna's firearm visible. Inside the house Defendant Hanna directed Ms. Biggs to take off her clothing. Out of fear Ms. Biggs complied with that request and removed her clothing. Defendant Hanna removed his pants and then digitally penetrated Ms. Biggs's vagina.

### b. Defendant's Statement of Defenses

- Qualified immunity

- Privilege of any person to arrest without a warrant

- Statutory or common-law privilege to detain for investigation

## 4. STIPULATIONS

1. On August 10, 2016, Ms. Peatinna Biggs was in the custody of the Sedgwick County Sheriff's Department.

2. On August 10, 2016, Thomas Hanna was the elected Sheriff of Sedgwick County.

3. On August 10, 2016, Mr. Hanna took Ms. Biggs out of the custody of the jail and drove her to his house in his personal vehicle.

4. On August 10, 2016, Mr. Hanna brought Ms. Biggs into his car while still in handcuffs.

5. On August 10, 2016, when Mr. Hanna drove Ms. Biggs to his house he was wearing his uniform.

6. On August 10, 2016, Mr. Hanna was carrying his Sedgwick County Sheriff's Department issued firearm, and it was visible.

7. On August 10, 2016, Mr. Hanna placed Ms. Biggs back in his personal vehicle.

8. On August 10, 2016, Mr. Hanna then drove Ms. Biggs to Logan County Jail.

9.  Mr. Hanna was working in his official capacity as a law-enforcement officer on August 10, 2016.

10. Ms. Biggs is permanently disabled due to her mental deficiencies.

## 5.  PENDING MOTIONS

None.

## 6.  WITNESSES

### a.  Nonexpert Witnesses

(1) Witnesses who <u>will</u> be present at trial (Fed. R. Civ. P. 26(a)(3)(A)):

<u>For the Plaintiff</u>

- Peatinna Biggs – Plaintiff (through her guardian *ad litem*)
  c/o Fisher & Byrialsen, PLLC
  4600 S. Syracuse St., 9th Floor
  Denver, CO 80108
  (303) 256-6345

- Hollis Whitson – guardian *ad litem*
  PO Box 243
  Silver Thorne, CO 80498
  (303) 717-9610

- Larry Neurebauer – Sedgwick County Deputy – fact witness
  Contact information unknow at this time

- Robert W. Wasko – Chief of Police Morrison; prior employer of Defendant

- Thomas Hanna – Defendant
  Unknown

- Bridge Britton – Sedgwick County Dispatcher – fact witness
  315 Cedar Street
  Julesburg, CO 80737

<u>For the Defendant</u>

- None

(2) Witnesses who <u>may</u> be present at trial if the need arises (Fed. R. Civ. P. 26(a)(3)(A)):

<u>For the Plaintiff</u>

- Jessica Hanna – fact witness
  109 Nevada Ave
  Hot Sulpher Springs, CO 80451

- Dorrie Woltemath – fact and damages witness
  315 Cedar Street
  Julesburg, CO 80737
  970-474-3355

- Hollie Andrews – Sedgwick County Dispatcher – fact witness
  315 Cedar Street
  Julesburg, CO 80737

- Katie Tryboski – damages witness
  Centennial Mental Health
  211 West Main Street
  Sterling, CO 80751

<u>For the Defendant</u>

- Investigator Jeff Huston – Rebuttal

- Investigator Natasha Powers – Rebuttal

- Mike Andrews – Rebuttal

- Steve Smith – Rebuttal

- Brent Hokanson – Rebuttal

- Carlton Britton – Rebuttal

(3) Witnesses where testimony is expected to be presented by means of a deposition (Fed. R. Civ. P. 26(a)(3)(B)):

<u>For the Plaintiff</u>

- None

<u>For the Defendant</u>

- None

**b.  Expert Witnesses**

<u>For the Plaintiff</u>

- None

<u>For the Defendant</u>

- None

**c.**  The parties' Proposed Witness Lists (Docs. 119, 120) are incorporated by reference. The parties must provide the Courtroom Deputy with copies of their Final Witness Lists as instructed in the Amended Trial Preparation Order (Doc. 109 at 10).

## 7.  EXHIBITS

**a.**  The parties' Proposed Joint Exhibit List (Doc. 118) is incorporated by reference.

**b.**  Listed exhibits and objections thereto were to be exchanged and filed in accordance with the Amended Trial Preparation Order (Doc. 109 at 3-8). The deadline for objections has passed, and none were filed. The parties must submit their trial exhibits and provide the Courtroom

Deputy with copies of their Final Joint Exhibit List as instructed in the Amended Trial Preparation Order (Doc. 109 at 9-10).

## 8. DISCOVERY

Discovery has been completed.

## 9. SPECIAL ISSUES

Guardian *ad Litem* Hollis Whitson is not available on the morning of September 26, 2022, for religious reasons. The trial has therefore been reset to commence on October 3, 2022.

## 10. SETTLEMENT

**a.** Counsel for the parties have discussed settlement at various points throughout this case, through telephone and email communications.

**b.** No offers for settlement have been made by the defendant.

**c.** Counsel for the parties do not intend to hold future settlement conferences.

**d.** It appears from the discussion that the defendant is not willing to settle this case.

## 11. OFFER OF JUDGMENT

Counsel acknowledge familiarity with the provision of Rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure. Counsel have discussed it with the clients against whom claims are made in this case. No Rule 68 offer has been made.

## 12. EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial and may not be amended except by consent of the parties and approval by the Court or by order of the Court to prevent manifest injustice. The pleadings will be deemed merged herein. This Final Pretrial Order supersedes the Scheduling Order. In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 13. TRIAL AND ESTIMATED TRIAL TIME;
## FURTHER TRIAL PREPARATION PROCEEDINGS

This will be a jury trial. The trial is estimated to take 2-3 trial days. A Trial Preparation Conference is scheduled for September 21, 2022, at 1:30 p.m. The trial will take place in United States District Court in Denver before Judge Daniel D. Domenico.

DATED: September 20, 2022          BY THE COURT:

~~Daniel D.~~ Domenico
United States District Judge

APPROVED:

David N. Fisher                    Matthew W. Buck
Jane Fisher-Byrialsen              RED LAW
FISHER & BYRIALSEN PLLC            445 Broadway, Suite 126
4600 S. Syracuse St., 9th Floor    Denver, CO 80203
Denver, CO 80237                   (720) 508-1884
(303) 256-6345                     matt@red.law
david@fblaw.org                    *Attorney for Defendant*
jane@fblaw.org
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02076-DDD-SKC

HOLLIS ANN WHITSON, as guardian ad litem for Peatinna Biggs

      Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK,
SHERIFF CARLTON BRITTON,
THOMAS HANNA, former Sheriff, in his official and individual capacities and
LARRY NEUGEBAUER, in their individual and official capacity,

      Defendants.

---

## FINAL JUDGMENT

---

      In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

      Pursuant to and in accordance with Fed. R. Civ. P. 58(a) and the Order, filed April 17, 2020, by the Honorable Daniel D. Domenico, United States District Judge, and incorporated herein by reference as if fully set forth, it is hereby

      ORDERED that judgment is hereby entered in favor of Defendants, The Board of County Commissioners of the County of Sedgwick; Sheriff Carlton Britton; and Larry Neugebauer, and against Plaintiff, Hollis Ann Whitson, as guardian ad litem for Peatinna Biggs, on Defendants' motions to dismiss.

THIS MATTER came before the Court and a jury of seven duly sworn to try the matter on October 3, 2022 the Honorable Daniel D. Domenico, United States District Judge, presiding. On October 4, 2022, the jury returned its verdict in favor of Plaintiff.

IT IS HEREBY

ORDERED that judgment is hereby entered in favor of Plaintiff, Hollis Ann Whitson, as guardian ad litem for Peatinna Biggs, and against Defendant, Thomas Hanna, former Sheriff, in his official and individual capacities, on Plaintiff's claims of excessive force, cruel and unusual punishment, and false imprisonment in the total amount of $3,250,000.00 in compensatory damages. It is further

ORDERED that judgment is hereby entered in favor of Plaintiff, Hollis Ann Whitson, as guardian ad litem for Peatinna Biggs, and against Defendant, Thomas Hanna, former Sheriff, in his official and individual capacities, on Plaintiff's claims of excessive force, cruel and unusual punishment, and false imprisonment in the total amount of $5,000,000.00 in punitive damages. It is further

ORDERED that post-judgment interest shall accrue on the total amount of $8,250,000.00 at the legal rate pursuant to 28 U.S.C. §1961 from the date of entry of judgment. It is further

ORDERED that Plaintiff shall have her costs by the filing of a Bill of Costs with the Clerk of this Court within fourteen (14) days of entry of judgment.

DATED at Denver, Colorado this <u>13th</u> day of October, 2022.

FOR THE COURT:

JEFFREY P. COLWELL, CLERK

*s/ Robert R. Keech*
Robert R. Keech,
Deputy Clerk

APPROVED AS TO FORM:

Daniel D. Domenico,
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18cv2076 (DDD)

HOLLIS WHITSON,

        Plaintiff,

v.

FORMER SHERIFF THOMAS HANNA,
in his individual and official capacity,

        Defendant.

---

**MOTION TO CLARIFY THE FINAL JUDGMENT**

---

    Plaintiff, Hollis Whitson, through undersigned counsel, hereby respectfully requests that the Court enter an order clarifying and/or confirming the final judgment that was entered on October 13, 2022. (Doc. 153).

    The final judgment states that the jury's verdict is being entered in favor of Plaintiff and "against Defendant Thomas Hanna in his official and his individual capacities on Plaintiff's claims of excessive force, cruel and unusual punishment, and false imprisonment". (*Id*. P. 2).

    Plaintiff brought this suit in the form of a civil rights complaint and an amended civil rights complaint against Defendant Thomas Hanna, Former Sheriff, in his individual and his *official* capacities.[1]  The Final Pretrial Order also states that the Plaintiff was suing Defendant Thomas Hanna, Former Sheriff, in his individual and his *official* capacities.[2]  The final jury instructions contained a stipulation that Defendant Thomas Hanna was acting in his *official*

---

[1] *See* Doc. 1, Civil Rights Complaint p. 1; Doc. 16, Amended Civil Rights Complaint, p. 1.
[2] Doc. 127, Final Pretrial Order p. 4

1

*capacity* on the day in question.[3]  The jury found that Defendant Thomas Hanna, Former Sheriff, violated Plaintiff's constitutional rights while acting in his official capacity.[4]

Under United States Supreme Court and Tenth Circuit precedent, an *official capacity* claim against The Sheriff of a County is the same as a *Monell* claim brought against the County and/or the Sheriff's Office.  To date, although Sedgwick County and Sheriff Britton moved to dismiss the claims against them, there has never been a motion to dismiss Plaintiff's *official capacity* claim against Defendant Thomas Hanna and the jury found against Thomas Hanna, Former Sheriff, in his official and individual capacities.

Official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985), quoting *Monell,* at 690, n. 55.  In other words, an official-capacity suit is, in all respects other than name, a suit against the entity.  *Kentucky v. Graham*, at 166, citing *Brandon v. Holt*, 469 U.S. 464, 471–472 (1985).

In this case, a § 1983 claim was properly plead against Defendant Sheriff Hanna and against the "entity" (Sedgwick County and/or the Sedgwick County Sheriff's Office) because Defendant Hanna was sued in his individual and his *official* capacities.  *See* discussion, *Reynolds v. Flynn*, No. 21-CV-01154-RM-NYW, 2022 WL 252327, at *7 (D. Colo. Jan. 27, 2022).  This exact issue was recently decided by the Tenth Circuit in *Kilman v. Brown*, 833 F. App'x 474, 475 (10th Cir. 2021).  In *Kilman*, the Tenth Circuit held that "[b]ecause [plaintiff] named Sheriff Brown in his official capacity, his suit functioned as a suit against Arapahoe County itself."

---

[3] Doc. 144, Final Jury Instructions, Stipulated Facts, p. 10.
[4] As stated above, it was a stipulated fact in evidence at trial that Hanna was acting in his official capacity. On page one of the official verdict from, the Defendant is listed as: "Thomas Hanna, Former Sheriff, in his official and individual capacities".

2

Accordingly, Plaintiff seeks confirmation that the Clerk of the Court's entry of final judgment as to Defendant Thomas Hanna, Former Sheriff, in his official and his individual capacities is in fact, by operation of Tenth Circuit and United States Supreme Court law, a final judgment against Thomas Hanna, and a final judgment against Sedgwick County and/or the Sedgwick County Sheriff's Office.

Respectfully submitted this 16th day of October, 2022.

FISHER & BYRIALSEN, P.L.L.C.
/s/*David Fisher,*
David Fisher, Esq.
4600 S. Syracuse Street, 9th Floor
Denver, Colorado 80237
T: 303-256-6345
David@FBLaw.org

**CERTIFICATE OF SERVICE**

3

I HEREBY CERTIFY that a true and correct copy of the foregoing motion was electronically filed on October 16, 2022 using the CM/ECF system, email or regular mail, as indicated below and served on the following:

Matthew Buck (via email matt@red.law)
Hollis Whitson (via email hollis.whitson@gmail.com)
And all other parties which will be notified via ECF.


**FISHER & BYRIALSEN, P.L.L.C.**
*/s/David Fisher,*
David Fisher, Esq.
4600 S. Syracuse Street, 9th Floor
Denver, Colorado 80237
T: 303-256-6345
David@FBLaw.org

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18cv2076 (DDD)

HOLLIS WHITSON,

          Plaintiff,

v.

