No. 23-1084

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

HOLLIS ANN WHITSON, as guardian ad litem for Peatinna Biggs,

*Plaintiff-Appellant,*

v.

THOMAS HANNA, et al.

*Defendants-Appellees.*

---

On Appeal from the U.S. District Court for the District of Colorado
The Honorable, Daniel D. Domenico, Judge Presiding
No. 1:18-cv-02076-DDD-SKC

## <u>APPELLANT'S REPLY BRIEF</u>

---

ORAL ARGUMENT REQUESTED

David Fisher
Jane Fisher-Byrialsen
FISHER & BYRIALSEN, PLLC
4600 S. Syracuse Street, 9th Floor
Denver, CO 80237
David@FBLaw.org
(303) 256-6345

Ellen Noble
Sean Ouellette
Alexandra Z. Brodsky
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, D.C. 20036
enoble@publicjustice.net
(202) 797-8600

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ................................................................... iii

GLOSSARY ........................................................................................... vi

INTRODUCTION .................................................................................. 1

ARGUMENT ........................................................................................ 3

   I.   Sheriff Hanna Acted in an Area in Which He Had Final Policymaking
       Authority, Triggering Municipal Liability Under § 1983. ........................... 3

     A.  Defendants Mischaracterize the Final Policymaker Doctrine. ................... 3

     B.  Defendants' Position Conflicts with Tenth Circuit Case Law. ................. 9

     C.  Defendants Fail to Articulate a Principled and Workable Standard for
         Applying the Final Policymaker Doctrine. ............................................. 13

   II.  On Remand, Municipal Entity Defendants Should Be Bound by the
        Judgment Against Sheriff Hanna. ............................................................ 17

   III. The Sedgwick County Board of Commissioners Is a Proper Defendant. ..... 22

CONCLUSION .................................................................................... 24

CERTIFICATE OF COMPLIANCE WITH WORD VOLUME LIMITATION ... 26

CERTIFICATE OF DIGITAL SUBMISSION ....................................... 27

CERTIFICATE OF SERVICE ............................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barrientos-Sanabria v. Lake Cnty.*,
2012 WL 1642285 (D. Colo. May 10, 2012) ....................................................23

*Brammer-Hoelter v. Twin Peaks Charter Acad.*,
492 F.3d 1192 (10th Cir. 2007) ...........................................................................18

*Brown v. Flowers*,
974 F.3d 1178 (10th Cir. 2020) ...........................................................................20

*Bylin v. Billings*,
568 F.3d 1224 (10th Cir. 2009) ...........................................................................18

*Chavez v. Bd. of Cnty. Comm'rs*,
426 F. Supp. 3d 802 (D. Colo. 2019)....................................................................24

*Coates v. Adams Cnty. Sheriff's Off.*,
631 F. Supp. 3d 976 (D. Colo. 2022)....................................................................24

*Ellis v. United States*,
313 F.3d 636 (1st Cir. 2002)................................................................................18

*Entek GRB, LLC v. Stull Ranches, LLC*,
840 F.3d 1239 (10th Cir. 2016) ...........................................................................19

*Est. of Blodgett v. Correct Care Sols., LLC*,
2018 WL 6528109 (D. Colo. Dec. 12, 2018) ....................................................23

*Gonzales v. Martinez*,
403 F.3d 1179 (10th Cir. 2005) ...........................................................................22

*Goodboe v. Gabriella*,
663 P.2d 1051 (Colo. App. 1983).........................................................................19

*Lankford v. City of Hobart*,
73 F.3d 283 (10th Cir. 1996) ......................................................................2, 12

*Ledbetter v. City of Topeka*,
  318 F.3d 1183 (10th Cir. 2003) ............................................................7

*Luckert v. Dodge Cnty.*,
  684 F.3d 808 (8th Cir. 2012) .............................................................20

*McAuliffe v. Vail Corp.*,
  69 F.4th 1130 (10th Cir. 2023) ..........................................................15

*McKay v. Hammock*,
  730 F.2d 1367 (10th Cir. 1984) ...........................................2, 11, 14

*Monell v. Department of Social Services*,
  436 U.S. 658 (1978)...............................................................3, 4, 7, 8

*Newsome v. McCabe*,
  319 F.3d 301 (7th Cir. 2003) .............................................................19

*Pembaur v. City of Cincinnati*,
  475 U.S. 469 (1986)...................................................................4, 5, 8

*Randle v. City of Aurora*,
  69 F.3d 441 (10th Cir. 1995) ...............................................................6

*Roe v. City of Waterbury*,
  542 F.3d 31 (2d Cir. 2008) .........................................................14, 15

*Sanchez v. Hartley*,
  65 F. Supp. 3d 1111 (D. Colo. 2014)..................................................22

*Seifert v. Unified Gov't*,
  779 F.3d 1141 (10th Cir. 2015) ............................................2, 11, 14

*Simmons v. Uintah Health Care Special Dist.*,
  506 F.3d 1281 (10th Cir. 2007) ...................................4, 6, 9, 10, 11, 14