FORMER SHERIFF THOMAS HANNA,
in his individual and official capacity,

          Defendant.

_____

## PARTIALLY UNOPPOSED[1] MOTION TO ALTER OR AMEND THE FINAL JUDGMENT UNDER RULES 59(e) AND 60(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE

_____

Plaintiff respectfully requests that this Court alter or amend the final judgment under Fed. R. Civ. P. 59(e) to clarify that the jury verdict is being entered against both Defendant Hanna ("Hanna") and Defendant Sedgwick County ("County"), and, under Fed.R.Civ. P. 60(b)(1) and (6), that this Court relieve Plaintiff from the order entering judgment for the County on its motion to dismiss.

### Introduction

Plaintiff sued Hanna in both his individual and *official* capacities.[2] Neither Hanna nor any other party ever moved to dismiss the official capacity claim. The County never challenged the "official capacity" claim and this Court never dismissed it. The Final Pretrial Order

_____

[1] Following conferral, **Defendant Hanna joins in** this motion and **Defendant Sedgwick** County **opposes** it.
[2] Doc. 1, Civil Rights Complaint, p. 1, Doc. 16, Amended Civil Rights Complaint, p. 1.  An official-capacity suit is in essence a suit against the entity.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985),  citing *Brandon v. Holt*, 469 U.S. 464, 471–472 (1985).

1

acknowledges both capacities.[3]  The jury instructions contained a stipulation Hanna acted in his *official capacity*.[4]  Trial verdicts entered against Hanna in both capacities. To prevent confusion, Plaintiff requests that this Court amend the judgment to state the County is liable for the "official capacity" verdicts.

Because Plaintiff named Hanna in his official capacity, his suit functioned as a suit against Sedgwick County itself. *Kilman v. Brown*, 833 F. App'x 474, 475 (10th Cir. 2021).

The County and Britton moved to dismiss claims against them,[5] arguing that no *policy* was a "moving force" behind the constitutional violations.[6]  Plaintiff responded she did not need to show a policy for *Monell* liability because Hanna's actions were in fact the County's actions.[7] This Court found there was no link between a policy and the injuries:[8]

> Mr. Hanna's actions were not 'pursuant to' Department policies, but in direct contravention of them. On Ms. Biggs' reading, every action taken by a 'final policymaker' would amount [to] a policy that could lead to municipal liability, even if it is contrary to actual, adopted policy.[9]

Quoting *Randle v. City of Aurora*, 69 F.3d 441, 447-448 (10th Cir. 1995), this Court stated that for municipal liability based on "final policymaking authority," the challenged conduct "'must have been taken pursuant to a policy adopted by the official or officials.'"[10]

Respectfully, this Court's reading of *Randle* is incorrect as a matter of law.  It is well settled in the U.S. Supreme Court, the Tenth Circuit, and other Circuits that *Monell* liability can

---

[3] Doc. 127,  p. 4.
[4] Doc. 144, p. 10.
[5] Docs. 22 and 40.
[6] Docs. 22 and 40, pp. 4-6.
[7] Doc. 35, pp. 13-16.
[8] Doc. 89, pp. 8-9.
[9] Doc. 89, p. 9.
[10] *Ibid*.

2

*also* attach to a county because of the actions of one of its final policymakers, so long as the actions were within the *realm of the grant of authority* of that final policymaker.

On its face, this Court's Rule 12(b)(6) Order did not dismiss Plaintiff's official capacity claims against Hanna. Those claims were tried to a verdict. To eliminate any ambiguity, Plaintiff asks this Court to amend or correct the final judgment to make clear the "official capacity" verdicts bind the County. A ruling dismissing the "official capacity" claims would be a clear error of law because:

- For "final policymaker" liability, a policy is not required. Actions taken by a final policymaker, even in contravention of policy or law, are attributable to the municipality and create *Monell* liability, and

- *Discontinuation* of a policy satisfies the "policy/custom" requirement just as much as *implementation* of a policy. Trial evidence demonstrated that Hanna's discontinuation of the "matron policy" was a moving force behind the constitutional violations.[11]

### Fed. R. Civ. Proc. 59(e) and 60(b)()

A Rule 59(e) motion "may be granted when the court has misapprehended the facts, a party's position *or the controlling law.*" *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019)(emphasis added). The Rule "permits, if not encourages, a district court to correct its own clear errors. Conservation of judicial resources supports a court's confessing error before the

---

[11] Plaintiff may amend her pleadings to add facts proven at trial. See Rule 15(b). *See* §1493 Issues Not Raised by Pleadings But Tried by Consent—In General, 6A Fed. Prac. & Proc. Civ. § 1493 (3d ed.)

3

issue reaches [the Court of Appeals]." *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022). This Court should do so because there is a need to correct clear error and prevent manifest injustice. E.g., *Shapiro v. Rynek*, 250 F. Supp. 3d 775, 779 (D. Colo. 2017).

There is clear error. This Court misapprehended the controlling *Monell* law and/or the nature of the "official capacity" claims and the motions to dismiss.  It is black letter law in this District, in this Circuit, and in this Country, that the actions and decisions of Hanna, as a final policymaker acting within the realm of his grant of authority, are imputed to the County. Uncorrected, the judgment would also be manifestly unjust. If the judgment is not amended, Plaintiff might receive no compensation at all and the County would escape responsibility, despite the jury's verdict and despite the law to the contrary.

"The language of Rule 60(b)(6) is broad: it allows the district court to grant relief for 'any other reason that justifies relief.'" *Johnson v. Spencer*, 950 F.3d 680, 702 (10th Cir. 2020).  Here, such reasons include the jury's verdicts against Hanna in his official capacity, the clear law that Hanna acted in his official capacity as the final decision maker for the County, and the failure of the County to move to dismiss the official capacity claims. Liability attaches to the County by operation of law.

**1.  Because Hanna acted within the realm of his grant of authority as a final decisionmaker, his actions create individual <u>and</u> *Monell* liability.**

This Court ruled municipal liability attaches *only* when the unconstitutional conduct complies with a policy or longstanding custom.[12]  To the extent the judgment implements that ruling, it is obvious error. When a final decisionmaking official's actions cause a constitutional deprivation, *Monell* liability attaches without regard to whether the official was *following* or *violating* one of his own policies/procedures. Only if the actor is *not* the final policymaker is a

---

[12] Doc. 89, p. 9.

4

"policy or custom" required. When the actor *is* the final policymaker, his actions *are* the actions
of the municipality:

> We part ways with the District and the district court, however,
> when it comes to the question whether showing compliance with a
> preexisting policy or longstanding custom is the ***only*** way to
> demonstrate that an action is properly viewed as the municipality's
> own. While *Monell* found liability on the basis of an 'official
> policy as the moving force of the constitutional violation,' 436
> U.S. at 694, it fell to the Court in *Pembaur* to establish that actions
> taken by a municipality's final policymakers also represent acts of
> 'official policy' giving rise to municipal liability. [*Pembaur v. City
> of Cincinnati,* 475 U.S. 469, 481 (1986)].  And this makes sense.
> An act by a municipality's final policymaking authority is no less
> an act of the institution than the act of a subordinate employee
> conforming to a preexisting policy or custom.

*Simmons v. Uintah Health Care Special Dist.,* 506 F.3d 1281, 1285 (10th Cir. 2007). "[A]
municipality is responsible for *both* actions taken by subordinate employees in conformance with
preexisting official policies *and* actions taken by final policymakers, whose conduct can be no
less described as the 'official policy' of a municipality." *Ibid*.

Final policymaker liability is a form of *direct* municipal liability.  *E.g., Sanders v. Glanz*,
138 F.Supp.3d 1248, 1256 (N.D. Okla. 2015)("*Pembaur* provides an alternative means of
establishing municipal liability where an action by an official with final policymaking authority
is alleged to establish the constitutional violation. That form of establishing municipal liability is
*in addition to* the settled method of showing that the entity's policy was the moving force behind
the denial of a constitutional right.")(emphasis added).

As Magistrate Judge Watanabe stated in what Judge Moore later described as a "thorough
and sound" analysis:

> Defendants argue that there was no policy, practice, or custom
> involved here.  ***But Defendants' argument applies the doctrine
> too narrowly***. '[U]nder appropriate circumstances, a single
> decision by policymakers can be sufficient to create liability under

5

§ 1983.' *Brammer-Hoelter v. Twin Peaks Charter Acad.,* 492 F.3d 1192, 1211 (10th Cir. 2007); *see Pembaur* [*supra*].

*Hatlee v. Hardey*, No. 13-CV-02469-RM-MJW, 2015 WL 13730086 *3 (D. Colo. 1/23/2015)(emphasis added), *report and recommendation adopted,* 2015 WL 5719644 * 15 (D. Colo. 9/29/2015). *See also, Bd. Cnty. Comm'rs, Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404-405 (1997), where the Court distinguished actions of a subordinate (which require a policy) from actions of a final policymaker (which do not):

> Where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward.… Accordingly, proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably.  Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.

*Ibid. See Tonjes v. Park County Sheriff's Office,* 300 F. Supp. 3d 1308, 1332 (D.Colo. 1/4/2018)("C.R.S. §30–10–506 plainly makes the sheriff the final policymaker for the Sheriff's Office with respect to employment of deputies, and if the sheriff acted unconstitutionally in those duties, the Sheriff's Office can be held liable for his actions.").[13]

The *Simmons-Pembaur* rule does not transgress Section 1983's prohibition on respondeat superior liability, because liability is assessed not for the conduct of subordinates, but for the County's own illegal acts (performed by its final policymakers). *Simmons*, at 1284-1285, quoting *Pembaur*, at 479.

The Tenth Circuit explains why a contrary view would undermine the purpose of §1983 and lead to absurd results. Municipal liability, the Circuit ruled, "must include even actions by

---

[13] In this case, C.R.S. §§30-10-511, 514, makes detainee transport and jail administration solely within the Sheriff's realm of authority.

6

final policymakers taken in defiance of a policy or custom that they themselves adopted." *Id*, at

1285. A different rule "would invite irrational results:"

> Holding municipalities immune from liability whenever their final
> policymakers disregard their own written policies would serve to
> encourage city leaders to flout such rules.  Policymakers….would
> have little reason to abide by their own mandates, and indeed an
> incentive to adopt and then proceed deliberately to ignore them.
> Such a rule of law would thus serve to undermine rather than
> enhance Section 1983's purposes.  *See generally City of St. Louis v.
> Praprotnik,* 485 U.S. 112, 126 (1988)(plurality op.)

*Simmons*, at 1285-1286. The Tenth Circuit held: "Actions taken by a municipality's final

policymakers, even in contravention of their own written policies, are fairly attributable to the

municipality and can give rise to [*Monell*] liability." *Id.* at 1287.

On September 27, 2022, Judge Varholak observed a split about how to name the proper

party-defendant when *Monell* liability is based upon the actions of the Sheriff as final

policymaker. *Coates v. Adams Cnty. Sheriff's Office*, No. 20-CV-01936-STV, __ F.Supp.3d __,

2022 WL 4493972, at *14 (D. Colo. 9/27/2022).  Some cases hold that "the proper defendant is

the Sheriff's Department because it is a constitutionally separate office[,]" others hold that the

county is the proper defendant, and at least one case holds that both the county and the Sheriff in

his official capacity may be sued.[14] *Ibid*.  Importantly, there is *no dispute* that *Monell* liability is

triggered when the Sheriff, as final policymaker, acts unconstitutionally in his duties. *Id*., at

*14-15.

In *Coates*, the Sheriff acted within the realm of his grant of authority as the final

policymaker on employment matters. Adams County tried to evade liability for the Sheriff 's

actions because he is "not under the County's control and therefore his actions cannot be imputed

to the County."  *Coates*, at *14. Judge Varholak soundly rejected that argument and observed that

---

[14] Here, Plaintiff sued both.

7

no precedent allows "the type of municipal-liability loophole that Defendants seek to create here:"

> The County is the proper municipal defendant, and Plaintiffs' claims have been properly brought against it by naming Sheriff Reigenborn in his official capacity.  Defendants argue that the County cannot be held liable for Sheriff Reigenborn's actions because the County does not control his employment decisions.  *But this simply means that Sheriff Reigenborn is the final policymaker* on personnel matters for the County and that his employment decisions are therefore *chargeable as an official act of the County.*

*Coates*, at *15 (internal citations omitted)(emphasis added).

*Coates* illustrates this Court's error of law.  Defendants' arguments that the County had no control over Hanna's actions does not *obviate* municipal liability; it merely *establishes* that Hanna *was the final policymaker* for *Monell* purposes. The County **concedes** Hanna was the final policymaker.[15]  Accordingly, it is not necessary for this Court to go through the analysis otherwise required to identify a "final policymaker."[16]

This Court's ruling that the County does not control Hanna proves the point: When Hanna violated Ms. Biggs' constitutional rights as the final policymaker, he was acting as the County itself for *Monell* purposes.