*Starrett v. Wadley*,
  876 F.2d 808 (10th Cir. 1989) .................................................2, 12, 13

*Tunget v. Bd. of Cnty. Comm'rs*,
  992 P.2d 650 (Colo. App. 1999).........................................................23

*Turner v. Upton Cnty.*,
915 F.2d 133 (5th Cir. 1990) ...............................................................8

*Wiggins v. N.M. State Sup. Ct. Clerk*,
664 F.2d 812 (10th Cir. 1981) ............................................................6

*Williams v. United States*,
273 F.2d 469 (10th Cir. 1959) ...........................................................15

**Statutes**

Colo. Rev. Stat. Ann. § 30-10-511..............................................................9

Colo. Rev. Stat. Ann. § 30-10-514..............................................................9

**Other Authorities**

Shirley LaVarco, *Reimagining the Violence Against Women Act from A Transformative Justice Perspective*, 98 N.Y.U. L. Rev. 912 (2023) .................16

Helen M. Eigenberg, *Correctional Officers' Definitions of Rape in Male Prisons*, 28 J. Crim. Just. 435 (2000) .........................................16

James E. Robertson, *A Clean Heart and an Empty Head: The Supreme Court and Sexual Terrorism in Prison*,
81 N.C. L. Rev. 433 (2003) ................................................................16

Restatement (Third) of Torts § 13 (Am. Law Inst. 2000). ......................................21

# GLOSSARY

| | |
|---|---|
| JA | Joint Appendix |
| County | Board of County Commissioners |
| Sheriff's Department | Sheriff Carlton Britton |
| Op. Br. | Appellant's Opening Brief |
| Resp. Br. | Appellees' Answer Brief |

## INTRODUCTION

Defendants do not meaningfully defend the district court's decision below, nor could they. The district court held that the municipal entity defendants could not be liable for Sheriff Hanna's conduct because he did not have policymaking authority to falsely imprison and sexually assault Ms. Biggs. But such reasoning conflates the question of whether the Sheriff acted in an area in which he had final policymaking authority with whether the Sheriff acted lawfully. This approach would effectively eliminate the final policymaker doctrine as state laws generally do not give anyone policymaking authority to engage in unconstitutional conduct.

Instead of defending the district court's reasoning below, Defendants attempt to muddy the waters, suggesting, contrary to Supreme Court and Tenth Circuit precedent, that municipal entities can only be liable for final policymakers' formal policy determinations and not their discrete acts. But the operative and only question is whether the Sheriff's conduct took place in an area, like law enforcement, in which he had final policymaking authority. If it did, then the municipal entities, including the County and the Sheriff's Department, are liable for that conduct.

Defendants also fail to grapple with binding Tenth Circuit precedent. They dismiss Tenth Circuit case law that did not involve a sexual assault, but the principles underlying the final policymaker doctrine in *Simmons*, *Seifert*, and *McKay* apply with equal force here. Indeed, in *McKay*, this Court held that the sheriff's false

imprisonment was within his final policymaking authority, and the complaint here alleges that Sheriff Hanna falsely imprisoned Ms. Biggs. Defendants also fail to address the Opening Brief's argument that cases like *Lankford* and *Starrett* are inapposite and outdated—and actually support municipal liability in this case.

Ultimately, Defendants fail to defend any coherent standard for determining what conduct falls within or outside a sheriff's final policymaking authority. Defendants concede that traditional use of force, cruel and unusual punishment, or medical neglect *would* fall within a sheriff's final policymaking authority, *see* Resp. Br. at 10, but then argue that the sexual nature of Sheriff Hanna's conduct makes it fall outside of his policymaking authority. This position rests on an antiquated and false assumption that sexual assault only serves one's warped sexual desires and could not serve as a means of controlling or punishing detainees. And by requiring courts to examine the perpetrator's intent and the purpose of the unlawful conduct, Defendants' approach directly conflicts with Tenth Circuit precedent stating that the final policymaker inquiry is a question of law, not a question of fact.

The proper inquiry is whether Sheriff Hanna's unlawful conduct took place in an area in which he had final policymaking authority. It is undisputed that Sheriff Hanna had final policymaking authority with respect to jail operations, detainee treatment, and detainee transports, and that he falsely imprisoned, used excessive force against, and inflicted cruel and unusual punishment against a detainee that he

was transporting. Thus, his unconstitutional conduct—regardless of its sexual nature—is attributable to the County and Sheriff's Department.

## ARGUMENT

### I.  Sheriff Hanna Acted in an Area in Which He Had Final Policymaking Authority, Triggering Municipal Liability Under § 1983.