The test for determining whether actions of a final policymaker are chargeable to the county is not whether those actions are *consistent* with written policy or "legitimate," but whether those actions are "within the realm of the official's grant of authority." *Randle,* at 448. *Simmons*, at 1285; see also *Seifert v. Unified Gov't of Wyandotte Cty*., 779 F.3d 1141, 1159 (10th

---

[15] Doc. 22, pp. 8-9.
[16] Under criteria used to define "final policymaker." *Randle*, at 448; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), Hanna was a final policymaker under §1983.  In Colorado, for *Monell* purposes, the elected Sheriff is the final policymaker for his department's law-enforcement activities.  See *Cortese v. Black*, 838 F. Supp. 485, 496 (D. Colo. 1993).

8

Cir. 2015)(municipality is responsible both for actions taken by subordinate employees in conformance with pre-existing policies or customs *and actions by final policymakers whose conduct is the official policy of a municipality*).

Other Circuits agree. *Turner v. Upton City, Texas,* 915 F.2d 133 (5th Cir. 1990)(although the Sheriff was alleged to have acted *illegally* and in *contravention to policy* by planting illegal drugs and suborning perjury in a criminal conspiracy, his constitutional violations were imputed to the County for *Monell* purposes because he was acting within the realm of his grant of authority which included the Sheriff's job functions of investigating crime, apprehending criminals, and assisting in securing convictions).

In *Bennett v. Pippin*, 74 F.3d 578 (5th Cir. 1996), the County Sheriff went to the plaintiff's house to question her regarding a murder investigation and while there, he raped her. *Id*. at 586. The Fifth Circuit found *Monell* liabilty because the Sheriff's "relationship with Bennett grew out of the attempted murder investigation and because...he used his authority over the investigation to coerce sex with her." *Ibid.* "The fact that rape is not a legitimate law enforcement goal [did] not prevent the Sheriff's act from falling within his law enforcement function." *Ibid.* Likewise, the fact that Hanna violated the law and his own policies by falsely imprisoning and sexually assaulting Plaintiff, does not prevent his actions "from falling within his law enforcement function" and therefore, does not insulate Sedgwick County from liability. Like the Sheriff in *Peppin*, Hanna "used his authority over Plaintiff to coerce sex." As a "final policymaker," he made a relevant decision that was " within the sphere of [his] final authority." *Ibid.*

This rationale applies to Hanna's actions:  "[w]hen the official representing the ultimate repository of law enforcement power in the county makes a deliberate decision to abuse that

9

power to the detriment of its citizens, [city] liability under section 1983 must attach." *Ibid*

(quoting *Turner*, at 138).

In *Dean v. County of Gage*, 807 F.3d 931 (8th Cir. 2015), the Eighth Circuit found that

allegations the Sheriff manufactured evidence and coerced testimony triggered *Monell* liability.

The Sheriff was the final policymaker with respect to law enforcement investigations in the

county and made specific decisions about the investigations. He attended key interrogations and

told local police, who believed the plaintiff was innocent, to "stay out" of the investigation.

Even "a transient constitutional violation" by the Sheriff "can be a basis for municipal

liability because of the way the Supreme Court has defined 'policy' and 'custom' for purposes of

Section 1983." *Wright v. Fentress Cnty., Tennessee*, 313 F. Supp. 3d 886, 890 (M.D. Tenn.

2018)(*Monell* liability found for Sheriff who assaulted an inmate in his custody). *See also e.g.*

*Congine v. Vill. of Crivitz*, 947 F. Supp. 2d 963, 975 (E.D.Wis. 2013); *Puana v. Kealoha*, No. CV

16-00659 LEK-WRP, 2022 WL 604726, at *15 (D. Haw. 2/28/2022). A contrary rule would lead

to the absurd result that an illegal act by a subordinate employee of the Sheriff's Office *could*

trigger *Monell* liability, but an illegal act of the top law enforcement officer himself, could *never*

trigger *Monell* liability.  As the U.S. District Court for the District of Hawaii eloquently

explained: "Under the City's view, any illegal act by an official would, in effect, preclude

municipal liability because the acts necessarily contravene the law.  Additionally, a municipality

could shield itself from liability for the constitutional violations of its officials by implementing

broad policy statements forbidding illegal acts.  Such a position would defeat the intended

purpose of §1983." *Ibid.*

This case falls squarely within the rubric of the rule triggering municipal liability. In

Sedgwick County, transports from the Sheriff's Office fall within the unfettered control and

authority of the Sheriff. Detainee transport and jail administration are within the Sheriff's realm of authority. See e.g. §§30-10-511, 514, C.R.S.  Hanna acted in his official capacity while conducting a transport of Ms. Biggs.  Hanna, an "official representing the ultimate repository of law enforcement power in the county, made a deliberate decision to abuse [his] power to the detriment of a citizen" when he falsely imprisoned Plaintiff and subjected her to excessive force. (paraphrasing and quoting *Turner*, at 138).

Hanna continued to act within the realm of his grant of authority when he failed to write a report about the transport and his alleged "questioning" of Plaintiff at his house and when he purposely withheld all information about this incident from the rest of his Sheriff's Office employees. Hanna, as the final decisionmaker for his office, was acting within the realm of his grant of authority when he used his position as the top County law enforcement officer to threaten Ms. Biggs with life in prison if she ever told anyone about the sexual assault.

*Monell* liability is clear under the "final policymaker" prong.  Plaintiff did not need to establish that Hanna acted pursuant to a county policy, because as Sheriff, he was the final policymaker and his actions/decisions are imputed to the County. This Court should amend or correct the final judgment to reflect the jury's verdict against Hanna *and* the County.

### 2.  Hanna enacted a specific policy – discontinuation of the "matron program" – that was a moving force behind the constitutional violations.

Independently, this Court should *also* rule that a Sheriff's Department policy was a moving force behind the constitutional deprivations.

The trial evidence demonstrated that, in his official capacity, Hanna discontinued the matron program or matron policy.  This policy action *also* triggers County/*Monell* liability, *Monell,* at 694, by playing a part in the constitutional violation, *Kentucky v. Graham*, at 166;

11

*Oklahoma City v. Tuttle,* 471 U.S. 808, 817–818 (1985); *id.,* at 827–828 (Brennan, J., concurring)). Even though actual, subjective knowledge of the risk is not required, because knowledge of a substantial risk of harm is sufficient, *Farmer v. Brennan*, 511 U.S. 825, 842 (1994),[17] Plaintiff proved actual knowledge at trial.

The trial evidence showed the matron policy existed to prevent substantial harm to female detainees during transports. Hanna testified that he knew that. Hanna was aware of the substantial risk of serious harm from unmonitored one-on-one transports of female detainees by male officers. *Cf. Cash v. Cnty. of Erie*, 654 F.3d 324, 338 (2d Cir. 2011), *cert. denied*, 565 U.S. 1259 (2012)("Cash's expert witness testified that accepted prison practice for deterring sexual misconduct between male guards and female prisoners was to prohibit unmonitored one-on-one interactions). Indeed, the trial evidence raised a strong inference that Hanna himself contemplated commission of a sexual assault.

Notwithstanding that clear risk of harm, Hanna discontinued the policy. At the very least, Hanna, as the policymaker, acted with deliberate indifference to the risk of substantial injury that could occur if  female detainees could be transported one-on-one by a male officer without accompaniment by a female. At worst, the evidence raised the clear inference that Hanna discontinued the policy precisely so he could inflict injuries on inmates like Plaintiff.

While the issues of proof are "steep," the failure to adopt effective measures to guard against sexual misconduct can serve as the basis for *Monell* liability.  *See e.g. J.K.J. v. Polk Cnty.*, 960 F.3d 367, 378 (7th Cir. 2020), *cert. denied,* 141 S. Ct. 1125 (2021). "The Supreme Court has recognized that *Monell* liability can arise from such decisions because a 'city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the

---

[17] The *Farmer* Court reversed dismissal of a *Monell* claim challenging the prison's decision to house transsexual inmates in the general prison population.

12

functional equivalent of a decision by the city itself to violate the Constitution.'" *Ibid*.[18] The failure to make policy itself may be actionable. *Glisson v. Indiana Dep't of Corrs.*, 849 F.3d 372, 382 (7th Cir. 2017).

Here, of course, there is much more than mere "inaction." The Sheriff's Department, through Hanna himself, explicitly discontinued a policy that was in place precisely to protect female detainees from constitutional violations like the ones he perpetrated.

The policy decision to end the matron policy was "a moving force" underlying the constitutional violations. If Hanna had not canceled the matron policy, there would have been a female employee present to supervise the transport. It is inconceivable that, with a female employee present, Hanna would have taken Plaintiff to his home and sexually assaulted her. *Cf. Bass v. Pottawatomie Cnty. Pub. Safety Ctr.*, 425 F. App'x 713, 721 (10th Cir. 2011)(it was "reasonable to infer that Mr. Bass would not have been assaulted" had the jail implemented a policy of close supervision over the drunk tank).

Because there is a triable issue regarding whether Hanna's cancellation of the matron policy was a moving force behind the constitutional violations, this Court should allow Plaintiff to amend her complaint to add this theory of *Monell* liability under Federal Rule of Civil Procedure 15(b)(2).[19]

WHEREFORE, Plaintiff respectfully requests that, under Rule 59(e), this Court modify or amend its final judgment to reflect that the jury's verdict is entered against Hanna and against the County. Plaintiff further requests that, under Rule 60(b), this Court relieve Plaintiff of the Court's judgment dismissing the County from the case. Finally, Plaintiff also requests that she be

---

[18] The Seventh Circuit quotes *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) and *City of Canton v. Harris*, 489 U.S. 378, 395 (1989)(O'Connor, J., concurring and dissenting in part).

[19] Plaintiff offers two distinct theories of Monell liability: matron policy and final decision maker. The former could entail amendment of the pleadings and a Monell jury trial on the "moving force;" the latter would not. If the Court finds both Monell liability theories are correct, no further trial is required; the County is liable for Hanna's already-adjudicated constitutional violations while acting as the final decision maker for the County.

13

permitted to submit her bill of costs and her attorney's fees within 14 days after this motion has been resolved.

Respectfully submitted: October 19, 2022.

**FISHER & BYRIALSEN, P.L.L.C.**
*/s/David Fisher*
David Fisher, Esq.
4600 S. Syracuse Street, 9th Floor
Denver, Colorado 80237
T: 303-256-6345
David@FBLaw.org

**CERTIFICATION**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**FISHER & BYRIALSEN, P.L.L.C.**

14

/s/*David Fisher,*
David Fisher, Esq.
4600 S. Syracuse Street, 9th Floor
Denver, Colorado 80237
T: 303-256-6345
David@FBLaw.org

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing motion was electronically filed on October 19, 2022 using the CM/ECF system, email or regular mail, as indicated below and served on the following:

15

Matthew Buck (via email matt@red.law)

Hollis Whitson (via email hollis.whitson@gmail.com)

And all other parties which will be notified via ECF.

**FISHER & BYRIALSEN, P.L.L.C.**
/s/*David Fisher.*
David Fisher, Esq.
4600 S. Syracuse Street, 9th Floor
Denver, Colorado 80237
T: 303-256-6345
David@FBLaw.org

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-002076-DDD-SKC

HOLLIS ANN WHITSON, as guardian ad litem for Peatinna Biggs

       Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK,
SHERIFF CARLTON BRITTON,
FORMER SHERIFF THOMAS HANNA, and
LARRY NEUGEBAUER,
in their individual and official capacity,

       Defendants.

---

**MOTION TO AMEND FINAL JUDGMENT**

---

Defendants, **SEDGWICK COUNTY SHERIFF'S OFFICE** and **THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK** (collectively the "entity Defendants"), by their attorneys, **SGR, LLC**, and pursuant to Fed.R.Civ.P. 59(e) and/or 60(a), respectfully submit their Motion to Amend Final Judgment, and state as follows:

**I.      CERTIFICATE OF COMPLIANCE**

Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel has conferred with Plaintiff's attorney on this matter, via telephone. Plaintiff opposes this motion.

## II.  <u>REQUESTED RELIEF</u>

1.     The Court entered Final Judgment in this case on October 13, 2022. [ECF No. 153.] Therein, the Court entered final judgment in favor of the Board of County Commissioners of the County of Sedgwick, Sheriff Carlton Britton (in his official capacity), and Larry Neugebauer (in his individual and official capacities). [*Id.*, p. 1.]

2.     This holding was consistent with the Court's prior determination on the entity Defendants' Motion to Dismiss, which dismissed all of Plaintiff's municipal liability claims with prejudice. [ECF No. 89, pp. 7–11.]

3.     Despite this prior dismissal, the Final Judgment erroneously states that "judgment is hereby entered … against Defendant, Thomas Hanna, former Sheriff, in his *official* and individual capacities." [ECF No. 153, p. 2 (emphasis added).] "In essence, a suit against a sheriff in his official capacity is an action against the entity that employs him," i.e., the Sedgwick County Sherriff's Office. *Est. of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1230 (D. Colo. 2016) (citing *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998)); *see also Barrientos-Sanabria v. Lake Cty., Colo.*, 2012 WL 1642285, at *2 (D. Colo. May 10, 2012) (dismissing claims against a county board stating that although "the [county] has the duty and authority to provide funds for operations by the Sheriff's Office[,] pursuant to the Colorado constitution, the [county board] is a separate, distinct entity from the County Sheriff.").