#### A. Defendants Mischaracterize the Final Policymaker Doctrine.

The final policymaker doctrine provides that an individual acting in an area in which he has final policymaking authority is acting on behalf of the county. His conduct, no matter how discrete or nefarious, or contrary to county policies or unlawful, constitutes the "official policy" of the county.[1] Yet Defendants insist that municipal liability only attaches if the unlawful conduct amounts to a formally sanctioned practice. Resp. Br. at 3–10. The argument conflates compliance with a preexisting or longstanding custom, as articulated in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), with the separate and distinct final policymaker doctrine, which provides that discrete actions taken by final policymakers *also* give rise to municipal liability. *See Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1285 (10th Cir. 2007).

---

[1] The term "county" here, and throughout Part I, encompasses both the Board of County Commissioners and the Sheriff's Department.

Defendants rely on the Supreme Court's use of the term "official government policy" in *Pembaur* to try and blur the final policymaker doctrine with *Monell*'s policy or custom requirement. *See* Resp. Br. at 3–5 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). But they pull this language out of context. The Supreme Court in *Pembaur* used this term—official government policy—to mean nothing more than a course of action attributable to the government. *See Pembaur*, 475 U.S. at 481 n.9 (listing dictionary definitions of "policy" and explaining the term is generally defined as a decision or course of action by government). The phrase alone does not say anything about what kind of specific conduct does or does not constitute an official government policy—or, in other words, government action.

Defendants also mischaracterize the actual instruction provided by the Supreme Court in *Pembaur* on what amounts to official government policy. The Supreme Court explained that "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481–82. Defendants stop quoting the Court there and conclude that Sheriff Hanna's discretionary decision to sexually assault Ms. Biggs does not amount to an "official policy" as required to trigger municipal liability. *See* Resp. Br. at 4.

But in the immediately following sentence the Supreme Court provides the substantive standard: "The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Pembaur*, 475 U.S. at 482–83. The Court then includes a footnote explaining how a sheriff, for example, may have discretion to take certain actions—like hiring or firing someone—but not be the final policymaker with respect to county employment policy, such that the sheriff's decisions with respect to employment would not give rise to municipal liability. *Id.* at 483 n.12. The Court further explained that while that sheriff's discretionary employment decisions may not give rise to municipal liability, "similar decisions with respect to law enforcement practices, over which the [s]heriff *is* the official policymaker, *would* give rise to municipal liability." *Id.*

In other words, the operative question—and the only question—is whether the sheriff's conduct took place in an area, like law enforcement, in which he had final policymaking authority. If it did, then the municipality is liable for that conduct. *Id.* The Supreme Court did not impose any additional requirements for municipal liability to attach. The sheriff does not need to write down or formally announce the action, nor does the action need to be part of a pattern or practice; the action just needs to be taken in a context in which the sheriff has final policymaking authority. *See id.* at 480–81 (explaining that while "'official policy' often refers to formal rules

or understandings," it also applies where the government "chooses a course of action tailored to a particular situation and not intended to control decisions in later situations").[2]

Defendants argue that this straightforward application of the final policymaker doctrine collapses the question of whether a person is acting "under color of law" with whether the municipality is liable for the conduct in question. Resp. Br. at 5. That's not the case. A sheriff is acting under color of law "when he is using the power granted by the state." *Wiggins v. N.M. State Sup. Ct. Clerk*, 664 F.2d 812, 817 (10th Cir. 1981). But to determine if a sheriff is acting with final policymaking authority, "courts must examine state laws and local ordinances or regulations to determine where the statutory law places the responsibility for making law or setting policy in a particular area." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1189 (10th Cir. 2003). Only conduct in areas in which the sheriff has the

---

[2] Defendants cite *Randle v. City of Aurora*, 69 F.3d 441, 447–48 (10th Cir. 1995), for the proposition that "the challenged conduct must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area." *See* Resp. Br. at 4. But Defendants later concede—as they must—that the Court's subsequent decision in *Simmons* "recognize[d] that final policymakers need not comply with existing written policy to effectuate municipal liability." *Id.* at 6. Indeed, this Court in *Simmons* held that a final policymaker's discrete acts in *defiance* of the official policy will also trigger municipal liability. *See Simmons*, 506 F.3d at 1285.

ultimate responsibility for setting policy is attributable to the county under the final policymaker doctrine.

Someone acting in an area in which they have final policymaking authority will generally be acting under color of state law, but someone acting under color of state law may not be acting in an area in which they have final policymaking authority. *See* Op. Br. at 25. For example, a sheriff may be required to set a budget or provide an educational service to a local high school, but not have final policymaking authority with respect to the budget or the educational service. The fact that an individual is acting under color of state law does not inform, one way or another, whether that individual is acting in an area in which he has final policymaking authority; they are separate inquiries.