4.     A court may use Rule 60(a) "to resolve an ambiguity in its original order to more clearly reflect its contemporaneous intent and ensure that the court's purpose is fully implemented." *Burton v. Johnson*, 975 F.2d 690, 694 (10th Cir. 1992). A court may not, however, use Rule 60(a) "to reflect a new and subsequent intent because it perceived its original judgment to be incorrect." *Id.*; *see also McNickle v. Bankers Life and Cas. Co.*, 888 F.2d 678, 682 (10th Cir. 1989) ("Rule 60(a)

may be relied on to correct what is erroneous because the thing spoken, written, or recorded is not what the person intended to speak, write or record.... Rule 60(a) may not be used to change something that was deliberately done ...").

5. To the extent final judgment against Defendant Hanna in his *official* capacity was inadvertent, the entity Defendants respectfully request it be corrected to appropriately reflect the fact they were dismissed from this case long ago and no "official capacity" claims proceeded to trial. To the extent this was not an inadvertent mistake, the entity Defendants request alternative relief under Rule 59(e).

6. Grounds for granting relief under Fed.R.Civ.P. 59(e) include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 611 (10th Cir. 2012). Here, the entity Defendants seek relief pursuant to the third consideration, to correct clear error and to prevent manifest injustice.

7. Entering judgment against Defendant Hanna in his official capacity amounted to clear error for two reasons. First, Defendant Hanna, as the *former* Sheriff of Sedgwick County, lacked any official capacity given he had been "kicked out of office" at the time Plaintiff filed suit. [ECF No. 16, ¶ 83.] Second, such finding is inconsistent with the Court's prior determination that Plaintiff failed to plead an adequate municipal liability claim, whereby such claim(s) were dismissed with prejudice. [ECF No. 89, pp. 7–11.]

8. The issue of municipal liability, and specifically whether Defendant Hanna's actions amounted to a "final policy" of the entity Defendants was not before the jury, given the Court resolved this issue more than two years before trial, as discussed above. Moreover, at no point did the entity Defendants stipulate this case could proceed against Defendant Hanna *in his*

*official capacity*, given they were dismissed more than two years before trial and neither Plaintiff nor Defendant Hanna conferred with them on this issue.

9.     To allow final judgment to enter against either of the entity Defendants where such claims were previously dismissed would amount to clear error and produce manifest injustice against a party that was unable (and not required) to defend itself at trial.

**WHEREFORE**, the entity Defendants respectfully request the Court alter and amend the Final Judgment to clarify that such has not been entered as to them (in the form of an "official capacity" claim), as all municipal liability claims were properly dismissed long before this case proceeded to trial.

Respectfully submitted,

*s/ Eric M. Ziporin*
**Eric M. Ziporin**
SGR, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO  80210
Telephone:  (303) 320-0509
eziporin@sgrllc.com

*s/ Jonathan N. Eddy*
**Jonathan N. Eddy**
SGR, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO  80210
Telephone:  (303) 320-0509
jeddy@sgrllc.com
*Attorneys for the entity Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 20th day of October, 2022, I electronically filed a true and correct copy of the above and foregoing **MOTION TO AMEND FINAL JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Jane Fisher-Byrialsen
David N. Fisher
Email: jane@fblaw.org
Email: david@fblaw.org
*Attorneys for Plaintiff*

Matthew Buck
Email: matt@red.law
*Attorney for Defendant Hanna*

s/  Barbara A. Ortell
Barbara A. Ortell, Legal Secretary

02123850.DOCX

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-002076-DDD-SKC

HOLLIS ANN WHITSON, as guardian ad litem for Peatinna Biggs

     Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK,
SHERIFF CARLTON BRITTON,
FORMER SHERIFF THOMAS HANNA, and
LARRY NEUGEBAUER,
in their individual and official capacity,

     Defendants.

---

**RESPONSE TO MOTION TO CLARIFY FINAL JUDGMENT**

---

     Defendants, **SEDGWICK COUNTY SHERIFF'S OFFICE** and **THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK** (collectively the "entity Defendants"), by their attorneys, **SGR, LLC**, hereby respond to Plaintiff's Motion to Clarify Final Judgment [ECF No. 154], and state as follows:

**I.**     **ARGUMENT**

     1.     The Court entered Final Judgment in this case on October 13, 2022. [ECF No. 153.] Therein, the Court entered judgment in favor of the Board of County Commissioners of the County of Sedgwick, Sheriff Carlton Britton (in his official capacity), and Larry Neugebauer (in his individual and official capacities). [*Id.*, p. 1.]

2.      This holding was consistent with the Court's prior determination on the entity Defendants' Motion to Dismiss, which dismissed all of Plaintiff's municipal liability claims with prejudice. [ECF No. 89, pp. 7–11.]

3.      Despite this prior dismissal, the Final Judgment erroneously states that "judgment is hereby entered … against Defendant, Thomas Hanna, former Sheriff, in his *official* and individual capacities." [ECF No. 153, p. 2 (emphasis added).] "In essence, a suit against a sheriff in his official capacity is an action against the entity that employs him," i.e., the Sedgwick County Sherriff's Office. *Est. of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1230 (D. Colo. 2016) (citing *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998)); *see also Barrientos-Sanabria v. Lake Cty., Colo.*, 2012 WL 1642285, at *2 (D. Colo. May 10, 2012) (dismissing claims against a county board stating that although "the [county] has the duty and authority to provide funds for operations by the Sheriff's Office[,] pursuant to the Colorado constitution, the [county board] is a separate, distinct entity from the County Sheriff.").

4.      As Defendants have argued in their pending Motion to Amend Final Judgment [ECF No. 156], entering judgment against Defendant Hanna in his official capacity amounted to clear error for two reasons. First, Defendant Hanna, as the *former* Sheriff of Sedgwick County, lacked any official capacity given he had been "kicked out of office" at the time Plaintiff filed suit. [ECF No. 16, ¶ 83.] Thus, no "entity employ[ed] him" at the time litigation began. *Cf. Taylor*, 176 F. Supp. 3d at 1230. Second, such finding is inconsistent with the Court's prior determination that Plaintiff failed to plead an adequate municipal liability claim, whereby such claim(s) were dismissed in full and with prejudice. [ECF No. 89, pp. 7–11.]

5.      Contrary to Plaintiff's assertions, the issue of municipal liability and specifically whether Defendant Hanna's actions amounted to a "final policy" of the entity Defendants was

not before the jury, given the Court resolved this issue more than two years before trial began. Moreover, at no point did the entity Defendants stipulate this case could proceed against Defendant Hanna *in his official capacity*, given they were dismissed more than two years before trial and neither Plaintiff nor Defendant Hanna conferred with them on this issue.

6.      To grant Plaintiff's request and allow final judgment to enter against either of the entity Defendants where such claims were previously dismissed would amount to clear error and produce manifest injustice against a party that was unable (and not required) to defend itself at trial.

**WHEREFORE**, to the extent Plaintiff requests the Court enter final judgment against the Sedgwick County Sheriff's Office and/or the Sedgwick County Board of Commissioners, the entity Defendants respectfully request her motion be denied.

Respectfully submitted,

*s/ Eric M. Ziporin*
**Eric M. Ziporin**
SGR, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO  80210
Telephone:  (303) 320-0509
eziporin@sgrllc.com

*s/ Jonathan N. Eddy*
**Jonathan N. Eddy**
SGR, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO  80210
Telephone:  (303) 320-0509
jeddy@sgrllc.com
*Attorneys for the entity Defendants*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 7th day of November, 2022, I electronically filed a true and correct copy of the above and foregoing **RESPONSE TO MOTION TO CLARIFY FINAL JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Jane Fisher-Byrialsen
David N. Fisher
Email: jane@fblaw.org
Email: david@fblaw.org
*Attorneys for Plaintiff*

Matthew Buck
Email: matt@red.law
*Attorney for Defendant Hanna*

s/  Barbara A. Ortell
Barbara A. Ortell, Legal Secretary

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-002076-DDD-SKC

HOLLIS ANN WHITSON, as guardian ad litem for Peatinna Biggs

      Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK,
SHERIFF CARLTON BRITTON,
FORMER SHERIFF THOMAS HANNA, and
LARRY NEUGEBAUER,
in their individual and official capacity,

      Defendants.

---

## DEFENDANTS' RESPONSE TO MOTION TO ALTER OR AMEND FINAL JUDGMENT

---

Defendants, **SEDGWICK COUNTY SHERIFF'S OFFICE** and **THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK** (collectively the "entity Defendants"), by their attorneys, **SGR, LLC**, hereby respond to Plaintiff's Motion to Alter or Amend Final Judgment [ECF No. 155 ("Motion")], and state as follows:

## I.      INTRODUCTION

This case arises out of former Sheriff Thomas Hanna's sex assault on Peatinna Biggs, in August of 2016, for which Defendant Hanna was criminally charged and removed from office. Following the incident, Ms. Biggs, through her appointed representative, filed suit against the entity Defendants (and others) pursuant to 42 U.S.C. § 1983, alleging violations of her constitutional rights. [*See* Complaint, ECF No. 16.] The entity Defendants moved to dismiss all

claims against them, pursuant to Fed.R.Civ.P. 12(b)(6), by demonstrating why Plaintiff failed to provide plausible allegations of municipal liability, whether under a "final policymaker" theory or otherwise. [*See* Motions to Dismiss, ECF Nos. 22 and 40.] On April 17, 2020, the Court granted the entity Defendants' motions, dismissing all municipal liability claims with prejudice. [*See* Order, ECF No. 89.] Following a jury trial on the remaining claims as to Defendant Hanna (for which he was found liable), the Court affirmed the entity Defendants' dismissal and entered Final Judgment as to all claims on October 13, 2022. [*See* ECF No. 153.]

Plaintiff now asks the Court to amend and reverse its dismissal of the entity Defendants. As demonstrated below, Plaintiff has failed to show sufficient cause for the Court to revisit its prior ruling. Nor has Plaintiff shown why she should be allowed to amend her Complaint more than six years after the underlying incident and more than two and a half years since her prior allegations were dismissed. Her motion should be denied in full.

## II.     STANDARD OF REVIEW

"When, as here, the plaintiff seeks to amend her Complaint following its dismissal, she must first move to reopen the case under Rule 59(e) or 60(b) of the Federal Rules of Civil Procedure and then she must move for leave to amend under Rule 15 of the Federal Rules of Civil Procedure." *Laufer v. Looper*, 2021 WL 5299585, at *2 (D. Colo. Jan. 27, 2021) (citing *Castanon v. Cathey*, 976 F.3d 1136, 1145 (10th Cir. 2020)). Because Plaintiff filed her Motion within 28 days of Final Judgment, it arises under Rule 59(e), not Rule 60(b).[1] *See Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir. 1995); *see also Sherman v. Klenke*, 653 F. App'x 580, 585 (10th Cir. 2016).

---

[1] Accordingly, the entity Defendants need not address considerations arising under Rule 60. [*See, e.g.*, Motion, p. 4.]

"Grounds warranting a [Rule 59(e)] motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). The Tenth Circuit has explained, however, that a motion under Rule 59(e) is not an appropriate vehicle to revisit arguments already raised or those that could have been raised initially but were not. *Id.*

In terms of amending one's allegations, Rule 15 provides that courts are to grant leave to amend "freely ... when justice so requires." FED.R.CIV.P. 15(a)(2). "A court may deny leave, however, on account of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1101–02 (10th Cir. 2019) (cleaned up).

A court's decision to deny a motion to amend the pleadings and/or judgment pursuant to Rules 15(a)(2) and 59(e) (respectively) is reviewed for abuse of discretion. *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 789 (10th Cir. 2013).

### III.   ARGUMENT

### A.   NO SUFFICIENT GROUNDS FOR REOPENING THIS CASE PURSUANT TO RULE 59(e).

As outlined above, to reopen this case Plaintiff must show either of the following: (1) an intervening change in the controlling law, (2) new evidence previously unavailable, or (3) the need to correct clear error or prevent manifest injustice. Here, Plaintiff does not identify any change in the law, and instead purports to rely exclusively on the second and third considerations. [*See generally*, Motion.]

Plaintiff first argues the Court's decision not to extend municipal liability under the "final policymaker" theory amounted to clear error. In making this argument, Plaintiff claims Defendant Hanna was somehow acting "within the realm of his grant of authority" when he decided to sexually assault her. [Motion, p. 4.] However, when taking the allegations of the Complaint as true, the Court was correct in concluding it was not plausible such conduct amounted to an "official policy," as is required to extend municipal liability under the operative theory. *See Randle v. City of Aurora*, 69 F.3d 441, 447–48 (10th Cir. 1995) (recognizing that "the challenged conduct must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area.") (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)). Neither the Complaint nor the instant Motion articulate how Defendant Hanna's decision to sexually assault Plaintiff could have amounted to an official policy of the entity Defendants, nor did the evidence presented at trial provide any such indication.