Nor does application of the final policymaker doctrine in this case violate the rule articulated in *Monell* that municipalities are not vicariously liable for the conduct of government employees under § 1983. *See* Resp. Br. at 5–6; *Monell*, 436 U.S. at 692. Under the final policymaker doctrine, a municipality is vicariously liable for the acts of a final policymaker—not just any employee. Courts should "carefully distinguish this premise for vicarious liability from that prohibited by *Monell*, in which 'the sole nexus between the employer and the tort is the fact of the employer-employee relationship.'" *Turner v. Upton Cnty.*, 915 F.2d 133, 138 (5th Cir. 1990) (quoting *Monell*, 436 U.S. at 693); *see also Pembaur*, 475 U.S. at 483 (stating that

holding a municipality liable for actions by "officers exercising their policymaking authority is no more an application of the theory of respondeat superior than was holding the municipalities liable for the decisions of the City Councils in *Owen* and *Newport*"). The term respondeat superior is derived from Latin and means that "the master must answer" for the actions his employees. However, under the final policymaker doctrine, the final policymaker is not a mere employee of the government; instead the final policymaker *is* the master because he controls all decisions and policy in that area of the government.

In sum, Defendants try to muddy the waters, but a thorough reading of *Pembaur* reveals that "official policy" does not mean the type of custom or practice required by *Monell* or any kind of "formal" decision, as Defendants suggest. A discrete action, in a particular circumstance, is enough, so long as it is an action by an individual in an area in which that individual has final policymaking authority.

And, in this case, Sheriff Hanna's false imprisonment and assault of Ms. Biggs undeniably took place in a law enforcement context in which the Sheriff was the final policymaker. Defendants continue to concede that Sheriff Hanna was the final policymaker with respect to law enforcement, including jail operations, supervising detainees in the county's custody, and transporting detainees between jails. *See* Resp. Br. at 10; JA 248; *see also* Colo. Rev. Stat. Ann. §§ 30-10-511, 30-10-514. Nor do Defendants contest that Ms. Biggs was a pretrial detainee subject to Sheriff

8

Hanna's physical control and supervision, or that Sheriff Hanna sexually assaulted Ms. Biggs and falsely imprisoned her while transporting her to another jail. Sheriff Hanna's unlawful conduct took place in the context of law enforcement and jail transports in particular—areas in which he alone has final policymaking authority.

**B. Defendants' Position Conflicts with Tenth Circuit Case Law.**

Defendants' mischaracterization of the final policymaker doctrine also rests on a mischaracterization of Tenth Circuit precedent. As explained in the opening brief, the district court's decision—that Sheriff Hanna's actions were not within his final policymaking authority because they "were not 'pursuant to' Department policies," JA 164—directly conflicts with this Court's holding in *Simmons* that "actions by final policymakers taken in *defiance* of a policy or custom that they themselves adopted" still constitute acts by the county, triggering municipal liability, *Simmons*, 506 F.3d at 1285 (emphasis added). *See* Op. Br. at 21.

Defendants argue that *Simmons* did not address whether the Board was acting within its final policymaking authority. *See* Resp. Br. at 6. That's wrong. The Court directly addressed the scope of conduct that can trigger municipal liability under the final policymaker doctrine and clarified that even conduct that is contrary to county policy and blatantly unlawful triggers municipal liability so long as it is performed by someone with final policymaking authority. *See Simmons*, 506 F.3d at 1287. Thus, the fact that Sheriff Hanna's assault and false imprisonment was unlawful or

unauthorized, intentional or inhumane, does not control the analysis; the question is simply whether Sheriff Hanna had final authority on questions regarding the treatment of detainees, and it's irrefutable that he did.

Nor can Defendants cast aside Tenth Circuit precedent simply because it did not involve a sexual assault. Falsely imprisoning and sexually assaulting someone is different than the unlawful termination in *Simmons*, but so, too, is the scope of final policymaking authority at issue. The Board in *Simmons* had final authority with respect to county personnel matters, *id.* at 1286, but Sheriff Hanna had final authority with respect to operating jails and supervising and punishing detainees, asserting control over their physical bodies. Indeed, the Sheriff's Department had policies in place to prevent the unlawful conduct at issue, like restricting officers from transporting detainees in their personal vehicles, prohibiting officers from bringing detainees into their personal home, and establishing a zero-tolerance policy against any sexual harassment or abuse of detainees. *See* JA 25, ¶ 23; JA 26, ¶ 30; JA 28, ¶ 54. The fact that there are Sheriff Department policies directly regulating the unlawful conduct at issue is evidence that the conduct fell within the realm of the Sheriff's final policymaking authority.

Defendants also assert, in a footnote, that *McKay v. Hammock*, 730 F.2d 1367 (10th Cir. 1984), and *Seifert v. Unified Gov't*, 779 F.3d 1141 (10th Cir. 2015), are distinguishable because those cases did not involve sexual assaults. Resp. Br. at 6–

7 n.2. But in *McKay*, this Court held that the sheriff's unlawful conduct of falsely imprisoning the plaintiff fell within the sheriff's final policymaking authority, *see* 730 F.2d at 1374–75, and the very same unlawful conduct is at issue here, *see* JA 169 (finding Sheriff Hanna liable for false imprisonment). And while the unlawful conduct in *Seifert* was not sexual assault, it was for an illegitimate and personal purpose: retaliation against an employee for testifying in a civil rights suit. *Seifert*, 779 F.3d at 1150. Thus, the case further confirms that, contrary to the district court's decision below, municipal liability is not limited to circumstances where the challenged conduct is performed for a legitimate law enforcement purpose. Municipal entities are liable for the actions of final policymakers, even when those actions serve a nefarious, illegitimate, or illegal purpose.