To the extent Plaintiff again relies on the Tenth Circuit's decision in *Simmons v. Uintah Health Care Special Dist.*, that case involved a municipal board's wrongful termination of a public employee in violation of its official written termination policies. 506 F.3d 1281, 1283 (10th Cir. 2007). While *Simmons* does stand for the principle that final policymakers need not comply with existing written policy to extend municipal liability, the issue of whether the final policymaker in that case (i.e., the board) acted within the realm of its grant of authority by terminating the claimant was not in dispute. *Id.* at 1286.[2] Because a municipality's decision to

---

[2] The logic employed in *Simmons* further demonstrates its inapplicability to the present circumstances. There, the Tenth Circuit reasoned that "[h]olding municipalities immune from liability whenever their final policymakers disregard their own written policies would serve to

terminate an employee (even if in conflict with existing policy) is in no way similar to an elected official's unilateral decision to sexually assault a detainee, the Court's decision to dismiss the entity Defendants exhibited no clear error.[3]

The out-of-circuit cases upon which Plaintiff relies further demonstrate why the entity Defendants were appropriately dismissed. For instance, in *Turner v. Upton Cnty., Tex.*, the Fifth Circuit extended municipal liability where a sheriff was alleged to have conspired in planting drugs to obtain an unfounded guilty plea. 915 F.2d 133, 134–35 (5th Cir. 1990). In reaching its decision, the *Turner* Court considered the fact that under Texas law, a sheriff is expressly tasked with the "investigation of crimes, the collection of evidence thereof, and the presentation of this evidence to the district attorney for purposes of determining the appropriateness of prosecution." *Id.* at 136; *see also Dean v. Cnty. of Gage, Neb.*, 807 F.3d 931, 942 (8th Cir. 2015) (extending municipal liability based on a sheriff's violative investigatory decisions). Unlike the alleged conduct in *Turner* and *Dean*, there is no rational nexus between Defendant Hanna's prescribed duties as a law enforcement official and his decision to assault Plaintiff in furtherance of his own depraved sexual proclivities. *See Roe v. City of Waterbury*, 542 F.3d 31, 40 (2d Cir. 2008)

encourage city leaders to flout such rules. Policymakers … would have little reason to abide by their own mandates … and indeed an incentive to adopt and then proceed deliberately to ignore them." 506 F.3d at 1285. As evidenced by the fact Defendant Hanna was individually sued and found liable for punitive and compensatory damages to the tune of millions of dollars, demonstrates he *would* have had a strong incentive to abide by the SCSO's "zero-tolerance" prohibition on sexual abuse. [*See* Complaint, ¶ 54.]

[3] On this basis as well, Plaintiff's reliance on *Coates v. Adams Cnty. Sheriff's Office* is similarly flawed. 2022 WL 4493972, at *14 (D. Colo. Sept. 27, 2022) (extending municipal liability where sheriff was alleged to have improperly terminated one of his deputies); *see also Seifert v. Unified Gov't of Wyandotte Cnty./Kansas City*, 779 F.3d 1141, 1145 (10th Cir. 2015) (extending municipal liability where sheriff was alleged to have engaged in unlawful employment practices). These cases are highly distinguishable.

(refusing to extend municipal liability where sexual assault "advanced [no] conceivable job function or any conceivable policy goal or interest of the [municipality].").

Plaintiff next asks the Court to consider *Bennett v. Pippin*, wherein the Fifth Circuit extended municipal liability following a sheriff's alleged rape of a criminal suspect. 74 F.3d 578, 581 (5th Cir. 1996). The Court, however, is not bound by the decisions of other circuits and its failure to adhere to such decision(s) does not amount to clear error. *See Bruns v. Comm'r*, 98 F. App'x 811, 813 (10th Cir. 2004). Moreover, as multiple courts have observed, the reasoning in *Bennett* is flawed and indeed inconsistent with the standard set forth by the Supreme Court in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). *See, e.g.*, *Wooten v. Logan*, 92 F. App'x 143, 146 (6th Cir. 2004) ("Fatally, [plaintiff] has not demonstrated that [Sheriff] Logan's conduct represented the 'official policy' of the County, as she has not shown that Logan was acting in a policymaking capacity when he detained and assaulted her."); *Roe*, 542 F.3d at 41 ("An official acts wholly outside his official policymaking capacity when he misuses his power to advance a purely personal agenda. Here, [defendant] acted neither pursuant to nor within the authority delegated to him when he committed the acts of sexual abuse."); *Dahl v. Rice Cnty., Minn.*, 621 F.3d 740, 743 (8th Cir. 2010) (dismissing municipal liability claim based on allegations a sheriff physically assaulted subordinate deputy); *Doe v. City of Gauley Bridge*, 2022 WL 3587827, at *4 (S.D.W. Va. Aug. 22, 2022) (dismissing municipal liability claim based on allegations a chief of police sexually assaulted a minor female).[4]

---

[4] As the Second Circuit has further observed: "*Bennett* cannot be reconciled with *Pembaur* and *Praprotnik's* prohibition against finding municipal liability based on *respondeat superior*… A finding of municipal liability in this case would amount to … an unwarranted expansion of the single-act rule set forth in *Pembaur*. It would also conflate the color of law inquiry with the official policy inquiry." *Roe*, 542 F.3d at 41.

As the Supreme Court made clear more than 30 years ago, to extend liability to a municipal entity based on a singular decision of its policymaker, the result of that decision must have amounted to just that: a policy. *Pembaur*, 475 U.S. 469, 481 n.9 (1986) (analyzing final policymaker liability while deferring to the various commonly held definitions of the term "policy"). In *Pembaur*, the Supreme Court reiterated that Section 1983 "could not be interpreted to incorporate doctrines of vicarious liability." 475 U.S. at 479. It then went on to state that when the decision to adopt a particular course of action "is *properly made* by that government's *authorized* decisionmakers" it can represent an act of "official government 'policy' *as that term is commonly understood*." *Id.* at 481 (emphasis added). *Pembaur* further reasoned that "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular [acts] does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481–82.

As outlined in the entity Defendants' dispositive motions, the Complaint did not allege or in any way describe how Defendant Hanna's decision to commit sexual assault could be "properly made," or how he would have (or even could have) been "authorized" to commit such acts. Thus, Plaintiff is essentially asking the Court to conflate the "color of law" analysis with the "official policy" inquiry—which is not correct. *See Roe*, 542 F.3d at 41. As this Court properly found, to extend liability on such facts would necessarily trigger the type of expansive vicarious liability the Tenth Circuit has consistently held does not apply under Section 1983. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). Because Defendant Hanna's actions were at most purely discretionary, the Court committed no clear error by dismissing all municipal liability claims with prejudice.

**B.      NO SUFFICIENT GROUNDS TO PERMIT AMENDMENT PURSUANT TO RULE 15.**

To the extent Plaintiff relies on the existence of "new evidence" to support her Motion, she fails to show why the Court should grant her leave to amend the Complaint at this juncture. As outlined above, the Court is free to deny leave to amend on account of (among other reasons) undue delay, undue prejudice, or futility. The Court should deny further amendment under each consideration.

**1.      Undue Delay.**

Plaintiff argues she should be permitted to amend her Complaint to add an additional *Monell* claim premised on Defendant Hanna's decision to abandon the SCSO's "matron program," which required female employees to accompany male deputies during inter-facility transfers of female detainees. [Motion, p. 11–12.] While Plaintiff generally claims to have first learned of this program through "trial evidence" (in October of 2022), she has not explained why she failed obtain this information long before trial. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (recognizing existence of undue delay "when the party filing the motion has no adequate explanation for the delay.") (cleaned up). What is more, Plaintiff's claim is incorrect, as her counsel has been in possession of documentation discussing this very policy, as well as Defendant Hanna's discontinuation of same, for years. [*See* **Exhibit A**, p. 2][5]

---

[5] **Exhibit A** was pulled from Plaintiff's production materials served on undersigned counsel in April of 2019. Additionally, undersigned counsel served this identical document on Plaintiff as part of the entity Defendants' supplemental Rule 26(e) disclosures, on April 1, 2019. [*See* **Exhibit B**, pp. 2, 3 and 6.] On this basis, Plaintiff has similarly failed to show how such information was "previously unavailable" for purposes of Rule 59(e). *Needham v. Utah*, 788 F. App'x 581, 585 (10th Cir. 2019) ("Needham fails to explain how the letter and audit—which were provided in 2006 to Holman, Needham's lawyer, and potentially Needham himself—could be considered 'new evidence' that was previously unavailable for purposes of Rule 59(e).").

The operative Scheduling Order [ECF No. 98] entered in September of 2020, more than two years before trial. During that time, Plaintiff could have conducted various discovery—including deposing Defendant Hanna or other officials on this issue. Per Plaintiff's assertions, her counsel failed to do so, despite the erroneous argument that at least one "official capacity" claim persisted to trial.[6] [Motion, pp. 1–2.] Plaintiff can provide no legitimate basis for failing to conduct such discovery.

More than two years have passed since the entity Defendants were properly dismissed and since this case reentered discovery, and over three years have passed since Plaintiff was provided with the very information she mistakenly argues was not available to her until trial. Plaintiff should not now be permitted to amend her Complaint in a last-ditch effort to "salvage a lost case by untimely suggestion of new theories of recovery." *Hayes v. Whitman*, 264 F.3d 1017, 1027 (10th Cir. 2001) (internal citation and quotation omitted).

**2.     Undue Prejudice.**

The entity Defendants will also be prejudiced by post-trial amendment. *See Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir.1991) ("As a general rule, a plaintiff should not be prevented from pursuing a valid claim ..., provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits.") (cleaned up).

---

[6] On this matter specifically, Plaintiff cites no authority to support her contention the "official capacity" claim as to Defendant Hanna survived dismissal. Contrary to Plaintiff's assertions, the entity Defendants identified and challenged each theory of municipal liability alleged in the Complaint, and the Court dismissed those theories in turn. [ECF No. 89, pp. 7–11.] Plaintiff has not shown what additional municipal liability theory was asserted in the Complaint that the Court failed to consider, and in any event, the Final Judgment made clear the entity Defendants had been dismissed. [ECF No. 153, p. 1.]

Following dismissal of the entity Defendants, Plaintiff was able to proceed with her case against an indigent (initially *pro se*) defendant who ultimately obtained *pro bono* counsel. Defendant Hanna and his counsel conducted no meaningful discovery, nor did they challenge any of the remaining claims on summary judgment (e.g., "excessive force," and "false imprisonment" under the Fourth and Eighth Amendments), despite reasonable arguments such claims were not cognizable.[7] The existence of an underlying constitutional violation is a required element of any municipal liability claim, regardless of the theory upon which it is based. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Here, the entity Defendants were unable to conduct discovery or move to dismiss the remaining claims before trial as a matter of law, which resulted in an emotionally charged case proceeding to a jury and the resulting (and predictable) outcome. Because allowing Plaintiff to assert a new theory of municipal liability in the wake of trial would unduly prejudice the entity Defendants by depriving them of their ability to defend a key element of such claim on the merits, the Motion should be denied.

###     3.     Futility.

Plaintiff's Motion should similarly be denied on the basis her proposed amendment is futile. For instance, the entity Defendants can be subject to liability only if the policy in question amounted to the "moving force" behind the deprivation of Plaintiff's rights, which in fact *caused* the deprivation. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997). Moreover, when a *Monell* claim is based on the municipality's inaction, a plaintiff must further

---

[7] For instance, it remained undisputed Plaintiff was a pre-trial detainee at the time of these events, thereby obviating the applicability of the Fourth and Eighth Amendments. *See Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019).

show that the particular "policy" in question was "maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

As a preliminary matter, Plaintiff cites to nothing in the trial testimony that suggests Defendant Hanna discontinued the matron policy for the express purpose of committing sexual assaults against female detainees.[8] Indeed, as the witnesses testified (and as the documentary evidence shows), this policy was discontinued due to staffing concerns. [**Exhibit A**, p. 2.] Nor can Plaintiff show that the failure to maintain such a policy would result in an all-but-certain violation, like that experienced by Plaintiff, as she has identified no prior instances of similar conduct preceding the SCSO's implementation of such policy. Plaintiff can also not prove the failure to maintain the matron policy in fact caused her injury, given Defendant Hanna would have been within his authority to discontinue the policy at any time, or even on an ad hoc basis. Put another way, whether the entity Defendants maintained a matron policy would have no practical bearing on whether Defendant Hanna, as Sheriff, would have followed that policy in this instance.

**WHEREFORE**, for the reasons stated herein, the entity Defendants respectfully request the Motion be denied in full.

---

[8] And even assuming this was in fact Defendant Hanna's true motivation, extending municipal liability on this basis would be indistinguishable from *respondeat superior*, given he would have sought to advance a purely personal objective.

Respectfully submitted,


s/ Eric M. Ziporin
**Eric M. Ziporin**
SGR, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO  80210
Telephone:  (303) 320-0509
eziporin@sgrllc.com


s/ Jonathan N. Eddy
**Jonathan N. Eddy**
SGR, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO  80210
Telephone:  (303) 320-0509
jeddy@sgrllc.com
*Attorneys for the entity Defendants*


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 16th day of November, 2022, I electronically filed a true and correct copy of the above and foregoing **DEFENDANTS' RESPONSE TO MOTION TO ALTER OR AMEND FINAL JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Jane Fisher-Byrialsen
David N. Fisher
jane@fblaw.org
david@fblaw.org
*Attorneys for Plaintiff*

Matthew Buck
matt@red.law
*Attorney for Defendant Hanna*


s/  Barbara A. Ortell
Barbara A. Ortell, Legal Secretary

02135109.DOCX

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18cv2076 (DDD)

HOLLIS WHITSON,

             Plaintiff,

v.

FORMER SHERIFF THOMAS HANNA,
in his individual and official capacity,

             Defendant.

---

**REPLY TO COUNTY'S RESPONSE TO PLAINTIFF'S RULE 59 MOTION**

---

Sedgwick County and Plaintiff both ask this Court to reopen the case.[1] Plaintiff asks this Court to affirm the jury's verdicts finding Hanna liable in his official capacity and deny the County's request to override the jury's verdict by dismissing the official capacity claims.