Defendants next claim that the reasoning in *Simmons* does not apply here because Sheriff Hanna, as an individual, could be held liable and thus had an incentive not to sexually assault detainees. But the concern in *Simmons* was that there would not be a proper incentive for *the county*—operated by city leaders—to ensure compliance with the law. *See Simmons*, 506 F.3d at 1285. If counties could evade liability simply by having lawful policies, even if county leaders were flouting those rules, it would "undermine rather than enhance Section 1983's purposes." *Id.* (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) (plurality op.)

(rejecting claim that a municipality may avoid liability by delegating discretionary authority from policymakers to lower-level employees)).[3]

Finally, Defendants baldly assert that *Lankford v. City of Hobart*, 73 F.3d 283, 286–87 (10th Cir. 1996), and *Starrett v. Wadley*, 876 F.2d 808, 820 (10th Cir. 1989), support their position without responding to any of the analysis to the contrary in the Opening Brief. *See* Resp. Br. at 8–9. Defendants rely on the same phrase in *Lankford* on which the district court relied, without addressing the fact that (1) *Lankford* is inapplicable because, there, the police chief who had sexually harassed employees was not a final policymaker under state law, and (2) the quoted language—that the case "exemplifies a situation where the defendant was committing private, rather than public, acts of sexual harassment"—arose within this Court's analysis of whether there was a widespread and persistent practice of sexual harassment such that municipal liability could attach under *Monell* even though the police chief was not a final policymaker. *See* Op. Br. at 28–29.

---

[3] Under Defendants' logic, a county should never be held liable because the individual acting on behalf of the county will always have a personal incentive to comply with the law. But this approach fails to recognize that the county or sheriff's department is an agent—an entity that can be responsible for harmful, unlawful conduct and be influenced by large money judgments to take more aggressive measures to prevent abuses of legal authority in the future. It also overlooks the fact that—as here—individuals are often judgment-proof.

Nor do Defendants refute Whitson's argument that *Starrett*—a decision that predates *Simmons*—also supports the application of municipal liability in this case. Just as the assessor in *Starrett* misused his power to fire employees to retaliate against plaintiffs, Sheriff Hanna misused his power to assert control over the physical custody of Ms. Biggs to falsely imprison and then sexually assault her. *See id.* at 29–30. While the Court in *Starrett*, relying on an outdated view of the final policymaker doctrine, concluded that the assessor's sexual harassment of employees was not sufficiently connected to his final policymaking authority, that conclusion should not control the analysis here. Sheriff Hanna's false *imprisonment*, cruel and unusual *punishment*, and use of excessive force against a detainee during a transport are directly tied to his final policymaking authority with respect to law enforcement, jail operations, detainee supervision and custody, and detainee transportation. *See id.* Indeed, Sheriff Hanna expressly invoked his authority as final policymaker with respect to law enforcement to scare Ms. Biggs into submission and carry out the assault. *See* JA 27, ¶ 43.

### C. Defendants Fail to Articulate a Principled and Workable Standard for Applying the Final Policymaker Doctrine.

In arguing that Sheriff Hanna acted outside of his final policymaking authority, Defendants fail to identify and defend a workable rule of law. Defendants do not refute the Opening Brief's argument that the district court—by holding that the municipal entities were not liable because Sheriff Hanna lacked policymaking

authority to sexually assault Ms. Biggs—confused the question of whether a sheriff was acting in the area or context in which he has final policymaking authority with whether the sheriff's conduct was lawful or exceeded his *legal* authority. If courts define the area of policymaking authority as the alleged unconstitutional conduct— be it sexual assault, excessive use of force, false imprisonment, cruel and unusual punishment, or even medical neglect—it will *always* be true that there is no state law giving the sheriff final policymaking authority with respect to that particular unlawful conduct. *See* Op. Br. at 22–23.

Defendants also fail to meaningfully defend the suggestion in the Second Circuit's decision in *Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008), that the perpetrator's intent, including whether the perpetrator was motivated by legitimate policy goals, controls the final policymaker analysis. *See* Op. Br. at 18, 25–27. Nor could they. There are several Tenth Circuit cases holding a municipality liable for a final policymaker's conduct even when that conduct was intentional and served illegitimate ends. *See id.* at 26 (discussing *Simmons*, 506 F.3d at 1285, *Seifert*, 779 F.3d at 1145, and *McKay*, 730 F.2d at 1374). And such a fact-dependent inquiry would also conflict with Tenth Circuit precedent stating that whether an official was acting within his final policymaking authority is a pure question of law. *Id.* at 26–27 (citing *Milligan-Hitt v. Bd. of Trs.*, 523 F.3d 1219, 1227 (10th Cir. 2008)). Finally, even if the doctrine did require a fact-specific inquiry into the perpetrator's intent

and whether he was motivated by legitimate policy goals, the district court erred in dismissing the municipal entity defendants at the motion to dismiss stage before Whitson had an opportunity to conduct discovery and present evidence on the question of intent. *See McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1144–46 (10th Cir. 2023) (holding factual question of parties' intent could not be resolved on motion to dismiss); *Williams v. United States*, 273 F.2d 469, 470 (10th Cir. 1959) (holding intent is "a question of fact to be resolved by a jury").