#### Introduction

The County's overriding premise – sexual assault shows such depravity it places Hanna's conduct outside his sphere of authority – is flawed because sex assault is not the only constitutional violation. The complaint alleged and the jury found that Hanna also falsely imprisoned Plaintiff.

The County does not dispute that Hanna is the final policymaker and has unilateral control over jail operation, detainee transport, and criminal investigation.[2] Nor does the County dispute that, independent from the *policy* line of cases, municipal liability also attaches when a

---

[1] Docs. 153, 156.
[2] See C.R.S. §§30-10-511, -514.

1

Sheriff violates constitutional rights when acting within the realm of his grant of authority, under the "final policymaker" doctrine.[3]

Accordingly, the outcome is clear: because Hanna's conduct occurred within the sphere of Hanna's final authority as head law enforcement official, *his actions are the actions of the County*. "[T]he fact that sexual assault is not a legitimate law enforcement function does not control the outcome." *Hernandez v. Theriot*, 38 F. Supp. 3d 745, 748 (M.D. La.2014).

Respectfully, this Court has made a clear error of law that it should correct.


### Rule 59(e) Relief is appropriate.

The County does not explain why this Court should identify, but then refuse to correct, a clear error of law.[4]  Absent correction, this Court's order will constitute a clear error of law and waste judicial resources. See *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) ("Conservation of judicial resources supports a court's confessing error before the issue reaches us.").

While it is true that Plaintiff previously raised this issue on 12(b)(6), that does not tie this Court's hands.  If this Court agrees with Plaintiff on the merits but refuses to correct the error, it would work a profound and manifest injustice.

---

[3] *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 483 (1986).

[4] See Doc. 153, pp. 3-4 and cases cited therein.

2

## The County advocates incorrect standards.

The County concedes *Monell*[5] liability is triggered by a single act taken by a final policymaker even if he is not acting according to policy.[6] The County then backtracks, arguing that only acts that *do not violate the law* trigger *Monell* liability. This Court should reject the County's circular argument and follow Tenth Circuit precedent.

Without citation, the County suggests the pertinent standard is whether the final policymaker's "actions were at most purely discretionary."[7] This is not the test. *See Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986) and cases cited in Plaintiff's motion. Nor could it be the standard. Every action taken by a final decisionmaker is "purely discretionary."

Citing no binding precedent, the County advocates a "rational nexus" test for *Monell* liability.[8]  Neither the Supreme Court nor the Tenth Circuit recognizes such a test.

Contrary to the County's suggestion, the Fifth Circuit did not adopt a "rational nexus" test in *Dean v. Cnty. of Gage, Neb.*, 807 F.3d 931, 942 (8th Cir.2015) or in *Turner v. Upton City, Texas,* 915 F.2d 133, 138 (5th Cir.1990).[9]  *Turner* supports Plaintiff: "When the official representing the ultimate repository of law enforcement power in the county makes a deliberate decision to abuse that power to the detriment of its citizens, county liability under §1983 must attach" provided the other elements are met. *Ibid.*  Upton City was liable because its elected sheriff held "virtually absolute sway over the particular tasks or areas of responsibility entrusted to him by state statute and is accountable to no one other than the voters for his conduct therein." *Id.,* at 136.  In the areas "'in which he, alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one

---

[5] *Monell v. Dep't of Soc.Servs.*, 436 U.S. 658 (1978).
[6] Doc. 160, p. 4, citing *Simmons*.
[7] Doc. 160, p. 7.
[8] *Id*, p. 5.
[9] *Ibid.*

3

'whose edicts or acts may fairly be said to represent official policy' for which the county may be held responsible under section 1983.'" *Ibid*, quoting *Monell* and *Familias Unidas v. Briscoe,* 619 F.2d 391, 404 (5th Cir.1980). A Sheriff's constitutional violations result in county liability "***even if contrary to other state law or policy***." *Bolton v. City of Dallas*, 541 F.3d 545, 552 (5th Cir.2008)(emphasis added).

 The County argues the Court should disregard *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir.1996), but gives no compelling reason. *Monell* liability applied when a sheriff raped the plaintiff at her house while questioning her during an investigation. Later cases persuasively apply *Bennett* and find *Monell* liability for sex assaults. *See Maloney v. Montague Cnty., Texas,* No.7:09-CV-198-O, 2011 WL 13233318, *5 (N.D.Tex. 2/14/2011)(sex assault "grew out of the arrest warrant execution" and "his authority over the investigation"); *Hernandez v. Theriot*, No. CV 14-42-SDD-EWD, 2016 WL 4118919, *1 (M.D. La. 8/1/2016), *aff'd,* 709 F.App'x 755 (5th Cir.2017)(sex assault during arrestee's transport).

 The *Dean* Court did not (as the County implies) adopt a "rational nexus" test. The Circuit found municipal liability because the sheriff "made final policy with regard to law enforcement investigations and arrests in Gage County." *Id.*, 941.

 To the extent the County's cases even apply, they represent a minority view inconsistent with Tenth Circuit precedent. In this Circuit, when a final decisionmaking official's actions cause constitutional deprivations, *Monell* liability attaches regardless of whether he was *following* or *violating* his own policies/procedures. *Simmons v. Uintah Health,* 506 F.3d 1281, 1285 (10th Cir. 2007). Conduct by a "final policymaker" is an independent basis for municipal liability. *Ibid.* The only question is whether Hanna was a final decisionmaker in the realm of

4

detention/transport of jail detainees and investigations and whether, broadly speaking, he was acting within that grant of authority when he violated Plaintiff's rights.

Citing no binding precedent, the County suggests if a final policymaker is motivated by "purely personal objective[s]," municipal liability does not lie.[10] This is illogical. Those who violate the constitutional rights of citizens are always motivated by "personal" objectives. Such motivation does not defeat municipal liability.

### Municipal liability attaches.

Hanna acted within the realm of his grant of authority while transporting Plaintiff. He was a final policymaker concerning detainee transport and where detainees could be taken or questioned. He had unfettered authority to put Plaintiff in street clothes, use his personal vehicle, and take her to his house, thereby falsely imprisoning her. Each decision was a moving force causing Plaintiff's injuries.[11]

Merely because Hanna acted *illegally* does not change that he was performing an official duty and had unfettered discretion and control. Under the County's logic, the County would be liable only if Hanna committed a less egregious violation. Under this logic the County would be liable had Hanna used excessive force by purposely binding Plaintiff's wrists too tightly during the transport, but not because he falsely imprisoned and sexually assaulted her. This logic is flawed. The test is not whether Hanna broke the law or contravened policy but whether Hanna acted within his realm of authority (detainee transportation and law enforcement) when he violated Plaintiff's rights.

---

[10] Doc. 160, p. 11 n. 8.
[11] See *Wooten v. Logan*, 92 F.App'x 143, 148 (6th Cir.2004)(Moore, J., dissenting), questioning why *Monnel* liability would be established if a Sheriff were to give a deputy permission to assault a detainee but not if the Sheriff gave himself permission to do so.

5

The County tries to distinguish *Simmons,* saying Hanna had an incentive not to commit sexual abuse.[12]  This misses the point. This strained logic would immunize the County so long as the final policymaker made a policy forbidding sexual assault before committing one. That would give policymakers [in this case, Hanna] "little reason to abide by their own mandates, and indeed an incentive to adopt and then proceed deliberately to ignore them. Such a rule of law would thus serve to undermine rather than enhance §1983's purposes." *Simmons* at 1285-1286.

The County's cases[13] are neither binding precedent nor persuasive:

- *Roe* differs because unlike the mayor there, Hanna's actions occurred while exercising his unilateral authority over a jail detainee transport and investigation of crimes.

- *Doe* (which is on appeal[14]) differs because the defendant was an *employee* of the City, not a final decisionmaker as Hanna was here.

- *Wooten* contains little analysis and suffers the same defects as the County's argument. *Wooten*, at 147.  According to the County's interpretation of *Wooten*, a County is never liable for a Sheriff's constitutional violations because the job description never includes violating constitutional rights.  Even under the County's theory, it is still liable because, when Hanna falsely imprisoned Plaintiff, Hanna was making final decisions within his sphere of authority over transport, jail detainees, and investigations. No case, including *Wooten*, relieves the County of direct responsibility for the false imprisonment.  Additionally, subsequent Sixth Circuit cases have not interpreted *Wooten* as barring municipal liability under

---

[12] *Id.,* p. 5.
[13] *Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir.2008), *Doe v. City of Gauley Bridge*, No.2:21-cv-00491, 2022 WL 3587827 (S.D.W.Va. 8/22/2022), *appeal filed*, No.22-2025 (4th Cir. 9/29/2022), *Dahl v. Rice Cnty., Minn.*, 621 F.3d 740 (8th Cir.2010), *Wooten, supra.*
[14] No.22-2025 (4th Cir. 9/29/2022).

6

circumstances like those here. In *Wright v. Fentress Cnty., Tennessee*, 313 F. Supp. 3d 886, 890 (M.D. Tenn.2018), decided 14 years after *Wooten*, the Court found municipal liability where the Sheriff allegedly brutally assaulted an in-custody inmate. Municipal liability attached for the Sheriff's "transient constitutional violation…acting in his role as a policymaker for the Fentress County jail." *Ibid*. As here, "the sheriff is the final policymaker over the operation of a county jail" and he assaulted an inmate. The County neither addresses nor distinguishes *Wright*.

- In *Dahl*, the Sheriff allegedly lost his temper and struck a Deputy during a heated discussion. There is little analysis, only a comment that "losing his temper" was not county policy. *Dahl*, at 743. The Eighth Circuit agreed "a policy can be inferred from a single decision," but affirmed summary judgment because, in the heated conversation, "no such deliberative action occurred." *Ibid*. Here, Hanna's false imprisonment and sexual assault of Plaintiff was not a spur-of-the-moment loss of temper. Hanna made deliberative decisions regarding how and where his detainee was transported and interrogated.

The County offers no persuasive reason to depart from the Tenth Circuit or the majority of other jurisdictions. This Court must follow *Simmons, supra,* and *Seifert v. Unified Gov't of Wyandotte Cty.*, 779 F.3d 1141, 1159 (10th Cir.2015). This Court should be persuaded by the in-District decision, *Coates v. Adams Cnty. Sheriff's Office,* No. 20-CV-01936-STV, __F.Supp.3d__, 2022 WL 4493972, *14 (D.Colo. 9/27/2022) and the in-Circuit decision, *Sanders v. Glanz*, 138 F.Supp.3d 1248, 1256 (N.D. Okla.2015)(all discussed in Doc. 153).

7

### *Respondeat Superior* **is Inapplicable**

*Respondeat superior* means: "let the master answer." It makes a superior vicariously liable for its agents' acts. That does not apply here. Hannah is not an *agent* of the County, he is the *master;* the County's top decisionmaker over criminal and jail matters. See *Turner,* where County liability for a sheriff's alleged conspiracy to frame an innocent citizen did "not run afoul of *Monell'* s admonition against *respondeat superior* liability" because the "sheriff is an elected county official [and] his actions are as much the actions of the county as the actions of those [county] commissioners." *Id.* at 136-137.

*Schneider v. Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir.2013) does not apply here. *Schneider* concerns a sexual assault by a line officer, not a final policymaker.

### **Amendment Based on Trial Evidence**

The County never moved to dismiss the official capacity claims. Its attorney sat in the gallery throughout the trial but never raised any issue about the official capacity jury instructions or the verdict forms. While these facts do not alone decide the question, they provide context.

**1.     The delay should not defeat this motion**

It is true that the investigator's report[15] was exchanged in discovery. However, that report was third hand and not nearly as significant as the evidence that surfaced at trial. The investigator's report states only "When Hanna took over that policy changed. Hokanson doesn't know if there was a specific reason that this policy changed with Hanna. He thought it could have involved manpower, if Hanna just wanted to change it and/or possible push back from dispatchers/matrons."[16] However, trial testimony showed Hanna *himself* discontinued the policy

---

[15] Doc. 160-2.
[16] Doc. 160-2, pdf p. 6

8

and he also testified that he was aware of the risks of his discontinuation. The information in the investigator's report was not "the very information" that came out at trial.

It may be true that additional pretrial discovery or investigation could have revealed more information about the matron policy.  This alone is not grounds to deny the motion to amend. The next two factors weigh in favor of Plaintiff.

**2.    Any prejudice can be cured.**

The County *chose* not to indemnify Hanna and *chose* not to not defend him in this case. The County made this decision at the very *outset* of the lawsuit.  It was not a tactical decision made after prevailing on the motion to dismiss. The County *chose* to challenge some claims but did not explicitly challenge the official capacity claims until after this Court entered final judgment.

Any prejudice can be cured by a brief *Monell* trial on whether the matron policy discontinuation was a moving force behind the constitutional violations.

The County quotes *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir.1991), which in turn quotes *Wright and Miller*.[17] The remainder of the paragraph, not included in the Response, is instructive:

> Undoubtedly cases can be imagined in which an alteration in legal theory would work to the prejudice of the opposing party in a way that cannot be rectified by an appropriate court order. ***But such cases are very rare*** …. For example, in the vast majority of cases, any temporary prejudice that might be caused by a shift in legal theory can be overcome by permitting additional time for discovery or by granting a continuance if the case has reached trial.[18]

---

[17] Doc. 160, p. 9.
[18] 5 Wright & Miller, *Federal Practice & Procedure* §1219, 194 (1990).