Instead of embracing the erroneous analysis in the decision below or in the Second Circuit's decision in *Roe*, Defendants' response brief appears to take a much narrower position regarding what conduct falls outside of a sheriff's final policymaking authority—one unmoored in legal principles but which, conveniently, surgically carves out Sheriff Hanna's conduct from that which might expose a municipal defendant to liability. Defendants argue that "traditional claims for excessive force, cruel and unusual punishment, and/or medical neglect" *would* fall under a sheriff's final policymaking authority because they involve "utilizing force against, punishing, or otherwise denying medical treatment to a detainee within his or her custody." Resp. Br. at 10. Defendants maintain that the exception is *sexual* assault of a detainee because, "unlike instances involving traditional force, punishment, or the allocation of medical treatment, a blatant sex assault in

furtherance of nothing more than one's warped sexual desires lacks any rational nexus with a sheriff's policymaking authority." *Id.*

Defendants' position is untenable because it rests on an erroneous factual assumption that, for purposes of final policymaker liability, sexual violence is different than non-sexual violence because it only serves "warped sexual desires." Many non-sexual forms of excessive force or cruel and unusual punishment—like pepper spraying detainees who are tied to a chair, forcing detainees to shower with scalding hot water, or beating up an already handcuffed detainee laying on the ground—serve "warped . . . desires" to assert dominance or inflict pain on others, rather than law enforcement purposes. At the same time, sexual violence can be used in an effort to further law enforcement purposes, including to make detainees more compliant or to punish detainees.[4] There is nothing unique about sexual assault that explains why it would fall outside of a sheriff's final policymaking authority while

---

[4] *See* Shirley LaVarco, *Reimagining the Violence Against Women Act from A Transformative Justice Perspective*, 98 N.Y.U. L. Rev. 912, 948 (2023) (explaining prisoners are subject to sexual assault behind bars in astounding numbers, "sometimes in retaliation for disobeying orders or speaking up"); Helen M. Eigenberg, *Correctional Officers' Definitions of Rape in Male Prisons*, 28 J. Crim. Just. 435, 436 (2000) (noting that "some officers may use rape or the threat of sexual violence to control inmates"); James E. Robertson, *A Clean Heart and an Empty Head: The Supreme Court and Sexual Terrorism in Prison*, 81 N.C. L. Rev. 433, 446 (2003) (explaining prison staff members at times see rape as a means of deterring other forms of violence in the prison).

other types of violence against detainees would fall within his final policymaking authority. Defendants' approach is also effectively an inquiry into the intent of the individual perpetrator, which, as described above, is inconsistent with binding Tenth Circuit case law regarding the final policymaker doctrine and is also not an inquiry that could have been resolved on a motion to dismiss. Defendants thus fail to identify any principled standard for defining the scope of final policymaking authority.

The proper standard—and the only standard that is consistent with Tenth Circuit case law—is to assess whether the individual's unlawful conduct took place in an area or context in which that individual has final policymaking authority. Because Sheriff Hanna had final policymaking authority in the areas of jail operations, detainee treatment, and detainee transports, and because he falsely imprisoned, used excessive force against, and inflicted cruel and unusual punishment against a detainee that he was transporting, his conduct—even if partly sexual in nature—is attributable to the County and Sheriff's Department.

## II. On Remand, Municipal Entity Defendants Should Be Bound by the Judgment Against Sheriff Hanna.

The municipal entity defendants do not dispute that if they are responsible for Sheriff Hanna's constitutional violations, then, per the law of the case doctrine, the Court should enter judgment against them without a new trial unless the jury's verdict was "clearly erroneous *and* would work a manifest injustice." Resp. Br. at 11 (emphasis added) (quoting *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031,

1035 (10th Cir. 2000)). "A finding of manifest injustice also requires a finding of prejudice"—that is, a showing that the outcome would have been different absent the error. *Ellis v. United States*, 313 F.3d 636, 648 n.5 (1st Cir. 2002); *cf. Bylin v. Billings*, 568 F.3d 1224, 1231–32 (10th Cir. 2009) (holding that leaving district court's ruling in place would not produce a "manifest injustice" because applying the correct framework was "unlikely . . . [to] lead to a different outcome").

Defendants then fail to argue that the jury's finding on the excessive force claim was clearly erroneous, waiving that issue. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1207 (10th Cir. 2007) ("Issues not raised in [an appellee's] opening brief are deemed abandoned or waived."). At minimum, then, Defendants are liable for Sheriff Hanna's use of excessive force—based on his sexual assault of Ms. Biggs—and this Court should instruct the district court to enter judgment against them on that claim.