9

This Court has the ability to craft a remedy to alleviate the County's only claimed prejudice, i.e., deprivation of the opportunity to defend an element on the merits.[19]

### 3.     Amendment is not futile.

The County argues Hanna would have violated the Matron Policy had he not discontinued it.[20] That argument is flawed because Hanna is the final policymaking authority, and if he violated his *own* Matron Policy, that would have amounted to **single-incident policy-making**. *See Pembaur, supra.* The only question is whether his discontinuation of the policy was a *moving force* behind the constitutional violation. It certainly was.

Discontinuation of a policy is not "inaction" triggering the deliberate indifference requirement. Trial testimony showed discontinuation was an express decision, not mere inaction.

Even if discontinuation would trigger a showing of deliberate indifference, Plaintiff can easily satisfy that burden. *Cf. Bass v. Pottawatomie Cnty. Pub. Safety Ctr.*, 425 F. App'x 713, 721 (10th Cir.2011)(it was "reasonable to infer that Mr. Bass would not have been assaulted" had the jail implemented a policy of close supervision over the drunk tank). Hanna testified the Matron Policy existed to protect female detainees from the risk of sexual assault, but he discontinued the Policy despite this known risk.

The County asserts "nothing" at trial showed Hanna discontinued the policy because he wanted to assault women. A jury could reasonably infer that fact from the trial evidence. The Investigator's report does not state that it was discontinued "for staffing concerns;" but rather that the interviewee [Hokanson] "doesn't know if there was a specific reason."[21] Hokanson

---

[19] Doc. 160, p. 10.
[20] *Id.*, p. 11
[21] Doc. 160-2, pdf p. 6.

10

speculates about possible reasons, including "if Hanna just wanted to change it."[22] That is a far cry from unequivocal proof the change was because of staffing.

## CONCLUSION

Plaintiff concurs with the County that the Judgment should be reopened under Rule 59(e). Plaintiff asks this Court to reject the County's argument that the verdict on the official capacity claims should be rescinded.  This Court should rule that the entry of final judgment as to Hanna, Former Sheriff, in his official and his individual capacities is in fact, by operation of Tenth Circuit and U.S. Supreme Court law, a final judgment against both Hanna and Sedgwick County.

In the alternative, this Court should reopen the case, and permit the filing of a Motion to Amend as set forth in the Motion and this Reply.


Respectfully submitted this 30th day of November, 2022.


**FISHER & BYRIALSEN, P.L.L.C.**
*/s/David Fisher,*
David Fisher, Esq.
4600 S. Syracuse Street, 9th Floor
Denver, Colorado 80237
T: 303-256-6345
David@FBLaw.org

---

[22] *Ibid.*

11

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Reply was electronically filed on November 30, 2022 using the CM/ECF system, email or regular mail, as indicated below and served on the following:

Matthew Buck (via email matt@red.law)
Hollis Whitson (via email hollis.whitson@gmail.com)
And all other parties which will be notified via ECF.

**FISHER & BYRIALSEN, P.L.L.C.**
<u>/s/*David Fisher,*</u>
David Fisher, Esq.
4600 S. Syracuse Street, 9th Floor
Denver, Colorado 80237
T: 303-256-6345
David@FBLaw.org

12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Case No. 1:18-cv-02076-DDD-SKC

HOLLIS ANN WHITSON, as guardian ad litem for Peatinna Biggs,

     Plaintiff,

v.

THOMAS HANNA,

     Defendant.

---

## ORDER ON POST-TRIAL MOTIONS

---

Plaintiff Hollis Ann Whitson is the court-appointed guardian *ad litem* for Peatinna Biggs. Ms. Biggs brought this case alleging that Defendant Thomas Hanna sexually assaulted her when he was the elected Sheriff of Sedgwick County. Her Amended Complaint asserted ten claims against Mr. Hanna, a deputy sheriff, the Sedgwick County Sheriff's Department, and Sedgwick County itself. (Doc. 16.) All the defendants other than Mr. Hanna filed motions to dismiss, and after a variety of procedural steps, I granted those motions. (Doc. 89.) The case against Mr. Hanna proceeded to trial, and the jury found in favor of the plaintiff and awarded $8.25 million in damages. (Doc. 153.)

Three post-trial motions are the subject of this Order. The plaintiff has filed both a Motion to Clarify (Doc. 154) and a Motion to Alter or Amend the Judgment (Doc. 155) that seek essentially the same thing: amendment of the judgment to explicitly bind the County and/or the Sheriff's Office to the judgment against Mr. Hanna. The County and the

Sheriff's Office (collectively, "the Entity Defendants")[1] move for the opposite: amendment of the judgment to clarify that they are not liable. (Doc. 156.)

## LEGAL STANDARDS

The Entity Defendants' motion (Doc. 156) seeks to amend the judgment under Federal Rule of Civil Procedure 60(a), if inclusion of the official-capacity claims against Mr. Hanna in the judgment was simply a mistake arising from oversight, or, if it was not due to oversight, under Rule 59(e). The plaintiff's Motion to Clarify (Doc. 154) does not explain the authority it relies on for that relief, and her Motion to Alter or Amend (Doc. 155) cites both Rule 59(e) and Rule 60(b)(1). But those "two rules are distinct; they serve different purposes and produce different consequences," and a litigant who seeks reconsideration by the district court of an adverse judgment may "file either a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment pursuant to Fed. R. Civ. P. 60(b)." *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). Since all of these

---

[1]   The plaintiff's Amended Complaint named "The County of Sedgwick" and "Sedgwick County Sheriff's Department" as defendants. (Doc. 16.) After the Amended Complaint was filed, the parties stipulated to amend the case caption to substitute the Board of County Commissioners in place of Sedgwick County and then-sitting Sheriff Carlton Britton, in his official capacity, in place of the Sheriff's Department. (Doc. 28; Doc. 41.) These substitutions addressed technicalities regarding the proper designation of the Entity Defendants under Colorado law but did not alter the actual entities being sued. For simplicity in this Order and to avoid confusion of the issues, I will use "the County" to refer to Defendant Board of County Commissioners and "the Sheriff's Office" to refer to Defendant Britton in his official capacity.

motions were filed within the time specified in Rule 59(e), that rule applies, *see id.*, although in this case the result would be the same under either rule.

"Grounds warranting a motion to alter or amend the judgment pursuant to Rule 59(e) 'include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). "A motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Paraclete*, 204 F.3d at 1012. But "it is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*

## DISCUSSION

The question behind all these motions is whether the Entity Defendants are liable for Mr. Hanna's actions and the judgment against him. The plaintiff's motions put forward three related arguments for the affirmative answer. The first is a fairly technical syllogism: official-capacity claims against municipal officials are generally treated as claims against the entity of which the official is an agent, Mr. Hanna was sued in both his individual and official capacities, and the official-capacity claims against him were not dismissed. Thus, the jury's verdict already should be viewed as including the Entity Defendants, despite my having previously granted their motions to dismiss. The second argument is more substantive: that my decision granting those motions to dismiss was based on a misreading of the law and should be reconsidered. Both of these arguments, the plaintiff contends, demonstrate that clarification or amendment of the judgment is needed to correct clear error and

prevent manifest injustice. Finally, the plaintiff says that newly discov-
ered evidence also warrants amendment of the judgment and permis-
sion to amend her pleadings.[2] The Entity Defendants dispute all these
points, but seek amendment of the judgment to remove any doubt that
they are not liable to Ms. Biggs.

Though I am sympathetic to the plaintiff's position, and frustrated
by the Entity Defendants' decision to leave their former sheriff without
legal representation and their failure to directly address the official-ca-
pacity claims before judgment was entered, I conclude they are correct
as a legal matter. The plaintiff's motions are therefore denied, and the
Entity Defendants' is granted.

## I.   The Official-Capacity Claims Did Not Survive the Motions to Dismiss

The plaintiff's argument that the official-capacity claims were never
subject to the motions to dismiss and were presented to the jury and
thus properly part of the judgment is made in both the Motion to Clarify
(Doc. 154) and the Motion to Amend (Doc. 155). It is quite tempting to
agree with her argument that the Entity Defendants' decision not to
move to dismiss any claims against Mr. Hanna, including the official-
capacity claims, should be held against them. Both the legal and factual
premises of the plaintiff's syllogism are accurate: official-capacity claims
are "only another way of pleading an action against an entity of which
an offic[ial] is an agent." *Monell v. Dep't of Soc. Servs. of New York*, 436
U.S. 658, 690 n.55 (1978). And despite that, the Entity Defendants' mo-
tions to dismiss ignored the official-capacity claims against Mr. Hanna.

---

[2]   The plaintiff asserts that if relief is granted under the first two argu-
ments, no further trial would be necessary, but granting relief on the
basis of the last would entail amendment of the pleadings and at least a
partial trial on the municipal-liability question. (Doc. 155 at 13 n.19.)

The Entity Defendants provided no defense to their former sheriff, leaving him to proceed without any attorney (and the Court without an advocate on the defense side) for much of the case. The Entity Defendants did not object to the dismissal order's failure to mention the official-capacity claims against Mr. Hanna, and once their motions to dismiss were granted, they no longer participated in the case. They made no objection when the Final Pretrial Order, jury instructions, and verdict form named Mr. Hanna in both his official and individual capacities,[3] but were quick to reenter the case once final judgment was entered. It is appealing to make them sleep in the messy bed this left, especially when that is likely the only way Ms. Biggs could collect a significant portion of the damages the jury found she is entitled to.

Nevertheless, the plaintiff's conclusion does not follow. The converse of the legal premise that official-capacity claims are to be treated as claims against an entity is that because the claims against the Entity Defendants were held not legally viable, any official-capacity claims against Mr. Hanna must be, too. While the case caption on the jury instructions and verdict form did name Mr. Hanna in his official capacity, there was no evidence presented at trial about how that might affect the County or Sheriff's Office, the jury was not instructed on municipal liability, and the plaintiff's counsel never suggested at or before trial that they understood the case to be proceeding against the Entity Defendants despite the motions to dismiss having been granted.

The plaintiff does not point to, and my review of the record does not reveal, any claims that were asserted specifically against Mr. Hanna in

---

[3]   Nor did Mr. Hanna or, once he got pro bono representation, did his attorney. But it was not their job, nor the Court's, to protect the Entity Defendants' interests.

his official capacity that were not and would not be subject to the same analysis and result as the claims against the Entity Defendants that were dismissed. Claim 8 of the Amended Complaint (entitled "Municipal Liability"), in fact, appears to be an effort to collect all the potential sources of liability against the Entity Defendants into a single claim. That claim was explicitly dismissed. (*See* Doc. 89 at 21.) Since, as explained below, I do not agree that that result was clearly erroneous, the conclusion that the claims against the Entity Defendants[4] were not legally viable applies to the claims against Mr. Hanna in his official capacity, too. The plaintiff's motions to amend or clarify the judgment in this regard therefore must be denied, and the Entity Defendants' granted.

---

[4]   I acknowledge the ongoing confusion about which entity, exactly, is the proper defendant when a municipal-liability claim is brought against a Colorado sheriff in his or her official capacity. *See, e.g.*, *Coates v. Adams Cnty. Sheriff's Office*, — F. Supp. 3d —, No. 20-cv-01936-STV, 2022 WL 4493972, at *14 to *15 (D. Colo. Sept. 27, 2022) (some cases hold sheriff's office, some hold the county, and at least one has held both); *Chavez v. Bd. of Cnty. Comm'rs of Lake Cnty.*, 426 F. Supp. 3d 802, 808-14 (D. Colo. 2019) (analyzing issue). But that does not appear to be an issue I have to resolve here. The plaintiff brought claims against both the County and the Sheriff's Office, and the claims against both entities were dismissed. Whether the official-capacity claims against Mr. Hanna are construed as claims against the County, the Sheriff's Office, or both, they are redundant of the claims brought against the Entity Defendants. *See Stump v. Gates*, 777 F. Supp. 808, 816 n.3 (D. Colo. 1991) ("As the United States Supreme Court repeatedly has stated, a § 1983 action appropriately is pleaded against a municipality either by naming the municipality itself or by naming a municipal official in his or her official capacity. Naming either is sufficient. Naming both is redundant." (citations omitted)).

## II. The Order Granting the Entity Defendants' Motions to Dismiss Was Not Clearly Erroneous

The plaintiff's argument that an elected sheriff's actions in carrying out duties like prisoner transport should be treated as official policy and thus held against the Entity Defendants again holds some appeal and is not without some persuasive legal authority.[5] But this argument is effectively a rehash of the arguments the plaintiff made in response to the motions to dismiss, and thus an insufficient reason to grant relief under Rule 59(e). A Rule 59 motion "is not appropriate to revisit issues already addressed," unless "the court has misapprehended the facts, a party's position, or the controlling law." *Paraclete*, 204 F.3d at 1012.

I do not agree that dismissing the claims against the Entity Defendants was error or based on a misapprehension of the law. While some of their present arguments may stretch things a bit beyond the state of the law, the Entity Defendants are correct that the plaintiff's position is difficult to square with the Supreme Court's well-established proposition that municipal entities like the County and the Sheriff's Office cannot be held liable for the actions of their agents, but only for their own malfeasance. *Monell*, 436 U.S. at 692 (noting the language of Section 1983 "plainly imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights," but liability does not attach when causation is absent).