Defendants instead take narrow aim at only Ms. Biggs' claims for cruel and unusual punishment and false imprisonment, arguing for the first time on appeal that the claims fail for two different legal reasons. *See* Resp. Br. at 11 (arguing that the Eighth Amendment does not apply to pretrial detainees and that Ms. Biggs does not claim the County lacked probable cause for her initial arrest). But the municipal entity defendants could have made those legal arguments in their initial motions to dismiss; they just chose not to. And if they had wanted a second bite at the apple,

they could have intervened later to protect their interests, as they eventually did when Ms. Biggs filed her motion to amend the judgment and as other municipalities have done at trial in similar cases. *See Newsome v. McCabe*, 319 F.3d 301, 302–03 (7th Cir. 2003) (where city participated in § 1983 trial against its officers even though it was not a defendant). Instead, the municipal entity defendants sat on the sidelines and watched the trial take its course. It would hardly work a "manifest injustice" to hold they must live with the results of their tactical choices below. "The promotion of judicial economy—a primary concern underlying the law of the case doctrine—requires that litigants be encouraged to present all available claims and defenses at the earliest opportunity." *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1242 (10th Cir. 2016) (quoting *McIlravy*, 204 F.3d at 1035).

In any event, Defendants are wrong on the law. First, Ms. Biggs' false imprisonment claim did not challenge her "underlying arrest," Resp. Br. at 11, so there was no need for her to show that the County lacked probable cause for her initial detention. Ms. Biggs brought a false imprisonment claim because she was later "abducted and taken against her will . . . to Defendant Hanna's personal residence." JA 39. While a "legal justification" for the imprisonment at issue is an "affirmative defense" to false imprisonment, *Goodboe v. Gabriella*, 663 P.2d 1051, 1057 (Colo. App. 1983), Defendants do not argue Sheriff Hanna had any legal justification to take Ms. Biggs to his private home and keep her there to sexually

assault her. *See* Resp. Br. at 4. So they cannot show that the false imprisonment verdict was clearly erroneous, much less a manifest injustice.[5]

Nor does the jury's verdict on Ms. Biggs' claim for Eighth Amendment cruel and unusual punishment require a new trial. While a pretrial detainee's right to be free from assault in custody derives from the Fourteenth rather than the Eighth Amendment, the Fourteenth Amendment entitles detainees "to at least as great protection as that afforded convicted prisoners under the Eighth Amendment." *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012) (citations omitted). The elements under both amendments are the same, except that a pretrial detainee need not show subjective intent to harm. *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397–98 (2015)). And Defendants do not suggest the compensatory damage award would have been any different absent the Eighth Amendment claim, given that the "cruel and unusual punishment" and excessive force claims rested on the same conduct—the sexual assault. In short, Defendants cannot show that any manifest injustice would result

---

[5] A "legal justification" defense would fail in this case for another reason: The defense is not available where "[t]he defendant's sole purpose in making the arrest was not to bring the plaintiff before a proper court or official or to secure the administration of the criminal law." Colo. Jury Instr., Civil 21:19. No one contends that Sheriff Hanna brought Ms. Biggs to his home for either of these purposes.

from holding them liable for the damages that the jury found Sheriff Hanna inflicted.[6] The municipal entity defendants should therefore be bound by the trial judgment below, and no new trial is needed on remand.

Nonetheless, if this Court agrees that the district court erred in dismissing the municipal entity defendants but does not want to decide in the first instance whether a new trial is needed, it can reverse the district court's decision granting the municipal entity defendants' motions to dismiss and remand the case with instructions for the district court to determine whether there would be clear error and manifest injustice if the entity defendants were bound by the existing judgment against Sheriff Hanna.

---

[6] The municipal entity defendants suggest in a footnote that they are not liable for the compensatory damages award against Sheriff Hanna because they are not vicariously liable for his actions. *See* Resp. Br. at 12 n.4. This footnote simply rehashes their merits argument, which fails for the reasons set forth above: The Sheriff's relevant acts are imputed to the County and the Sheriff's Department under the final policymaker doctrine, and "[a] person whose liability is imputed based on the tortious acts of another is liable for the entire share of comparative responsibility assigned to the other." Restatement (Third) of Torts: Apportionment of Liability § 13 (Am. Law Inst. 2000).