---

[5]   *See, e.g.*, *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) (county liable for policymaker sheriff's rape of witness during attempted-murder investigation); *Bailey v. Davis*, No. 4:13-CV-496 (CDL), 2015 WL 4131778, at *7 (M.D. Ga. July 8, 2015) (collecting cases and noting circuit split exists "on the issue of whether a final policymaker acts within the scope of his policymaking authority when his conduct involved criminal or intentionally tortious acts").

It is true that a county can be liable for the actions of its policymakers, even when those actions violate a previously established policy. *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1285 (10th Cir. 2007) ("An act by a municipality's final policymaking authority is no less an act of the institution than the act of a subordinate employee conforming to a preexisting policy or custom."). But not *every* action by a policymaker is attributable to the entity, which is the implication of the plaintiff's position. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 482 (1986) ("[W]e . . . emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action . . . ."); *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995) (municipality may be liable for one-time decision by final policymaker if "the policy decision purportedly made by the official [wa]s within the realm of the official's grant of authority"). In *Simmons*, hiring and firing of employees was undisputedly within the realm of the board's policymaking authority. Here, it is undisputed that transportation of prisoners is within the realm of the county sheriff's policymaking authority. But the Entity Defendants are not being sued because Mr. Hanna transported Ms. Biggs; they are being sued because he sexually assaulted her. That is not within the policymaking authority a county sheriff has.

The plaintiff's position would effectively mean that any time a sheriff takes an action in the course of performing his official duties, the County and/or the Sheriff's Office would be liable for that action. This, as other courts have recognized, would collapse the "under color of state law" and municipal-liability analyses, which are separate questions. *See, e.g., Roe v. City of Waterbury*, 542 F.3d 31, 40-41 (2d Cir. 2008). Even where a final policymaker acts under the color of law, the municipality cannot be

liable for that action unless the official had policymaking authority for the action in question. *Danielson v. Huether*, 355 F. Supp. 3d 849, 871 (D.S.D. 2018) (citing *Pembaur*, 475 U.S. at 482-83 & n.12). When determining whether a municipality is liable for a one-time decision of a final policymaker, courts should look to whether the "policy decision purportedly made by the official is within the realm of the official's grant of authority." *Randle*, 69 F.3d at 448. This guidance indicates that the official's action must be related to the official's grant of authority. An official acts "wholly outside" his grant of authority "when he misuses his power to advance a purely personal agenda." *Roe*, 542 F.3d at 41. Here, while Mr. Hanna's position of power was an enabling factor in his assault on Ms. Biggs, the assault was wholly unrelated to the realm of his grant of authority with respect to transportation of prisoners. "[E]ven if advancing an otherwise legitimate policy goal in an illegal or unauthorized manner can, under some circumstances, fall within official policymaking, advancing a purely personal agenda clearly cannot." *Roe*, 542 F.3d at 41.[6]

---

[6]  *See also Lankford v. City of Hobart*, 73 F.3d 283, 286-87 (10th Cir. 1996) (city not liable for official's sexual harassment of employees because "the defendant was committing private, rather than public, acts of sexual harassment"); *Starrett v. Wadley*, 876 F.2d 808, 819 (10th Cir. 1989) (county liable for policymaker's firing plaintiff "because [he] had final authority to set employment policy as to the hiring and firing of his staff," but not for his sexually harassing plaintiff because those "were private rather than official acts" and "were personal in nature without any indicia of being 'officially sanctioned or ordered'"); *Wooten v. Logan*, 92 F. App'x 143, 146-47 (6th Cir. 2004) (county not liable for policymaker sheriff's use of "the guise of a patrol officer making a traffic stop" to effectuate rape of mentally handicapped minor, because it was not "a matter of official business" but rather "a misuse of power to advance a private agenda"); *Danielson*, 355 F. Supp. 3d at 873 (city not liable for mayor's assault of citizen after city council meeting because mayor did not have "authority to alter or violate the law or to make policy authorizing the assault or intimidation of a citizen," and his actions

Plaintiff's position is again sympathetic. Though she goes too far in saying that refusing to impose municipal liability here would mean local governments can immunize themselves simply by adopting written policies their policymakers then ignore, she is right that local governments and other municipal entities can often escape liability for the misdeeds of individuals acting on their behalf. And individuals, including Ms. Biggs here, end up bearing the costs of those misdeeds—effectively she will subsidize the County whose sheriff violated her rights. The Fifth Circuit cases she relies on, however, are largely distinguishable, have not been adopted in this circuit, and are inconsistent with the precedent that has. *See supra* note 7. I therefore cannot conclude that granting the Entity Defendants' motions to dismiss was clear error.

## III. The "Matron Program" Evidence Does not Warrant Amending the Judgment or a New Trial

The plaintiff also seeks to amend the judgment and reopen the case against the Entity Defendants on the basis of evidence about Sheriff Hanna's discontinuation of the so-called "matron program." Under the matron program, the Sheriff's Office used female employees or volunteers to ride along when a female detainee was being transported by a male sheriff or deputy. (Doc. 155 at 12.) Evidence at trial showed that when he was sheriff, Mr. Hanna discontinued this program. The plaintiff argues that "there is a triable issue regarding whether [Mr.] Hanna's cancellation of the matron policy was a moving force behind the constitutional violations" and asks to reopen the judgment to allow her "to amend her complaint to add this theory of *Monell* liability under Federal Rule of Civil Procedure 15(b)(2)." (Doc. 155 at 13.) Because I agree with the Entity Defendants that the plaintiff has no adequate explanation for

were not related to legitimate job function or furthering legitimate policy goal of the city).

why information regarding the matron program was not uncovered long before trial, and that they would be unduly prejudiced by reopening the case at this stage, the plaintiff's motion is denied without addressing their additional argument that the proposed amendment to the plaintiff's complaint would be futile. *See Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994).

As the Entity Defendants point out, the plaintiff has had an investigator's report discussing the matron program, and Sheriff Hanna's discontinuation of it, since at least April 2019. (*See* Docs. 160-1, 160-2.) The plaintiff acknowledges this but contends that "that report was third hand and not nearly as significant as the evidence that surfaced at trial." (Doc. 164 at 8.) Her explanation of the differences, however, is weak. She cites trial testimony that "[Mr.] Hanna *himself* discontinued the policy and he also testified that he was aware of the risks of his discontinuation." (*Id*. at 8-9.) But the fact that Mr. Hanna discontinued the policy himself is implied if not directly stated in the report the plaintiff obtained during discovery, and that Mr. Hanna might have been aware of the risks of doing so is hardly a surprise. If, as the plaintiff now contends, those facts warrant a new trial, they surely were important enough to pursue further during discovery. To the extent the evidence at trial was new, it could have been uncovered long before. Rules 59, 60, and 15 are not means for parties to go through trial, see how things turn out, and then add or amend their claims based on what they find out. *See Paraclete*, 204 F.3d at 1012 (Rule 59(e) relief may be warranted on the basis of "new evidence *previously unavailable*," but not, "[a]bsent extraordinary circumstances," on the basis of facts that could have been raised before (emphasis added)). The plaintiff's motion is denied.

CONCLUSION

The jury here found that Mr. Hanna abused the authority he had as Sedgwick County's sheriff in about as reprehensible a manner as could be imagined, and assessed the damage he caused at over $8,000,000. While Mr. Hanna owes Ms. Biggs that amount, it is hard to imagine he will be able to pay her any more than a tiny fraction of it. Thus, in reality, the person who has to bear the bulk of the financial burdens of Mr. Hanna's actions is the same one who has to bear the emotional and personal burdens: Peatinna Biggs. For the reasons explained above, Sedgwick County cannot be legally *required* to mitigate some of that imbalance, although it could, of course, do so voluntarily. Whether that is the right moral or ethical result is, for better or worse, not for this Court to say.

Plaintiff's motions for clarification and amendment of the final judgment (Docs. 154, 155) are DENIED. The Entity Defendants' motion to amend the final judgment (Doc. 156) is GRANTED. The Clerk of Court is DIRECTED to amend the final judgment to remove any references to Mr. Hanna in his official capacity.

DATED: March 6, 2023

BY THE COURT:

Daniel D. Domenico
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02076-DDD-SKC

HOLLIS ANN WHITSON, as guardian ad litem for Peatinna Biggs

     Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK,
SHERIFF CARLTON BRITTON, in his official capacity;
THOMAS HANNA, in his individual and official capacities; and
LARRY NEUGEBAUER, in his individual and official capacities,

     Defendants.

---

## AMENDED FINAL JUDGMENT

---

In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

Pursuant to and in accordance with Fed. R. Civ. P. 58(a) and the Order, filed April 17, 2020, by the Honorable Daniel D. Domenico, United States District Judge, and incorporated herein by reference as if fully set forth, it is hereby

ORDERED that judgment is hereby entered in favor of Defendants, The Board of County Commissioners of the County of Sedgwick; Sheriff Carlton Britton, in his official capacity; and Larry Neugebauer, in his individual and official capacities, and against Plaintiff, Hollis Ann Whitson, as guardian ad litem for Peatinna Biggs, on Defendants' motions to dismiss.

THIS MATTER came before the Court and a jury of seven duly sworn to try the matter on October 3, 2022 the Honorable Daniel D. Domenico, United States District Judge, presiding. On October 4, 2022, the jury returned its verdict in favor of Plaintiff.

Pursuant to and in accordance with Fed. R. Civ. P. 58(a) and the Order on Post-Trial Motions, filed March 6, 2023, by the Honorable Daniel D. Domenico, United States District Judge, and incorporated herein by reference as if fully set forth, it is hereby

IT IS HEREBY

ORDERED that judgment is hereby entered in favor of Plaintiff, Hollis Ann Whitson, as guardian ad litem for Peatinna Biggs, and against Defendant, Thomas Hanna, in his individual capacity, on Plaintiff's claims of excessive force, cruel and unusual punishment, and false imprisonment in the total amount of $3,250,000.00 in compensatory damages. It is further

ORDERED that judgment is hereby entered in favor of Plaintiff, Hollis Ann Whitson, as guardian ad litem for Peatinna Biggs, and against Defendant, Thomas Hanna, in his individual capacity, on Plaintiff's claims of excessive force, cruel and unusual punishment, and false imprisonment in the total amount of $5,000,000.00 in punitive damages. It is further

ORDERED that post-judgment interest shall accrue on the total amount of $8,250,000.00 at the legal rate pursuant to 28 U.S.C. §1961 from the date of entry of original judgment. It is further

ORDERED that Plaintiff shall have her costs by the filing of a Bill of Costs with the Clerk of this Court within fourteen (14) days of entry of Judgment.

DATED at Denver, Colorado this <u>6th</u> day of March, 2023.

FOR THE COURT:

JEFFREY P. COLWELL, CLERK


*s/ Robert R. Keech*
Robert R. Keech,
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02076-DDD-SKC

**HOLLIS ANN WHITSON,**
**as guardian ad litem for Peatinna Biggs**,

                            Plaintiff(s),

 v.

**THE BOARD OF COUNTY COMMISSIONERS OF**
**THE COUNTY OF SEDGWICK,**
**SHERIFF CARLTON BRITTON, in official capacity, and**
**FORMER SHERIFF THOMAS HANNA, in his official capacity**,

                            Defendant(s).

_____

### NOTICE OF APPEAL FROM FINAL JUDGMENT
_____

HOLLIS ANN WHITSON, as guardian ad litem for Peatinna Biggs, through counsel, David

Fisher and Jane Fisher-Byrialsen, appeals to the United States Court of Appeals for the Tenth

Circuit from the final judgment entered on March 6, 2023 (Doc Nos. 165 and 166) and the

District Court's reaffirmation of the order entered April 17, 2020 granting the motion to dismiss

filed by Defendants Sheriff Carlton Britton in his official Capacity and Defendant Board of

County Commissioners of the County Sedgwick (Doc No. 89).

Dated March 17, 2023.

                    FISHER & BYRIALSEN, P.L.L.C.

                    _/s/David Fisher_

                    David Fisher, Esq.
                         4600 S. Syracuse Street, 9th Floor
                     Denver, Colorado 80237
                         T: 303-256-6345
                    David@FBLaw.org

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Appeal was electronically filed on March 17, 2023 using the CM/ECF system, which will be automatically served on the following:

Eric M. Ziporin (via email eziporin@sgrllc.com)

Jonathan N. Eddy (via email jeddy@sgrllc.com)

Matthew Buck (via email matt@red.law)

Hollis Whitson (via email hollis.whitson@gmail.com)

And all other parties who will be notified via ECF.

FISHER & BYRIALSEN, P.L.L.C.

/s/David Fisher
David Fisher, Esq.
   4600 S. Syracuse Street, 9th Floor
Denver, Colorado 80237
T: 303-256-6345
David@FBLaw.org

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing document:

(a)  all required privacy redactions have been made per 10th Cir. R. 25.5;

(b) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(c) the electronic version of this brief was scanned for viruses with www.virustotal.com and is free of viruses.

Date: July 17, 2023                              /s/ Ellen Noble
                                                 Attorney for the Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2023 I electronically filed the foregoing joint appendix with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF System. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF System.

Date: July 17, 2023                              /s/ Ellen Noble
                                                 Attorney for Plaintiff-Appellant