### III.    The Sedgwick County Board of Commissioners Is a Proper Defendant.

The County argues that only the Sheriff's Department, not the County, is the proper municipal entity defendant. That's legally wrong, but also makes no practical difference. First, as a matter of law, the County *is* a proper defendant in this action. Contrary to Defendants' argument, this Court has recognized that in Colorado, "counties can be held liable for the misdeeds of Sheriffs and their employees when the Sheriff is held to set 'official policy' for the county." *Gonzales v. Martinez*, 403 F.3d 1179, 1182 n.7 (10th Cir. 2005) (citation omitted); *see also Sanchez v. Hartley*, 65 F. Supp. 3d 1111, 1127 (D. Colo. 2014). For example, in *Anglin v. City of Aspen*, the plaintiff asserted various constitutional claims under § 1983 against a sheriff, the board of county commissioners, and others after she was involuntarily sedated at the county jail. 552 F. Supp. 2d 1205, 1214 (D. Colo. 2008). The district court rejected the county's argument that it was not a proper defendant under Colorado law, as the record indicated the sheriff "sets the official policy relating to involuntary medication" for the county. *Id.* at 1216–17. Similarly, here, because Sheriff Hanna sets official policy for the County with respect to law enforcement and jail operations, the County is liable for his violations of Ms. Biggs' constitutional rights. *See supra* Part I.

The Defendants attempt to escape this conclusion by citing three inapposite cases. *See* Resp. Br. at 13. As the Defendants emphasize, these cases maintain that

sheriffs' offices and boards of county commissioners are separate entities under Colorado law. *See Tunget v. Bd. of Cnty. Comm'rs*, 992 P.2d 650, 651–52 (Colo. App. 1999); *Est. of Blodgett v. Correct Care Sols., LLC*, No. 17-CV-2690-WJM-NRN, 2018 WL 6528109, at *8 (D. Colo. Dec. 12, 2018); *Barrientos-Sanabria v. Lake Cnty.*, No. 11-CV-00838-KLM, 2012 WL 1642285, at *2 (D. Colo. May 10, 2012). But this distinction does not immunize the County from liability. Indeed, the lack of supervisory authority Colorado counties hold over sheriffs supports the conclusion that Sheriff Hanna is the final policymaker for the County in the law enforcement and jail operations contexts. *See, e.g.*, *Barrientos-Sanabria*, 2012 WL 1642285, at *2 (noting the board of county commissioners "does not have the legal authority to control or supervise the sheriff and the sheriff's deputies").

And, critically, none of the cited cases involved the final policymaker doctrine. *See id.* (alleging § 1983 claims under *Monell*); *Tunget*, 992 P.2d 650 (asserting no § 1983 claims—only negligence claims under a theory of respondeat superior); *Est. of Blodgett*, 2018 WL 6528109 (alleging § 1983 claims under *Monell*). This matters because where someone is acting with final policymaking authority, that means that state or local law specifically delegated that individual to act on behalf of the county in setting policy. Because Sheriff Hanna set official policy on behalf of the municipality in the area of law enforcement, the district court erred in dismissing the County as a defendant.

Finally, while the County is a proper defendant along with the Sheriff's Department, this issue is of little practical importance. Under Colorado law, a money judgment against a sheriff in his official capacity—or, in other words, against the Sheriff's Department—must be paid out of the same county fund (or county insurance policy) as a money judgment against the Board of County Commissioners. *See* Op. Br. at 36 (citing Colo. Rev. Stat. § 30-25-104(1)); *see also Chavez v. Bd. of Cnty. Comm'rs*, 426 F. Supp. 3d 802, 813 (D. Colo. 2019). The distinction between judgments against the County and the Sheriff's Department is "purely theoretical, because the county will pay regardless." *Chavez*, 426 F. Supp. 3d at 813; *see also Coates v. Adams Cnty. Sheriff's Off.*, 631 F. Supp. 3d 976, 999 n.14 (D. Colo. 2022) ("[T]he precise identity of the municipal defendant in this case 'ultimately . . . does not matter' under Colorado law."). Therefore, the County is a properly named defendant, and even if it weren't, the County and its insurer would still be on the hook for the damages Ms. Biggs suffered.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's dismissal of claims against the County and Sheriff's Department and remand with instructions for the district court to enter judgment against the municipal entity defendants.

DATED: October 4, 2023

/s/ Ellen Noble
Ellen Noble
Sean Ouellette
Alexandra Z. Brodsky
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, D.C. 20036
enoble@publicjustice.net
(202) 797-8600

David Fisher
Jane Fisher-Byrialsen
FISHER & BYRIALSEN, PLLC
4600 S. Syracuse Street, 9th Floor
Denver, CO 80237
David@FBLaw.org
(303) 256-6345

## CERTIFICATE OF COMPLIANCE WITH WORD VOLUME LIMITATION

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 5,959 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman typeface.

Date: October 4, 2023                     /s/ Ellen Noble
                                          Attorney for Plaintiff-Appellant

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing document:

    (a)  all required privacy redactions have been made per 10th Cir. R. 25.5;

    (b)  if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

    (c)  the electronic version of this brief was scanned for viruses with www.virustotal.com and is free of viruses.

Date: October 4, 2023                 /s/ Ellen Noble
                                       Attorney for the Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2023 I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to all Defendants-Appellees that have appeared.

Date: October 4, 2023                    /s/ Ellen Noble
                                         Attorney for Plaintiff-Appellant